Gary J. Smith (SB #141393)
Ryan R. Tacorda (SB #227070)
BEVERIDGE & DIAMOND, P.C.
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone: (415) 262-4000
Facsimile: (415) 262-4040

Robert Brager
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
Telephone: (410) 230-3850
Facsimile: (410) 230-3868

Attorneys for Defendant
PPG INDUSTRIES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA WATER SERVICE COMPANY, | **CASE NO. CIV-08-3267 SI** |
| Plaintiff, | **NOTICE REGARDING COMPLETION OF SERVICE AND FILING REQUIREMENTS FOR REMOVAL PETITION** |
| vs. | |
| THE DOW CHEMICAL COMPANY; E.I. DUPONT DE NEMOURS AND COMPANY; PPG INDUSTRIES, INC.; VULCAN MATERIALS COMPANY; OCCIDENTAL CHEMICAL CORPORATION; VALERO ENERGY CORPORATION; STAUFFER CHEMICAL COMPANY; BOWE-PERMAC, INC., individually and d/b/a BOWE TEXTILE CLEANING, INC.; HOYT CORPORATION; R.R. STREET & CO., INC.; MCGRAW EDISON COMPANY, individually and d/b/a AMERICAN LAUNDRY MACHINERY, INC., AMERICAN LAUNDRY MACHINERY, INC., individually and d/b/a AJAX MANUFACTURING DIVISION AND MARTIN EQUIPMENT, WHITE CONSOLIDATED INDUSTRIES, INC., individually and d/b/a WASHEX MACHINERY DIVISION, ELECTROLUX CORPORATION, LINDUS S.R.L., individually and d/b/a LINDUS WEST, COLUMBIA DRYCLEANING MACHINES, a/k/a COLUMBIA/ILSA MACHINES CORP., | |

-1-

1  REALSTAR, INC., individually and d/b/a
   REALSTAR USA, UNION DRYCLEANING
2  PRODUCTS USA, FIRBIMATIC,
   BERGPARMA OF AMERICA, LLC, AMA
3  UNIVERSAL, FLUORMATIC MIDWEST
   LTD., FORENTA LP, WESTERN MULTITEX
4  CORP., MARVEL MANUFACTURING,
   RENZACCI OF AMERICA, SAIL STAR USA,
5  VIC MANUFACTURING CORPORATION,
   M.B.L., INC., GOSS-JEWETT CO. OF
6  NORTHERN CALIFORNIA, MCGREGOR
   SUPPLY COMPANY, S.B. SUPPLY INC.,
7  WASHEX MACHINERY OF CALIFORNIA,
   INC., WORKROOM SUPPLY, INC., TAYLOR
8  HOUSEMAN, INC., UNITED FABRICARE
   SUPPLY, INC., ECHCO SALES INC., MW
9  EQUIPMENT, ARTHUR KAJIWARA
   EQUIPMENT CO., INC., KELLEHER
10 EQUIPMENT SUPPLY, INC., US
   MACHINERY & ENGINEERING CO., INC.,
11 WYATT-BENNETT, CORBETT
   EQUIPMENT, FULLER SUPPLY
12 COMPANY, SAV-ON MACHINERY
   COMPANY, INC. and DOES 1 through 750,
13 INCLUSIVE,

14        Defendants.

15     TO THE CLERK OF THE ABOVE-ENTITLED COURT:

16     Please take notice that defendant PPG Industries, Inc. ("PPG") submits this notice to inform

17 the Court that it has completed service and filing requirements set forth in 28 U.S.C. § 1446(d) for

18 the Notice of Removal filed with this Court on July 7, 2008.

19     Attached as Exhibit A is a file-stamped copy of the Notice to Plaintiff California Water

20 Service Company of Removal to this Court which PPG filed with the Superior Court of California,

21 San Mateo County and served on Plaintiff on July 8, 2008.  The Proof of Service for this notice is

22 included in Exhibit A.

23     Attached as Exhibit B is a copy of the letter PPG sent via email on July 8, 2008, to Plaintiff

24 California Water Service Company's counsel pursuant to 28 U.S.C. § 1446(d), providing separate

25 notice of PPG's Notice of Removal to this Court.

26

27

28

-2-

1    Attached as Exhibit C is a copy of the Supplement to Notice to Plaintiff California Water

2  Service Company of Removal which PPG served on Plaintiff on July 9, 2008.  The Proof of Service

3  for this supplement is attached as Exhibit D.

4

5
   Dated: _July 9, 2008_ .                         BEVERIDGE & DIAMOND, P.C.
6

7                                                  By: _____
8                                                      Gary J. Smith
                                                       Ryan R. Tacorda
9
                                                   Attorneys for Defendant
10                                                 PPG INDUSTRIES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE REGARDING COMPLETION OF SERVICE AND FILING REQUIREMENTS FOR REMOVAL
PETITION; Case No. CIV-08-3267 SI

# EXHIBIT A

1 | Gary J. Smith (SB #141393)
2 | Ryan R. Tacorda (SB #227070)
  | BEVERIDGE & DIAMOND, P.C.
3 | 456 Montgomery Street, Suite 1800
  | San Francisco, CA 94104-1251
4 | Telephone: (415) 262-4000
  | Facsimile: (415) 262-4040
5 |
  | Attorneys for Defendant
6 | PPG INDUSTRIES, INC.

**ENDORSED FILED**
**SAN MATEO COUNTY**

JUL   8 2008

Clerk of the Superior Court
By _____C. KANTARIS_____
DEPUTY CLERK

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **IN AND FOR THE COUNTY OF SAN MATEO**

10

11 | CALIFORNIA WATER SERVICE COMPANY,

**CASE NO. CIV 473093**

12 | Plaintiff,

**NOTICE TO PLAINTIFF CALIFORNIA WATER SERVICE COMPANY OF REMOVAL TO FEDERAL COURT**

13 | vs.

14 | THE DOW CHEMICAL COMPANY; E.I. DUPONT DE NEMOURS AND COMPANY;
15 | PPG INDUSTRIES, INC.; VULCAN MATERIALS COMPANY; OCCIDENTAL
16 | CHEMICAL CORPORATION; VALERO ENERGY CORPORATION; STAUFFER
17 | CHEMICAL COMPANY; BOWE-PERMAC, INC., individually and d/b/a BOWE TEXTILE
18 | CLEANING, INC.; HOYT CORPORATION; R.R. STREET & CO., INC.; MCGRAW
19 | EDISON COMPANY, individually and d/b/a AMERICAN LAUNDRY MACHINERY, INC.,
20 | AMERICAN LAUNDRY MACHINERY, INC., individually and d/b/a AJAX
21 | MANUFACTURING DIVISION AND MARTIN EQUIPMENT, WHITE
22 | CONSOLIDATED INDUSTRIES, INC., individually and d/b/a WASHEX
23 | MACHINERY DIVISION, ELECTROLUX CORPORATION, LINDUS S.R.L., individually
24 | and d/b/a LINDUS WEST, COLUMBIA DRYCLEANING MACHINES, a/k/a
25 | COLUMBIA/ILSA MACHINES CORP., REALSTAR, INC., individually and d/b/a
26 | REALSTAR USA, UNION DRYCLEANING PRODUCTS USA, FIRBIMATIC,
27 | BERGPARMA OF AMERICA, LLC, AMA UNIVERSAL, FLUORMATIC MIDWEST
28 | LTD., FORENTA LP, WESTERN MULTITEX CORP., MARVEL MANUFACTURING,

EXHIBIT
A

-1-

COPY

1  RENZACCI OF AMERICA, SAIL STAR USA,
   VIC MANUFACTURING CORPORATION,
2  M.B.L., INC., GOSS-JEWETT CO. OF
   NORTHERN CALIFORNIA, MCGREGOR
3  SUPPLY COMPANY, S.B. SUPPLY INC.,
   WASHEX MACHINERY OF CALIFORNIA,
4  INC., WORKROOM SUPPLY, INC., TAYLOR
   HOUSEMAN, INC., UNITED FABRICARE
5  SUPPLY, INC., ECHCO SALES INC., MW
   EQUIPMENT, ARTHUR KAJIWARA
6  EQUIPMENT CO., INC., KELLEHER
   EQUIPMENT SUPPLY, INC., US
7  MACHINERY & ENGINEERING CO., INC.,
   WYATT-BENNETT, CORBETT
8  EQUIPMENT, FULLER SUPPLY
   COMPANY, SAV-ON MACHINERY
9  COMPANY, INC. and DOES 1 through 750,
   INCLUSIVE,

10            Defendants.

11

12      TO PLAINTIFF California Water Service Company and its Attorneys of Record:

13      PLEASE TAKE NOTICE THAT a Notice of Removal of this action was filed in the United

14  States District Court for the Northern District of California, San Francisco Division, on July 7, 2008,

15  under Federal Case Number CV-08-3267 SI.

16      A copy of the said Notice of Removal is attached to this Notice, and is served and filed

17  herewith.

18

19

20

21  Dated:  7-8-08            .            BEVERIDGE & DIAMOND, P.C.

22

23                                         By: _____
                                              Gary L. Smith
24                                            Ryan R. Tacorda

25                                         Attorneys for Defendant
                                           PPG INDUSTRIES, INC.

26

27

28

-2-

1                        **PROOF OF SERVICE**

2

3          I am employed in the County of San Francisco, State of California.  I am over the age of
   18 years and not a party to the within action; my business address is Beveridge & Diamond,
   P.C., 456 Montgomery Street, Suite 1800, San Francisco, CA 94104-1251.

4

5          On **July 8, 2008**, I served the foregoing document describe as in this action:

6          1.     Notice to Plaintiff California Water Service Company of Removal to Federal
                  Court;

7          2.     Civil Cover Sheet;

8          3.     Notice of Removal of Action Under 28 U.S.C. § 1441(b) (Original Jurisdiction);

9          4.     Joinder In Notice of Removal;

10         5.     Consent of Removal (Arthur Kajiwara Equipment Company, Inc.);

11         6.     Consent of Removal (Corbett Equipment);

12         7.     Consent of Removal (Valero Energy Corporation);

13         8.     Consent of Removal (Forenta, L.P.);

14         9.     Consent of Removal (Washex Machinery of California, Inc.);

15         10.    Declaration of Gary J. Smith In Support Of Notice of Removal of Action Under
                  28 U.S.C. § 1441(b) (Original Jurisdiction);

16

17         11.    Declaration of Stephen J. Valen In Support Of Notice of Removal of Action
                  Under 28 U.S.C. § 1441(b) (Original Jurisdiction);

18         12.    Declaration of Maureen L. King In Support Of Notice of Removal of Action
                  Under 28 U.S.C. § 1441(b) (Original Jurisdiction);

19

20         13.    Declaration of Sarah F. Peterman In Support Of Notice of Removal of Action
                  Under 28 U.S.C. § 1441(b) (Original Jurisdiction);

21         14.    Declaration of Ryan R. Tacorda  In Support Of Notice of Removal of Action
                  Under 28 U.S.C. § 1441(b) (Original Jurisdiction).

22

23

24         ///

25

26         ///

27         ///

28

                                    3

☒ ** BY MAIL

    ☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:
    ☒ by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as follows:

**Victor M. Sher, Esq.**
**Sher & Leff, LLP**
**450 Mission Street, Suite 400**
**San Francisco, CA 94105**

**Scott Summy, Esq.**
**Baron & Budd, P.C.**
**3102 Oak Lawn Avenue**
**Suite 1100**
**Dallas, TX 75219**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on **July 8, 2008** at San Francisco, California.

_____
ADELA C. CRUZ

4

✎ JS 44  (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

CALIFORNIA WATER SERVICE COMPANY

## DEFENDANTS

THE DOW CHEMICAL COMPANY, ET AL.
(SEE ATTACHMENT)

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Victor M. Sher, Esq.       Telephone #: (415) 348-8300
Sher Leff LLP
450 Mission Street, Suite 400
San Francisco, CA 94105

Attorneys (If Known)

Stephen J. Valen, Esq.       Telephone #: (510) 444-3131
Filice Brown Eassa & McLeod, LLP
Lake Merritt Plaza, 18th Floor - 1999 Harrison Street
Oakland, CA  94612-3408       (SEE ATTACHMENT)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | State Statutes |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☐ 1  Original Proceeding | ☒ 2  Removed from State Court | ☐ 3  Remanded from Appellate Court | ☐ 4  Reinstated or Reopened | ☐ 5  another district (specify) | ☐ 6  Multidistrict Litigation | ☐ 7  Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1441(a)

Brief description of cause:
Damages for environmental harm

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION    DEMAND $          CHECK YES only if demanded in complaint:
UNDER F.R.C.P. 23              JURY DEMAND:  ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)        ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE  July 7, 2008          SIGNATURE OF ATTORNEY OF RECORD

ATTACHMENT RE ATTORNEYS OF RECORD FOR DEFENDANTS' INFORMATION

| | |
|---|---|
| Gennaro Filice, Esq.<br>Stephen J. Valen, Esq.<br>Nicholas Kayhan, Esq.<br>Dan Nichols, Esq.<br>**Filice Brown Eassa & McLeod, LLP**<br>Lake Merritt Plaza, 18th Floor<br>1999 Harrison Street<br>Oakland, CA  94612-3408<br><br>Telephone:  (510) 444-3131<br><br>Attorneys for Defendant:<br>THE DOW CHEMICAL COMPANY | Andrew T. Mortl, Esq.<br>**Glynn & Finley, LLP**<br>One Walnut Creek Center<br>100 Pringle Avenue, Suite 500<br>Walnut Creek, CA  94596<br><br>Telephone:  (925) 210-2800<br><br>Attorneys for Defendant:<br>E.I. DUPONT DE NEMOURS AND<br>COMPANY |
| James H. Colopy, Esq.<br>Sarah F. Petermann, Esq.<br>**Farella Braun & Martel LLP**<br>235 Montgomery Street, 17th Floor<br>San Francisco, CA  94104<br><br>Telephone:  (415) 954-4400<br><br>Attorneys for Defendant:<br>LEGACY VULCAN CORP. formerly known as<br>VULCAN MATERIALS COMPANY | Stephen C. Lewis, Esq.<br>Maureen L. King, Esq.<br>**Barg Coffin Lewis & Trapp, LLP**<br>350 California Street, 22nd Floor<br>San Francisco, CA  94104-1435<br><br>Telephone:  (415) 228-5400<br><br>Attorneys for Defendant:<br>OCCIDENTAL CHEMICAL<br>CORPORATION |
| Steven H. Gurnee, Esq.<br>John A. Mason, Esq.<br>**Gurnee & Daniels LLP**<br>2240 Douglas Blvd., Suite 150<br>Roseville, CA  95661-3875<br><br>Telephone:  (916) 797-3100<br><br>Attorneys for Defendant:<br>VALERO ENERGY CORPORATION | Attorneys for Defendant:<br>STAUFFER CHEMICAL COMPANY |

| | |
|---|---|
| Alexander M. Weyand, Esq.<br>**Peterson Weyand Martin LLP**<br>49 Stevenson Street, 10th Floor<br>San Francisco, CA 94105<br><br>Telephone: (415) 399-2900<br><br>Attorneys for Defendant:<br>BOWE-PERMAC, INC., individually and d/b/a<br>BOWE TEXTILE CLEANING, INC. | Richard S. Baron, Esq.<br>Brian H. Phinney, Esq.<br>**Foley, Baron & Metzger, PLLC**<br>33533 W. 12 Mile Road, Suite 350<br>Farmington Hills, MI 48331<br><br>Telephone: (248) 488-1525<br><br>Attorneys for Defendant:<br>HOYT CORPORATION |
| John B. Thomas, Esq.<br>John Deis, Esq.<br>Wade Whilden, Esq.<br>**Hicks Thomas & Lilienstern, LLP**<br>700 Louisiana, Suite 2000<br>Houston, TX 77002<br><br>Telephone: (713) 547-9100<br><br>Attorneys for Defendant:<br>R.R. STREET & CO., INC. | Kristin N. Reyna, Esq.<br>**Gordon & Rees, LLP**<br>101 W. Broadway, Suite 2000<br>San Diego, CA 92101<br><br>Telephone: (619) 696-6700<br><br>Attorneys for Defendant:<br>MCGRAW EDISON COMPANY,<br>individually and d/b/a AMERICAN<br>LAUNDRY MACHINERY, INC. |
| Christopher M. Bechhold, Esq.<br>**Thompson Hine**<br>312 Walnut Street, 14th Floor<br>Cincinnati, Ohio 45202-4089<br><br>Telephone: (513) 352.6700<br><br>Attorneys for Defendant:<br>AMERICAN LAUNDRY MACHINERY, INC.,<br>individually and d/b/a/ AJAX<br>MANUFACTURING DIVISION AND<br>MARTIN EQUIPMENT | Orlyn O. Lockard, III, Esq.<br>**Alston & Bird, LLP**<br>1201 West Peachtree Street, SW<br>Atlanta, GA 30309-3424<br><br>Telephone: (404) 881-7126<br><br>Attorneys for Defendant:<br>WHITE CONSOLIDATED INDUSTRIES,<br>INC. |
| Orlyn O. Lockard, III, Esq.<br>**Alston & Bird, LLP**<br>1201 West Peachtree Street, SW<br>Atlanta, GA 30309-3424<br><br>Telephone: (404) 881-7126<br><br>Attorneys for Defendant:<br>ELECTROLUX CORPORATION | Attorneys for Defendant:<br>LINDUS S.R.L., individually and d/b/a<br>LINDUS WEST |

| | |
|---|---|
| Anthony S. Cannatella, Esq.<br>**Law Offices of Anthony S. Cannatella**<br>53 Orchard Street<br>New York, NY 10002-5414<br><br>Telephone: (516) 472-7300<br><br>Attorneys for Defendant:<br>COLUMBIA DRYCLEANING<br>MACHINES, a/k/a COLUMBIA/ILSA<br>MACHINES CORP. | Tito Mazzetta, Esq.<br><br>Telephone: (404) 521-1808<br><br>Attorneys for Defendant:<br>REALSTAR, INC., individually and d/b/a<br>REALSTAR USA |
| Richard T. Petrillo, Esq.<br>Pino & Associates, LLP<br>Westchester Financial Center<br>50 Main Street<br>White Plains, NY 10606<br><br>Telephone: (914) 946-0600<br><br>Attorneys for Defendant:<br>MONDIAL DRYCLEANING PRODUCTS,<br>INC. (improperly named UNION<br>DRYCLEANING PRODUCTS USA) | Tito Mazzetta, Esq.<br><br>Telephone: (404) 521-1808<br><br>Attorneys for Defendant:<br>FIRBIMATIC |
| Attorneys for Defendant:<br>BERGPARMA OF AMERICA, LLC | Attorneys for Defendant:<br>AMA UNIVERSAL |
| Attorneys for Defendant:<br>FLUORMATIC MIDWEST LTD | Thomas H. Clarke, Jr.<br>**Ropers Majeski Kohn Bentley**<br>201 Spear Street, Suite 1000<br>San Francisco, CA 94105<br><br>Telephone: (415) 543-4800<br><br>Attorneys for Defendant: FORENTA LP |
| Attorneys for Defendant:<br>WESTERN MULTITEX CORP. | Attorneys for Defendant:<br>MARVEL MANUFACTURING COMPANY |

| | |
|---|---|
| Stephen A. Spataro, Esq.<br>**Spataro & Associates**<br>100 Wilshire Blvd., Suite 200<br>Santa Monica, CA 90401-1111<br><br>Telephone: (310) 917-4557<br><br>Attorneys for Defendant:<br>RENZACCI OF AMERICA, INC. | Alexander M. Weyand, Esq.<br>**Peterson Weyand & Martin**<br>49 Stevenson Street, Suite 1075<br>San Francisco, CA 94105<br><br>Telephone: (415) 399-2900<br><br>Attorneys for Defendant:<br>SAIL STAR USA |
| Alexander M. Weyand, Esq.<br>**Peterson Weyand & Martin**<br>49 Stevenson Street, Suite 1075<br>San Francisco, CA 94105<br><br>Telephone: (415) 399-2900<br><br>Attorneys for Defendant:<br>VIC MANUFACTURING CORPORATION | A. Raymond Hamrick, III, Esq.<br>**Hamrick & Evans, LLP**<br>10 Universal City Plaza, Suite 2200<br>Universal City, CA 91608-1009<br><br>Telephone: (818) 763-5292<br><br>Attorneys for Defendant:<br>M.B.L., INC. |
| Roland E. Thé, Esq.<br>**Brydon Hugo & Parker LLP**<br>135 Main Street, 20th Floor<br>San Francisco, CA 94105-1812<br><br>Telephone: (415) 808-0300<br><br>Attorneys for Defendant:<br>GOSS-JEWETT CO. OF NORTHERN<br>CALIFORNIA | Jan A. Greben, Esq.<br>Joseph B. Adams, Esq.<br>**Greben & Associates**<br>1332 Anacapa Street, Suite 110<br>Santa Barbara, CA 93101<br><br>Telephone: (805) 963-9090<br><br>Attorneys for Defendant:<br>MCGREGOR SUPPLY COMPANY |
| Attorneys for Defendant:<br>S.B. SUPPLY INC. | Attorneys for Defendant:<br>WASHEX MACHINERY OF CALIFORNIA,<br>INC. |
| David A. Melton, Esq.<br>**Porter Scott**<br>350 University Ave., Suite 200<br>Sacramento, CA 95825<br><br>Telephone: (916) 929-1481 ext. 308<br><br>Attorneys for Defendant:<br>WORKROOM SUPPLY, INC. | Attorneys for Defendant:<br>TAYLOR HOUSEMAN, INC. |

| | |
|---|---|
| Patrick M. Maloney, Esq.<br>**Baute & Tidus LLP**<br>777 S Figueroa St #4900<br>Los Angeles, CA  90017<br><br>Telephone:  (213) 630-5000<br><br>Attorneys for Defendant:<br>UNITED FABRICARE SUPPLY, INC. | Probal G. Young, Esq.<br>**Archer Norris**<br>2033 N Main Street, Suite 800<br>Walnut Creek, CA  94596<br><br>Telephone:  (925) 930-6600<br><br>Attorneys for Defendant:<br>ECHCO SALES INC. |
| Attorneys for Defendant:<br>MW EQUIPMENT | Attorneys for Defendant:<br>ARTHUR KAJIWARA EQUIPMENT CO.,<br>INC. |
| Stephen A. Spataro, Esq.<br>**Spataro & Associates**<br>100 Wilshire Blvd., Suite 200<br>Santa Monica, CA  90401-1111<br><br>Telephone:  (310) 917-4557<br><br>Attorneys for Defendant:<br>KELLEHER EQUIPMENT SUPPLY, INC. | Attorneys for Defendant:<br>US MACHINERY & ENGINEERING CO.,<br>INC. |
| Mark B. Gilmartin, Esq.<br>Law Offices of Mark B. Gilmartin<br>1534 17th Street, Suite 1703<br>Santa Monica, CA 90404-3452<br><br>Telephone:  (310) 310-2644<br>Attorneys for Defendant:<br>WYATT-BENNETT | Thomas W. Hood, Esq.<br>**Hood & Reed**<br>18141 Beach Blvd., Suite 390<br>Huntington Beach, CA  92648<br><br>Telephone:  (714) 842-6837<br><br>Attorneys for Defendant:<br>CORBETT EQUIPMENT |
| Attorneys for Defendant:<br>FULLER SUPPLY COMPANY | Attorneys for Defendant:<br>SAV-ON- MACHINERY COMPANY, INC. |



1  Gary J. Smith (SB #141393)
2  Ryan R. Tacorda (SB #227070)
   BEVERIDGE & DIAMOND, P.C.
3  456 Montgomery Street, Suite 1800
   San Francisco, CA 94104-1251
4  Telephone: (415) 262-4000
   Facsimile: (415) 262-4040
5
6  Robert Brager
   BEVERIDGE & DIAMOND, P.C.
7  201 North Charles Street, Suite 2210
   Baltimore, MD 21201-4150
8  Telephone: (410) 230-3850
   Facsimile: (410) 230-3868
9
   Attorneys for Defendant
10 PPG INDUSTRIES, INC.

**ORIGINAL
FILED**

JUN - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

11          **UNITED STATES DISTRICT COURT**

12          **NORTHERN DISTRICT OF CALIFORNIA**                **SI**

13
   CALIFORNIA WATER SERVICE          CV **08**
14 COMPANY,
                                                  **3267**
15          Plaintiff,
                                       **NOTICE OF REMOVAL OF ACTION**
16    vs.                             **UNDER 28 U.S.C. § 1441(b) (ORIGINAL
                                       JURISDICTION)**
17 THE DOW CHEMICAL COMPANY; E.I.
   DUPONT DE NEMOURS AND COMPANY;
18 PPG INDUSTRIES, INC.; VULCAN
   MATERIALS COMPANY; OCCIDENTAL
19 CHEMICAL CORPORATION; VALERO
   ENERGY CORPORATION; STAUFFER
20 CHEMICAL COMPANY; BOWE-PERMAC,
   INC., individually and d/b/a BOWE TEXTILE
21 CLEANING, INC.; HOYT CORPORATION;
   R.R. STREET & CO., INC.; MCGRAW
22 EDISON COMPANY, individually and d/b/a
   AMERICAN LAUNDRY MACHINERY, INC.,
23 AMERICAN LAUNDRY MACHINERY, INC.,
   individually and d/b/a AJAX
24 MANUFACTURING DIVISION AND
   MARTIN EQUIPMENT, WHITE
25 CONSOLIDATED INDUSTRIES, INC.,
   individually and d/b/a WASHEX
26 MACHINERY DIVISION, ELECTROLUX
   CORPORATION, LINDUS S.R.L., individually
27 and d/b/a LINDUS WEST, COLUMBIA
   DRYCLEANING MACHINES, a/k/a
28 COLUMBIA/ILSA MACHINES CORP.,
   REALSTAR, INC., individually and d/b/a

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1   REALSTAR USA, UNION DRYCLEANING
    PRODUCTS USA, FIRBIMATIC,
2   BERGPARMA OF AMERICA, LLC, AMA
    UNIVERSAL, FLUORMATIC MIDWEST
3   LTD., FORENTA LP, WESTERN MULTITEX
    CORP., MARVEL MANUFACTURING,
4   RENZACCI OF AMERICA, SAIL STAR USA,
    VIC MANUFACTURING CORPORATION,
5   M.B.L., INC., GOSS-JEWETT CO. OF
    NORTHERN CALIFORNIA, MCGREGOR
6   SUPPLY COMPANY, S.B. SUPPLY INC.,
    WASHEX MACHINERY OF CALIFORNIA,
7   INC., WORKROOM SUPPLY, INC., TAYLOR
    HOUSEMAN, INC., UNITED FABRICARE
8   SUPPLY, INC., ECHCO SALES INC., MW
    EQUIPMENT, ARTHUR KAJIWARA
9   EQUIPMENT CO., INC., KELLEHER
    EQUIPMENT SUPPLY, INC., US
10  MACHINERY & ENGINEERING CO., INC.,
    WYATT-BENNETT, CORBETT
11  EQUIPMENT, FULLER SUPPLY
    COMPANY, SAV-ON MACHINERY
12  COMPANY, INC. and DOES 1 through 750,
    INCLUSIVE,
13
                Defendants.
14

15  _____

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>TABLE OF CONTENTS</u>

I.      JURISDICTION ...................................................................................................3

II.     PLAINTIFF'S COMPLAINT ASSERTS AN EXCLUSIVELY FEDERAL CAUSE
        OF ACTION. ........................................................................................................3

III.    THIS COURT HOLDS EXCLUSIVE ORIGINAL JURISDICTION OVER
        PLAINTIFF'S CLAIM STyled as a claim FOR EQUITABLE INDEMNITY........................4

        A.      Plaintiff Has Pleaded a Federal Claim In Its Complaint................................5

        B.      Plaintiff's State-Law Claim for Equitable Indemnity Poses a Challenge to the
                Contribution and Settlement Schemes Underlying CERCLA Cleanups. ....................7

IV.     THIS COURT MAY ASSERT SUPPLEMENTAL JURISDICTION OVER THE
        REMAINING STATE LAW CLAIMS. ....................................................................8

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

4
*ARCO Env't Remediation, L.L.C. v. Dep't. Health & Envtl. Quality*
     213 F.3d 1108, 1114-15 (9th Cir. 2000) ............................................................... 7

5
*Bedford Affiliates v. Sills*
     156 F.3d 416, 427 (2d Cir. 1998) ..................................................................... 5, 8

6

7
*California Department of Toxic Substance Control v. City of Chico, California, et al.*
     Case No. CIV S-02-0442 LKK DAD (E.D.CA) ....................................................... 4

8
*Ethridge v. Harbor House Rest.*
     861 F.2d 1389 (9th Cir. 1988) ........................................................................... 2

9

10
*Fireman's Fund Ins. Co. v. City of Lodi*
     296 F.Supp. 2d 1197 (E.D. Cal. 2003) ................................................................. 7

11
*In re Reading, Co.*
     (3d Cir. 1996) 115 F.3d 1111, 1117, 1119 ........................................................ 5, 8

12

13
*Inman Constr. Corp. v. S. Pilot Ins. Co.*
     2007 U.S. Dist. LEXIS 41239 (N.D. Miss. June 5, 2007) ........................................ 2

14
*Lehman Bros., Inc. v. City of Lodi*
     333 F. Supp. 2d 895, 906 n.19 (E.D. Cal. 2004) .................................................... 8

15

16
*Lippitt v. Raymond James Fin. Servs., Inc.*
     340 F.3d 1033, 1041 (9th Cir. 2003) ................................................................ 5, 7

17
*Morton Internat. v. AE Staley Mfg. Co.*
     (3d Cir. 2003) 343 F.3d 669, 685 ...................................................................... 5

18

19
*New York v. Shore Realty Corp.*
     (2d Cir.1985) 759 F.2d 1032, 1041 ..................................................................... 5

20
*Parker v. State of Cal. Dep't of Transp.*
     1999 U.S. Dist. LEXIS 2260 at *4 (N.D. Cal. Mar. 1, 1999) .................................... 2

21

22
*Piccolini v. Simon's Wrecking*
     686 F. Supp. 1063, 1068-69 (M.D. Pa. 1988) ........................................................ 8

23
*Rains v. Criterion Sys., Inc.*
     80 F.3d 339, 343-44 (9th Cir. 1996) ................................................................... 7

24

25
*Raytheon Constructors, Inc. v. Asarco Inc.*
     2000 U.S. Dist. LEXIS 6069 at *85 (D.Colo. Mar. 31, 2000) .................................... 5

26
*Salveson v. W. States Bankcard Ass'n.*
     731 F.2d 1423, 1429 (9th Cir. 1984) ................................................................... 2

27

28

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1

**Statutes**

2    28 U.S.C. § 1367(a) ................................................................................................ 8

3    28 U.S.C. § 1441(a) ................................................................................................ 4

4    28 U.S.C. § 1441(b) ............................................................................................ 1, 3

5    28 U.S.C. § 1446(a) ................................................................................................ 1

6    28 U.S.C. § 1446(b) ................................................................................................ 1

7    28 U.S.C. § 1446(d) ................................................................................................ 3

8    42 U.S.C. §§ 9601 *et seq.* .................................................................................... 3

9    42 U.S.C. § 9613(b) ......................................................................................... 3, 4, 5

10   42 U.S.C. § 9613(f)(1) ............................................................................................ 6

11   42 U.S.C. § 9613(f)(3)(B) ....................................................................................... 6

12   42 U.S.C. §§ 9613(f)(1), (3) ................................................................................... 4

13   42 U.S.C. § 9607(a) ................................................................................................ 6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1    **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

2         PLEASE TAKE NOTICE that defendant PPG Industries, Inc. ("PPG") and the defendants

3    joining in this Notice (collectively, "Defendants") hereby submit this Notice of Removal ("Notice")

4    to move to this Court the state action described below.

5         1.    On May 22, 2008, Plaintiff California Water Service Company ("Plaintiff")

6    commenced an action in the Superior Court of the State of California in and for the County of San

7    Mateo, entitled *California Water Service Company v. The Dow Chemical Company,* as Case Number

8    CIV 473093 (referred to as the "State Action"). Copies of the Complaint and Summons are attached

9    hereto as Exhibits A and B, respectively. Additionally, PPG has also been served with the Civil

10   Case Cover Sheet which includes a Certificate Re Complex Case Designation, collectively attached

11   as Exhibit C; the Notice of Complex Case Status Conference, attached as Exhibit D; and the Notice

12   of Case Management Conference, attached as Exhibit E.

13        2.    PPG was served with the Complaint on June 6, 2008. This Notice is timely under 28

14   U.S.C. § 1446(b).

15        3.    Pursuant to 28 U.S.C. § 1446(a), this Notice is properly filed in the United States

16   District Court for the Northern District of California, San Francisco Division, which is the district

17   court and division within which the state court action was filed.

18        4.    Defendants identified in the Complaint as American Laundry Machinery, Inc. d/b/a

19   Ajax Manufacturing Division and Martin Equipment; Arthur Kajiwara Equipment Co., Inc.; Bowe-

20   Permac Inc. d/b/a Bowe Textile Cleaning; Columbia Drycleaning Machines, aka Columbia/ILSA

21   Machines Corp.; Corbett Equipment; The Dow Chemical Company; E.I. Dupont De Nemours and

22   Company; Forenta LP; Hoyt Corporation; Kelleher Equipment Supply, Inc.; McGregor Supply

23   Company; M.B.L., Inc.; Mondial Drycleaning Products, Inc. (improperly named Union Drycleaning

24   Products U.S.A.); Occidental Chemical Corporation; Renzacci of America, Inc.; R.R. Street & Co.,

25   Inc.; Sail Star USA; S.B. Supply, Inc.; United Fabricare Supply, Inc.; Valero Energy Corporation;

26   Vic Manufacturing Company; Vulcan Materials Company; Washex Machinery of California, which

27   is a distinct corporate entity from White Consolidated Industries, Inc.; Workroom Supply, Inc.; and

28

-1-

1  Wyatt Bennett have joined in this Notice or otherwise have consented to this Notice. *See*

2  Declaration of Gary Smith ("Smith Decl."), ¶ 5.

3        5.    On information and belief, Defendants identified in the Complaint as Echco Sales

4  Inc.; Electrolux Corporation, which has acquired named defendant White Consolidated Industries,

5  Inc.; Firbimatic; Fuller Supply Company; Goss-Jewett Co. of Northern California; Lindus S.R.L.

6  d/b/a Lindus West; McGraw Edison Company d/b/a American Laundry Machinery, Inc. which has

7  been succeeded by Cooper Industries, LLC; RealStar Inc. dba Real Star USA; U.S. Machinery &

8  Engineering; and Western Multitex were not served or were not served properly in the state court

9  action and have no obligation to join this Notice. *Salveson v. W. States Bankcard Ass'n.*, 731 F.2d

10  1423, 1429 (9th Cir. 1984), *overruled on other grounds by Ethridge v. Harbor House Rest.*, 861 F.2d

11  1389 (9th Cir. 1988)  (summoned defendants may remove without joining unserved defendants);

12  *Parker v. State of Cal. Dep't of Transp.*, 1999 U.S. Dist. LEXIS 2260 at \*4 (N.D. Cal. Mar. 1, 1999).

13  *See* Smith Decl. ¶¶ 7; Declaration of Sarah F. Peterman ("Peterman Decl."), ¶¶ 4-6; Stephen J. Valen

14  Declaration ("Valen Decl."), ¶ 3; Declaration of Maureen L. King ("King Decl."), ¶¶ 3, 5;

15  Declaration of Ryan Tacorda ("Tacorda Decl."), ¶ 5.  Further, defendants Echco Sales Inc.;

16  Electrolux Corporation; Firbimatic; Goss-Jewett Co. of Northern California; and RealStar Inc. dba

17  Real Star USA have advised that they would consent to removal if they were to be served.  Smith

18  Decl. ¶¶ 7- 8; Valen Decl. ¶ 3; King Decl. ¶ 3;.

19        6.    On information and belief, Defendants identified in the Complaint as AMA

20  Universal; Bergparma of America, LLC; Fluormatic Midwest, Ltd.; Marvel Manufacturing

21  Company; Stauffer Chemical Company; and Sav-On Machinery are dissolved corporations or

22  otherwise no longer in business and are therefore nominal defendants which do not need to join this

23  Notice. *See Inman Constr. Corp. v. S. Pilot Ins. Co.*, 2007 U.S. Dist. LEXIS 41239 (N.D. Miss. June

24  5, 2007) ("Decisions from numerous jurisdictions...recognize that parties which are in liquidation

25  and have no assets when litigation against them is commenced are nominal parties which need not

26  join in a notice of removal filed by another defendant.").  Smith Decl. ¶ 6; Peterman Decl. ¶ 3; King

27  Decl. ¶¶ 4, 6; Tacorda Decl. ¶¶ 3-4.

28

-2-

1    7.    Defendant MW Equipment was contacted about joining or consenting to this Notice

2    daily from June 30, 2008 - July 3, 2008, and again on July 7, 2008.  Mr. Wee, who described himself

3    as the owner of the company, declined to provide the name of MW Equipment's attorney upon

4    Defendants' repeated requests.  On July 7, 2008, Mr. Wee informed Defendants that he believed

5    MW Equipment was improperly named in the above-referenced action.  He further stated that he did

6    not want to be involved in the case and that his attorney intended to write to Plaintiff to seek

7    dismissal.  *See* Tacorda Decl. ¶ 6.

8    8.    Pursuant to the requirements of 28 U.S.C. § 1446(d), Defendants will promptly file a

9    copy of this Notice with the Superior Court of the State of California in and for the County of San

10   Mateo.

11   9.    Pursuant to 28 U.S.C. § 1446(d), Defendants will also notify Plaintiff of this Notice in

12   writing.

13   **I.    JURISDICTION**

14   This action is a civil action over which this Court has exclusive original jurisdiction under 42

15   U.S.C. § 9613(b), and is one which may be removed to this Court by Defendants pursuant to 28

16   U.S.C. § 1441(b).

17   **II.   PLAINTIFF'S COMPLAINT ASSERTS AN EXCLUSIVELY FEDERAL CAUSE OF ACTION.**

18

19   Plaintiff's Complaint asserts as its eighth cause of action a claim for cost recovery or

20   contribution under CERCLA.[1]  Plaintiff labels the eighth cause of action a claim for "equitable

21   indemnity," but the factual allegations plainly set forth a claim under CERCLA even though the

22   statute itself is not cited.  Federal courts have exclusive original jurisdiction over CERCLA claims.

     42 U.S.C. § 9613(b).

23   In the eighth cause of action, Plaintiff seeks recovery of the costs it has incurred or will incur

24   pursuant to its settlement of a CERCLA lawsuit brought against Plaintiff in the United States District

25   Court for the Eastern District of California by the California Department of Toxic Substance Control

26   ("DTSC") for PCE contamination found in Chico, California, *California Department of Toxic*

27

28   [1] CERCLA is the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*

-3-

1 | *Substance Control v. City of Chico, California, et al.*, Case No. CIV S-02-0442 LKK DAD

2 | (E.D.CA) (referred to as the "DTSC CERCLA Litigation"). Complaint ¶¶ 159-60. Plaintiff alleges

3 | that Defendants' actions were the direct and proximate cause of the PCE contamination that was the

4 | cause of the damages at issue in the DTSC CERCLA Litigation. *Id.* ¶¶ 161-62. Plaintiff seeks

5 | judgment against the Defendants "in an amount proportional to their responsibility for such

6 | damages.

7 | In its amended complaint in the DTSC CERCLA Litigation (incorporated by reference into

8 | the Complaint as though fully set forth at length therein, *Id.* ¶ 159, with copy attached to Smith Decl.

9 | as Exhibit A), DTSC sought recovery against Plaintiff pursuant to CERCLA and various California

10 | state law and common law theories for costs related to DTSC's response to the release and

11 | threatened release of hazardous substances at the Chico Central Plume. As Plaintiff notes in the

12 | Complaint, it entered into a settlement with DTSC following extensive litigation and vigorous

13 | negotiations. *Id.* ¶ 160. The settlement obliged Plaintiff to incur significant costs in designing and

14 | implementing measures to remediate PCE contamination and in undertaking water treatment

15 | measures. *Id.* The settlement was approved by Judge Lawrence K. Karlton of the United States

16 | District Court for the Eastern District of California on May 23, 2007. A copy of the settlement is

17 | attached as Exhibit B to Smith Decl.

18 | In seeking to recover under the guise of a state law equitable indemnity claim the costs it has

19 | incurred and will incur pursuant to the settlement of the DTSC CERCLA Litigation, Plaintiff is

20 | pursuing the right to contribution expressly provided to settling parties in CERCLA

21 | Section 113(f)(1), (3), 42 U.S.C. §§ 9613(f)(1), (3). Federal courts have exclusive original

22 | jurisdiction over all controversies arising under CERCLA, including a claim seeking contribution for

23 | a CERCLA settlement, such as this one. 42 U.S.C. § 9613(b). Accordingly, this action is properly

24 | removable.

25 | **III.    THIS COURT HOLDS EXCLUSIVE ORIGINAL JURISDICTION OVER
26 | PLAINTIFF'S CLAIM STYLED AS A CLAIM FOR EQUITABLE INDEMNITY.**

27 | A defendant may remove to federal court "any civil action brought in a State court of which

the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). This Court

28 | has exclusive original jurisdiction over this case because it arises under CERCLA. 42 U.S.C. §

-4-

9613(b).  A claim implicates a federal question when the claim is an "*inherently federal claim articulated in state-law terms*."  *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (emphasis added).

### A.     Plaintiff Has Pleaded a Federal Claim In Its Complaint.

Although the eighth cause of action does not explicitly invoke federal law, it seeks a reallocation of response costs that Plaintiff **can obtain only through CERCLA** and therefore, Plaintiff's eighth cause of action **must** be a CERCLA claim for contribution.  Through CERCLA, Congress created a scheme for contribution and settlement to resolve expeditiously environmental claims like the ones asserted by Plaintiff.  *See Bedford Affiliates v. Sills*, 156 F.3d 416, 427 (2d Cir. 1998).  Accordingly, courts have regularly found that CERCLA preempts state restitution and indemnification claims; otherwise they would interfere with CERCLA's settlement scheme.  *See, e.g., In re Reading, Co.*  (3d Cir. 1996) 115 F.3d 1111, 1117 (permitting independent common law remedies would create a path around the statutory settlement scheme aimed at the efficient resolution of environmental disputes, raising an obstacle to the intent of Congress); *see also New York v. Shore Realty Corp.* (2d Cir.1985) 759 F.2d 1032, 1041; *Morton Internat. v. AE Staley Mfg. Co.* (3d Cir. 2003) 343 F.3d 669, 685; *Bedford Affiliates*, 156 F.3d at 426-27 (common law restitution and indemnification actions in state court "would bypass [CERCLA's] carefully crafted settlement system, creating an actual conflict therefore between CERCLA and state common law causes of action."); *Raytheon Constructors, Inc. v. Asarco Inc.*, 2000 U.S. Dist. LEXIS 6069 at *85 (D.Colo. Mar. 31, 2000) (noting that the consensus is that CERCLA preempts state law claims for contribution).

These cases make clear that Plaintiff's exclusive claim to reallocate the settlement costs of its CERCLA litigation is as a CERCLA contribution claim — it cannot proceed under state law.

Moreover, Plaintiff's equitable indemnity claim seeks precisely the relief afforded to Plaintiff under CERCLA.  As the Complaint alleges, Plaintiff was a defendant in a cost recovery action brought by DTSC pursuant to CERCLA in the Eastern District of California.  Complaint ¶ 159.  In that litigation, DTSC sought recovery for costs incurred in responding to a release of hazardous substances at the Chico Central Plume.  *Id.*  Plaintiff entered into a settlement with DTSC which

1   obligated Plaintiff to incur significant costs to remediate the PCE contamination at the site. *Id.* ¶

2   160. Plaintiff alleges that defendants are responsible for the contamination at issue in the CERCLA

3   action. *Id.* ¶ 161. Recovery of the costs it is obligated to incur pursuant to the CERCLA settlement

4   is the entire basis for Plaintiff's present indemnity claim.

5        The settlement Plaintiff reached with DTSC for CERCLA claims, which was judicially

6   approved by the district court for its consistency with CERCLA's objectives, has given Plaintiff both

7   the grounds and the authority to seek relief from Defendants. CERCLA Section 113(f)(1) provides:

8             Any person may seek contribution from any other person who is liable
              or potentially liable under section 9607(a) of this title, during or
9             following any civil action under section 9606 of this title or under
              section 9607(a) of this title. Such claims shall be brought in
10            accordance with this section and the Federal Rules of Civil Procedure,
              and shall be governed by Federal law. In resolving contribution
11            claims, the court may allocate response costs among liable parties
              using such equitable factors as the court determines are appropriate.
12
    42 U.S.C. § 9613(f)(1). Further, CERCLA Section 113(f)(3)(B) provides: "A person who has
13
    resolved its liability to the United States or a State for some or all of a response action or for some or
14
    all of the costs of such an action in an administrative or judicially approved settlement may seek
15
    contribution from any person who is not a party to a settlement referred to in paragraph (2)."  42
16
    U.S.C. § 9613(f)(3)(B).
17
         All of the elements of a CERCLA contribution claim are pled in Plaintiff's Complaint and
18
    the incorporated CERCLA complaint. The action follows an action under CERCLA Section 9607(a)
19
    and Plaintiff is a person who has resolved its liability to the State for the response costs at the Chico
20
    Central Plume in a judicially approved settlement. Complaint ¶¶ 159-60. Defendants are alleged to
21
    have caused the release at issue in the CERCLA litigation and are therefore alleged to be liable or
22
    potentially liable under CERCLA Section 9607(a). *Id.* ¶ 161. Plaintiff alleges it has incurred
23
    response costs and the court is being asked to allocate response costs among alleged liable parties.
24
    *Id.* ¶ 162. Thus, Plaintiff has expressly pled a CERCLA claim for which federal court is the only
25
    proper jurisdiction.
26
         The CERCLA claim is explicit on the face of the Complaint. Even if it were not, the Court
27
    has the authority to reinterpret the claim as an "artfully pleaded" CERCLA claim for contribution
28
    under the guise of a state-law claim for equitable indemnity. Under the artful pleading doctrine,

-6-

1   Plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to

2   its claim, or by casting in state-law terms a claim that can be made only under federal law. *See*

3   *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 343-44 (9th Cir. 1996). Plaintiff has cast its eighth cause

4   of action for equitable indemnity as a state-law claim, when it is a claim for contribution that can

5   only be made under CERCLA in federal court.

6       Under the artful pleading doctrine, this Court may "delve beyond the face of the state court

7   complaint and find federal question jurisdiction by recharacterizing [Plaintiff's] state-law claim as a

8   federal claim." *Lippitt*, 340 F.3d at 1041 (citations omitted). The Ninth Circuit has noted that "no

9   specific recipe exists for a court to alchemize a state claim into a federal claim — a court must look

10  at a complex group of facts in any particular case to decide whether a claim actually 'arises' under

11  federal law." *Id.* at 1042-43. Here, as described above, Plaintiff's claim for equitable indemnity so

12  completely embodies a CERCLA contribution action that it is an inherently federal claim. *See id.* at

13  1042.

14  **B.    Plaintiff's State-Law Claim for Equitable Indemnity Poses a Challenge to the Contribution and Settlement Schemes Underlying CERCLA Cleanups.**

15      If Plaintiff's equitable indemnity claim is not deemed to be an artfully pleaded CERCLA

16  contribution claim, then it is a challenge to CERCLA's contribution and settlement schemes set forth

17  by Congress and is therefore a federal claim subject to this Court's jurisdiction on that basis. A

18  claim that constitutes a challenge to a federal cleanup is necessarily a federal claim. *ARCO Env't*

19  *Remediation, L.L.C. v. Dep't. Health & Envtl. Quality,* 213 F.3d 1108, 1114-15 (9th Cir. 2000). An

20  action constitutes a challenge to a CERCLA cleanup "if it is related to the goals of the cleanup." *Id.*

21  (citations omitted). Plaintiff's equitable indemnity claim challenges the Chico Central Plume

22  cleanup and the goals of CERCLA cleanups generally.

23      One of the primary goals of CERCLA's statutory right to contribution has been to "maximize

24  the participation of responsible parties"[2] in hazardous waste cleanup and to encourage early cleanup

25  to reduce the time and expense of enforcement litigation. *Fireman's Fund Ins. Co. v. City of Lodi,*

26  296 F.Supp. 2d 1197 (E.D. Cal. 2003). Further, CERCLA's contribution scheme is aimed at

27

28  _____
[2] Defendants dispute that they are responsible parties under CERCLA.

1   expeditiously resolving disputed environmental claims.  *Bedford Affiliates*, 156 F.3d at 427.  The

2   *Bedford Affiliates* court has explained:

3           To accomplish this objective Congress employed incentives for
            potentially responsible parties to settle and strong disincentives for
4           non-settling potentially responsible parties.  Thus, potentially
            responsible parties who choose to settle are granted protection from
5           contribution actions being asserted against them under..., but retain the
            right to bring contribution actions against other non-settling parties....
6           The statute further provides that the amount recoverable from the
            remaining non-settling parties is reduced only by the amount of the
7           settlement....  Hence, potentially responsible parties who choose to
            settle gain protection from contribution, enjoy potentially favorable
8           settlement terms, and retain the ability to seek contribution from other
            defendants.  Those responsible parties who choose not to settle are
9           barred from seeking contribution from the settling parties and thereby
            face potentially disproportionate liability....

10  *See id.*  Allowing Plaintiff's state-law claim would not only frustrate Congress's intent to encourage

11  quick settlements of CERCLA actions, *see In re Reading Co.*, 115 F.3d 1111, 1117, 1119 (3rd Cir.

12  1997), it would also deter potentially responsible parties from entering a settlement given the

13  absence of any contribution protections.  Thus, Plaintiff's state-law claim for equitable indemnity

14  seeks "to do an end run around the contribution protection provided by CERCLA."  *Id.; see also*

15  *Bedford Affiliates,* 156 F.3d at 427 ("[I]t can easily be seen that instituting common law restitution

16  and indemnification actions in state court would bypass [CERCLA's] carefully crafted settlement

17  system.").

18  **IV.    THIS COURT MAY ASSERT SUPPLEMENTAL JURISDICTION OVER THE
19          REMAINING STATE LAW CLAIMS.**

20          Because the eighth cause of action arises under federal law, the Court may properly assert

21  supplemental jurisdiction over Plaintiff's remaining state-law claims.  *See* 28 U.S.C. § 1367(a).  Like

22  the eighth cause of action, Plaintiff's remaining claims in the first through seventh causes of action

23  all concern Defendants' alleged conduct in causing PCE contamination of Plaintiff's Wells.

24  Complaint ¶¶ 95-157.  Because all the claims are related, they form part of the "same controversy"

25  and are subject to this Court's supplemental jurisdiction.  *See Lehman Bros., Inc. v. City of Lodi*, 333

26  F. Supp.2d 895, 906 n.19 (E.D. Cal. 2004) (exercising supplemental jurisdiction over plaintiff's state

27  law claims after finding CERCLA claim was before the court); *Piccolini v. Simon's Wrecking*, 686

28  F.Supp. 1063, 1068-69 (M.D. Pa. 1988) (same).

-8-

1        WHEREFORE, Defendants hereby remove this action from the Superior Court of the State

2  of California in and for the County of San Mateo to the United States District Court for the Northern

3  District of California.

4

5

6  Dated:   **7-7-08**  .                    BEVERIDGE & DIAMOND, P.C.

7                                        By:

8                                            Gary J. Smith
                                            Ryan R. Tacorda

9                                        Attorneys for Defendant
                                        PPG INDUSTRIES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

# EXHIBIT A

1  Victor M. Sher, SBN 96197
   Todd E. Robins, SBN 191853
2  Marnie E. Riddle, SBN 233732
   SHER LEFF LLP
3  450 Mission Street, Suite 400
   San Francisco, CA 94105
4  Telephone: (415) 348-8300
   Facsimile: (415) 348-8333
5
   Scott Summy, *Admitted in Texas, SBN 19507500*
6  Cary McDougal, *Admitted in Texas, SBN 13569600*
   Carla Burke, *Admitted in Texas, SBN 24012490*
7  Celeste Evangelisti, SBN 225232
   BARON & BUDD, P.C.
8  3102 Oak Lawn Avenue, Suite 1100
   Dallas, TX 75219-4281
9  Telephone: (214) 523-6267
   Facsimile: (214) 520-1181
10
   Attorneys for Plaintiff California Water Service Company
11

ENDORSED FILED
SAN MATEO COUNTY

MAY 2 2 2008

Clerk of the Superior Court
By _____
G. Jackson
DEPUTY CLERK

12        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

13           IN AND FOR THE COUNTY OF SAN MATEO

14

15  CALIFORNIA WATER SERVICE COMPANY,                )   CASE No. CIV 4 7 3 0 9 3
                                                     )
16                      Plaintiff,                    )   Date Filed: May 22, 2008
                                                     )
17        vs.                                         )   COMPLAINT FOR DAMAGES
                                                     )   AND OTHER RELIEF:
18  THE DOW CHEMICAL COMPANY; E.I. DUPONT DE          )   (1) STRICT PROD. LIABILITY
    NEMOURS AND COMPANY; PPG INDUSTRIES,              )       (DESIGN DEFECT);
19  INC., VULCAN MATERIALS COMPANY,                   )   (2) STRICT PROD. LIABILITY
    OCCIDENTAL CHEMICAL CORPORATION,                  )       (FAILURE TO WARN)
20  VALERO ENERGY CORPORATION, STAUFFER               )   (3) NUISANCE;
    CHEMICAL COMPANY, BOWE-PERMAC, INC.,              )   (4) TRESPASS;
21  individually and d/b/a BOWE TEXTILE CLEANING,     )   (5) NEGLIGENCE;
    INC., HOYT CORPORATION, R.R. STREET & CO.,        )   (6) NEGLIGENCE *PER SE;*
22  INC., MCGRAW EDISON COMPANY, individually and     )   (7) CIVIL CODE; and
    d/b/a AMERICAN LAUNDRY MACHINERY, INC.,           )   (8) EQUITABLE INDEMNITY.
23  AMERICAN LAUNDRY MACHINERY, INC.,                 )
    individually and d/b/a AJAX MANUFACTURING         )   **JURY TRIAL DEMANDED**
24  DIVISION AND MARTIN EQUIPMENT, WHITE              )
    CONSOLIDATED INDUSTRIES, INC., individually and   )
25  d/b/a WASHEX MACHINERY DIVISION,                  )
    ELECTROLUX CORPORATION, LINDUS S.R.L.,            )
26  individually and d/b/a LINDUS WEST, COLUMBIA      )
    DRYCLEANING MACHINES, a/k/a COLUMBIA/ILSA         )
27  MACHINES CORP., REALSTAR, INC., individually      )
    and d/b/a REALSTAR USA, UNION DRYCLEANING         )
28  PRODUCTS USA, FIRBIMATIC, BERGPARMA OF            )
    AMERICA, LLC, AMA UNIVERSAL, FLUORMATIC           )
    MIDWEST LTD., FORENTA LP, WESTERN                 )

                                         -1-

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1   MULTITEX CORP., MARVEL MANUFACTURING,
    RENZACCI OF AMERICA, SAIL STAR USA, VIC
2   MANUFACTURING CORPORATION, M.B.L., INC.,
    GOSS-JEWETT CO. OF NORTHERN CALIFORNIA,
3   MCGREGOR SUPPLY COMPANY, S.B. SUPPLY
    INC., WASHEX MACHINERY OF CALIFORNIA,
4   INC., WORKROOM SUPPLY, INC., TAYLOR
    HOUSEMAN, INC., UNITED FABRICARE SUPPLY,
5   INC., ECHCO SALES INC., MW EQUIPMENT,
    ARTHUR KAJIWARA EQUIPMENT CO., INC.,
6   KELLEHER EQUIPMENT SUPPLY, INC., US
    MACHINERY & ENGINEERING CO., INC., WYATT-
7   BENNETT, CORBETT EQUIPMENT, FULLER
    SUPPLY COMPANY, SAV-ON MACHINERY
8   COMPANY, INC. and DOES 1 through 750,
    INCLUSIVE,
9
                                    Defendants.
10
_____
11

12      Plaintiff California Water Service Company hereby alleges as follows, based on information and

13  belief and investigation of counsel:

14          I.   SUMMARY OF THE CASE

15          1.     Plaintiff CALIFORNIA WATER SERVICE COMPANY ("Plaintiff") owns

16  and/or operates public drinking water systems, and supplies drinking water to hundreds of

17  thousands of residents and businesses, in various locations throughout the State of California.

18  However, the toxic chemical perchloroethylene and its degradation products ("PCE") are

19  contaminating and damaging Plaintiff's drinking water supply wells in dispersed locations

20  throughout California.

21          2.     Plaintiff seeks to recover by this action the substantial costs necessary to protect

22  the public and restore its damaged drinking water supply wells that have been, and continue to

23  be, contaminated with PCE.

24          3.     PCE is a highly toxic substance that is an ingredient, component, constituent,

25  contaminant and/or impurity in certain commercial products. PCE degrades in the environment

26  to trichloroethylene ("TCE"), which is also a highly toxic substance. PCE, and/or products

27  containing PCE, were used, released, discharged and/or disposed of in the vicinity of certain

28  drinking water production wells owned and/or operated by Plaintiff ("Plaintiff's Wells"). PCE

-2-

1  has migrated through the subsurface and into the groundwater, and now contaminates the

2  drinking water pumped from Plaintiff's Wells.

3     4.    The defendants in this action are the manufacturers, distributors and retailers of

4  the PCE and/or PCE-containing products that caused the contamination of Plaintiff's Wells, as

5  well as the manufacturers, distributors and retailers of equipment intended for use with PCE

6  and/or PCE-containing products (collectively, "Defendants").  Among other things, the

7  Defendants knowingly and willfully manufactured, promoted, and sold PCE and PCE-containing

8  products, as well as equipment intended for use with PCE and/or PCE-containing products, when

9  they knew or reasonably should have known that PCE would thereby reach groundwater, pollute

10  drinking water supplies, render drinking water unusable and unsafe, and threaten the public

11  health and welfare, as it has done with respect to Plaintiff's Wells.

12     5.    Plaintiff files this lawsuit to recover compensatory and all other damages,

13  including but not limited to all necessary funds to reimburse Plaintiff for the costs of designing,

14  constructing, installing, operating and maintaining the treatment facilities and equipment

15  required to comply with state and federal safe drinking water laws and to remove PCE from the

16  drinking water it supplies to the public and/or for the costs of securing alternative sources of

17  water as a result of the PCE contamination, and to ensure that the responsible parties bear such

18  expense, rather than Plaintiff and its customers and ratepayers.

19     **II.  THE PARTIES**

20     6.    Plaintiff California Water Services Company is a California public utility water

21  corporation incorporated under the laws of the State of California with its principal place of

22  business in San Jose, California.  Plaintiff owns and operates public drinking water systems that

23  provide potable drinking water to residents and businesses in various locations throughout

24  California, including but not limited to South San Francisco, Bakersfield, Bakersfield-North

25  Garden, East Los Angeles, Chico, Livermore, Lake Land, Oroville, Salinas, Stockton and

26  Visalia.  Each of these systems is subject to the rules and regulations of the California Public

27  Utilities Commission, and with respect to each such system, Plaintiff has a certificate of

28  convenience and necessity pursuant to which Plaintiff has a duty to provide water service.  Each

-3-

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1  of these water systems includes, among other elements, drinking water production wells that

2  draw from groundwater aquifers and associated pumping, storage, treatment and distribution

3  facilities and equipment, all of which will be referred to collectively in this Complaint as "Cal

4  Water Wells." Among other things, the Cal Water Wells include the right of Plaintiff to

5  appropriate and use groundwater for drinking water supplies from such Wells. Plaintiff has

6  significant property interests in the waters it appropriates and uses from the Cal Water Wells, and

7  also has significant property interests in the groundwaters and aquifers that supply the Cal Water

8  Wells. The past, present and continuing contamination of such waters by PCE constitutes injury

9  to such waters for which Plaintiff is entitled to, and hereby does, seek damages and other

10  appropriate relief.

11        7.      Plaintiff also provides non-regulated contract utility services to other entities in

12  California. Pursuant to Domestic Water Operations Agreements ("Operations Agreements")

13  between Plaintiff and such other entities, Plaintiff operates wells belonging to those entities and

14  provides certain other utility services to such entities and their water users. Under the Operations

15  Agreements, Plaintiff bears responsibility for incurring certain costs associated with the PCE

16  contamination in wells owned by other entities. The past, present and continuing contamination

17  of these wells by PCE constitutes injury to Plaintiff for which Plaintiff is entitled to, and hereby

18  does, seek damages and other appropriate relief.

19        8.      The Cal Water Wells and wells operated but not owned by Plaintiff, as described

20  in paragraphs 6 and 7 above, are referred to collectively herein as "Plaintiff's Wells."

21        9.      The following defendants designed, manufactured, formulated, marketed,

22  promoted, distributed, and/or sold (directly or indirectly) the PCE and/or products containing

23  PCE that contaminates Plaintiff's Wells and water supply, and/or caused PCE to be applied,

24  discharged, disposed of and/or released so as to contaminate Plaintiff's Wells and water supply.

25        10.     Defendant THE DOW CHEMICAL COMPANY ("Dow") is a Delaware

26  corporation with its principal place of business in Midland, Michigan, which at all times relevant

27  to this action was doing business in California.

28        11.     Defendant E.I. DUPONT DE NEMOURS AND COMPANY ("Dupont") is a

-4-

1   corporation with its principal place of business in Wilmington, Delaware, which at all times

2   relevant to this action was doing business in California.

3        12.   Defendant PPG INDUSTRIES, INC. ("PPG") is a Pennsylvania corporation with

4   its principal place of business in Pittsburgh, Pennsylvania, which at all times relevant to this

5   action was doing business in California.

6        13.   Defendant VULCAN MATERIALS COMPANY ("Vulcan") is a New Jersey

7   corporation with its principal place of business in Homewood, Alabama, which at all times

8   relevant to this action was doing business in California.

9        14.   Defendant OCCIDENTAL CHEMICAL CORPORATION ("Occidental") is a

10  New York corporation with its principal place of business in Dallas, Texas, which at all times

11  relevant to this action was doing business in California.

12       15.   Defendant VALERO ENERGY CORPORATION ("Valero") is a corporation

13  with its principal place of business in San Antonio, Texas, which at all times relevant to this

14  action was doing business in California.

15       16.   Defendant STAUFFER CHEMICAL COMPANY ("Stauffer") is a corporation

16  with its principal place of business in Westport, Connecticut, which at all times relevant to this

17  action was doing business in California.

18       17.   Plaintiff is ignorant of the true names and/or capacities of the defendants sued

19  under the fictitious names of DOES 1 through 250, inclusive.

20       18.   Defendants Dow, Dupont, PPG, Vulcan, Occidental, Valero and Stauffer, and

21  DOES 1 through 250, and each of them: (1) manufactured, distributed, transported, packaged,

22  sold and/or disposed of PCE and products containing PCE, and/or were involved in the

23  manufacture of equipment sold in the State of California specifically designed to store, use,

24  process, and dispose of PCE; (2) engaged in service visits and inspections on the premises of

25  California dry cleaners for the purposes of promoting their dry cleaning solvents and dry

26  cleaning equipment products and testing and inspecting dry cleaner equipment, including

27  witnessing dry cleaner's disposal of PCE products; (3) were legally responsible for and

28  committed each of the tortious and wrongful acts alleged in this complaint; and (4) in doing the

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1    tortious and wrongful acts alleged in the complaint, acted in the capacity of co-conspirator, aider,

2    abettor, joint venturer, partner, agent, alter ego, principal, successor-in-interest, surviving

3    corporation, fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor,

4    patent holder and/or indemnitor of each of the remaining DOE and named defendants.

5        19.    Each of the defendants named in paragraphs 10 through 16 above, and DOE

6    defendants 1 through 250, will be collectively referred to as the "PCE Manufacturer

7    Defendants."

8        20.    Defendant BOWE-PERMAC, INC., individually and d/b/a BOWE TEXTILE

9    CLEANING, GmbH ("Bowe-Permac") is a corporation with its principal place of business in

10   Augsburg, Germany, which at all times relevant to this action was doing business in California.

11       21.    Defendant HOYT CORPORATION ("Hoyt") is a corporation with its principal

12   place of business in Westport, Massachusetts, which at all times relevant to this action was doing

13   business in California.

14       22.    Defendant R.R. STREET & CO., INC. ("Street") is a corporation with its

15   principal place of business in Naperville, Illinois, which at all times relevant to this action was

16   doing business in California.

17       23.    Defendant MCGRAW EDISON COMPANY, individually and d/b/a

18   AMERICAN LAUNDRY MACHINERY, INC. ("McGraw Edison"), is a Delaware corporation

19   with its principal place of business in Houston, Texas, which at all times relevant to this action

20   was doing business in California.

21       24.    Defendant AMERICAN LAUNDRY MACHINERY, INC., individually and d/b/a

22   AJAX MANUFACTURING DIVISION AND MARTIN EQUIPMENT ("ALMI"), is a

23   corporation with its principal place of business in Norwood, Ohio, which at all times relevant to

24   this action was doing business in California.

25       25.    Defendant WHITE CONSOLIDATED INDUSTRIES, INC., individually and

26   d/b/a WASHEX MACHINERY DIVISION ("White") is a corporation with its principal place of

27   business in Cleveland, Ohio, which at all times relevant to this action was doing business in

28   California.

-6-

1     26.    Defendant ELECTROLUX CORPORATION ("Electrolux") is a corporation with

2 its principal place of business in Stockholm, Sweden, which at all times relevant to this action

3 was doing business in California.

4     27.    Defendant LINDUS S.R.L., individually and d/b/a LINDUS WEST ("Lindus"), is

5 a corporation with its principal place of business in Parma, Italy, which at all times relevant to

6 this action was doing business in California.

7     28.    Defendant COLUMBIA DRYCLEANING MACHINES, a/k/a

8 COLUMBIA/ILSA MACHINES CORP. ("Columbia"), is a corporation with its principal place

9 of business in West Babylon, NY, which at all times relevant to this action was doing business in

10 California.

11     29.    Defendant REALSTAR, INC., individually and d/b/a REALSTAR USA

12 ("Realstar") is a corporation with its principal place of business in Bologna, Italy, which at all

13 times relevant to this action was doing business in California.

14     30.    Defendant UNION DRYCLEANING PRODUCTS USA ("Union") is a

15 corporation with its principal place of business in Atlanta, Georgia, which at all times relevant to

16 this action was doing business in California.

17     31.    Defendant FIRBIMATIC ("Firbimatic") is a corporation with its principal place

18 of business in Bologna, Italy, which at all times relevant to this action was doing business in

19 California.

20     32.    Defendant BERGPARMA OF AMERICA, LLC ("Bergparma") is a corporation

21 with its principal place of business in Hammonton, New Jersey, which at all times relevant to

22 this action was doing business in California.

23     33.    Defendant AMA UNIVERSAL ("AMA") is a corporation with its principal place

24 of business in Bologna, Italy, which at all times relevant to this action was doing business in

25 California.

26     34.    Defendant FLUORMATIC MIDWEST LTD. ("Fluormatic") is a corporation with

27 its principal place of business in Villa Park, Illinois, which at all times relevant to this action was

28 doing business in California.

-7-

35. Defendant FORENTA LP ("Forenta") is a corporation with its principal place of business in Morristown, Tennessee, which at all times relevant to this action was doing business in California.

36. Defendant WESTERN MULTITEX CORP. ("Multitex") is a corporation with its principal place of business in Anaheim, California.

37. Defendant MARVEL MANUFACTURING COMPANY ("Marvel") is a corporation with its principal place of business in San Antonio, Texas, which at all times relevant to this action was doing business in California.

38. Defendant RENZACCI OF AMERICA, INC. ("Renzacci") is a corporation with its principal place of business in Long Beach, California.

39. Defendant SAIL STAR USA ("Sail Star") is a corporation with its principal place of business in Charlotte, North Carolina, which at all times relevant to this action was doing business in California.

40. Defendant VIC MANUFACTURING COMPANY ("Vic") is a corporation with its principal place of business in Minneapolis, Minnesota, which at all times relevant to this action was doing business in California.

41. Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names of DOES 251 through 500, inclusive.

42. Bowe-Permac, Hoyt, Street, McGraw Edison, ALMI, White, Electrolux, Lindus, Columbia, Realstar, Union, Firbimatic, Bergparma, AMA, Fluormatic, Forenta, Multitex, Marvel, Renzacci, Sail Star, Vic, and DOES 251 through 500 ("Equipment Manufacturer Defendants"), and each of them: (1) manufactured, distributed, designed, assembled, maintained, supervised, controlled, sold, operated and/or repaired equipment, parts, and appurtenances, including, but not limited to, dry cleaning equipment, in the State of California, specifically designed for the storage, application, and disposal of chlorinated solvents including PCE ("PCE equipment"); (2) engaged in service visits and inspections on the premises of California dry cleaners for the purposes of promoting their dry cleaning solvents and dry cleaning equipment products and testing and inspecting dry cleaner equipment, including witnessing dry cleaner's

- 8 -

1   disposal of PCE products; (3) were legally responsible for and committed each of the tortious

2   and wrongful acts alleged in this Complaint; and (4) in doing the tortious and wrongful acts

3   alleged in the Complaint, acted in the capacity of co-conspirator, aider, abettor, joint venturer,

4   partner agent, principal, successor-in-interest, surviving corporation, fraudulent transferee,

5   fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or indemnitor of

6   each of the remaining DOE and named defendants.

7      43.    In addition to engaging in the distributor activities more fully described in

8   paragraph 45 above, DOES 400 through 500 also engaged in the manufacturing acts and

9   activities fully described in paragraph 18 above, which is incorporated in full herein.

10      44.    Defendant M.B.L., INC. ("MBL") is a California corporation with its principal

11   place of business in Santa Clara, California.

12      45.    Defendant GOSS-JEWETT CO. OF NORTHERN CALIFORNIA ("Goss-

13   Jewett") is a California corporation with its principal place of business in San Mateo, California.

14      46.    Defendant MCGREGOR SUPPLY COMPANY ("McGregor") is an association

15   with its principal place of business in South Gate, California.

16      47.    Defendant S.B. SUPPLY INC. ("SB Supply") is a California corporation with its

17   principal place of business in San Leandro, California.

18      48.    Defendant WASHEX MACHINERY OF CALIFORNIA, INC. ("Washex") is a

19   California corporation with its principal place of business in Burbank, California.

20      49.    Defendant WORKROOM SUPPLY, INC. ("Workroom") is a California

21   corporation with its principal place of business in Sacramento, California.

22      50.    Defendant TAYLOR HOUSEMAN, INC. ("Taylor") is a California corporation

23   with its principal place of business in Pittsburg, California.

24      51.    Defendant UNITED FABRICARE SUPPLY, INC. ("United") is a California

25   corporation with its principal place of business in Compton, California.

26      52.    Defendant ECHCO SALES INC. ("Echco") is a California corporation with its

27   principal place of business in Castro Valley, California.

28      53.    Defendant MW EQUIPMENT ("MW") is a California corporation with its

1  principal place of business in Glendale, California.

2      54.    Defendant ARTHUR KAJIWARA EQUIPMENT CO., INC. ("Kajiwara") is a

3  California corporation with its principal place of business in South El Monte, California.

4      55.    Defendant KELLEHER EQUIPMENT SUPPLY, INC. ("Kelleher") is a

5  California corporation with its principal place of business in Long Beach, California.

6      56.    Defendant US MACHINERY & ENGINEERING CO., INC. ("US Machinery") is

7  a California corporation with its principal place of business in Anaheim, California.

8      57.    Defendant WYATT-BENNETT ("Wyatt-Bennett") is a California corporation

9  with its principal place of business in Van Nuys, California.

10      58.    Defendant CORBETT EQUIPMENT ("Corbett") is a corporation with its

11  principal place of business in Huntington Beach, California.

12      59.    Defendant FULLER SUPPLY COMPANY ("Fuller") is a corporation with its

13  principal place of business in Concord, North Carolina, which at all times relevant to this action

14  was doing business in California.

15      60.    Defendant SAV-ON MACHINERY COMPANY, INC. ("Sav-On") is a

16  corporation with its principal place of business in San Francisco, California

17      61.    Plaintiff is ignorant of the true names and/or capacities of the defendants sued

18  herein under the fictitious names of DOES 501 through 750, inclusive.

19      62.    Defendants MBL, Goss-Jewett, McGregor, SB Supply, Washex, Workroom,

20  Taylor, United, Echco, MW, Kajiwara, Kelleher, US Machinery, Wyatt-Bennett, Corbett, Fuller,

21  Sav-On, and DOES 501 through 750, and each of them ("Distributor Defendants"): (1)

22  purchased PCE from one or more of the PCE Manufacturer Defendants, and then resold PCE in

23  the State of California to California dry cleaners and dry cleaning supply retailers; (2)

24  distributed, manufactured, designed, assembled, maintained, controlled, operated and/or repaired

25  equipment parts, replacement parts, and appurtenances, including, but not limited to, dry

26  cleaning equipment in the State of California specifically designed for the use, application, and

27  disposal of PCE products by California dry cleaners; (3) engaged in service visits and inspections

28  on the premises of California dry cleaners for the purposes of promoting their dry cleaning

-10-

1  solvents and dry cleaning equipment products and testing and inspecting dry cleaner equipment,

2  including witnessing dry cleaner's disposal of PCE products; (4) were legally responsible for and

3  committed each of the tortious and wrongful acts alleged in this Complaint; and (5) in doing the

4  tortious and wrongful acts alleged in the Complaint, acted in the capacity of co-conspirator,

5  aider, abettor, joint venturer, partner, agent, principal, successor-in-interest, surviving

6  corporation, fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor,

7  patent holder and/or indemnitor of each of the remaining DOE and named defendants.

8      63.    In addition to the activities alleged in paragraph 62 above, DOE defendants 650

9  through 750 also engaged in the PCE manufacturing acts and activities alleged in paragraphs 18

10  and 42 above, which are incorporated herein by reference.

11      64.    The defendants named in paragraphs 10 through 61 above and defendant DOES 1

12  through 750, inclusive, are referred to collectively herein as "Defendants."

13      65.    When reference is made in this Complaint to any act or omission of any of the

14  Defendants, it shall be deemed that the officers, directors, agents, employees or representatives

15  of the Defendants committed or authorized such act or omission, or failed to adequately

16  supervise or properly control or direct their employees while engaged in the management,

17  direction, operation or control of the affairs of Defendants, and did so while acting within the

18  scope of their duties, employment or agency.

19              **III.    JURISDICTION AND VENUE**

20      66.    The California Superior Court has jurisdiction over this action pursuant to

21  California Constitution Article VI, Section 10, which grants the Superior Court "original

22  jurisdiction in all cases except those given by statute to other trial courts."  The statutes under

23  which this action is brought do not grant jurisdiction to any other trial court.

24      67.    This Court has jurisdiction over Defendants because, based on information and

25  belief, each is a corporation or other business that has sufficient minimum contacts in California,

26  is a citizen of California, or otherwise intentionally avails itself of the California market either

27  through the distribution or sale of products containing PCE or intended for use with PCE

28  products in the State of California or by having a manufacturing, distribution or other facility

-11-

1   located in California so as to render the exercise of jurisdiction over it by the California courts

2   consistent with traditional notions of fair play and substantial justice.

3       68.    Venue is proper in the San Mateo Superior Court because real property that is the

4   subject of this action, or some part thereof, is situated in the County of San Mateo.

5   **IV.   ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

6   **A.    The Contaminant: PCE**

7       69.    Perchloroethylene ("PCE") is a toxic organic compound.  PCE and

8   trichloroethylene ("TCE") have been used as cleaning solvents.  Dry cleaning machines were

9   designed and developed to use PCE and TCE.  PCE has been, historically, the most widely used

10  dry cleaning chemical in the United States.  PCE is also referred to as PERC, tetrachloroethene,

11  and tetrachloroethylene.  In soil, PCE can be transformed by biological degradation and by

12  reductive dehalogenation into TCE, vinyl chloride, trichloroethane, and trichloroacetic acid.

13      70.    In or about the 1940s, the defendants knew, or should have known, that PCE

14  could be absorbed in the lungs, skin, and gastrointestinal tract, potentially causing severe damage

15  to the liver, kidneys, central nervous system and other toxic effects, and that PCE is a known

16  carcinogen that causes genetic damage.  The defendants also knew, or should have known, that

17  PCE and its degradation products and ingredients create a substantial risk of harm to

18  groundwater and soil.

19      71.    Notwithstanding their knowledge of the health and environmental hazards posed

20  by the use of PCE, Defendants designed, manufactured, marketed, and/or supplied PCE and/or

21  PCE dry-cleaning equipment and/or replacement parts to retail dry cleaners.  The equipment was

22  specifically designed to store, use, process, and dispose of PCE and other chlorinated solvents.

23  Defendants were aware of the typical use, waste, and disposal practices resulting from the

24  intended use of their equipment, including the customary practice of dumping PCE wastewater

25  and muck into the public sewer systems, and the habitual problem with multiple leaks of PCE

26  into the environment during the foreseeable and expected use of PCE equipment.

27      72.    Notwithstanding the fact that Defendants knew, or should have known, of the

28  serious health hazards caused by the use and disposal of PCE and that PCE frequently passes

- 12 -

1  through sewer pipes and concrete floors, thereby contaminating soil and migrating into

2  groundwater, Defendants negligently and carelessly: (1) issued instructions that PCE and PCE

3  products could be discharged into the sewers, permitting PCE to contaminate the sewer system

4  and surrounding property; (2) designed and operated dry cleaning machines, appurtenances, and

5  other types of machinery designed to be used with PCE products to facilitate and promote the

6  disposal of PCE into the sewer system and/or which failed to adequately prevent and/or

7  minimize the loss of PCE into the environment; (3) failed to recall and/or warn the users of the

8  negligently designed PCE equipment or of the dangers of groundwater contamination as a result

9  of PCE disposal in the sewer system; and (4) further failed and refused to issue the appropriate

10  warnings and/or recalls to the users of PCE regarding the proper means of use and disposal of

11  this toxic chemical, notwithstanding the fact that the respective defendant knew the identity of

12  the purchaser of the PCE equipment and/or PCE.

13       73.   In addition, Defendants, and each of them: (a) knew, or should have known, that

14  dry cleaners were foreseeable users of PCE and were using PCE, PCE products, and PCE

15  equipment in a foreseeable manner; (b) knew, or should have known, that PCE is dangerous to

16  the environment and human health if deposited directly on the ground, drained or flushed into the

17  sewer system, or permitted to permeate unprotected concrete floors under dry cleaning

18  equipment; (c) knew, or should have known, that dry cleaners in California foreseeably lacked

19  knowledge of these dangers; (d) failed to warn dry cleaners of these dangers and/or affirmatively

20  instructed them to engage in such dangerous conduct; and (e) as a result, the dry cleaners failed

21  to guard against the alleged contamination which resulted in harm to the plaintiff.

22       74.   In addition, notwithstanding Defendants' knowledge of the severe environmental

23  and health dangers and hazards posed by the use and disposal of PCE on the ground and in

24  sewers, Defendants: (1) instructed, recommended, and directed dry cleaners to dispose of PCE

25  products onto the ground and into the sewers; (2) instructed, recommended, and directed dry

26  cleaners and PCE equipment manufacturers to maintain, operate, design, and construct the dry

27  cleaning equipment so as to drain PCE into the sewer systems and/or operate and maintain the

28  dry cleaning equipment by means of physically disposing PCE waste as part of the operation of

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1    the dry cleaning equipment into the sewers or soil which caused substantial and serious harm to

2    the property of others, including Plaintiff.

3        75.    PCE and PCE products are fungible. In order to compete for larger shares of the

4    PCE market, Defendants, and each of them, would routinely and frequently advise, instruct,

5    assist, recommend and/or participate in the operation, maintenance, inspection and/or testing of

6    dry cleaners in order to promote the purchase of their own brands of PCE products and in order

7    to create brand loyalty. These activities included personal visits by manufacturer and distributor

8    representatives to dry cleaners and written directions, instructions, and brochures on dry cleaning

9    equipment maintenance and operations. Each of the Defendants routinely engaged in these same

10   and similar practices. As part of these activities and practices, Defendants, and each of them,

11   instructed, recommended and/or directed dry cleaners to dispose of PCE on the ground or in the

12   drain, including using the sewer system and dumping PCE on the ground as a method of

13   disposal.

14       76.    Each of the Defendants routinely and frequently sent personal representatives to

15   the premises of dry cleaners and, among other things: (1) regularly observed the dry cleaning

16   operations and practices, including disposal methods, of dry cleaners; (2) issued brochures,

17   newsletters and written and/or verbal directions and/or instructions for the operation,

18   maintenance, and use of dry cleaning equipment and/or dry cleaning solvents including PCE; (3)

19   tested PCE products at the dry cleaners; (4) unloaded and stored PCE at the dry cleaners'

20   premises; and (5) entered into exclusive distribution agreements between the manufacturer and

21   distributor defendants which required the distributors to act as representatives of the respective

22   manufacturers in doing these alleged acts.

23       77.    In addition, (a) Defendants provided direct technical advice and service to dry

24   cleaners relating to waste disposal in which the Defendants advised dry cleaning retailers to

25   dispose of PCE products containing waste and separator water into the sewer or on the ground;

26   (b) California dry cleaners relied upon the advice of the Defendants with regard to the operation

27   of their facilities and with regard to the disposal advice and service; (c) employees and agents of

28   the Defendants had access to the facilities of California dry cleaners; and (d) employees and

1   agents of the Defendants performed tests on wastes containing PCE, and that process resulted in

2   the release of PCE into the sewer and the environment causing the damage alleged herein.

3   Likewise, the PCE Manufacturer Defendants established, staffed, and directly controlled various

4   trade associations and Distributor Defendants to promote the study, distribution, marketing, and

5   sale of PCE. Through these trade associations and the Distributor Defendants, the PCE

6   Manufacturer Defendants exercised complete and direct control over the study, distribution,

7   marketing and sale of PCE, and these trade associations and Distributor Defendants acted as

8   agents of the PCE Manufacturer Defendants in studying, distributing, marketing, and selling

9   PCE. Through these trade associations and Distributor Defendants, the PCE Manufacturer

10   Defendants knew of the toxicity and health and safety hazards associated with PCE and gave

11   instructions and advice regarding the disposal of PCE that caused the release of PCE into the

12   environment. The PCE Manufacturer Defendants organized and created these trade association

13   and Distributor Defendants with the intent of shielding themselves from liability associated with

14   their knowledge and control over PCE products and the associated releases of PCE.

15       78.    Defendants also (1) encouraged dry cleaners to use PCE without adequate

16   warnings, (2) agreed through trade associations to attack what they perceived as threatening

17   regulation of PCE, and (3) promoted the unsafe and improper disposal of PCE in order to reduce

18   the costs of its use and to increase the market share of PCE over other competing dry cleaning

19   substances.

20       79.    As a direct result of the Defendants' acts alleged in this Complaint, Plaintiff's

21   Wells have been contaminated, and will continue to be contaminated, with PCE, creating a

22   public health hazard unless such contamination is abated. As a direct and proximate result

23   thereof, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and abate

24   PCE contamination in its Wells at significant expense, loss and damage. Costs incurred within

25   the three years prior to the filing of this Complaint, or that will be incurred in the future as a

26   result of Defendants' actions, include, but are not limited to: loss of use of property; property

27   damage; restoration costs already incurred or incurred in the future; delay damages; and property

28   devaluation.

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

80.    PCE, which does not occur naturally in the environment, has unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare. PCE readily percolates from the ground surface down to the water table, where it dissolves into groundwater and forms a contaminated plume of groundwater. The plume migrates in the direction of groundwater flow at approximately the same speed as water. When exposed to air, PCE can also volatilize into the atmosphere. At sufficient concentrations in water (approximately 200 parts per million ("ppm") or more), PCE may exist as a separate dense non-aqueous phase liquid ("DNAPL") which tends to move vertically downward and collect in low spots or along impermeable barriers. PCE in DNAPL form is difficult to detect in the environment and can act as a continuing source of dissolved PCE in groundwater even after all sources of PCE on the ground surface have been removed or remediated. Breakdown products of PCE, including TCE, are more soluble and mobile in water. PCE resists natural degradation in oxygenated soil and groundwater.

81.    PCE presents a significant threat to public health and welfare. PCE has been shown to cause cancer in animals, and is known to the State of California to cause cancer for purposes of the Safe Drinking Water and Toxic Enforcement Act of 1986.

**B.    Regulatory Standards Applicable To PCE.**

82.    No federal or state agency has approved PCE as an additive to drinking water. No federal or state agency has approved releasing or discharging PCE to groundwater.

83.    The California Department of Public Health ("DPH") is the state agency responsible for regulating the quality of water served by public water suppliers, including Plaintiff. DPH has established a Maximum Contaminant Level ("MCL") for PCE of 0.005 milligrams per liter ("mg/L") or 5 parts per billion ("ppb"). DPH does not permit water containing PCE in excess of the MCL to be supplied to the public. As the owner and operator of public drinking water systems in California, Plaintiff is subject to the MCL requirements established by DPH.

84.    The United States Environmental Protection Agency ("EPA") has established an MCL for PCE of 0.005 mg/L, or 5 ppb, and a Maximum Contaminant Level Goal ("MCLG")

- 16 -

1  of zero PCE.   EPA sets an MCLG of zero for chemicals that may cause cancer, and to indicate

2  that there is no dose below which a given chemical is considered safe.   EPA sets an enforceable

3  MCL as close to the MCLG for a given chemical as feasible, defined under the Safe Drinking

4  Water Act as the level that may be achieved with the use of the best available technology,

5  treatment techniques, or other means, taking cost into consideration.

6  **C.    The PCE Manufacturer Defendants' Knowledge of PCE's Hazards.**

7         85.      The PCE Manufacturer Defendants and Equipment Manufacturer Defendants,

8  each of whom has promoted the use of PCE and/or products containing PCE and/or equipment

9  designed and intended for use with PCE, knew or should have known of the grave harm and

10 threat to public health and welfare and the environment represented by the proliferating use of

11 this compound, including (among other things): widespread pollution of groundwater with PCE,

12 contamination of public and private drinking water supplies by this harmful compound, drinking

13 water supplies rendered unfit and unusable for consumption and increased costs to public water

14 suppliers and their customers.

15       86.      The PCE Manufacturer Defendants and Equipment Manufacturer Defendants

16 had a duty and breached their duty to evaluate and test such products adequately and thoroughly

17 to determine their environmental fate and transport characteristics and potential human health

18 and environmental impacts before they produced and sold such products.   They also had a duty

19 and breached their duty to minimize the environmental harm caused by PCE.   The PCE

20 Manufacturer Defendants and Equipment Manufacturer Defendants, and each of them, failed to

21 adequately evaluate and test their PCE products and equipment, or otherwise ensure that PCE

22 would not contaminate drinking water.   As a direct, indirect and proximate result of these

23 failures, PCE contaminated, and continues to contaminate, Plaintiff's Wells.

24       87.      At all times relevant to this action, the PCE Manufacturer Defendants and

25 Equipment Manufacturer Defendants knew, or reasonably should have known, among other

26 things, that: (a) PCE is toxic; and (b) when applied, discharged, disposed of or otherwise released

27 into or onto land, PCE readily migrates through the subsurface, mixes easily with groundwater,

28

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1    resists natural degradation, renders drinking water unsafe and/or non-potable, and can be

2    removed from public drinking water supplies only at substantial expense.

3        88.    Despite knowing or having reason to know that long-term groundwater

4    contamination, pollution of water supplies, and threats to public health and safety were inevitable

5    consequences of the foreseeable and intended uses of their PCE products and equipment without

6    proper precautionary measures, including but not limited to adequate warnings, the PCE

7    Manufacturer Defendants and Equipment Manufacturer Defendants nonetheless promoted,

8    marketed and/or sold PCE products and equipment in California and elsewhere.

9        89.    At all times relevant herein, the PCE Manufacturer Defendants and Equipment

10    Manufacturer Defendants, and each of them, knew or should have known that feasible measures

11    could have been implemented to reduce the amount of PCE reaching groundwater supplies

12    without appreciably affecting the ability of these PCE products or equipment to serve

13    drycleaning functions, but they failed to implement such measures.

14        90.    At all times relevant herein, the PCE Manufacturer Defendants and Equipment

15    Manufacturer Defendants, and each of them, knew or should have known that PCE is hazardous

16    and should be disposed of safely and separately from non-hazardous substances. Nonetheless,

17    the PCE Manufacturer Defendants and Equipment Manufacturer Defendants allowed PCE to be

18    disposed of improperly, and instructed users to use and dispose of PCE in a manner that these

19    defendants knew or should have known would cause PCE to contaminate groundwater.

20        91.    Adequate warnings regarding the known and foreseeable risks of PCE, and

21    adequate instructions regarding safe PCE use and disposal, could have prevented or mitigated the

22    contamination and resulting damages alleged herein. Despite knowing or having reason to know

23    of the risks to public drinking water resources posed by the discharge, disposal or release into or

24    onto land of PCE products, the PCE Manufacturer Defendants and Equipment Manufacturer

25    Defendants unreasonably failed to provide any adequate warnings regarding the known and

26    foreseeable risks of PCE to customers, end-users, regulators, public officials and/or the public,

27    including Plaintiff.

28        92.    In addition to the negligent and/or reckless conduct alleged herein, the PCE

- 18 -

1  Manufacturer Defendants and Equipment Manufacturer Defendants, by agreement and/or tacit

2  understanding among them, each knowingly pursued or took an active part in a common plan,

3  design and/or conspiracy to market and/or promote products they knew to be dangerous to the

4  environment.  In particular, these Defendants engaged in joint activity for the specific purpose of

5  suppressing, concealing, and/or minimizing information regarding the environmental risks of

6  PCE and/or misleading regulators and the public about those risks.  These Defendants' common

7  plan, design and/or conspiracy, and the acts taken in furtherance of such common plan, design

8  and/or conspiracy, are a direct and proximate cause of the PCE contamination in Plaintiff's

9  Wells.

10  **D.    The Impact of PCE on Plaintiff's Wells**

11          93.     PCE has been detected in varying amounts at varying times in water extracted

12  from certain of Plaintiff's Wells.  PCE has been detected and/or is present in certain of Plaintiff's

13  Wells at levels above the state and federal MCL for PCE.  The detection and/or presence of PCE,

14  and the threat of further detection and/or presence of PCE, in Plaintiff's Wells in varying

15  amounts and at varying times has resulted, and will continue to result, in significant injuries and

16  damages to Plaintiff.

17          94.     The injuries to Plaintiff caused by Defendants' conduct as alleged herein

18  constitute an unreasonable interference with, and damage to, the limited subterranean supplies of

19  fresh drinking water on which Plaintiff's Wells depend.  Plaintiff's interests in protecting the

20  quality of their limited drinking water supplies constitutes a reason personal for seeking damages

21  sufficient to restore such drinking water supplies to their pre-contamination condition.

22                          **FIRST CAUSE OF ACTION**

23              **(Strict Products Liability Based On Defective Design)**

24          95.     Plaintiff realleges each of the preceding paragraphs, and by this reference

25  incorporates each such paragraph as though set forth in full.

26          96.     Defendants, and each of them, designed, manufactured, formulated, packaged,

27  distributed, promoted, marketed and/or sold products containing PCE and/or equipment

28  specifically designed to store, use, process, and dispose of PCE.

-19-

97.     Defendants, and each of them, represented, asserted, claimed and warranted that PCE products and/or equipment could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

98.     Defendants, and each of them, knew, or should have known, that the PCE products and/or equipment would be used without inspection for defects, and if any inspection were performed, that the defects would not be discovered with the exercise of reasonable diligence.

99.     The PCE products purchased and used in the vicinity of Plaintiff's Wells were used in a reasonably foreseeable manner and without substantial change in the condition of such products.

100.     Defendants knew, or should have known, that, use of PCE products and equipment in their intended manner would result in the spillage, discharge, disposal or release of PCE into or onto land.

101.     The PCE products used in the vicinity of Plaintiff's Wells were defective in design and unreasonably dangerous products because, among other things:  (a) PCE causes extensive groundwater contamination, even when used in its foreseeable and intended manner; (b) even at extremely low levels, PCE renders drinking water unfit for purveying to consumers and creates a public health hazard whenever normal and necessary maintenance is performed on the sewer system, or otherwise adversely impacts normal use of the sewer and water system; (c) PCE poses a significant threat to public health; (d) defendants failed to provide adequate warnings of the known and foreseeable risks of using PCE; and (e) defendants failed to conduct adequate scientific studies to evaluate the environmental fate and potential human health effects of PCE.

102.     At all times relevant to this action:

(a)     Defendants were aware of the use of PCE in the dry cleaning process or as cleaning solvents;

(b)     Equipment Manufacturer Defendants were aware of the typical waste and disposal practices resulting from the intended use of their equipment.  Despite such knowledge,

- 20 -

1    these defendants designed their equipment in such a manner that would result in spills, leaks,

2    and/or discharge of PCE during normal operations;

3         (c)    Equipment Manufacturer Defendants improperly designed their PCE

4    equipment by failing to provide appropriate mechanisms to prevent and/or catch releases or spills
     of PCE and its by-products for such equipment;

5         (d)    Equipment Manufacturer Defendants failed to design proper mechanisms

6    which would eliminate, prevent and/or treat contamination arising from the dry cleaning process

7    such as contamination from separator wastewater, spent filter cartridges, muck, and still bottoms;

8         (e)    Equipment Manufacturer Defendants knew, or should have known, of

9    appropriate equipment redesigns, retrofits, and/or modifications to protect against environmental
     contamination associated with the use of such equipment, and negligently and/or consciously

10   disregarded this knowledge and failed to redesign, modify and/or retrofit the subject equipment.

11   Safer alternative designs and cleaning processes were scientifically feasible and economical;

12        (f)    Defendants represented to the public and regulatory authorities that the

13   products they sold would degrade into harmless substances and would not cause contamination.

14   At the time said representations were made, Defendants knew, or should have known, these
     representations were false, misleading, and/or that there was no reasonable basis to believe that

15   they were true; and

16        (g)    when PCE was used and disposed of pursuant to the Defendants'

17   recommended application and disposal procedures set forth in product brochures, trade group

18   publication funded by defendants, seminars, meetings, advertisements, oral statements and by

19   other means, PCE contaminated the sewer systems because of Defendants' failure to recommend

20   adequate and proper safeguards to avoid or prevent contamination of the sewer system.

21        103.    PCE equipment is a defective product because, among other things: (1) PCE

22   equipment causes extensive contamination, even when used in a foreseeable and intended

23   manner; (2) at extremely low levels, PCE contaminates sewer and water systems; (3) the use of

24   PCE equipment poses a significant threat to public health; (4) defendants failed to provide

25   adequate warnings of the known and foreseeable risk of the use of PCE equipment; and (5)

26   defendants failed to conduct adequate scientific studies to evaluate the environmental fate and

27   potential human health effects of the use of PCE equipment.

28

- 21 -

104. The above-described defects in PCE products and equipment existed when the PCE products and equipment left the Defendants' possession.

105. At all times relevant to this action, PCE products and equipment were dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the risk of harm to public health and welfare and the environment posed by PCE outweighed the cost to Defendants of reducing or eliminating such risk.

106. As a direct and proximate result of the defects alleged herein, certain of Plaintiff's Wells and the groundwaters that supply them have been, and continue to be, and in the future will be, contaminated with PCE, causing Plaintiff significant injury and damage in an amount within the jurisdiction of this court.

107. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be proved at trial.

108. Plaintiff is informed and believes and thereon alleges that as a further direct and proximate result of the acts and omissions of the Defendants alleged herein, Plaintiff will sustain substantially increased expenses and loss of the use of plaintiff's property, causing Plaintiff significant injury and damage in an amount within the jurisdiction of this court. Plaintiff is also entitled to costs and prejudgment interest to the full extent permitted by law.

109. Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

110. Defendants knew that it was substantially certain that their alleged acts and omissions described above would cause injury and damage, including PCE contamination of drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct is reprehensible, despicable, and was performed with the intent to induce reliance by a class of persons including their customers, the public, regulatory agencies and plaintiff on false representations, and to promote sales of PCE products and equipment in conscious disregard of the known risks of

1  injury to health, property and the environment.  Therefore, Plaintiff requests an award of

2  exemplary damages in an amount that is sufficient to punish these Defendants and that fairly

3  reflects the aggravating circumstances alleged herein.  After the completion of additional

4  investigation and discovery, Plaintiff may seek leave of court to amend this Complaint to allege a

5  claim for exemplary damages against additional defendants if warranted by the facts.

6        WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

7                          **SECOND CAUSE OF ACTION**

8              **(Strict Products Liability Based On Failure To Warn)**

9        111.    Plaintiff realleges each of the preceding paragraphs, and by this reference

10  incorporates each such paragraph as though set forth in full.

11        112.    Defendants, and each of them, designed, manufactured, formulated, promoted,

12  marketed, distributed, and/or sold PCE products and/or equipment.

13        113.    Defendants, and each of them, knew that such PCE products and/or equipment

14  were to be purchased and used without inspection for defects.

15        114.    PCE products and/or equipment purchased or otherwise acquired (directly or

16  indirectly) from Defendants, and each of them, were used, discharged and/or disposed of in or

17  otherwise released into or onto lands in the vicinity of Plaintiff's Wells.

18        115.    The PCE products and/or equipment were used in a reasonably foreseeable

19  manner and without substantial change in the condition of such products.

20        116.    Defendants designed PCE products and equipment to discharge PCE into

21  underground municipal sewer systems.

22        117.    The PCE products and equipment used in the vicinity of Plaintiff's Wells were

23  defective in design and unreasonably dangerous products for the reasons set forth above.

24        118.    Despite the known and/or foreseeable environmental and human health hazards

25  associated with the use or disposal of PCE products in the vicinity of subterranean drinking

26  water supplies, including contamination of public drinking water supplies with PCE, Defendants,

27  and each of them, failed to provide adequate warnings of, or take any other precautionary

28  measures to mitigate, those hazards.

- 23 -

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

119.   In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PCE products or otherwise.

120.   As a direct and proximate result of Defendants' failure to warn of the hazards posed by application or release of PCE products in the vicinity of subterranean drinking water supplies that were, or should have been, known to them, certain of Plaintiff's Wells and the groundwaters that supply them have been, and continue to be, contaminated with PCE, causing Plaintiff significant injury and damage.

121.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be proved at trial.

122.   Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

123.   For the reasons set forth and specifically alleged above in paragraph 76, Plaintiff is entitled to an award of exemplary damages against Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein. After the completion of additional investigation and discovery, Plaintiff may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## THIRD CAUSE OF ACTION

### (Continuing Nuisance Against All Defendants)

124.   Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

125.   Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in its Wells.

126.   The negligent, reckless, intentional and/or ultrahazardous activity of

- 24 -

1   Defendants, and each of them, as alleged herein has resulted in the continuing contamination of

2   Plaintiff's Wells and the groundwaters that supply them by PCE, giving rise to conditions that

3   constitute a nuisance. Each such Defendant has caused, maintained, assisted and/or participated

4   in such nuisance, and is a substantial contributor to such nuisance.

5        127.    The nuisance conditions caused, contributed to, maintained, assisted and/or

6   participated in by Defendants, and each of them, have caused substantial injury to Plaintiff's

7   Wells and the groundwaters that supply them, in which Plaintiff has a significant property

8   interest.

9        128.    The nuisance conditions caused, contributed to, maintained, assisted and/or

10  participated in by Defendants, and each of them, have and continue to substantially and

11  unreasonably interfere with, obstruct and/or disturb Plaintiff's rights to appropriate, use and

12  enjoy groundwater from its Wells.   Plaintiff is specially and adversely affected by the nuisance

13  conditions alleged herein.

14       129.    Defendants, each of whom supplied, distributed, delivered, sold and/or

15  otherwise entrusted (directly or indirectly) PCE products and equipment that were used, applied,

16  discharged, disposed of or otherwise released into or onto land in the vicinity of Plaintiff's

17  Wells, engaged in affirmative conduct that caused, contributed to, maintained and/or assisted in

18  the creation of the nuisance alleged herein, including, but not limited to, the following conduct:

19       (a)    Defendants participated in the use and disposal of PCE by intentionally,

20  recklessly, and/or negligently controlling the use and disposal (and providing instructions for the

21  disposal) of PCE by dry cleaning stores; intentionally, recklessly, and/or negligently instructing

22  dry cleaners about the purportedly proper disposal methods for PCE; and/or intentionally,

23  recklessly, and/or negligently calibrating, designing and manufacturing customers' PCE

24  equipment in such a manner that PCE and PCE products were routinely disposed of into the

25  ground on an ordinary basis.   As a result of this activity, PCE contaminated Plaintiff's Wells;

26       (b)    Defendants intentionally, recklessly, and/or negligently instructed end-

27  users, including retail dry cleaners, about the disposal of PCE through informational brochures,

28  instructional seminars, trade organization brochures funded, published, and distributed by

1  defendants, product labels and other literature. Defendants recommended that PCE be dumped

2  into the sewer system and/or dumped on the ground, notwithstanding that said defendants knew,

3  or should have known, that PCE would contaminate the water and soil and pose a risk to health.

4  As a result, when PCE and PCE products were disposed of pursuant to the techniques

5  recommended by said defendants, PCE contaminated Plaintiff's Wells. In addition, the PCE

6  equipment manufacturers designed their equipment to directly discharge PCE waste into the

7  sewer and/or instructed machine users to dispose of PCE waste into the sewer;

8       (c)     During this time, Defendants (1) knew and/or reasonably should have

9  known that chlorinated solvents such as and including PCE had caused environmental

10  contamination, and (2) had not conducted adequate testing to determine the environmental fate

11  and potential human health effects of chlorinated solvents such as and including PCE. Even

12  though said defendants had sufficient information to determine that PCE posed a threat to the

13  environment, they did not modify their PCE disposal instructions or provide the appropriate

14  advice, instruction or information to their customers regarding proper disposal and use needed to

15  avoid environmental contamination;

16       (d)     Defendants knew, or should have known, that chlorinated solvents such as

17  and including PCE were persistent, and could contaminate soil and groundwater.

18       130.     Defendants were each a substantial factor in bringing about the contamination

19  of Plaintiff's Wells, and each of the Defendants aided and abetted the continuing trespasses and

20  are jointly responsible for the injuries and damage caused to Plaintiff as alleged in this complaint

21  and based on the following alleged affirmative conduct:

22       a)     The Equipment Manufacturer and Distributor Defendants manufactured,

23  designed, distributed, prepared and/or installed dry cleaning equipment and/or parts which

24  defendants knew, or should have known, would directly discharge and leak toxic PCE into the

25  sewer system and ground, and intrude upon, contaminate, and damage Plaintiff's possessory

26  interests;

27       b)     Defendants intentionally caused dry cleaning retailers to dispose of the

28  PCE waste by instructing, requesting and/or inducing these retailers to dump PCE waste onto the
ground, or discharge PCE waste directly into the sewer system, or pour PCE waste down the

1    drain, which caused the PCE waste to intrude upon Plaintiff's possessory interests and cause the

2    alleged harm and damage; and

3          c)    At the time Defendants intentionally instructed, requested and/or induced

4    the conduct described above, Defendants knew, or should have known, of the conditions under

5    which these acts were to be done, the toxicity of the PCE waste, and the consequences of the

6    acts. Defendants instructed, requested and/or induced these acts and were a substantial factor in

7    causing the resulting contamination of Plaintiff's possessory interests, and further aided and

8    abetted this conduct, and are liable for the injuries and damage sustained by Plaintiff.

9          131.    The contamination of Plaintiff's Wells alleged herein has varied over time and

10    has not yet ceased. PCE continues to migrate into and enter Plaintiff's Wells. The

11    contamination alleged herein is reasonably abatable.

12          132.    As a direct and proximate result of Defendants' acts and omissions as alleged

13    herein, Plaintiff's Wells and the groundwaters that supply them have been, and continue to be,

14    contaminated with PCE, causing Plaintiff significant injury and damage. As a direct and

15    proximate result of these Defendants' acts and omissions as alleged herein, Plaintiff has

16    incurred, is incurring, and will continue to incur, investigation, treatment, remediation and

17    monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be

18    proved at trial.

19          133.    For the reasons set forth and specifically alleged above in paragraph 76,

20    Plaintiff is entitled to an award of exemplary damages Defendants that is sufficient to punish

21    these Defendants and that fairly reflects the aggravating circumstances alleged herein. After the

22    completion of additional investigation and discovery, Plaintiff may seek leave of court to amend

23    this Complaint to allege a claim for exemplary damages against additional defendants if

24    warranted by the facts.

25          WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

26                    **FOURTH CAUSE OF ACTION**

27                  **(Continuing Trespass Against All Defendants)**

28          134.    Plaintiff realleges each of the preceding paragraphs, and by this reference

incorporates each such paragraph as though set forth in full.

135.    Plaintiff is the owner and actual possessor of Plaintiff's Wells.

136.    Plaintiff owns, possesses and actively exercises its rights to appropriate and use groundwater drawn from its Wells described in the preceding paragraph, including those of Plaintiff's Wells that are contaminated with PCE.

137.    Defendants, and each of them, negligently, recklessly and/or intentionally failed to properly control, apply, use and/or dispose of PCE Products, such that they proximately caused PCE to enter, invade, intrude upon and injure Plaintiff's possession of property. Defendants engaged in affirmative conduct that caused, contributed to, maintained and/or assisted in the creation of the trespass alleged herein, as follows:

(a)    Defendants participated in the use and disposal of PCE by intentionally, recklessly, and/or negligently controlling the use and disposal (and providing instructions for the disposal) of PCE by dry cleaning stores; intentionally, recklessly, and/or negligently instructing dry cleaners about the purportedly proper disposal methods for PCE; and intentionally, recklessly, and/or negligently calibrating, designing and manufacturing customers' PCE equipment in such a manner that PCE and PCE products were routinely disposed of into the ground on an ordinary basis.   As a result of this activity, PCE contaminated Plaintiff's Wells;

(b)    Defendants intentionally, recklessly, and/or negligently instructed end-users, including retail dry cleaners, about the disposal of PCE through informational brochures, instructional seminars, trade organization brochures funded, published, and distributed by defendants, product labels and other literature.  Defendants recommended that PCE be dumped into the sewer system and/or dumped on the ground, notwithstanding that said defendants knew, or should have known, that PCE would contaminate the water and soil and pose a risk to health. As a result, when PCE and PCE products were disposed of pursuant to the techniques recommended by said defendants, PCE contaminated Plaintiff's Wells.  In addition, the PCE equipment manufacturers designed their equipment to directly discharge PCE waste into the sewer and/or instructed machine users to dispose of PCE waste into the sewer;

(c)    During this time, Defendants (1) knew and/or reasonably should have

-28-

1  known that chlorinated solvents such as and including PCE had caused environmental

2  contamination, and (2) had not conducted adequate testing to determine the environmental fate

3  and potential human health effects of chlorinated solvents such as and including PCE.  Even

4  though said defendants had sufficient information to determine that PCE posed a threat to the

5  environment, they did not modify their PCE disposal instructions or provide the appropriate

6  advice, instruction or information to their customers regarding proper disposal and use needed to

7  avoid environmental contamination;

8        (d)    Defendants knew, or should have known, that chlorinated solvents such as

9  and including PCE were persistent, and could contaminate soil and groundwater.

10   138.    Defendants were each a substantial factor in bringing about the contamination

11  of Plaintiff's Wells, and each of the Defendants aided and abetted the continuing trespasses and

12  are jointly responsible for the injuries and damage caused to Plaintiff as alleged in this complaint

13  and based on the following alleged affirmative conduct:

14        a)    The Equipment Manufacturer and Distributor Defendants manufactured,

15  designed, distributed, prepared and/or installed dry cleaning equipment and/or parts which

16  defendants knew, or should have known, would directly discharge and leak toxic PCE into the

    sewer system and ground, and intrude upon, contaminate, and damage Plaintiff's possessory
17
   interests;

18        b)    Defendants intentionally caused dry cleaning retailers to dispose of the

19  PCE waste by instructing, requesting and/or inducing these retailers to dump PCE waste onto the

20  ground, or discharge PCE waste directly into the sewer system, or pour PCE waste down the

21  drain, which caused the PCE waste to intrude upon Plaintiff's possessory interests and cause the

    alleged harm and damage; and
22

23        c)    At the time Defendants intentionally instructed, requested and/or induced

24  the conduct described above, Defendants knew, or should have known, of the conditions under

25  which these acts were to be done, the toxicity of the PCE waste, and the consequences of the

26  acts.  Defendants instructed, requested and/or induced these acts and were a substantial factor in

    causing the resulting contamination of Plaintiff's possessory interests, and further aided and
27
   abetted this conduct, and are liable for the injuries and damage sustained by Plaintiff.
28

139.    The contamination of Plaintiff's Wells alleged herein has varied over time and has not yet ceased. PCE continues to migrate into and enter Plaintiff's Wells. The contamination alleged herein is reasonably abatable.

140.    Plaintiff has not consented to, and does not consent to, the contamination alleged herein. Defendants, and each of them, knew or reasonably should have known that Plaintiff would not consent to this trespass.

141.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Wells and the groundwaters that supply them have been, and continue to be, contaminated with PCE, causing Plaintiff significant injury and damage. As a direct and proximate result of these Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be proved at trial.

142.    For the reasons set forth and specifically alleged above, Plaintiff is entitled to an award of exemplary damages against Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein. After the completion of additional investigation and discovery, Plaintiff may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## FIFTH CAUSE OF ACTION

### (Negligence Against All Defendants)

143.    Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

144.    Defendants had a duty to use due care in the design, manufacture, formulation, handling, control, disposal, sale and labeling, use, instructions for use and disposal of PCE products and/or equipment to prevent, and to the extent feasible, to eliminate contamination of Plaintiff's Wells and groundwaters supplying those Wells with PCE in concentrations which may pose adverse health effects.

145.   Defendants so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted and/or sold PCE products and/or equipment, and so negligently, carelessly and recklessly applied PCE, disposed of PCE products, containers, and waste and/or negligently recommended application and disposal techniques for PCE products that they directly and proximately caused PCE contamination of Plaintiff's Wells and groundwaters supplying those Wells.

146.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Wells and the groundwaters that supply them have been, and continue to be, contaminated with PCE, causing Plaintiff significant injury and damage. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be proved at trial.

147.   For the reasons set forth and specifically alleged above, Plaintiff is entitled to an award of exemplary damages against Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein. After the completion of additional investigation and discovery, Plaintiff may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## SIXTH CAUSE OF ACTION

### (Negligence *Per Se* Against All Defendants)

148.   Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

149.   Plaintiff alleges that Defendants negligently, carelessly and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled and/or sold PCE products and/or equipment, and/or so negligently, carelessly and recklessly applied PCE, disposed of PCE products, containers, and waste and/or negligently recommended application and disposal techniques for PCE that they directly and proximately caused contamination of Plaintiff's Wells, and the groundwaters supplying such Wells, in violation of California Water Code sections

1   13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and

2   117555, and California Fish and Game Code section 5650, the purposes of which are to set a

3   standard of care or conduct to protect Plaintiff and all persons or property within its jurisdiction,

4   as well as the environment, from the type of improper activities engaged in by Defendants, and

5   each of them.  Therefore, such improper activities and violations constitute negligence *per se*.

6   Plaintiff's investigation and discovery are not complete.  Therefore, Plaintiff will seek leave of

7   court to amend the complaint to allege additional violations or, in the alternative, give notice to

8   the Defendants of any additional statutory violations when determined.

9         150.      Defendants, and each of them, have failed to comply with state law as detailed

10  above.  As a direct and proximate result of the negligence *per se* of Defendants, and each of

11  them, Plaintiff has suffered damages, as alleged in this Complaint, including consequential,

12  incidental and general damages to be proven at trial.

13                        **SEVENTH CAUSE OF ACTION**

14                   **(Liability Under Civil Code § 1882 et seq.)**

15        151.      Plaintiff realleges each of the preceding paragraphs, and by this reference

16  incorporates each such paragraph as though set forth in full.

17        152.      Plaintiff is a water corporation that owns and/or operates a water system.

18        153.      The water that is pumped from Plaintiff's Wells is property owned or used by

19  Plaintiff to provide utility services.

20        154.      The groundwater that supplies Plaintiff's Wells is property owned or used by

21  Plaintiff to provide utility services.

22        155.      By causing the introduction of PCE into Plaintiff's Wells and the groundwaters

23  that supply them as alleged in this Complaint, the Defendants, and each of them, injured, altered,

24  interfered with, and/or otherwise prevented from performing its normal or customary function

25  property owned or used by Plaintiff to provide utility services.

26        156.      As a direct and proximate result of the Defendants' acts and omissions as

27  alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation,

28  treatment and monitoring costs and expenses related to the PCE contamination of Plaintiff's

1  Wells, in an amount to be proved at trial, for which the Defendants are liable pursuant to Civil

2  Code §1882.1.

3      157.    Pursuant to Civil Code §1882.2, Defendants are liable for three times the

4  amount of Plaintiff's actual damages, plus the costs of this suit and reasonable attorney's fees.

5      WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

6  ## EIGHTH CAUSE OF ACTION

7  ### (Equitable Indemnity Against All Defendants)

8      158.    Plaintiff realleges each of the preceding paragraphs, and by this reference

9  incorporates each such paragraph as though set forth in full.

10      159.    The California Department of Toxic Substance Control ("DTSC") has pursued

11  an enforcement action against Plaintiff arising from PCE contamination in Chico, California.

12  damages arising as a result of the PCE contamination of Plaintiff's Wells. DTSC's complaint

13  against Plaintiff, for purposes of its allegations only, is incorporated by reference herein as

14  though fully set forth at length herein.

15      160.    A settlement between DTSC and Plaintiff ("Settlement") was approved by a

16  court of this State on May 23, 2007, obliging Plaintiff to, among other things, incur significant

17  costs designing and implementing measures to remediate PCE contamination and undertaking

18  water treatment activities.

19      161.    Plaintiff alleges that it is in no way legally responsible for the events giving rise

20  to the Settlement, nor legally responsible in any manner for the damages allegedly sustained by

21  DTSC. Plaintiff's liability for any part of the claim for damages asserted against it is, on

22  Plaintiff's information and belief, solely due to Defendants' negligent, tortious and malicious

23  conduct as set forth above. Plaintiff is informed and believes that the acts of Defendants, and

24  each of them, set forth and alleged herein, were the direct and proximate cause of the PCE

25  contamination that was the subject of DTSC's complaint and action against Plaintiff.

26      162.    Defendants are responsible and liable for any such damages in direct proportion

27  to the extent of their conduct in causing such damages. Plaintiff is entitled to judgment against

28

- 33 -

1    Defendants, and each of them, in an amount proportional to their responsibility for such

2    damages.

3        WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

4            **PRAYER FOR RELIEF**

5        WHEREFORE, Plaintiff respectfully requests a trial of this Action before a jury, and that,

6    upon a favorable verdict, this Court enter judgment in favor of Plaintiff and against Defendants,

7    jointly and severally, as follows:

8        a.     An award of compensatory damages according to proof;

9        b.     An award of treble damages, pursuant to Civil Code §1882.2;

10       c.     An award of exemplary damages in an amount sufficient to punish Defendants,

11              and to deter Defendants from ever committing the same or similar acts;

12       d.     An order awarding Plaintiff its costs in prosecuting this action, including its

13              reasonable attorneys' fees, together with prejudgment interest, pursuant to Civil

14              Code §1882.2 and to the full extent permitted by law;

15       e.     Such other further relief as the Court may deem just and proper.

16

17    DATED:  May 22, 2008         SHER LEFF LLP

18

19              By:      _____

20                    VICTOR M. SHER
                      TODD E. ROBINS

21                   MARNIE E. RIDDLE

22                   BARON & BUDD, PC

23                   Attorneys for Plaintiff, CALIFORNIA WATER
                  SERVICE COMPANY

24

25

26

27

28

<div align="center">- 34 -</div>

---

EXHIBIT B

**SUM-100**

## SUMMONS
### *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Additional Parties Attachment Form is Attached

**FILED**
SAN MATEO COUNTY

MAY 2 2 2008

Clerk of the Superior Court

By _____
DEPUTY CLERK

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
California Water Service Company

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Mateo County Superior Court<br>400 County Center, Redwood City, California 94063 | CASE NUMBER:<br>*(Número del Caso):* **CIV 4 7 3 0 9 3** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Victor M. Sher, SBN 96197    Sher Leff, LLP   450 Mission Street, Ste. 400, San Francisco, California 94105
(415) 348-8300

| DATE: **MAY 2 2 2008**   **JOHN C. FITTON** | Clerk, by _____ | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc. \| www.USCourtForms.com |
|---|---|---|

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| California Water Service Company v. The Dow Chemical Co., et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

THE DOW CHEMICAL COMPANY; E.I. DUPONT DE NEMOURS AND COMPANY; PPG INDUSTRIES, INC., VULCAN MATERIALS COMPANY, OCCIDENTAL CHEMICAL CORPORATION, VALERO ENERGY CORPORATION, STAUFFER CHEMICAL COMPANY, BOWE-PERMAC, INC., individually and d/b/a BOWE TEXTILE CLEANING, INC., HOYT CORPORATION, R.R. STREET & CO., INC., MCGRAW EDISON COMPANY, individually and d/b/a AMERICAN LAUNDRY MACHINERY, INC., AMERICAN LAUNDRY MACHINERY, INC., individually and d/b/a AJAX MANUFACTURING DIVISION AND MARTIN EQUIPMENT, WHITE CONSOLIDATED INDUSTRIES, INC., individually and d/b/a WASHEX MACHINERY DIVISION, ELECTROLUX CORPORATION, LINDUS S.R.L., individually and d/b/a LINDUS WEST, COLUMBIA DRYCLEANING MACHINES, a/k/a COLUMBIA/ILSA MACHINES CORP., REALSTAR, INC., individually and d/b/a REALSTAR USA, UNION DRYCLEANING PRODUCTS USA, FIRBIMATIC, BERGPARMA OF AMERICA, LLC, AMA UNIVERSAL, FLUORMATIC MIDWEST LTD., FORENTA LP, WESTERN MULTITEX CORP., MARVEL MANUFACTURING, RENZACCI OF AMERICA, SAIL STAR USA, VIC MANUFACTURING CORPORATION, M.B.L., INC., GOSS-JEWETT CO. OF NORTHERN CALIFORNIA, MCGREGOR SUPPLY COMPANY, S.B. SUPPLY INC., WASHEX MACHINERY OF CALIFORNIA, INC., WORKROOM SUPPLY, INC., TAYLOR HOUSEMAN, INC., UNITED FABRICARE SUPPLY, INC., ECHCO SALES INC., MW EQUIPMENT, ARTHUR KAJIWARA EQUIPMENT CO., INC., KELLEHER EQUIPMENT SUPPLY, INC., US MACHINERY & ENGINEERING CO., INC., WYATT-BENNETT, CORBETT EQUIPMENT, FULLER SUPPLY COMPANY, SAV-ON MACHINERY COMPANY, INC. and DOES 1 through 750, INCLUSIVE

Page __1__ of __1__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT C

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Victor M. Sher, SBN 96197<br>Todd E. Robins, SBN 191853<br>Marnie E. Riddle, SBN 233732<br>Sher Leff, LLP  450 Mission Street, Ste. 400 San Francisco, CA 94105<br>TELEPHONE NO.: (415) 348-8333    FAX NO.: (415) 348-8333<br>ATTORNEY FOR *(Name):* California Water Service Company | **RECEIVED**<br><br>MAY 2 2 2008<br><br>CLERK OF THE SUPERIOR COURT<br>SAN MATEO COUNTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center, Room A
CITY AND ZIP CODE: Redwood City, California 94063
BRANCH NAME: Southern Branch

CASE NAME:
California Water Service Company v. The Dow Chemical Co., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited  [ ] Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **CIV 473093**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Mass tort (40) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [✓] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | condemnation (14) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties    d. [✓] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve    in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[✓] punitive

4. Number of causes of action *(specify):*  Eight

5. This case [ ] is   [✓] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 22, 2008
Victor M. Sher
        (TYPE OR PRINT NAME)    ► /s/ Victor M. Sher
                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

| Attorney or Party without Attorney (Name/Address) | FOR COURT USE ONLY |
|---|---|
| Victor M. Sher,<br>SHER LEFF LLP<br>450 Mission St., Ste 400 San Francisco, CA 94105<br>Telephone: (415) 348-8300<br>State Bar No.: 96197<br>Attorney for: Plaintiff | **ENDORSED FILED**<br>SAN MATEO COUNTY<br><br>MAY 2 2 2008<br><br>Clerk of the Superior Court<br>By _G. Jackson_<br>DEPUTY CLERK |
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN MATEO<br>400 COUNTY CENTER<br>REDWOOD CITY, CA 94063 | |
| Plaintiff<br>    California Water Service Company | |
| Defendant<br>    The Dow Chemical Company, et al. | |
| **Certificate Re Complex Case Designation** | Case Number |
| | CIV 4 7 3 0 9 3 |

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1.    In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

✓ Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust trade regulation claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

✓ Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

o  Box 5 – Is [or is not] a class action suit

2.    This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions pending in one or more courts in other countries, states or countries or in a federal court; (6)

whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision]:

See Attached

_____

_____

_____

_____

_____

*(attach additional pages if necessary)*

3.    Based on the above-stated supporting information, there is a reasonable basis for the complex case designation or counter-designation [or noncomplex case counter-designation] being made in the attached Civil Case Cover Sheet

*****

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct and that I make this certification subject to the applicable provisions of California Code of Civil Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated:    May 22, 2008

    Victor M. Sher                                         
[Type or Print Name]               [Signature of Party or Attorney for Party]

## Attachment to Certificate re Complex Case Designation[1]

This case involves claims for environmental damage arising from contamination of California Water Service Company's ("Plaintiff") groundwater supplies with the toxic chemical perchloroethylene ("PCE") and its degradation products.

Plaintiff CALIFORNIA WATER SERVICE COMPANY ("Cal Water") owns and/or operates public drinking water systems, and supplies drinking water to hundreds of thousands of residents and businesses, in various locations throughout the State of California. PCE is contaminating and damaging Cal Water's drinking water supply wells in dispersed locations throughout California.

Plaintiffs bring this action to recover the substantial costs necessary to comply with state and federal safe drinking water laws, protect the public, and restore its damaged drinking water supply.

Defendants include the manufacturers, distributors and retailers of the PCE, PCE-using equipment, and/or PCE-containing products.

This action is a provisionally complex case because it involves environmental or toxic tort claims against many parties. In addition, this action includes several factors requiring exceptional judicial management. The complaint names in excess of 40 known defendants at this time, which includes groups of related entities separately represented by counsel. Moreover, as demonstrated by other environmental contamination cases pending in other courts around the country, cases like this one typically involve numerous pretrial motions and the interplay of tort principles and complex regulatory regimes. These cases typically involve complicated scientific and factual issues as well as numerous experts, a large number of depositions and extensive document discovery. For the foregoing reasons, this case should be designated complex.

---

[1] This Certificate re Complex Case Designation is being submitted for filing pursuant to Local Rule 2.30(C).

{1039-001 / 00075564.DOC;1}

EXHIBIT D

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

| ☐ Southern Division<br>400 County Center<br>Redwood City, CA 94063 | ☐ Central Division<br>800 No. Humboldt<br>San Mateo, CA 94401 | ☐ Northern Division<br>1050 Mission Road<br>So. San Francisco, CA 94080 | Reserved for Clerk's Office Stamp |
|---|---|---|---|

*California water service company*

                                                    **Plaintiff,**

                            vs.

*The Dow Chemical company Et al*

                                                    **Defendant**

**ENDORSED FILED**
**SAN MATEO COUNTY**

MAY 2 2 2008

Clerk of the Superior Court
By _____ G. Jackson
            DEPUTY CLERK

| **NOTICE OF COMPLEX CASE STATUS CONFERENCE** | **Case Number: CIV**<br>**CV 4 7 3 0 9 3** |
|---|---|
| **Date of Hearing:** *7-22-08*    **Time:** 9:00 AM | **Department No.:** |

You are hereby given notice of your Complex Case Status Conference. The date, time and department are written above. At this conference, the Presiding Judge will decide whether this action is a complex case within the meaning of California Rules of Court ("CRC"), Rule 3.400 subdivision (a) and whether it should be assigned to a single judge for all purposes.

1.   In accordance with applicable San Mateo County Local Rule 2.30, you are hereby ordered to:
   a.   Serve copies of this notice, your Civil Case Cover Sheet, and your Certificate Re: Complex Case Designation on all named parties in this action no later than service of your first appearance pleadings.
   b.   Give reasonable notice of the Complex Case Status Conference to all named parties in this action, even if they have not yet made a first appearance or been formally served with the documents listed in subdivision (a). Such notice shall be given in the same manner as required for an ex parte application pursuant to CRC 3.1200-3.1207.

2.   **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Complex Case Status Conference. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3.   An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6). The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunity to decide whether the action meets the definition in CRC 3.400(a).

4.   Any party who files either a "Civil Case Cover Sheet" (pursuant to CRC 3.401) or a "Counter or Joinder Civil Case Cover Sheet" (pursuant to CRC 3.402, subdivision (b) or (c)), designating an action as a complex case in Items 1, 2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought. Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org

* Telephonic appearances at a Complex Case Status Conference are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

---

### NOTICE OF COMPLEX CASE STATUS CONFERENCE

EXHIBIT E

# NOTICE OF CASE MANAGEMENT CONFERENCE

*Califorana waful*

**ENDORSED FILED**
**SAN MATEO COUNTY**

MAY 2 2 2008

Clerk of the Superior Court
By _____ G. Jackson
**DEPUTY CLERK**

vs.

*The Dow Chemical Company*

Case No. _____ CV 473003

Date: _____

Time: 9:00 a.m.

Dept. 3 – on Tuesday & Thursday
Dept. 28 – on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a. Serve all named defendants and file proofs of service on those defendants with the court within 60 days of filing the complaint (CRC 201.7).

   b. Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c. File and serve a completed Case Management Statement at least 15 days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

   d. Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30 days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of case management conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10 days prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:

   a. Referring parties to voluntary ADR and setting an ADR completion date;

   b. Dismissing or severing claims or parties;

   c. Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

1   Gary J. Smith (SB #141393)
2   Ryan R. Tacorda (SB #227070)
    BEVERIDGE & DIAMOND, P.C.
3   456 Montgomery Street, Suite 1800
    San Francisco, CA 94104-1251
4   Telephone: (415) 262-4000
    Facsimile: (415) 262-4040
5
    Robert Brager
6   BEVERIDGE & DIAMOND, P.C.
7   201 North Charles Street, Suite 2210
    Baltimore, MD 21201-4150
8   Telephone: (410) 230-3850
    Facsimile: (410) 230-3868
9
    Attorneys for Defendant
10  PPG INDUSTRIES, INC.

**ORIGINAL
FILED**

*E-filing*

JUL – 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11          **UNITED STATES DISTRICT COURT**            ***SI***

12          **NORTHERN DISTRICT OF CALIFORNIA**

13
    CALIFORNIA WATER SERVICE          CASE NO.     **3267**
14  COMPANY,                    CV   **08**
15          Plaintiff,                 **JOINDER IN NOTICE OF REMOVAL**

16      vs.

17  THE DOW CHEMICAL COMPANY; E.I.
    DUPONT DE NEMOURS AND COMPANY;
18  PPG INDUSTRIES, INC.; VULCAN
    MATERIALS COMPANY; OCCIDENTAL
19  CHEMICAL CORPORATION; VALERO
    ENERGY CORPORATION; STAUFFER
20  CHEMICAL COMPANY; BOWE-PERMAC,
    INC., individually and d/b/a BOWE TEXTILE
21  CLEANING, INC.; HOYT CORPORATION;
    R.R. STREET & CO., INC.; MCGRAW
22  EDISON COMPANY, individually and d/b/a
    AMERICAN LAUNDRY MACHINERY, INC.,
23  AMERICAN LAUNDRY MACHINERY, INC.,
    individually and d/b/a AJAX
24  MANUFACTURING DIVISION AND
    MARTIN EQUIPMENT, WHITE
25  CONSOLIDATED INDUSTRIES, INC.,
    individually and d/b/a WASHEX
26  MACHINERY DIVISION, ELECTROLUX
    CORPORATION, LINDUS S.R.L., individually
27  and d/b/a LINDUS WEST, COLUMBIA
    DRYCLEANING MACHINES, a/k/a
28  COLUMBIA/ILSA MACHINES CORP.,
    REALSTAR, INC., individually and d/b/a

-1-

JOINDER IN NOTICE OF REMOVAL

1   REALSTAR USA, UNION DRYCLEANING
    PRODUCTS USA, FIRBIMATIC,
2   BERGPARMA OF AMERICA, LLC, AMA
    UNIVERSAL, FLUORMATIC MIDWEST
3   LTD., FORENTA LP, WESTERN MULTITEX
    CORP., MARVEL MANUFACTURING,
4   RENZACCI OF AMERICA, SAIL STAR USA,
    VIC MANUFACTURING CORPORATION,
5   M.B.L., INC., GOSS-JEWETT CO. OF
    NORTHERN CALIFORNIA, MCGREGOR
6   SUPPLY COMPANY, S.B. SUPPLY INC.,
    WASHEX MACHINERY OF CALIFORNIA,
7   INC., WORKROOM SUPPLY, INC., TAYLOR
    HOUSEMAN, INC., UNITED FABRICARE
8   SUPPLY, INC., ECHCO SALES INC., MW
    EQUIPMENT, ARTHUR KAJIWARA
9   EQUIPMENT CO., INC., KELLEHER
    EQUIPMENT SUPPLY, INC., US
10  MACHINERY & ENGINEERING CO., INC.,
    WYATT-BENNETT, CORBETT
11  EQUIPMENT, FULLER SUPPLY
    COMPANY, SAV-ON MACHINERY
12  COMPANY, INC. and DOES 1 through 750,
    INCLUSIVE,
13
                Defendants.
14

15      The undersigned parties hereby join in the Notice of Removal filed by Defendant PPG

16  Industries, Inc.

17

18  Dated:___June 26, 2008___            Dated:___JUNE 26, 2008___

19  THE DOW CHEMICAL COMPANY          E.I. DUPONT DE NEMOURS AND
                                      COMPANY
20  By:_____
                                      By:_____
21                                        ANDREW F. MORTL by permission

22  Dated:_____           Dated:_____

23  VULCAN MATERIALS COMPANY          OCCIDENTAL CHEMICAL CORPORATION

24

25  By:_____      By:_____

26

27

28

                                    -2-

1    REALSTAR USA, UNION DRYCLEANING
     PRODUCTS USA, FIRBIMATIC,
2    BERGPARMA OF AMERICA, LLC, AMA
     UNIVERSAL, FLUORMATIC MIDWEST
3    LTD., FORENTA LP, WESTERN MULTITEX
     CORP., MARVEL MANUFACTURING,
4    RENZACCI OF AMERICA, SAIL STAR USA,
     VIC MANUFACTURING CORPORATION,
5    M.B.L., INC., GOSS-JEWETT CO. OF
     NORTHERN CALIFORNIA, MCGREGOR
6    SUPPLY COMPANY, S.B. SUPPLY INC.,
     WASHEX MACHINERY OF CALIFORNIA,
7    INC., WORKROOM SUPPLY, INC., TAYLOR
     HOUSEMAN, INC., UNITED FABRICARE
8    SUPPLY, INC., ECHCO SALES INC., MW
     EQUIPMENT, ARTHUR KAJIWARA
9    EQUIPMENT CO., INC., KELLEHER
     EQUIPMENT SUPPLY, INC., US
10   MACHINERY & ENGINEERING CO., INC.,
     WYATT-BENNETT, CORBETT
11   EQUIPMENT, FULLER SUPPLY
     COMPANY, SAV-ON MACHINERY
12   COMPANY, INC. and DOES 1 through 750,
     INCLUSIVE,
13
14                  Defendants.

15        The undersigned parties hereby join in the Notice of Removal filed by Defendant PPG

16   Industries, Inc.

17

18   Dated: _____          Dated: _____

19   THE DOW CHEMICAL COMPANY         E.I. DUPONT DE NEMOURS AND
                                      COMPANY
20   By:_____
                                      By:_____
21

22   Dated: 6-26-08                   Dated: _____

23   VULCAN MATERIALS COMPANY         OCCIDENTAL CHEMICAL CORPORATION

24   By: _____            By:_____

25      James H. Colopy

26
        Farella Braun + Martel LLP
27      Counsel for Legacy Vulcan Corp., formerly
        known as Vulcan Materials Company
28

                                   -2-

1  REALSTAR USA, UNION DRYCLEANING
   PRODUCTS USA, FIRBIMATIC,
2  BERGPARMA OF AMERICA, LLC, AMA
   UNIVERSAL, FLUORMATIC MIDWEST
3  LTD., FORENTA LP, WESTERN MULTITEX
   CORP., MARVEL MANUFACTURING,
4  RENZACCI OF AMERICA, SAIL STAR USA,
   VIC MANUFACTURING CORPORATION,
5  M.B.L., INC., GOSS-JEWETT CO. OF
   NORTHERN CALIFORNIA, MCGREGOR
6  SUPPLY COMPANY, S.B. SUPPLY INC.,
   WASHEX MACHINERY OF CALIFORNIA,
7  INC., WORKROOM SUPPLY, INC., TAYLOR
   HOUSEMAN, INC., UNITED FABRICARE
8  SUPPLY, INC., ECHCO SALES INC., MW
   EQUIPMENT, ARTHUR KAJIWARA
9  EQUIPMENT CO., INC., KELLEHER
   EQUIPMENT SUPPLY, INC., US
10 MACHINERY & ENGINEERING CO., INC.,
   WYATT-BENNETT, CORBETT
11 EQUIPMENT, FULLER SUPPLY
   COMPANY, SAV-ON MACHINERY
12 COMPANY, INC. and DOES 1 through 750,
   INCLUSIVE,
13
               Defendants.
14

15     The undersigned parties hereby join in the Notice of Removal filed by Defendant PPG

16 Industries, Inc.

17

18 Dated: _____          Dated: _____

19 THE DOW CHEMICAL COMPANY            E.I. DUPONT DE NEMOURS AND
                                       COMPANY
20 By:_____

21                                     By:_____

22
23 Dated: _____         Dated: 6/26/08

24 VULCAN MATERIALS COMPANY            OCCIDENTAL CHEMICAL CORPORATION

25 By:_____            By: _Stephen C. Lewis_

26

27

28

                              -2-
JOINDER IN NOTICE OF REMOVAL

1   Dated: _____          Dated: _____

2   VALERO ENERGY CORPORATION      STAUFFER CHEMICAL COMPANY

3

4   By:_____          By:_____

5

6   Dated: _6/25/08_____       Dated: _____

7   BOWE-PERMAC, INC., individually and d/b/a  HOYT CORPORATION
    BOWE TEXTILE CLEANING, INC.

8   By:_____         By:_____

9   *Peterson Weyand Martin LLP*
    *Counsel for Bowe Permac, Inc.*

10

11   Dated: _____          Dated: _____

12   R.R. STREET & CO., INC.         MCGRAW EDISON COMPANY,
                        individually and d/b/a AMERICAN

13   By:_____         LAUNDRY MACHINERY, INC.

14                               By:_____

15

16   Dated: _____          Dated: _____

17   AMERICAN LAUNDRY MACHINERY, INC.,  WHITE CONSOLIDATED INDUSTRIES, INC.,
    individually and d/b/a/ AJAX        individually and d/b/a WASHEX MACHINERY

18   MANUFACTURING DIVISION AND MARTIN  DIVISION
    EQUIPMENT

19                               By:_____
    By:_____

20

21

22   Dated: _____          Dated: _____

23   ELECTROLUX CORPORATION        LINDUS S.R.L., individually and d/b/a LINDUS
                        WEST

24   By:_____         By:_____

25

26

27

28

JOINDER IN NOTICE OF REMOVAL

1   Dated: _____           Dated: _____

2   VALERO ENERGY CORPORATION            STAUFFER CHEMICAL COMPANY

3
    By:_____               By:_____
4

5

6   Dated: _____           Dated: _____

7   BOWE-PERMAC, INC., individually and d/b/a    HOYT CORPORATION
    BOWE TEXTILE CLEANING, INC.
8
    By:_____               By:_____
9

10

11  Dated: June 30, 2008                  Dated: _____

12  R.R. STREET & CO., INC.               MCGRAW EDISON COMPANY,
                                          individually and d/b/a AMERICAN
13  By:_____                LAUNDRY MACHINERY, INC.

14                                        By:_____

15

16  Dated: _____           Dated: _____

17  AMERICAN LAUNDRY MACHINERY, INC.,     WHITE CONSOLIDATED INDUSTRIES,
    individually and d/b/a/ AJAX          INC., individually and d/b/a WASHEX
18  MANUFACTURING DIVISION AND MARTIN     MACHINERY DIVISION
    EQUIPMENT
19                                        By:_____
    By:_____
20

21

22  Dated: _____           Dated: _____

23  ELECTROLUX CORPORATION                LINDUS S.R.L., individually and d/b/a LINDUS
                                          WEST
24  By:_____
                                          By:_____
25

26

27

28

-3-

1  Dated: _____          Dated: _____

2  VALERO ENERGY CORPORATION            STAUFFER CHEMICAL COMPANY

3

4  By:_____              By:_____

5

6  Dated: _____          Dated: _____

7  BOWE-PERMAC, INC., individually and d/b/a    HOYT CORPORATION
   BOWE TEXTILE CLEANING, INC.

8
   By:_____              By:_____
9

10

11 Dated: _____          Dated: _____

12 R.R. STREET & CO., INC.              MCGRAW EDISON COMPANY,
                                        individually and d/b/a AMERICAN
13 By:_____              LAUNDRY MACHINERY, INC.

14                                      By:_____

15

16 Dated: _____          Dated: _____

17 AMERICAN LAUNDRY MACHINERY, INC.,    WHITE CONSOLIDATED INDUSTRIES, INC.,
   individually and d/b/a/ AJAX         individually and d/b/a WASHEX MACHINERY
18 MANUFACTURING DIVISION AND MARTIN    DIVISION
   EQUIPMENT
19                                      By:_____
   By:_____
20

21

22 Dated: 6/26/08                       Dated: _____

23 ELECTROLUX CORPORATION               LINDUS S.R.L., individually and d/b/a LINDUS
                                        WEST
24 By:_____
                                        By:_____
25

26

27

28

-3-

1    Dated: _____          Dated: _____

2    VALERO ENERGY CORPORATION          STAUFFER CHEMICAL COMPANY

3

4    By:_____   By:_____

5

6    Dated: _____          Dated: 6/25/08

7    BOWE-PERMAC, INC., individually and d/b/a    HOYT CORPORATION
     BOWE TEXTILE CLEANING, INC.

8    By:_____   By: _____

9

10

11   Dated: _____          Dated: _____

12   R.R. STREET & CO., INC.             MCGRAW EDISON COMPANY,
                                         individually and d/b/a AMERICAN
13   By:_____   LAUNDRY MACHINERY, INC.

14                                       By:_____

15

16   Dated: _____          Dated: _____

17   AMERICAN LAUNDRY MACHINERY, INC.,   WHITE CONSOLIDATED INDUSTRIES, INC.,
     individually and d/b/a/ AJAX        individually and d/b/a WASHEX MACHINERY
18   MANUFACTURING DIVISION AND MARTIN   DIVISION
     EQUIPMENT
19                                       By:_____
     By:_____
20

21

22   Dated: _____          Dated: _____

23   ELECTROLUX CORPORATION              LINDUS S.R.L., individually and d/b/a LINDUS
                                         WEST
24   By:_____
                                         By:_____
25

26

27

28

-3-

1  Dated: 6 30 2008                         Dated: _____

2  COLUMBIA DRYCLEANING MACHINES,           REALSTAR, INC., individually and d/b/a
   a/k/a COLUMBIA/ILSA MACHINES CORP.        REALSTAR USA
3
   By: _____                       By: _____
4

5

6  Dated: _____                    Dated: _____

7  UNION DRYCLEANING PRODUCTS USA            FIRBIMATIC

8  By: _____                       By: _____

9

10 Dated: _____                    Dated: _____

11 BERGPARMA OF AMERICA, LLC                 AMA UNIVERSAL

12 By: _____                       By: _____

13

14 Dated: _____                    Dated: _____

15 FLUORMATIC MIDWEST LTD                    FORENTA LP

16 By: _____                       By: _____

17

18

19 Dated: _____                    Dated: _____

20 WESTERN MULTITEX CORP.                    MARVEL MANUFACTURING COMPANY

21 By: _____                       By: _____

22

23 Dated: _____                    Dated: _____

24 RENZACCI OF AMERICA, INC.                 SAIL STAR USA

25 By: _____                       By: _____

26

27

28

                                    -4-

JOINDER IN NOTICE OF REMOVAL

1

Dated: _____

2

COLUMBIA DRYCLEANING MACHINES,
a/k/a COLUMBIA/ILSA MACHINES CORP.

3

4

By:_____

5

6

Dated: _____

7

UNION DRYCLEANING PRODUCTS USA

8

By:_____

9

10

Dated: _____

11

BERGPARMA OF AMERICA, LLC

12

By:_____

13

14

15

Dated: _____

16

FLUORMATIC MIDWEST LTD

17

By:_____

18

19

Dated: _____

20

WESTERN MULTITEX CORP.

21

By:_____

22

23

Dated: 06/26/08

24

RENZACCI OF AMERICA, INC.

25

By: _____

26

Kelly Kelleher, Vice President

27

28

Dated: _____

REALSTAR, INC., individually and d/b/a
REALSTAR USA

By:_____

Dated: _____

FIRBIMATIC

By:_____

Dated: _____

AMA UNIVERSAL

By:_____

Dated: _____

FORENTA LP

By:_____

Dated: _____

MARVEL MANUFACTURING COMPANY

By:_____

Dated: _____

SAIL STAR USA

By:_____

-4-

JOINDER IN NOTICE OF REMOVAL

1   Dated: _____            Dated: _____

2   COLUMBIA DRYCLEANING MACHINES,         REALSTAR, INC., individually and d/b/a
    a/k/a COLUMBIA/ILSA MACHINES CORP.     REALSTAR USA
3
    By:_____               By:_____
4

5

6   Dated: _____            Dated: _____

7   UNION DRYCLEANING PRODUCTS USA         FIRBIMATIC

8   By:_____               By:_____

9

10  Dated: _____            Dated: _____

11  BERGPARMA OF AMERICA, LLC              AMA UNIVERSAL

12  By:_____               By:_____

13

14
    Dated: _____            Dated: _____
15
    FLUORMATIC MIDWEST LTD                 FORENTA LP
16
    By:_____               By:_____
17

18

19  Dated: _____            Dated: _____

20  WESTERN MULTITEX CORP.                 MARVEL MANUFACTURING COMPANY

21  By:_____               By:_____

22

23  Dated: _____            Dated: __6/25/08__

24  RENZACCI OF AMERICA, INC.              SAIL STAR USA

25  By:_____               By: _____
                                           Peterson Wigans Morton LLP
26                                         Counsel for Sail Star USA

27

28

-4-

JOINDER IN NOTICE OF REMOVAL

1    Dated: ___6/25/08___                    Dated: _____

2    VIC MANUFACTURING CORPORATION          M.B.L., INC.

3    By: _____              By:_____

4    *Peterson Wyemond Norton LLP*
     *Counsel for Vic*

5    Dated: _____             Dated: _____

6    GOSS-JEWETT CO. OF NORTHERN            MCGREGOR SUPPLY COMPANY
7    CALIFORNIA
                                            By:_____
8    By:_____

9

10   Dated: _____             Dated: _____

11   S.B. SUPPLY INC.                       WASHEX MACHINERY OF CALIFORNIA,
12                                          INC.
     By:_____
13                                          By:_____

14

15   Dated: _____             Dated: _____

16   WORKROOM SUPPLY, INC.                  TAYLOR HOUSEMAN, INC.

17   By:_____             By:_____

18

19   Dated: _____             Dated: _____

20   UNITED FABRICARE SUPPLY, INC.          ECHCO SALES INC.

21   By:_____             By:_____

22

23

24   Dated: _____             Dated: _____

25   MW EQUIPMENT                           ARTHUR KAJIWARA EQUIPMENT CO., INC.

26   By:_____             By:_____

27

28

JOINDER IN NOTICE OF REMOVAL

1   Dated: _____          Dated: _____

2   VIC MANUFACTURING CORPORATION     M.B.L., INC.

3   By: _____             By: _____

4

5   Dated: _____          Dated: _____

6   GOSS-JEWETT CO. OF NORTHERN        MCGREGOR SUPPLY COMPANY
7   CALIFORNIA                         By: _____

8   By: _____

9

10  Dated: _6/25/08_____           Dated: _____

11  S.B. SUPPLY INC.                   WASHEX MACHINERY OF CALIFORNIA,
                                       INC.
12  By: _____
                                       By: _____
13

14

15  Dated: _____           Dated: _____

16  WORKROOM SUPPLY, INC.              TAYLOR HOUSEMAN, INC.

17  By: _____              By: _____

18

19  Dated: _____           Dated: _____

20  UNITED FABRICARE SUPPLY, INC.      ECHCO SALES INC.

21  By: _____              By: _____

22

23

24  Dated: _____           Dated: _____

25  MW EQUIPMENT                       ARTHUR KAJIWARA EQUIPMENT CO., INC.

26  By: _____              By: _____

27

28

-5-

JOINDER IN NOTICE OF REMOVAL

1  Dated: _____          Dated: _____

2  VIC MANUFACTURING CORPORATION      M.B.L., INC.

3  By:_____               By:_____

4

5  Dated: _____          Dated: _____

6  GOSS-JEWETT CO. OF NORTHERN        MCGREGOR SUPPLY COMPANY
7  CALIFORNIA
                                       By:_____
8  By:_____

9

10 Dated: _____          Dated: _____

11 S.B. SUPPLY INC.                   WASHEX MACHINERY OF CALIFORNIA,
                                       INC.
12 By:_____
                                       By:_____
13

14

15 Dated: **06/26/08**               Dated: _____

16 WORKROOM SUPPLY, INC.              TAYLOR HOUSEMAN, INC.

17 By:_____               By:_____

18

19 Dated: _____          Dated: _____

20 UNITED FABRICARE SUPPLY, INC.      ECHCO SALES INC.

21 By:_____               By:_____

22

23

24 Dated: _____          Dated: _____

25 MW EQUIPMENT                       ARTHUR KAJIWARA EQUIPMENT CO., INC.

26 By:_____               By:_____

27

28

JOINDER IN NOTICE OF REMOVAL

1    Dated: _____          Dated: _____

2    VIC MANUFACTURING CORPORATION       M.B.L., INC.

3    By:_____               By:_____

4

5    Dated: _____          Dated: _____

6    GOSS-JEWETT CO. OF NORTHERN         MCGREGOR SUPPLY COMPANY
     CALIFORNIA
7                                       By:_____

8    By:_____

9

10   Dated: _____          Dated: _____

11   S.B. SUPPLY INC.                   WASHEX MACHINERY OF CALIFORNIA,
                                        INC.
12   By:_____
                                        By:_____
13

14

15   Dated: _____          Dated: _____

16   WORKROOM SUPPLY, INC.              TAYLOR HOUSEMAN, INC.

17   By:_____               By:_____

18

19   Dated: _____          Dated: _____

20   UNITED FABRICARE SUPPLY, INC.      ECHCO SALES INC.

21   By:_____               By:_____

22      Patrick Maloney
        SBN 197894
23
     Dated:  6/26/2008                 Dated: _____
24
     MW EQUIPMENT                       ARTHUR KAJIWARA EQUIPMENT CO., INC.
25
     By:_____               By:_____
26

27

28

-5-

JOINDER IN NOTICE OF REMOVAL

| | | |
|---|---|---|
| 1 | Dated: _____ | Dated: _6/26/08_ |
| 2 | VIC MANUFACTURING CORPORATION | M.B.L., INC. |
| 3 | By:_____ | By _[signature]_ |
| 4 | | |
| 5 | Dated: _____ | Dated: _____ |
| 6 | GOSS-JEWETT CO. OF NORTHERN | MCGREGOR SUPPLY COMPANY |
| 7 | CALIFORNIA | By:_____ |
| 8 | By:_____ | |
| 9 | | |
| 10 | Dated: _____ | Dated: _____ |
| 11 | S.B. SUPPLY INC. | WASHEX MACHINERY OF CALIFORNIA, |
| 12 | By:_____ | INC. |
| 13 | | By:_____ |
| 14 | | |
| 15 | Dated: _____ | Dated: _____ |
| 16 | WORKROOM SUPPLY, INC. | TAYLOR HOUSEMAN, INC. |
| 17 | By:_____ | By:_____ |
| 18 | | |
| 19 | Dated: _____ | Dated: _____ |
| 20 | UNITED FABRICARE SUPPLY, INC. | ECHCO SALES INC. |
| 21 | By:_____ | By:_____ |
| 22 | | |
| 23 | | |
| 24 | Dated: _____ | Dated: _____ |
| 25 | MW EQUIPMENT | ARTHUR KAJIWARA EQUIPMENT CO., INC. |
| 26 | By:_____ | By:_____ |
| 27 | | |
| 28 | | |

JOINDER IN NOTICE OF REMOVAL

1   Dated: _____          Dated: _____

2   VIC MANUFACTURING CORPORATION     M.B.L., INC.

3   By:_____              By:_____

4

5   Dated: _____          Dated: 7/1/08

6   GOSS-JEWETT CO. OF NORTHERN        MCGREGOR SUPPLY COMPANY

7   CALIFORNIA                        By:_____

8   By:_____

9

10  Dated: _____          Dated: _____

11  S.B. SUPPLY INC.                  WASHEX MACHINERY OF CALIFORNIA,

12  By:_____              INC.

13                                    By:_____

14

15  Dated: _____          Dated: _____

16  WORKROOM SUPPLY, INC.             TAYLOR HOUSEMAN, INC.

17  By:_____              By:_____

18

19  Dated: _____          Dated: _____

20  UNITED FABRICARE SUPPLY, INC.     ECHCO SALES INC.

21  By:_____              By:_____

22

23

24  Dated: _____          Dated: _____

25  MW EQUIPMENT                      ARTHUR KAJIWARA EQUIPMENT CO., INC.

26  By:_____              By:_____

27

28

-5-

1   Dated: _____          Dated: _____

2   VIC MANUFACTURING CORPORATION     M.B.L., INC.

3   By:_____              By:_____

4

5   Dated: _____          Dated: _____

6   GOSS-JEWETT CO. OF NORTHERN        MCGREGOR SUPPLY COMPANY
7   CALIFORNIA                         By:_____

8   By:_____

9

10  Dated: _____          Dated: _____

11  S.B. SUPPLY INC.                  WASHEX MACHINERY OF CALIFORNIA,
                                       INC.
12  By:_____
                                       By:_____
13

14

15  Dated: _____          Dated: 2-7-08

16  WORKROOM SUPPLY, INC.              TAYLOR HOUSEMAN, INC.

17  By:_____               By: _Randy Houseman_ V.P.

18

19  Dated: _____          Dated: _____

20  UNITED FABRICARE SUPPLY, INC.      ECHCO SALES INC.

21  By:_____               By:_____

22

23

24  Dated: _____          Dated: _____

25  MW EQUIPMENT                       ARTHUR KAJIWARA EQUIPMENT CO., INC.

26  By:_____               By:_____

27

28

1   Dated: 06/26/08

2   KELLEHER EQUIPMENT SUPPLY, INC.          Dated: _____

3   By: _____                      US MACHINERY & ENGINEERING CO., INC.
        Kelly Kelleher, Vice President
4                                            By: _____

5   Dated: _____                   Dated: _____

6   WYATT-BENNETT                            CORBETT EQUIPMENT

7   By: _____                      By: _____

8

9

10  Dated: _____                   Dated: _____

11  FULLER SUPPLY COMPANY                    SAV-ON- MACHINERY COMPANY, INC.

12  By: _____                      By: _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-6-

1  | Dated: _____          Dated: _____

2  | KELLEHER EQUIPMENT SUPPLY, INC.     US MACHINERY & ENGINEERING CO., INC.

3  | By:_____               By:_____

4

5  | Dated: _6/27/08_

6  | WYATT-BENNETT                     Dated: _____

7  | By: _____              CORBETT EQUIPMENT

8                                     By:_____

9

10 | Dated: _____           Dated: _____

11 | FULLER SUPPLY COMPANY             SAV-ON- MACHINERY COMPANY, INC.

12 | By:_____               By:_____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-6-

1 | Gary J. Smith (SB #141393)
2 | Ryan R. Tacorda (SB #227070)
  | BEVERIDGE & DIAMOND, P.C.
3 | 456 Montgomery Street, Suite 1800
  | San Francisco, CA 94104-1251
4 | Telephone: (415) 262-4000
  | Facsimile: (415) 262-4040
5 |
6 | Robert Brager
  | BEVERIDGE & DIAMOND, P.C.
7 | 201 North Charles Street, Suite 2210
  | Baltimore, MD 21201-4150
8 | Telephone: (410) 230-3850
  | Facsimile: (410) 230-3868
9 |
10 | Attorneys for Defendant
  | PPG INDUSTRIES, INC.

ORIGINAL *E-filing*
FILED

JUN - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**SI**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

# CV 08 3267

11
12
13

14 | CALIFORNIA WATER SERVICE
    | COMPANY,
15 |                    Plaintiff,
16 |            vs.
17 | THE DOW CHEMICAL COMPANY; E.I.
    | DUPONT DE NEMOURS AND COMPANY;
18 | PPG INDUSTRIES, INC.; VULCAN
    | MATERIALS COMPANY; OCCIDENTAL
19 | CHEMICAL CORPORATION; VALERO
    | ENERGY CORPORATION; STAUFFER
20 | CHEMICAL COMPANY; BOWE-PERMAC,
    | INC., individually and d/b/a BOWE TEXTILE
21 | CLEANING, INC.; HOYT CORPORATION;
    | R.R. STREET & CO., INC.; MCGRAW
22 | EDISON COMPANY, individually and d/b/a
    | AMERICAN LAUNDRY MACHINERY, INC.;
23 | AMERICAN LAUNDRY MACHINERY, INC.,
    | individually and d/b/a AJAX
24 | MANUFACTURING DIVISION AND
    | MARTIN EQUIPMENT, WHITE
25 | CONSOLIDATED INDUSTRIES, INC.,
    | individually and d/b/a WASHEX
26 | MACHINERY DIVISION, ELECTROLUX
    | CORPORATION, LINDUS S.R.L., individually
27 | and d/b/a LINDUS WEST, COLUMBIA
    | DRYCLEANING MACHINES, a/k/a
28 | COLUMBIA/ILSA MACHINES CORP.,
    | REALSTAR, INC., individually and d/b/a

CASE NO.

**CONSENT TO REMOVAL**

-1-

CONSENT TO REMOVAL

1 | REALSTAR USA, UNION DRYCLEANING
PRODUCTS USA, FIRBIMATIC,
2 | BERGPARMA OF AMERICA, LLC, AMA
UNIVERSAL, FLUORMATIC MIDWEST
3 | LTD., FORENTA LP, WESTERN MULTITEX
CORP., MARVEL MANUFACTURING,
4 | RENZACCI OF AMERICA, SAIL STAR USA,
VIC MANUFACTURING CORPORATION,
5 | M.B.L., INC., GOSS-JEWETT CO. OF
NORTHERN CALIFORNIA, MCGREGOR
6 | SUPPLY COMPANY, S.B. SUPPLY INC.,
WASHEX MACHINERY OF CALIFORNIA,
7 | INC., WORKROOM SUPPLY, INC., TAYLOR
HOUSEMAN, INC., UNITED FABRICARE
8 | SUPPLY, INC., ECHCO SALES INC., MW
EQUIPMENT, ARTHUR KAJIWARA
9 | EQUIPMENT CO., INC., KELLEHER
EQUIPMENT SUPPLY, INC., US
10 | MACHINERY & ENGINEERING CO., INC.,
WYATT-BENNETT, CORBETT
11 | EQUIPMENT, FULLER SUPPLY
COMPANY, SAV-ON MACHINERY
12 | COMPANY, INC. and DOES 1 through 750,
INCLUSIVE,
13
              Defendants.
14

15 |      The undersigned hereby consents to the removal of this action from the Superior Court in and

16 | for the County of San Mateo to the United States District Court for the Northern District of

17 | California.

18

19

20 | Dated: _7-7-08_

21
Arthur Kajiwara Equipment Company, Inc.

22

23 | By:

24

25

26

27

28

                                    -2-

CONSENT TO REMOVAL

ORIGINAL
FILED

1  Gary J. Smith (SB #141393)
2  Ryan R. Tacorda (SB #227070)
   BEVERIDGE & DIAMOND, P.C.          JUL - 7 2008
3  456 Montgomery Street, Suite 1800
   San Francisco, CA 94104-1251          RICHARD W. WIEKING
4  Telephone: (415) 262-4000          CLERK, U.S. DISTRICT COURT
   Facsimile: (415) 262-4040       NORTHERN DISTRICT OF CALIFORNIA
5                                                    E-filing
6  Robert Brager
   BEVERIDGE & DIAMOND, P.C.
7  201 North Charles Street, Suite 2210
   Baltimore, MD 21201-4150
8  Telephone: (410) 230-3850
   Facsimile: (410) 230-3868
9
   Attorneys for Defendant
10 PPG INDUSTRIES, INC.                                    SI

11            UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                          CV CASE NO. 08        3267
   CALIFORNIA WATER SERVICE
14 COMPANY,

15            Plaintiff,              CONSENT TO REMOVAL

16       vs.

17 THE DOW CHEMICAL COMPANY; E.I.
   DUPONT DE NEMOURS AND COMPANY;
18 PPG INDUSTRIES, INC.; VULCAN
   MATERIALS COMPANY; OCCIDENTAL
19 CHEMICAL CORPORATION; VALERO
   ENERGY CORPORATION; STAUFFER
20 CHEMICAL COMPANY; BOWE-PERMAC,
   INC., individually and d/b/a BOWE TEXTILE
21 CLEANING, INC.; HOYT CORPORATION;
   R.R. STREET & CO., INC.; MCGRAW
22 EDISON COMPANY, individually and d/b/a
   AMERICAN LAUNDRY MACHINERY, INC.,
23 AMERICAN LAUNDRY MACHINERY, INC.,
   individually and d/b/a AJAX
24 MANUFACTURING DIVISION AND
   MARTIN EQUIPMENT, WHITE
25 CONSOLIDATED INDUSTRIES, INC.,
   individually and d/b/a WASHEX
26 MACHINERY DIVISION, ELECTROLUX
   CORPORATION, LINDUS S.R.L., individually
27 and d/b/a LINDUS WEST, COLUMBIA
   DRYCLEANING MACHINES, a/k/a
28 COLUMBIA/ILSA MACHINES CORP.,
   REALSTAR, INC., individually and d/b/a

                              -1-

CONSENT TO REMOVAL

1  REALSTAR USA. UNION DRYCLEANING
   PRODUCTS USA, FIRBIMATIC,
2  BERGPARMA OF AMERICA, LLC, AMA
   UNIVERSAL, FLUORMATIC MIDWEST
3  LTD., FORENTA LP, WESTERN MULTITEX
   CORP., MARVEL MANUFACTURING,
4  RENZACCI OF AMERICA, SAILSTAR USA,
   VIC MANUFACTURING CORPORATION,
5  M.B.L., INC., GOSS-JEWETT CO. OF
   NORTHERN CALIFORNIA, MCGREGOR
6  SUPPLY COMPANY, S.B. SUPPLY INC.,
   WASHEX MACHINERY OF CALIFORNIA,
7  INC., WORKROOM SUPPLY, INC.,
   TAYLOR HOUSEMAN, INC., UNITED
8  FABRICARE SUPPLY, INC., ECHCO SALES
   INC., MW EQUIPMENT, ARTHUR
9  KAJIWARA EQUIPMENT CO., INC.,
   KELLEHER EQUIPMENT SUPPLY, INC., US
10 MACHINERY & ENGINEERING CO., INC.,
   WYATT-BENNETT, CORBETT
11 EQUIPMENT, FULLER SUPPLY
   COMPANY, SAV-ON MACHINERY
12 COMPANY, INC. and DOES 1 through 750,
   INCLUSIVE,
13
14           Defendants.

15        The undersigned hereby consents to the removal of this action from the Superior Court in and

16 for the County of San Mateo to the United States District Court for the Northern District of

17 California.

18

19

20 Dated: _June 26, 2008_

21 Corbett Equipment

22

23 By: _____

24 THOMAS W. HOOD, ATTORNEY AT LAW
   HOOD AND REED
25 18141 BEACH BLVD. SUITE 370
   HUNTINGTON BEACH, CA. 92648

26

27

28

-2-

1    STEVEN H. GURNEE, ESQ. SB# 66056
     JOHN A. MASON, ESQ. SB# 166996
2    GURNEE & DANIELS LLP
     2240 Douglas Boulevard, Suite 150
3    Roseville, CA  95661-3805
     Telephone    (916) 797-3100
4    Facsimile    (916) 797-3131
     Attorneys for Defendant
5    VALERO ENERGY CORPORATION

**ORIGINAL
FILED**

JUL - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11   CALIFORNIA WATER SERVICE          **CV 08     3267**
     COMPANY,                          CASE NO.
12
                 Plaintiff,            **CONSENT TO REMOVAL**
13
           vs.
14
     THE DOW CHEMICAL COMPANY; E.I.
15   DUPONT DE NEMOURS AND COMPANY;
     PPG INDUSTRIES, INC.; VULCAN
16   MATERIALS COMPANY; OCCIDENTAL
     CHEMICAL CORPORATION; VALERO
17   ENERGY CORPORATION; STAUFFER
     CHEMICAL COMPANY; BOWE-PERMAC,
18   INC., individually and d/b/a BOWE TEXTILE
     CLEANING, INC.; HOYT CORPORATION;
19   R.R. STREET & CO., INC.; MCGRAW
     EDISON COMPANY, individually and d/b/a
20   AMERICAN LAUNDRY MACHINERY, INC.,
     AMERICAN LAUNDRY MACHINERY, INC.,
21   individually and d/b/a AJAX
     MANUFACTURING DIVISION AND
22   MARTIN EQUIPMENT, WHITE
     CONSOLIDATED INDUSTRIES, INC.,
23   individually and d/b/a WASHEX
     MACHINERY DIVISION, ELECTROLUX
24   CORPORATION, LINDUS S.R.L., individually
     and d/b/a LINDUS WEST, COLUMBIA
25   DRYCLEANING MACHINES, a/k/a
     COLUMBIA/ILSA MACHINES CORP.,
26   REALSTAR, INC., individually and d/b/a
     REALSTAR USA, UNION DRYCLEANING
27   PRODUCTS USA, FIRBIMATIC,
     BERGPARMA OF AMERICA, LLC, AMA
28
     CONSENT TO REMOVAL                                          1
     Case No.:

1   UNIVERSAL, FLUORMATIC MIDWEST
    LTD., FORENTA LP, WESTERN MULTITEX
    CORP., MARVEL MANUFACTURING,
2   RENZACCI OF AMERICA, SAIL STAR USA,
    VIC MANUFACTURING CORPORATION,
3   M.B.L., INC., GOSS-JEWETT CO. OF
    NORTHERN CALIFORNIA, MCGREGOR
4   SUPPLY COMPANY, S.B. SUPPLY INC.,
    WASHEX MACHINERY OF CALIFORNIA,
5   INC., WORKROOM SUPPLY, INC., TAYLOR
    HOUSEMAN, INC., UNITED FABRICARE
6   SUPPLY, INC., ECHCO SALES INC., MW
    EQUIPMENT, ARTHUR KAJIWARA
7   EQUIPMENT CO., INC., KELLEHER
    EQUIPMENT SUPPLY, INC., US
8   MACHINERY & ENGINEERING CO., INC.,
    WYATT-BENNETT, CORBETT
9   EQUIPMENT, FULLER SUPPLY
    COMPANY, SAV-ON MACHINERY
10  COMPANY, INC. and DOES 1 through 750,
    INCLUSIVE,
11

12          Defendants.

13

14                   **CONSENT TO REMOVE**

15      Defendant, Valero Energy Corporation, without waiver of any challenges to personal

16  jurisdiction, hereby consents to the removal of this action from the Superior Court of the State of

17  California, County of San Mateo (originally denominated Case No. CV 473093), to the District

18  Court of the United States for the Northern District of California.

19

20  Dated:   June 25, 2008                    GURNEE & DANIELS LLP

21

22                                   By _____

23                                       STEVEN H. GURNEE, ESQ.
                                         JOHN A. MASON, ESQ.
24                                       Attorneys for Defendant
                                         VALERO ENERGY CORPORATION

25

26

27

28

CONSENT TO REMOVAL                                                           2
Case No.:



1 | Gary J. Smith (SB #141393)
2 | Ryan R. Tacorda (SB #227070)
   | BEVERIDGE & DIAMOND, P.C.
3 | 456 Montgomery Street, Suite 1800
   | San Francisco, CA 94104-1251
4 | Telephone: (415) 262-4000
   | Facsimile: (415) 262-4040
5 |
6 | Robert Brager
   | BEVERIDGE & DIAMOND, P.C.
7 | 201 North Charles Street, Suite 2210
   | Baltimore, MD 21201-4150
8 | Telephone: (410) 230-3850
   | Facsimile: (410) 230-3868
9 |
   | Attorneys for Defendant
10 | PPG INDUSTRIES, INC.

**ORIGINAL FILED**

JUL – 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

11 | UNITED STATES DISTRICT COURT

12 | NORTHERN DISTRICT OF CALIFORNIA

**SI**

13 | CALIFORNIA WATER SERVICE

**CV 08    3267**

14 | COMPANY,                                            CASE NO.:

15 |                    Plaintiff,          CONSENT TO REMOVAL

16 |          vs.

17 | THE DOW CHEMICAL COMPANY; E.I.
    | DUPONT DE NEMOURS AND COMPANY;
18 | PPG INDUSTRIES, INC.; VULCAN
    | MATERIALS COMPANY; OCCIDENTAL
19 | CHEMICAL CORPORATION; VALERO
    | ENERGY CORPORATION; STAUFFER
20 | CHEMICAL COMPANY; BOWE-PERMAC,
    | INC., individually and d/b/a BOWE TEXTILE
21 | CLEANING, INC.; HOYT CORPORATION;
    | R.R. STREET & CO., INC.; MCGRAW
22 | EDISON COMPANY, individually and d/b/a
    | AMERICAN LAUNDRY MACHINERY, INC.,
23 | AMERICAN LAUNDRY MACHINERY, INC.,
    | individually and d/b/a AJAX
24 | MANUFACTURING DIVISION AND
    | MARTIN EQUIPMENT, WHITE
25 | CONSOLIDATED INDUSTRIES, INC.,
    | individually and d/b/a WASHEX
26 | MACHINERY DIVISION, ELECTROLUX
    | CORPORATION, LINDUS S.R.L., individually
27 | and d/b/a LINDUS WEST, COLUMBIA
    | DRYCLEANING MACHINES, a/k/a
28 | COLUMBIA/ILSA MACHINES CORP.,
    | REALSTAR, INC., individually and d/b/a

-1-

CONSENT TO REMOVAL

1  REALSTAR USA, UNION DRYCLEANING
   PRODUCTS USA, FIRBIMATIC,
2  BERGPARMA OF AMERICA, LLC, AMA
   UNIVERSAL, FLUORMATIC MIDWEST
3  LTD., FORENTA LP, WESTERN MULTITEX
   CORP., MARVEL MANUFACTURING,
4  RENZACCI OF AMERICA, SAIL STAR USA,
   VIC MANUFACTURING CORPORATION,
5  M.B.L., INC., GOSS-JEWETT CO. OF
   NORTHERN CALIFORNIA, MCGREGOR
6  SUPPLY COMPANY, S.B. SUPPLY INC.,
   WASHEX MACHINERY OF CALIFORNIA,
7  INC., WORKROOM SUPPLY, INC., TAYLOR
   HOUSEMAN, INC., UNITED FABRICARE
8  SUPPLY, INC., ECHCO SALES INC., MW
   EQUIPMENT, ARTHUR KAJIWARA
9  EQUIPMENT CO., INC., KELLEHER
   EQUIPMENT SUPPLY, INC., US
10 MACHINERY & ENGINEERING CO., INC.,
   WYATT-BENNETT, CORBETT
11 EQUIPMENT, FULLER SUPPLY
   COMPANY, SAV-ON MACHINERY
12 COMPANY, INC. and DOES 1 through 750,
   INCLUSIVE,
13
              Defendants.
14

15        The undersigned hereby consents to the removal of this action from the Superior Court in and

16  for the County of San Mateo to the United States District Court for the Northern District of

17  California.

18

19

20  Dated: 6/30/05

21  Forenta, L.P.

22

23  By:

24        Thomas H. Clarke, Jr.
          RMKB
          Counsel for Forenta, LP

25

26

27

28

-2-

**ORIGINAL
FILED**

JUL − 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

1  Gary J. Smith (SB #141393)
   Ryan R. Tacorda (SB #227070)
2  BEVERIDGE & DIAMOND, P.C.
3  456 Montgomery Street, Suite 1800
   San Francisco, CA 94104-1251
4  Telephone: (415) 262-4000
   Facsimile: (415) 262-4040
5
6  Robert Brager
   BEVERIDGE & DIAMOND, P.C.
7  201 North Charles Street, Suite 2210
   Baltimore, MD 21201-4150
8  Telephone: (410) 230-3850
   Facsimile: (410) 230-3868
9
   Attorneys for Defendant
10 PPG INDUSTRIES, INC.

11              **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13

14 CALIFORNIA WATER SERVICE
   COMPANY,
15             Plaintiff,
16      vs.
17 THE DOW CHEMICAL COMPANY; E.I.
   DUPONT DE NEMOURS AND COMPANY;
18 PPG INDUSTRIES, INC.; VULCAN
   MATERIALS COMPANY; OCCIDENTAL
19 CHEMICAL CORPORATION; VALERO
   ENERGY CORPORATION; STAUFFER
20 CHEMICAL COMPANY; BOWE-PERMAC,
   INC., individually and d/b/a BOWE TEXTILE
21 CLEANING, INC.; HOYT CORPORATION;
   R.R. STREET & CO., INC.; MCGRAW
22 EDISON COMPANY, individually and d/b/a
   AMERICAN LAUNDRY MACHINERY, INC.,
23 AMERICAN LAUNDRY MACHINERY, INC.,
   individually and d/b/a AJAX
24 MANUFACTURING DIVISION AND
   MARTIN EQUIPMENT, WHITE
25 CONSOLIDATED INDUSTRIES, INC.,
   individually and d/b/a WASHEX
26 MACHINERY DIVISION, ELECTROLUX
   CORPORATION, LINDUS S.R.L., individually
27 and d/b/a LINDUS WEST, COLUMBIA
   DRYCLEANING MACHINES, a/k/a
28 COLUMBIA/ILSA MACHINES CORP.,
   REALSTAR, INC., individually and d/b/a

**CASE NO.**

**CV** **08** **3267**  **SI**

**CONSENT TO REMOVAL**

−1−

CONSENT TO REMOVAL

1  REALSTAR USA, UNION DRYCLEANING
   PRODUCTS USA, FIRBIMATIC,
2  BERGPARMA OF AMERICA, LLC, AMA
   UNIVERSAL, FLUORMATIC MIDWEST
3  LTD., FORENTA LP, WESTERN MULTITEX
   CORP., MARVEL MANUFACTURING,
4  RENZACCI OF AMERICA, SAIL STAR USA,
   VIC MANUFACTURING CORPORATION,
5  M.B.L., INC., GOSS-JEWETT CO. OF
   NORTHERN CALIFORNIA, MCGREGOR
6  SUPPLY COMPANY, S.B. SUPPLY INC.,
   WASHEX MACHINERY OF CALIFORNIA,
7  INC., WORKROOM SUPPLY, INC.,
   TAYLOR HOUSEMAN, INC., UNITED
8  FABRICARE SUPPLY, INC., ECHCO SALES
   INC., MW EQUIPMENT, ARTHUR
9  KAJIWARA EQUIPMENT CO., INC.,
   KELLEHER EQUIPMENT SUPPLY, INC., US
10 MACHINERY & ENGINEERING CO., INC.,
   WYATT-BENNETT, CORBETT
11 EQUIPMENT, FULLER SUPPLY
   COMPANY, SAV-ON MACHINERY
12 COMPANY, INC. and DOES 1 through 750,
   INCLUSIVE,
13
14                    Defendants.

15      The undersigned hereby consents to the removal of this action, entitled *California Water*

16 *Service Company v. The Dow Chemical Company*, Case Number CIV 473095, from the Superior

17 Court in and for the County of San Mateo to the United States District Court for the Northern

18 District of California.

19

20

21 Dated: 07/07/08

22

23 Washex Machinery of California, Inc.

24 By: _Gail M Dadden, Secretary_

25

26

27

28

-2-

1    Gary J. Smith (SB #141393)
     Ryan R. Tacorda (SB #227070)
2    BEVERIDGE & DIAMOND, P.C.
     456 Montgomery Street, Suite 1800
3    San Francisco, CA 94104-1251
     Telephone: (415) 262-4000
4    Facsimile: (415) 262-4040

5
     Robert Brager
6    BEVERIDGE & DIAMOND, P.C.
     201 North Charles Street, Suite 2210
7    Baltimore, MD 21201-4150
     Telephone: (410) 230-3850
8    Facsimile: (410) 230-3868

9
     Attorneys for Defendant
10   PPG INDUSTRIES, INC.

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13
     CALIFORNIA WATER SERVICE                CASE NO.    **3267**
14   COMPANY,

15              Plaintiff,                   **DECLARATION OF GARY J. SMITH IN
                                             SUPPORT OF NOTICE OF REMOVAL OF
16        vs.                                ACTION UNDER 28 U.S.C. § 1441(b)
                                             (ORIGINAL JURISDICTION)**
17   THE DOW CHEMICAL COMPANY; E.I.
     DUPONT DE NEMOURS AND COMPANY;
18   PPG INDUSTRIES, INC.; VULCAN
     MATERIALS COMPANY; OCCIDENTAL
19   CHEMICAL CORPORATION; VALERO
     ENERGY CORPORATION; STAUFFER
20   CHEMICAL COMPANY; BOWE-PERMAC,
     INC., individually and d/b/a BOWE TEXTILE
21   CLEANING, INC.; HOYT CORPORATION;
     R.R. STREET & CO., INC.; MCGRAW
22   EDISON COMPANY, individually and d/b/a
     AMERICAN LAUNDRY MACHINERY, INC.,
23   AMERICAN LAUNDRY MACHINERY, INC.,
     individually and d/b/a AJAX
24   MANUFACTURING DIVISION AND
     MARTIN EQUIPMENT, WHITE
25   CONSOLIDATED INDUSTRIES, INC.,
     individually and d/b/a WASHEX
26   MACHINERY DIVISION, ELECTROLUX
     CORPORATION, LINDUS S.R.L., individually
27   and d/b/a LINDUS WEST, COLUMBIA
     DRYCLEANING MACHINES, a/k/a

28                                      -1-

ORIGINAL FILED
JUN - 7 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

SI

1  COLUMBIA/ILSA MACHINES CORP.,
   REALSTAR, INC., individually and d/b/a
2  REALSTAR USA, UNION DRYCLEANING
   PRODUCTS USA, FIRBIMATIC,
3  BERGPARMA OF AMERICA, LLC, AMA
   UNIVERSAL, FLUORMATIC MIDWEST
4  LTD., FORENTA LP, WESTERN MULTITEX
   CORP., MARVEL MANUFACTURING,
5  RENZACCI OF AMERICA, SAIL STAR USA,
   VIC MANUFACTURING CORPORATION,
6  M.B.L., INC., GOSS-JEWETT CO. OF
   NORTHERN CALIFORNIA, MCGREGOR
7  SUPPLY COMPANY, S.B. SUPPLY INC.,
   WASHEX MACHINERY OF CALIFORNIA,
8  INC., WORKROOM SUPPLY, INC., TAYLOR
   HOUSEMAN, INC., UNITED FABRICARE
9  SUPPLY, INC., ECHCO SALES INC., MW
   EQUIPMENT, ARTHUR KAJIWARA
10 EQUIPMENT CO., INC., KELLEHER
   EQUIPMENT SUPPLY, INC., US
11 MACHINERY & ENGINEERING CO., INC.,
   WYATT-BENNETT, CORBETT
12 EQUIPMENT, FULLER SUPPLY
   COMPANY, SAV-ON MACHINERY
13 COMPANY, INC. and DOES 1 through 750,
   INCLUSIVE,
14
                 Defendants.
15

16

17        I, Gary J. Smith, declare:

18        1.    I am an attorney licensed to practice law before the courts in the State of California.  I

19 am a Principal at the law firm of Beveridge & Diamond, P.C., which represents defendant PPG

20 Industries, Inc. in the above referenced action.

21        2.    The following facts are within my personal knowledge and, if called to testify to the

22 matters stated herein, I could and would competently do so.

23        3.    Attached as Exhibit A is a true and correct copy of the Amended Complaint in

24 *Department of Toxic Substances Control v. City of Chico*, Case No. Civ. S-02-0442 LKK DAD

25 (E.D. Cal. filed Dec. 3, 2002) (referred to as the "DTSC CERCLA Litigation").

26        4.    Attached as Exhibit B is a true and correct copy of the Settlement Agreement and

27 Consent Decree Between Department of Toxic Substances Control and Plaintiff in the DTSC

28                                    -2-
   _____
   DECLARATION OF GARY J. SMITH IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
   UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1    CERCLA Litigation which was approved by the United States District Court for the Eastern District

2    of California on May 23, 2007.

3         5.      Attached as Exhibit C is a true and correct copy of the letter I received from Richard

4    T. Petrillo on June 27, 2008, on behalf of defendant Mondial Drycleaning Products, Inc. (improperly

5    named Union Drycleaning Products U.S.A. in Plaintiff's Complaint) which consents to the Notice of

6    Removal in the above-referenced case.

7         6.      In order to request that defendant Stauffer Chemical Company ("Stauffer") join or

8    consent to the Notice of Removal in the above-referenced action, I attempted to contact Stauffer and

9    its counsel. On information and belief, Stauffer no longer exists. This is supported by the California

10    Business Portal on the California Secretary of State website, which shows Stauffer surrendered its

11    right to transact business in California in 1987.

12        7.      In order to request that defendant Firbimatic join or consent to the Notice of

13    Removal, I contacted Tito Mazzetta, local counsel for Firbimatic. On June 27, 2008, Mr. Mazzetta

14    informed me that Firbimatic had not been served in the above-referenced action. On June 27, 2008,

15    Mr. Mazzetta also informed me that defendant RealStar Inc. d/b/a RealStar USA ("RealStar"), which

16    he also represents, had not been served in the above-referenced action. In addition, Richard T.

17    Petrillo, authorized to act on Firbimatic and RealStar's behalves, consented to removal for both

18    Firbimatic and RealStar if served. Attached as Exhibits D and E are true and correct copies of the

19    letters I received on June 30, 2008 from Mr. Petrillo providing such consent for Firbimatic and

20    RealStar, respectively.

21        8.      Attached as Exhibit F is a true and correct copy of the letter I received from Probal G.

22    Young on behalf of defendant Echco Sales Co., Inc. ("Echco") which consents to the Notice of

23    Removal in the above-referenced case in the event Echco is properly served.

24

25

26

27

28

DECLARATION OF GARY J. SMITH IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1    I declare under the penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3    Executed this ___7___ day of July 2008 in San Francisco, California.

4

5                                        By: _____
                                              Gary J. Smith

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        -4-
DECLARATION OF GARY J. SMITH IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

EXHIBIT A

1  BILL LOCKYER
   Attorney General of the State of California
2  THEODORA BERGER
   Senior Assistant Attorney General
3  SUSAN S. FIERING (S.B. # 121621)
   TIMOTHY E. SULLIVAN (S.B. # 197054)
4    Deputy Attorneys General
   1515 Clay Street, 20th Floor
5  P.O. Box 70550
   Oakland, CA 94612-0550
6  Telephone: (510) 622-2100
   Fax: (510) 622-2270
7

8  Attorneys for Plaintiff
   CALIFORNIA DEPARTMENT OF TOXIC
9  SUBSTANCES CONTROL



10

11              UNITED STATES DISTRICT COURT

12          FOR THE EASTERN DISTRICT OF CALIFORNIA

13

| 14 | CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, | Case No. CIV.S-02-0442 LKK DAD |
|---|---|---|
| 15 | | |
| 16 | Plaintiff, | AMENDED COMPLAINT FOR RECOVERY OF RESPONSE COSTS; DECLARATORY |
| 17 | v. | RELIEF; INJUNCTIVE RELIEF; ENFORCEMENT OF |
| 18 | CITY OF CHICO, CALIFORNIA, a California municipality; NORET, INC., a California corporation; GOLDIE OLSON, an individual; PEDEN ENTERPRISES, a California corporation; JOHN | ADMINISTRATIVE ORDER; AND TREBLE DAMAGES |

CITY OF CHICO, CALIFORNIA, a California
municipality; NORET, INC., a California corporation;
GOLDIE OLSON, an individual; PEDEN
ENTERPRISES, a California corporation; JOHN
PEDEN, an individual; LORENA PEDEN, an
individual; SUNSET VIEW CEMETERY
ASSOCIATION, INC., a California corporation;
NORVILLE R. WEISS, an individual; JANET L.
WEISS, an individual; and CALIFORNIA WATER
SERVICE COMPANY, a California Corporation,

                                    Defendants.

26      Plaintiff, the California Department of Toxic Substances Control ("DTSC" or the

27  "Department"), alleges as follows:

28

                              1.

28

## JURISDICTION

1.    This Court has jurisdiction over DTSC's federal law claims, which arise under Chapter 103 of Title 42 U.S.C., pursuant to 28 U.S.C. section 1331 and 42 U.S.C. section 9613(b).

2.    This Court has jurisdiction over DTSC's state law claims under the supplemental jurisdiction provision of 28 U.S.C. section 1367(a) and under 28 U.S.C. section 2201, in that the state and federal claims arise from common facts relating to release of hazardous substances and remediation of or failure to remediate the resulting contamination, as hereinafter more fully appears.

## VENUE

3.    Venue is proper in this District pursuant to 28 U.S.C. section 1391(b) and 42 U.S.C. section 9613(b) because the release or threatened release of hazardous substances occurred in this District, and the nuisance is located in this District.

## STATEMENT OF THE ACTION

4.    Pursuant to section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. section 9601 et seq., DTSC seeks to recover from defendants jointly and severally all costs incurred in response to certain releases and/or threatened releases of hazardous substances, including, but not limited to, perchloroethylene in the soil and groundwater underneath the central business district of the City of Chico, California (the "Site").

5.    Pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2), DTSC also seeks a declaratory judgment that defendants are jointly and severally liable for all additional costs incurred by DTSC in response to releases and/or threatened releases of hazardous substances at the Site.

6.    Pursuant to California Health and Safety Code section 58009, DTSC seeks injunctive relief to abate a public nuisance consisting of contamination at the Site.

7.    Pursuant to California Health and Safety Code section 25358.3, DTSC seeks injunctive relief to abate an imminent or substantial endangerment to public health and safety or

2.

1   to the environment.

2       8.      Pursuant to California Health and Safety Code section 25358.3, DTSC seeks to

3   enforce administrative orders issued to various defendants for investigation and remediation of

4   the Site.

5       9.      Pursuant to California Health and Safety Code section 25359, DTSC seeks

6   damages equal to three times the amount of certain costs incurred by DTSC as a result of the

7   failure of certain defendants to properly provide a removal or remedial action.

8                                   PLAINTIFF

9       10.     DTSC is an agency of the State of California, organized and existing pursuant to

10  California Health and Safety Code section 58000 et seq.  As used in this complaint, "DTSC" or

11  "Department" encompasses both the existing agency, DTSC, and its predecessor agency, the

12  Toxic Substances Control Program of the California Department of Health Services.  Under

13  California law, DTSC is the State agency responsible for responding to a release or threatened

14  release of hazardous substances into the environment and for determining whether such release

15  or threatened release has occurred or may occur.  It has authority under California Health and

16  Safety Code section 58009 to abate public nuisances and authority under California Health and

17  Safety Code section 25358.3 to abate any imminent or substantial endangerment to public health

18  and safety or to the environment.

19                                  DEFENDANTS

20      11.     CITY OF CHICO, CALIFORNIA, a California municipal government, owned

21  and/or operated the municipal sanitary and storm sewer system throughout the central downtown

22  business district of Chico.  Hazardous substances were released from this sewer system into the

23  environment during the City's period of ownership and/or operation of the sewer system.

24      12.     NORET, INC. is a California corporation which owned and/or operated Esplanade

25  Dry Cleaners at 164 East 2nd Avenue, in Chico, California.  There were releases of hazardous

26  substances from this location during Noret's period of ownership and/or operation.

27      13.     GOLDIE OLSON is an individual who, along with her late husband Gerald

28  Olson, owned and/or operated Flair Cleaners at 660 Mangrove Ave. in Chico, California.  There

<div style="text-align:center">3.</div>

1   were releases of hazardous substances from this location during Ms. Olson's period of ownership

2   and/or operation.

3        14.   PEDEN ENTERPRISES, a California Corporation, is an entity which owned

4   and/or operated Flair Cleaners at 660 Mangrove Ave. in Chico, California. There were releases

5   of hazardous substances from this location during Peden Enterprises' period of ownership and/or

6   operation.

7        15.   JOHN PEDEN is an individual who owned and/or operated Flair Cleaners at 660

8   Mangrove Ave. in Chico, California. There were releases of hazardous substances from this

9   location during Mr. Peden's period of ownership and/or operation.

10       16.   LORENA PEDEN is an individual who owned and/or operated Flair Cleaners at

11   660 Mangrove Ave. in Chico, California. There were releases of hazardous substances from this

12   location during Ms. Peden's period of ownership and/or operation.

13       17.   SUNSET VIEW CEMETERY ASSOCIATION, INC., a California corporation, is

14   an entity which currently holds title to a parcel located at 660 Mangrove Ave. in Chico,

15   California, the location of Flair Cleaners. There have been releases of hazardous substances

16   from this location during Sunset View Cemetery Association's period of ownership.

17       18.   NORVILLE R. WEISS is an individual who owned and/or operated Esplanade

18   Cleaners at 164 East 2nd Avenue in Chico, California. There were releases of hazardous

19   substances from this location during Mr. Weiss's period of ownership and/or operation.

20       19.   JANET L. WEISS is an individual who owned and/or operated Esplanade

21   Cleaners at 164 East 2nd Avenue in Chico, California. There were releases of hazardous

22   substances from this location during Ms. Weiss's period of ownership and/or operation.

23       20.   CALIFORNIA WATER SERVICE COMPANY, a California corporation, is an

24   entity that owned and/or operated and continues to own and/or operate public water supply wells

25   at various locations in and around the Site. Hazardous substances were present in the wells and

26   were released from the wells into the environment.

27                     <u>GENERAL ALLEGATIONS</u>

28       21.   The Site consists of various facilities within the central business district of the

4.

1   City of Chico, California which are using or historically have used perchloroethylene. The Site

2   includes the dry cleaning facilities themselves, the soil around these facilities where hazardous

3   substances have come to be located, the sewer pipes through which these dry cleaners released

4   hazardous substances, the soil around such sewer facilities where released hazardous substances

5   have come to be located, public water supply wells that contained water contaminated with

6   hazardous substances and that released hazardous substances to surrounding groundwater, and a

7   single, intermingled and indivisible plume of hazardous substance contamination in the

8   groundwater beneath these facilities and throughout the central business district of Chico, and to

9   which each of the facilities is contributing. The drinking water of the City of Chico has been and

10  is continuing to be impacted by this plume of contamination.

11       22.    Various facilities within the geographic area of the Site have used, and may be

12  continuing to use, perchloroethylene and/or other hazardous substances in a manner resulting in

13  releases to the soil and/or groundwater at the Site. At this time, the facilities which DTSC

14  believes have caused releases to the soil and/or groundwater include the Flair Custom Cleaners

15  facility at 660 Mangrove Avenue and the Esplanade Cleaners facility at 164 East 2nd Avenue.

16  There may be other facilities in the area of the Site from which releases have occurred, and which

17  are contributing to the single, intermingled and indivisible plume of perchloroethylene

18  contamination in the groundwater underneath the central business district of Chico, and DTSC

19  may amend this complaint to add additional responsible parties if and when such facilities are

20  identified.

21       23.    Releases from the facilities may have occurred through a variety of mechanisms,

22  including but not limited to direct releases onto the ground at the facilities and releases into

23  sewer connections at the facilities. Perchloroethylene that entered the sewer pipes connecting

24  various facilities to the City of Chico municipal sewer system was released from such pipes into

25  the surrounding soil and/or groundwater. The City of Chico owned and/or operated these sewer

26  lines from which there were releases into the environment.

27       24.    Public waters supply wells owned and/or operated by the California Water

28  Service Company, including but not limited to wells known as CWS-2, CWS-10, and CWS-21,

5.

1  contained water contaminated with hazardous substances and released hazardous substances to

2  surrounding groundwater.

3      25.    Contamination at the Site was first detected in 1984 during sampling of municipal

4  water wells in Chico. Beginning in 1986, DTSC began to investigate or oversee the investigation

5  of the nature and extent of contamination from these facilities, and that investigation continues to

6  the present time.

7      26.    DTSC has incurred costs in response to the releases or threatened releases at the

8  Site for which DTSC has not been reimbursed. DTSC will continue to incur response costs until

9  the remedy, and operation and maintenance of the remedy, is completed.

10     27.    As part of its response and enforcement activities, DTSC has also incurred legal

11  fees and costs in an amount yet to be determined.

12     28.    Based on the releases and threatened releases of hazardous substances from the

13  Site to soil and groundwater, as described in paragraphs 21 to 24, above, the Department has

14  determined pursuant to California Health & Safety Code section 25358.3 that there may be an

15  imminent or substantial endangerment to the public health or welfare or to the environment

16  because of these releases and threatened releases and further has determined that removal or

17  remedial action is necessary.

18     29.    On May 17, 1990, the Department issued an Imminent or Substantial

19  Endangerment and Remedial Action Order to Peden Enterprises, Gerald Olson and the Sunset

20  View Cemetery Association. The order requires the respondents to take action to investigate and

21  remediate the contamination released from the facility at 660 Mangrove Avenue in Chico. At

22  various times within the previous five years, Peden Enterprises and the Sunset View Cemetery

23  Association have failed to comply with this order.

24     30.    On June 21, 1990, the Department issued an Imminent or Substantial

25  Endangerment and Remedial Action Order to Noret, Inc. and to Mary Reed, who was then the

26  owner of the property at 164 East 2nd Avenue. The order requires the respondents to take action

27  to investigate and remediate the contamination released from the facility at 164 East 2nd Avenue

28  in Chico. At various times within the previous five years, Noret, Inc. has failed to comply with

6.

1 | this order.

2 |     31.    The Department notified Gerald Olson and defendants City of Chico, Noret, Inc.,

3 | Peden Enterprises, John Peden, Lorena Peden, Sunset View Cemetery Association, Inc., Norville

4 | R. Weiss, Janet L. Weiss, and California Water Service Company that they are legally

5 | responsible for the costs incurred in responding to the release and threatened release of hazardous

6 | substances from the Site. None of the defendants have paid for these costs.

7 | 

<center>FIRST CLAIM FOR RELIEF</center>

8 |
9 | <center>(Claim for Response Costs Against All Defendants Pursuant to<br>section 107(a) of CERCLA, 42 U.S.C. section 9607(a))</center>

10 |     32.    DTSC incorporates the allegations set forth in the preceding paragraphs as if fully

11 | set forth herein.

12 |     33.    Each of the dry cleaning locations identified herein, the sewer pipes connected to

13 | those locations, and each of the public water supply wells that was contaminated with hazardous

14 | substances and released hazardous substances into the surrounding groundwater, including but

15 | not limited to wells known as CWS-2, CWS-10, and CWS-21, is a "facility" as defined in section

16 | 101(9) of CERCLA, 42 U.S.C. section 9601(9).

17 |     34.    Each defendant is a "person" as defined in section 101(21) of CERCLA, 42

18 | U.S.C. section 9601(21).

19 |     35.    Perchloroethylene is a "hazardous substance" as defined in section 101(14) of

20 | CERCLA, 42 U.S.C. section 9601(14).

21 |     36.    The presence of hazardous substances, including, but not limited to,

22 | perchloroethylene, in the soil and groundwater at the Site constitutes a release or threatened

23 | release of hazardous substances into the environment within the meaning of section 101(22) of

24 | CERCLA, 42 U.S.C. section 9601(22).

25 |     37.    As a result of releases and/or threatened releases of hazardous substances into the

26 | environment, DTSC has incurred "response costs" as defined in sections 107(a) and 101(25) of

27 | CERCLA, 42 U.S.C. sections 9607(a) and 9601(25).

28 |     38.    DTSC's response costs were and are being incurred in a manner not inconsistent

<center>7.</center>

1  with the National Contingency Plan, 40 C.F.R., part 300.

2       39.     DTSC is a "State" for purposes of section 107(a)(4) of CERCLA, 42 U.S.C.

3  section 9607(a)(4).

4       40.     Each defendant owned and/or operated a facility from which there were releases

5  of hazardous substances within the meaning of section 107(a)(1)-(2) of CERCLA, 42 U.S.C.

6  section 9607(a)(1)-(2).

7       41.     As owners and operators of facilities, defendants jointly and severally are liable

8  without regard to fault under section 107(a) of CERCLA, 42 U.S.C. section 9607(a) for costs

9  DTSC has incurred in response to the releases or threatened releases of hazardous substances into

10 the environment, in an amount in excess of $5,000,000.

11                          SECOND CLAIM FOR RELIEF

12               (Declaratory Relief Against All Defendants Pursuant to section
13                 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2))

14      42.     DTSC incorporates the allegations set forth in the preceding paragraphs as if fully

15 set forth herein.

16      43.     DTSC continues to incur response costs as a result of the releases or threatened

17 releases of hazardous substances into the environment at the Site.

18      44.     Pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2), DTSC

19 is entitled to a declaratory judgment that defendants jointly and severally are liable for all

20 additional costs DTSC incurs in response to releases or threatened releases of hazardous

21 substances into the environment at the Site.

22                          THIRD CLAIM FOR RELIEF

23               (Injunctive Relief Against All Defendants for Abatement of Public
24           Nuisance Pursuant to California Health & Safety Code section 58009)

25      45.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully

26 set forth herein.

27      46.     The presence of hazardous substances, including, but not limited to,

28 perchloroethylene, in the soil and groundwater at the Site constitutes a public nuisance within the

8.

1    meaning of sections 3479 and 3480 of the California Civil Code.

2        47.    The presence of hazardous substances, including, but not limited to,

3    perchloroethylene, in the soil and groundwater at the Site is a matter within the Department's

4    jurisdiction and constitutes a condition that is dangerous to the public health, within the meaning

5    of section 58009 of the California Health and Safety Code.

6        48.    The threat to the public health and safety posed by the nuisance at the Site will

7    continue unless defendants are ordered to abate and do abate the nuisance.

8                              FOURTH CLAIM FOR RELIEF

9                    (Claim for Injunctive Relief Against All Defendants Pursuant to
10                          Health and Safety Code section 25358.3)

11       49.    Plaintiff incorporates the allegations of the preceding paragraphs as though fully

12    set forth herein.

13       50.    Health and Safety Code section 25358.3(a) provides that:

14           (a)    Whenever the director determines that there may be an imminent or
        substantial endangerment to the public health or welfare or to the environment,
15       because of a release or a threatened release of a hazardous substance, the director
        may do any or all of the following:

16           (1)    Order any responsible party or parties to take or pay for
17       appropriate remedial or remedial action necessary to protect the public
        health and safety and the environment . . . .

18

19                        . . .

        (3)    Request the Attorney General to secure such relief as may be
20       necessary from the responsible party or parties to abate the danger or
        threat . . . .

21
22       51.    Health and Safety Code section 25358.3(e) provides that:

           (e)    Whenever there is a release or threatened release of a hazardous substance,
23       the director may request the Attorney General to secure such relief as may be
        necessary from the responsible party or parties to abate the release or threatened
24       release. . . . Upon a showing by the department that a release or threatened release
        of a hazardous substance has occurred or is occurring, and that there may be an
25       imminent or substantial endangerment to the public health and safety or to the
        environment, the court may grant a temporary restraining order or a preliminary
26       or permanent injunction.

27       52.    The director of the Department of Toxic Substances Control has determined that

28    the contamination in the soil and groundwater at the Site presents an imminent or substantial

                                    9.

1  endangerment to the environment and to the public health or welfare.  In accordance with Health

2  & Safety Code section 25358.3, the Department of Toxic Substances Control has requested that

3  the Attorney General secure relief in this case to abate the danger or threat to the public health

4  and safety and to the environment.

5      53.    Plaintiff is entitled to a preliminary and permanent injunction requiring

6  defendants to take actions necessary to respond to the release and threatened release of hazardous

7  substances from the Site.

8                              <u>FIFTH CLAIM FOR RELIEF</u>

9                    (Claim for Injunctive Relief Against Peden Enterprises and the
                     Sunset View Cemetery Association for failure to comply with
10                    Imminent or Substantial Endangerment and Remedial Action
                     Orders issued Pursuant to California Health and Safety Code
11                                        section 25358.3)

12      54.    Plaintiff incorporates the allegations of the preceding paragraphs as though fully

13  set forth herein.

14      55.    Pursuant to Health and Safety Code sections 25358.3 and 25355.5, the

15  Department issued an Imminent or Substantial Endangerment and Remedial Action Order on

16  May 17, 1990 requiring Peden Enterprises and the Sunset View Cemetery Association to take

17  actions to respond to the contamination at the Site.

18      56.    The above-named defendants have refused to comply with the terms of the order

19  on which they were named as responsible parties.

20      57.    Health and Safety Code section 25358.3(f) provides that:

21              (f)    Upon the failure of any person to comply with any order issued by the
                department pursuant to this section or Section 25355.5, the director may request
22              the Attorney General to petition the superior court for the issuance of an
                injunction requiring that person to comply with the order.  The superior court
23              shall have the jurisdiction to grant a temporary restraining order or a preliminary
                or permanent injunction.

24

25      58.    Plaintiff is entitled to an order requiring each of the above-named defendants to

26  comply with the requirements of the order naming them as responsible parties.

27

28

                                              10.

1

## SIXTH CLAIM FOR RELIEF

2

(Claim Under California Health and Safety Code section 25359 for
Treble Damages Against Peden Enterprises, the Sunset View

3

Cemetery Association, and Noret, Inc. for failure to provide removal
or remedial action upon order of the Department)

4

59.    Plaintiff incorporates the allegations of the preceding paragraphs as though fully

5

set forth herein.

6

60.    At various times within the previous five years, Peden Enterprises and the Sunset

7

View Cemetery Association failed, without sufficient cause, to provide a removal or remedial

8

action as ordered by the Department in the May 17, 1990 Imminent or Substantial Endangerment

9

and Remedial Action Order issued to them.

10

61.    At various times within the previous five years, Noret, Inc. failed, without

11

sufficient cause, to provide a removal or remedial action as ordered by the Department in the

12

June 21, 1990 Imminent or Substantial Endangerment and Remedial Action Order issued to it.

13

62.    Each of the Imminent or Substantial Endangerment and Remedial Action Orders

14

issued to the above-named defendants advised them that, under California Health and Safety

15

Code section 25359, failure to comply with the Order could subject them to liability for three

16

times the governmental costs incurred.

17

63.    As a result of the failure by Peden Enterprises, the Sunset View Cemetery

18

Association, and Noret, Inc. to take proper action as ordered by the Department, the Department

19

has incurred costs, including costs to the state account as described in California Health and

20

Safety Code section 25359.  Peden Enterprises, the Sunset View Cemetery Association, and

21

Noret, Inc. are liable to the Department for three times the amount of costs to the state account.

22

## PRAYER FOR RELIEF

23

WHEREFORE, DTSC prays for judgment against defendants as follows:

24

1.    For a judgment that defendants jointly and severally are liable to DTSC without

25

regard to fault for response costs incurred by DTSC as a result of the releases or threatened

26

releases of hazardous substances at the Site in an amount in excess of $5,000,000;

27

2.    For a judgment that certain defendants are liable to DTSC for appropriate

28

11.

1  prejudgment interest thereon;

2          3.      For a declaration that defendants are liable to DTSC without regard to fault for all

3  future costs incurred by DTSC in response to releases or threatened releases of hazardous

4  substances at the Site;

5          4.      For injunctive relief requiring defendants to take all action necessary to abate the

6  nuisance caused by contamination of soil and/or groundwater at the Site;

7          5.      For injunctive relief requiring the abatement of an imminent or substantial

8  endangerment at the Site;

9          6.      For injunctive relief requiring compliance with the Department's imminent or

10 substantial endangerment orders by those defendants which are not currently in compliance with

11 orders issued to them;

12         7.      For damages equal to three times the amount of costs incurred by the state account

13 as a result of the failure of specified defendants to provide a removal or response action as

14 ordered by the Department;

15         8.      For the costs of this lawsuit;

16         9.      For costs of enforcement, including attorney's fees; and

17         10.     For such other relief as the Court deems just and proper.

18

19 DATED: *December 2, 2002*

20                                              BILL LOCKYER, Attorney General
                                                  of the State of California
21                                              THEODORA BERGER
                                                Senior Assistant Attorney General
22                                              SUSAN S. FIERING
                                                Deputy Attorney General
23

24                                      By      _____
                                                TIMOTHY E. SULLIVAN
25                                              Deputy Attorney General

26                                              Attorneys for Plaintiff
                                                CALIFORNIA DEPARTMENT OF TOXIC
27                                              SUBSTANCES CONTROL

28

                                                12.

AMENDED COMPLAINT FOR RECOVERY OF RESPONSE                  No. CIV.S-02-0442 LKK DAD
COSTS, DECLARATORY AND INJUNCTIVE RELIEF

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name: *California Dept. of Toxic Substances Control v. Chico City, et al.*
No.: **CIV.S-02-442 LKK DAD**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On December 2, 2002, I served the attached **AMENDED COMPLAINT FOR RECOVERY OF RESPONSE COSTS; DECLARATORY RELIEF; INJUNCTIVE RELIEF; ENFORCEMENT OF ADMINISTRATIVE ORDER; AND TREBLE DAMAGES** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1515 Clay Street, Suite 2000, Oakland, California 94612-1413, addressed as follows:

K. Greg Peterson, Esq.
400 Capitol Mall, 11th Floor
Sacramento, CA 95814
*Attorney for Peden Enterprises, John Peden, and Lorena Peden*

Phillip M. Jelley, Esq.
Britt Habegger, Esq.
Fitzgerald, Abbott & Beardsley LLP
1221 Broadway, 21st Floor
Oakland, CA 94612
*Attorney for Sunset View Cemetery Association, Inc.*

Goldie Olson
567 E. Lassen Ave., Unit 523
Chico, CA 95973-0660

Phillip C. Hunsucker, Esq.
Brian L. Zagon, Esq.
David A. Rabbino, Esq.
Resolution Law Group
3687 Mt. Diablo Blvd., Suite 330
Lafayette, CA 94549
*Attorney for Noret, Inc., Norville Weiss, and Janet Weiss*

Francis Malcolm Goldsberry II, Esq.
Francis Malcolm Goldsberry II, Esq.
Goldsberry Freeman et al., LLP
777 12th St #250
Sacramento, CA 95814
*Attorney for City of Chico*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on December 2, 2002, at Oakland, California.

_____
TANISHA MARSHALL
Declarant

_____
Signature

EXHIBIT B

1   BILL LOCKYER
    Attorney General of the State of California
2   TOM GREENE
    Chief Assistant Attorney General
3   THEODORA BERGER
    Senior Assistant Attorney General
4   KEN ALEX
    Supervising Deputy Attorney General
5   ROSE B. FUA
    TIMOTHY E. SULLIVAN, State Bar No. 197054
6   Deputy Attorneys General
    1515 Clay Street, 20th Floor
7   P.O. Box 70550
    Oakland, CA 94612-0550
8   Telephone: (510) 622-4038
    Fax: (510) 622-2270
9   Email: Timothy.Sullivan@doj.ca.gov
    Attorneys for Plaintiff California Department of Toxic
10   Substances Control

11

12         IN THE UNITED STATES DISTRICT COURT

13         FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15   **CALIFORNIA DEPARTMENT OF TOXIC**     Civ.S-02-0442 LKK DAD
16   **SUBSTANCES CONTROL,**

                        **SETTLEMENT AGREEMENT**
17                   Plaintiff,   **AND CONSENT DECREE**
                        **BETWEEN DTSC AND**
18       v.                     **CALIFORNIA WATER**
                        **SERVICE COMPANY**
19   **CITY OF CHICO, CALIFORNIA, et al.,**

20                 Defendants.

21

22                   **INTRODUCTION**

23       Plaintiff, the California Department of Toxic Substances Control ("DTSC"), filed an

24   amended complaint on December 3, 2002, (the "Complaint") in the United States District Court

25   for the Eastern District of California (the "Court"), pursuant to the Comprehensive

26   Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et

27   seq., and California state law governing release of hazardous substances and nuisance.

28       The Court, on the motion and with the consent of DTSC and California Water Service

---

Settlement Agreement & Consent Decree            Case No. CIV. S-02-0442 LKK DAD

1  Company, Inc. ("Cal Water"), hereby ORDERS, ADJUDGES, AND DECREES as follows:

2  **1.    DEFINITIONS**

3      A.      All terms used in this Consent Decree that are defined in section 101 of CERCLA,

4  42 U.S.C. § 9601, shall have the same meaning set forth in that section.

5      B.      "DTSC," as used in this Consent Decree, shall mean DTSC, its predecessors

6  including, but not limited to, the Toxic Substances Control Program of the State of California

7  Department of Health Services, and its successors.

8      C.      "Chico Central Plume" means both the soil and groundwater existing in the

9  shallow, intermediate, and/or lower aquifers underlying the city of Chico north of Big Chico

10  Creek that are contaminated with perchloroethylene (including its breakdown products), the area

11  of which is roughly represented by Figure 2-1 of the "Draft Remedial Action Plan, Chico Central

12  Plume, Chico, California" dated March 1, 2006 (attached hereto as Exhibit A and incorporated

13  herein by this reference), and all locations where such contaminants may come to be located.

14      D.      "Response Costs," as used in this Consent Decree, shall include all costs of any

15  type or character whatsoever, including but not limited to costs related to "removal," "remedial

16  action," or "response" (as those terms are defined by section 101 of CERCLA), incurred or to be

17  incurred by DTSC in response to the release or threatened release of hazardous substances at, in,

18  or from the Chico Central Plume. Said term shall include, but not be limited to, direct labor

19  costs; contractor, consultant and expert costs; travel and any other out-of-pocket expenses; the

20  costs of identifying, developing evidence against, and pursuing claims against persons or entities

21  liable for the release or threatened release of hazardous substances at, in, or from the Chico

22  Central Plume; indirect costs; oversight costs; applicable interest charges; and attorneys' fees.

23      E.      "Remedial Action Plan," as used in this Consent Decree, shall mean a remedial

24  action plan prepared to address the release or threatened release of hazardous substances at, in, or

25  from the Chico Central Plume and finally approved by DTSC as described in California Health

26  and Safety Code section 25356.1, and also includes any amendments to the remedial action plan

27  that are subsequently approved by DTSC.

28

Settlement Agreement & Consent Decree

Case No. CIV. S-02-0442 LKK DAD

2

1    F.    "Proposed Remedy" means a remedial action to address contamination at, in, or

2    from the Chico Central Plume composed of the following measures, as set forth in more detail as

3    "Modified Alternative G" in the Draft Remedial Action Plan dated March 1, 2006: (1) The

4    pumping and treatment of water from six wells: three existing wells, known as CMW-101B, CMW-

5    117B, and CWS-21; either existing well CEW-1 or a new well similar in size and location to CEW-

6    1; and two new wells to be installed, known as CMW-118B and CMW-119B; (2) Pumping of

7    water from CWS-8 and, if necessary, treatment; (3) Seasonal pumping of well 45 at the Chico

8    High School; (4) Improvements and modifications to, and continued operation of, the granular

9    activated carbon filtration unit located at the Chico Cemetery (sometimes known as the "Interim

10    Remedial Measure"); (5) Periodic monitoring of groundwater from numerous groundwater

11    monitoring wells previously installed and installation of a new down-gradient monitoring well; and

12    (6) Continuation of the above activities for a period of at least 30 years or until contaminants of

13    concern are no longer detected.

14    G.    "Remedial Extraction Wells" means the five wells known as CMW-101B, CMW-

15    117B, CEW-1, CMW-118B, and CMW-119B, or any wells constructed to replace those wells.

16    H.    "Treatment System" means the granular activated carbon filtration unit referred to

17    in the Proposed Remedy intended to remove perchloroethylene from the Remedial Extraction

18    Wells, or any future treatment device that replaces the unit and serves the same purpose in the

19    Remedial Action Plan. This term does not include treatment devices used to remove

20    contamination from other wells such as CWS-21 and CWS-8.

21    **2.    RECITALS**

22    A.    DTSC is the California state agency with primary jurisdiction over the response to

23    the release and threatened release of hazardous substances at, in, or from the Chico Central

24    Plume.

25    B.    DTSC seeks to recover from all defendants named in the Complaint, including but

26    not limited to Cal Water, jointly and severally, all costs it has incurred in response to releases

27    and/or threatened releases of hazardous substances at, in, or from the Chico Central Plume,

28    pursuant to section 107(a) of CERCLA. DTSC also seeks a declaratory judgment that all such

Settlement Agreement & Consent Decree                          Case No. CIV. S-02-0442 LKK DAD

3

1   defendants are jointly and severally liable for all additional costs incurred by DTSC in response

2   to the releases and/or threatened releases of hazardous substances at, in, or from the Chico

3   Central Plume pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2).  DTSC

4   alleges that it will continue to incur Response Costs until the remedy selected in the Remedial

5   Action Plan, and operation and maintenance of that remedy, is completed.  DTSC also seeks

6   injunctive relief to abate a public nuisance (California Health and Safety Code § 58009) and to

7   abate an imminent or substantial endangerment to public health and safety or to the environment

8   (California Health and Safety Code § 25358.3).  DTSC also seeks to enforce administrative

9   orders issued to various defendants, not including Cal Water, for investigation and remediation

10  of the Chico Central Plume (California Health and Safety Code § 25358.3) and seeks damages

11  suffered by DTSC as a result of the failure of certain defendants, not including Cal Water, to

12  properly undertake a removal or remedial action (California Health and Safety Code § 25359).

13          C.      By entering into this Consent Decree, Cal Water expressly denies any liability

14  whatsoever for any of the claims made in the Complaint and under any of the authorities stated in

15  the Complaint, and makes no admission of liability.  DTSC has not contended in this lawsuit that

16  Cal Water was responsible for initially introducing any amount of perchloroethylene or any other

17  contaminant into the groundwater or soils in the Chico Central Plume.  DTSC acknowledges that

18  Cal Water first identified the perchloroethylene problem in the Chico Central Plume pursuant to

19  monitoring required under AB 1803 (ch. 881, Stats. 1983), cooperated with authorities in

20  investigating the problem, and took steps to assist in remediating the perchloroethylene

21  contamination, including taking treated water into its distribution system, allowing others to use

22  its property for staging investigations, and assisting in the operation of DTSC's Interim

23  Remediation Measure extraction and treatment system.

24          D.      Each of the parties to this Consent Decree represents and acknowledges that, in

25  deciding whether to enter into this Consent Decree, it has not relied on any statement of fact,

26  statement of opinion, or representation, express or implied, made by any other party to this

27  Consent Decree. Each of the parties to this Consent Decree has investigated the subject matter of

28  this Consent Decree to the extent necessary to make a rational and informed decision to execute

1   it, and has had the opportunity to consult independent counsel.

2      E.   DTSC and Cal Water agree that settlement without further litigation and without

3   the admission or adjudication of any issue of fact or law is the most appropriate means of

4   resolving this action. This Consent Decree was negotiated and executed by DTSC and Cal Water

5   in good faith to avoid prolonged and complicated litigation. DTSC and Cal Water, moreover,

6   have negotiated and executed this Consent Decree to further the public interest and to protect

7   human health and the environment.

8   **3.   JURISDICTION**

9      This Court has jurisdiction over DTSC's federal law claims, which arise under CERCLA,

10   pursuant to 28 U.S.C. section 1331 and 42 U.S.C. section 9613(b). This Court has jurisdiction

11   over DTSC's state law claims under the supplemental jurisdiction provision of 28 U.S.C. section

12   1367(a) and under 28 U.S.C. section 2201, in that the state and federal claims arise from

13   common facts relating to release of hazardous substances and remediation of or failure to

14   remediate the resulting contamination. This Court has personal jurisdiction over each of the

15   parties to this Consent Decree. Venue is proper in the Eastern District of California pursuant to

16   28 U.S.C. section 1391(b) and 42 U.S.C. section 9613(b). This Court, further, has the authority

17   to enter this Consent Decree as a consent decree of the Court.

18   **4.   SETTLEMENT OF DISPUTED CLAIMS**

19      4.1   This Consent Decree represents a fair, reasonable, and equitable settlement of the

20   matters addressed herein.

21      4.2   For the purposes of this Consent Decree, Cal Water admits none of the allegations

22   of the Complaint. Nothing in this Consent Decree shall be construed as an admission of any

23   issue of law or fact or of any violation of law. Notwithstanding the foregoing, Cal Water

24   acknowledges that it has agreed to perform certain acts and further acknowledges its

25   responsibility pursuant to this Consent Decree to perform those acts it has agreed to undertake in

26   this Consent Decree, and shall not deny such responsibility in any proceeding brought by DTSC

27   to enforce this Consent Decree.

28      4.3   Except as set forth in section 9 of this Consent Decree, nothing in this Consent

1  Decree shall prejudice, waive, or impair any right, remedy or defense that Cal Water may have in

2  any other or further legal proceeding.

3  **5.    WORK TO BE PERFORMED BY CAL WATER**

4      In exchange for the covenant not to sue contained in this Consent Decree, Cal Water agrees to

5  provide to DTSC the planning, engineering, design, construction, and equipment listed below in

6  sections 5.1, 5.2, 5.3, and 5.4, for the purposes of implementing a remedial action to address

7  releases of hazardous substances.

8      5.0    Recitals

9      5-A    Wells CMW-101B and CMW-117B are extraction wells located in the

10  Chico Central Plume.  The water that is extracted from these wells is contaminated with

11  perchloroethylene.  The extracted water is sent through a granular activated carbon treatment unit

12  to remove the perchloroethylene.  Since 1995, DTSC has operated wells CMW-101B and CMW-

13  117B, and Cal Water has provided the treated water from these wells to its water customers in the

14  city of Chico pursuant to a permit issued by the Department of Health Services ("DHS").  Cal

15  Water currently owns and operates a well known as CWS-21, the water in which has been

16  contaminated with perchloroethylene.  Cal Water treats the water from this well and provides it to

17  its water customers in the city of Chico pursuant to a permit issued by DHS.  Cal Water currently

18  owns and operates a well known as CWS-8 that has shown some level of perchloroethylene

19  contamination, but at concentrations that are below the level at which treatment would be

20  required.  Cal Water provides the water from this well to its water customers in the city of Chico

21  pursuant to a permit issued by the DHS.

22      5-B.    The Proposed Remedy for the Chico Central Plume includes the pumping and

23  treatment of water from six wells: three existing wells, known as CMW-101B, CMW-117B, and

24  CWS-21; either existing well CEW-1 or a new well similar in size and location to CEW-1 designed

25  and installed to take the place of CEW-1 in the Proposed Remedy; and two new wells to be

26  installed, known as CMW-118B and CMW-119B.  A new down-gradient monitoring well is also

27  expected to be installed.  Water will also be pumped from CWS-8 and treated if necessary.

28  Well 45 at the Chico High School is to be pumped seasonally.  When construction of the

1   treatment system is completed, the five Remedial Extraction Wells will be connected to the

2   existing treatment system at the Chico Cemetery; well CWS-21 has its own separate treatment

3   unit; well CWS-8 will have its own separate treatment unit if necessary. The location of wells

4   CMW-101B, CMW-117B, CEW-1, CWS-21, and CWS-8, and the proposed location of CMW-

5   118B and MCW-119B are shown on Exhibit B.

6              5-C.    As detailed below, Cal Water will retain contractors and design

7   professionals to design and install certain capital improvements included in the Proposed

8   Remedy. Cal Water will provide for the construction of those specified capital improvements at

9   its expense but subject to a cost cap discussed elsewhere herein. Any new extraction wells,

10  including CMW-118B and CMW-119B, as well as the new down-gradient monitoring well, are

11  excluded from the capital improvements to be designed and installed by Cal Water, except as

12  otherwise specified in section 5.1(a)(6). Capital improvements related to site closure are also

13  excluded from the work to be performed by Cal Water.

14             5-D.    As detailed below, Cal Water will provide certain operation and

15  maintenance for the Proposed Remedy at its expense over a 30 year period, or until DTSC has

16  determined that the remediation is complete, whichever is earlier. Cal Water will provide labor

17  and utilities at its own expense, but parts are excluded. Cal Water will perform at its own

18  expense influent and effluent EPA standard 8260B or equivalent sampling and analysis once per

19  month, or similar sampling as need to meet DHS monitoring requirements, at each of the

20  Remedial Extraction Wells, the Treatment System, and wells CWS-21 and CWS-8. Cal Water is

21  not required by this Consent Decree to perform any sampling or analysis of groundwater

22  monitoring wells, including, but not limited to, well purging, sample collection, analytical costs,

23  data analysis, hazardous waste disposal fees, or temporary storage.

24             5-E.    As of the signing of this Consent Decree, DTSC has not approved a final

25  Remedial Action Plan. The amount, nature, and extent of work to be performed by Cal Water

26  pursuant to this Consent Decree shall not be expanded due to any differences between the

27  Proposed Remedy and the remedy ultimately selected in the approved Remedial Action Plan.

28             5-F.    DTSC installed the granular activated carbon filtration unit located at the

Settlement Agreement & Consent Decree                          Case No. CIV. S-02-0442 LKK DAD

7

1    Chico Cemetery (sometimes known as the "Interim Remedial Measure"), which has been

2    operated in part by Cal Water for a number of years, initially pursuant to the terms of a written

3    agreement pertaining to the "Cemetery Wells," although that written agreement has now expired.

4    Except as specifically set forth in this Consent Decree, Cal Water shall hereafter have no

5    responsibility to operate said "Cemetery Wells" or "Interim Remedial Measure."

6        5.1.    Design and Construction of Remedial Measures.

7            (a)    Cal Water will hire design professionals and contractors, as necessary, to

8    complete the following elements of the Proposed Remedy (excluding design and construction of

9    CMW-118B, CMW-119B, and the new down-gradient monitoring well, except as otherwise

10   specified in section 5.1(a)(6)), to be defined in the Remedial Design, at its own expense but

11   subject to the Cost Cap described in section 5.1(b) below:

12            (1)  Planning for new construction necessary to implement the Proposed

13   Remedy as follows:

14            (A)    Designing pipelines for transmission mains from the

15   Remedial Extraction Wells to the Treatment System and applicable station piping pursuant to the

16   following Cal Water specifications: Specifications for Material (attached hereto as Exhibit C),

17   Specifications for Disinfection of New Mains Based on the Procedures Outlined in the Latest

18   Revision of ANSI/AWWA C651 (attached hereto as Exhibit D), Specifications for the

19   Dechlorination of Flushed Water (attached hereto as Exhibit E), Specifications for Installation of

20   Ductile Iron and Polyvinyl Chloride (PVC) Pressure Pipe and Appurtenances (attached hereto as

21   Exhibit F).

22            (B)    Coordinating activities among parties conducting work;

23            (C)    Acquiring use permits, building permits, encroachment

24   permits for work in rights of way, electrical permits, and DHS permit amendments, including

25   preparation and submittal of applications for permits;

26            (D)    Negotiation of access rights or agreements, if necessary, as

27   an agent on behalf of DTSC when authorized in writing by DTSC to do so.  Consideration,

28   payments, costs or expenses, including attorney's fees, related to the acquisition of real property,

1  eminent domain, licenses, leases, easements, construction easements, rights of entry or access

2  rights shall not be borne by Cal Water.

3         (2)    Designing the Proposed Remedy as follows:

4                (A)    Preparing construction drawings for pipeline design;

5                (B)    Preparing the electrical design for the operation of pumps and

6  motor transporting water from the Remedial Extraction Wells to the Treatment System;

7                (C)    Preparing the concrete pad design to the requirements of the

8  City of Chico Building Department standards,

9                (D)    Preparing technical specifications for the pipelines, granular

10  activated carbon units, and all electrical components to operate the fixtures;

11                (E)    Selecting equipment for the pump and motors as well as

12  electrical equipment directly in connection with the operation of the mechanical equipment;

13                (F)    Preparation of bid packages, including a notice to bidders,

14  newspaper publication (if necessary), special conditions, drawings and/or specifications, a non-

15  collusion affidavit form, bid and/or performance bond forms and the terms and conditions for

16  construction agreements, which shall be exclusively determined by Cal Water;

17         (3)    Procuring and installing underground conveyance pipelines

18  between the Treatment System and each of the Remedial Extraction Wells (other than wells

19  CMW-110B and CMW-117B, which already are piped to the Treatment System), including all

20  labor and materials.

21         (4)    Providing traffic controls during all phases of construction of

22  pipelines and connections to the Treatment System necessary to implement the Proposed

23  Remedy.

24         (5)    Supplying personnel to supervise and coordinate all phases of

25  construction of pipelines and connections to the Treatment System as specified in the Remedial

26  Design.

27         (6)    Designing and installing controls for each of the Remedial

28  Extraction Wells so that the wells will shut down when the pressure exceeds Cal Water's normal

Settlement Agreement & Consent Decree                     Case No. CIV. S-02-0442 LKK DAD

1  operating high-pressure limit in the water distribution system and restart when the pressure is

2  below a minimum water system pressure setting.  Cal Water will adjust these pressure settings to

3  give each of the Remedial Extraction Wells the pumping priority that has been assigned to that

4  well pursuant to the procedure in section 5.2(b).

5                (A)    DTSC shall provide, at no cost to Cal Water, control

6  equipment for each of the Remedial Extraction Wells so that the wells will shut down when the

7  pressure exceeds Cal Water's normal operating high-pressure limit in the water distribution

8  system and restart when the pressure is below a minimum water system pressure setting.

9          (b)    <u>Cost Cap</u>

10             (1)    If Cal Water spends more than $1,000,000 (one million dollars) to

11  undertake the actions listed in section 5.1(a), and DTSC determines that additional actions listed

12  in section 5.1(a) are necessary to the success of the Proposed Remedy, DTSC and Cal Water will

13  share the additional expenses equally until the total cost of actions listed in section 5.1(a) reaches

14  $1,500,000, after which time Cal Water will not be responsible for paying for additional actions

15  listed in section 5.1(a).

16             (2)    The $1,000,000 amount described in section 5.1(b)(1) includes the

17  following:  Cal Water's actual expenses for the capital improvements described in Section 5.1(a)

18  plus ten percent (10%) overhead on those capital improvements that are direct, non-contract costs

19  to Cal Water; actual expenses for other materials necessary to implement the actions listed in

20  Section 5.1(a); direct labor costs for time spent undertaking the actions listed in Section 5.1(a);

21  and payments to contractors to implement the actions listed in Section 5.1(a).  The Cost Cap

22  described in this section 5.1(b) applies only to the activities listed in section 5.1(a), and not to

23  other work required of Cal Water by this consent decree.

24             (3)    Until the actions listed in Section 5.1(a) have been completed, Cal

25  Water shall provide monthly statements to DTSC tracking the costs incurred to date for the labor

26  and capital improvements subject to the cap.

27             (4)    Cal Water shall maintain accurate books and records such that the

28  costs incurred by Cal Water in undertaking the actions listed in Section 5.1(a) can be ascertained.

Settlement Agreement & Consent Decree                          Case No. CIV. S-02-0442 LKK DAD

1   Such books and records shall be maintained at the General Office of Cal Water and shall be

2   available for inspection and copying by DTSC during the normal business day upon ten (10)

3   working days written notice, except as to the year end close.  Copying shall be at expense of

4   DTSC.

5                    (5)     For up to one year after the actions listed in Section 5.1(a) have

6   been completed, DTSC shall have the right at its own expense to have Cal Water's books and

7   records audited by an independent accounting firm or representative, and Cal Water agrees to

8   cooperate fully with DTSC in any such audit.  DTSC shall provide Cal Water forty-five (45)

9   calendar days advance notice of an audit and shall not request an audit during the year end close.

10  DTSC shall also have the right to access records submitted by Cal Water to the California Public

11  Utilities Commission ("CPUC") in connection with its reasonableness review of the costs for the

12  subject capital improvements in the applicable general rate case for the Chico District.

13                   (c)     Cal Water, in its discretion, shall initially determine if actions to be

14  undertaken pursuant to Section 5.1(a) are to be bid competitively, sole source, or otherwise, or

15  are to be performed by Cal Water employees, subject to DTSC's right to review potential

16  contract awards, described below.  Cal Water is not subject to any public works bidding or

17  contract laws by virtue of this Consent Decree.

18                   (1)     Cal Water shall review any bids and make recommendations to

19  DTSC for the award of contracts to perform the work specified in Section 5.1(a).

20                   (2)     If, after completion of the design phase of the work to be

21  undertaken pursuant to Section 5.1(a), Cal Water receives any costs estimates for the remaining

22  actions required by Section 5.1(a), Cal Water will inform DTSC of the dollar amount of such

23  estimates.

24                   (3)     DTSC is entitled to reject a contract award recommended by Cal

25  Water if performance of that contract would cause the cost of any of the actions to be undertaken

26  pursuant to Section 5.1(a) by Cal Water to be greater than the cost of the corresponding items

27  listed in Table 8-1 of the "Draft Remedial Action Plan, Chico Central Plume, Chico, California"

28  dated March 1, 2006 (attached hereto as Exhibit G).

1            (A)    In the event that DTSC rejects a contract award

2 recommendation, DTSC and Cal Water shall meet and confer to determine whether the work

3 proposed in the contract should be solicited again or performed in some other manner.

4            (B)    DTSC's approval of a contract award shall not be

5 unreasonably withheld. DTSC shall have ten (10) calendar days from receipt to approve or deny

6 a Cal Water contract award recommendation. DTSC shall consult with Cal Water prior to the

7 denial of any contract award. Unless DTSC does not approve or otherwise denies a Cal Water

8 contract award recommendation within ten (10) calendar days from receipt of Cal Water's

9 recommendation, Cal Water will deem its contract award recommendation approved and proceed

10 with awarding the contract.

11            (d)    If the level of perchloroethylene in CWS-8 exceeds the Maximum

12 Contaminant Level (currently 5 parts per billion), Cal Water shall construct treatment at CWS-8

13 for 900 gallons per minute (GPM) including the installation of two single-bed 20,000-pound

14 granular activated carbon units meeting Cal Water's standards, or amendments thereto, for the

15 treatment of volatile organic compounds (including perchloroethylene) (attached hereto as

16 Exhibit H). The proposed plant includes the construction of new electrical equipment, concrete

17 foundations, mechanical pumping equipment, site piping, and the initial fill of carbon filter

18 media meeting Cal Water's carbon specifications, or amendments thereto (attached hereto as

19 Exhibit H).

20            (e)    Cal Water shall not have title to nor ownership interest in the five wells

21 known as CMW-101B, CMW-117B, CEW-1, CMW-118B, CMW-119B, the new down-gradient

22 monitoring well, nor any wells constructed to replace these wells. Cal Water shall have title to

23 and ownership of the capital improvements installed at its expense and shall retain ownership of

24 CWS-8 and CWS-21.

25            (f)    Except as to CWS-8, CWS-21, Cal Water shall not be responsible for the

26 payment of real property taxes or pump taxes for the Treatment System. Except as to CWS-8,

27 CWS-21 and the capital improvements constructed by Cal Water at its expense, Cal Water shall

28 not be required to maintain insurance for the Treatment System.

1        (g)    DTSC will give Cal Water the opportunity to review any bids received by

2  DTSC for the construction of any of the Remedial Extraction Wells. Cal Water will consult

3  with DTSC on design of Remedial Extraction Wells and any equipment needed to be installed

4  on the Treatment System.

5       5.2    <u>Acceptance of Treated Water from the Treatment System.</u>

6        (a)    Cal Water will accept into its distribution system and deliver to its

7  customers the water treated by the Treatment System at its expense for 30 years from the date

8  that this Consent Decree is approved by the Court or for as long as DTSC determines that the

9  Treatment System should continue to operate, whichever is shorter. The quantity of water

10  anticipated but not guaranteed to be produced by the Treatment System is 750-1,000 gallons per

11  minute, depending upon system conditions and maintenance. However, Cal Water shall be

12  relieved of this requirement for any period of time during which a regulatory agency of the State

13  or federal government does not permit Cal Water to provide the treated pumped water (alone or

14  blended with other water) to its domestic water customers, provided that such prohibition is not

15  a result of Cal Water's failure, without substantial justification, to comply with a permit issued

16  to it.

17        (b)    Cal Water will use its best efforts to continuously (24 hours per day)

18  pump the Remedial Extraction Wells, CWS-21, and CWS-8 (if necessary, as per section

19  5.4(a)(1)) at the rates specified in the Remedial Action Plan. Cal Water will manage its

20  pumping and distribution of water in order to give priority to continuous pumping of the

21  Remedial Extraction Wells, CWS-21, and CWS-8 (if necessary) over all other Cal Water wells

22  in Chico such that Cal Water will stop pumping other Cal Water wells in Chico so that the

23  specified wells can continue to pump without exceeding the pressure limits of the distribution

24  system. These pumping requirements are subject to the following:

25        (1)    Cal Water will be allowed to shut down wells in case of

26  emergency or when necessary to perform routine maintenance, inspections, and repairs.

27        (2)    Cal Water may pump any Cal Water wells in Chico in

28  contravention of the priority established in section 5.2(b) if such pumping is needed to maintain

1 | system pressure to meet customer demand or regulatory requirements.

2 |          (3)    Cal Water may pump wells CWS-16 and CWS-46 in

3 | contravention of the priority established in section 5.2(b).

4 |          (4)    No more than once per year, DTSC will inform Cal Water in

5 | writing of the pumping priority among each of the Remedial Extraction Wells, CWS-21, and

6 | CWS-8 (if necessary). If at any time water distribution system pressure limits do not allow the

7 | Remedial Extraction Wells, CWS-21, and CWS-8 (if necessary) to all be pumped

8 | simultaneously, Cal Water may stop pumping one or more of these wells in the priority order

9 | specified by DTSC until such time as system pressure allows one or more of these wells to

10 | resume pumping.

11 |       (c)    DTSC, at its expense, shall equip each of the Remedial Extraction Wells

12 | with a chart recorder that will record flow rate and water system pressure. DTSC, at its expense,

13 | shall equip the Remedial Extraction Wells with a totalizing flow meter. Cal Water shall report

14 | to DTSC each month the monthly total output of each of the Remedial Extraction Wells, CWS-

15 | 21, and CWS-8.

16 |       (d)    Under no circumstances is Cal Water required to manage the treated

17 | water at its expense in a manner other than by delivering water to its customers.

18 |       (e)    Cal Water is not required to pay any user fees for the acceptance of the

19 | treated water from the Remedial Extraction Wells during the time that it is providing at its own

20 | expense the services described in section 5.3.

21 |       (f)    Cal Water shall use its best efforts to obtain from DHS or any other

22 | applicable regulatory agency a permit allowing it to deliver the treated water from the Treatment

23 | System to its customers. These efforts shall include collecting and providing necessary data,

24 | preparing application documents, supplying maps and diagrams, responding to inquiries from

25 | regulators, and implementing at its expense the 12-step process set forth in the DHS letter of

26 | February 17, 2006, to Cal Water. (The letter and DHS's "Policy Memo 97-005 Policy Guidance

27 | for Direct Domestic Use of Extremely Impaired Sources" are attached hereto as Exhibit I.) Cal

28 | Water shall not be responsible for the costs, including attorney's fees and engineering or

1    environmental consultant's fees, associated with the preparation and approval of an

2    environmental impact report (EIR), if required for the Treatment System and/or the Remedial

3    Extraction Wells.

4            (1)    Denial or revocation of a permit by DHS or any other applicable

5    regulatory agency that results in the inability of Cal Water to legally provide the treated water to

6    its domestic water customers shall not constitute a violation of this Consent Decree, unless the

7    denial or revocation is due to Cal Water's failure, without substantial justification, to comply

8    with the procedural requirements of or requests for information from the regulatory agency.  Cal

9    Water shall have a reasonable opportunity to cure said denial or revocation after written notice

10   thereof before it is deemed a violation of this Consent Decree.

11           (g)    Cal Water shall remain in compliance with all applicable statutes,

12   regulations, and permits, including permits issued by DHS, which allow it to deliver treated

13   water from the Treatment System to its domestic water customers.

14       5.3    Ongoing Operations and Maintenance of the Treatment System.

15       Starting on the day that this Consent Decree is entered as an order of the Court and

16   ending on the day 30 years subsequent thereto, or when DTSC has determined that the

17   remediation is complete, whichever is earlier, Cal Water will, at its expense, perform the work

18   specified below to operate and maintain the Treatment System, Remedial Extraction Wells, and

19   associated equipment and pipelines:

20           (a)    Pump the Remedial Extraction Wells as described in section 5.2.  Costs to

21   be borne by CWS are as follows:

22           (1)    Power used to pump the Remedial Extraction Wells and operate

23   the Treatment System;

24           (2)    Other utilities, such as telephone, necessary for the operation of the

25   Remedial Extraction Wells and Treatment System;

26           (b)    Cal Water shall maintain the Remedial Extraction Wells.  Maintenance

27   includes leak repair, adjustment and repair of pump lubrication equipment and flow meter

28   equipment, chart replacement, site inspection, and other maintenance necessary for operation of

1    pumps, motors, and electrical equipment, as Cal Water determines is needed.

2              (1)    Cal Water shall not be responsible for the cost of replacement

3    parts for the Remedial Extraction Wells, provided that the need to replace said parts is from

4    causes beyond the reasonable control of Cal Water, due to normal wear and tear, or end of

5    expected useful life.

6              (2)    Cal Water shall not be responsible for the cost of disposing of raw

7    water from the Remedial Extraction Wells that cannot be conveyed to the Treatment System.

8         (c)    Cal Water shall perform maintenance of the Treatment System.

9    Maintenance includes leak repair, adjustment and repair of equipment, chart replacement, site

10    inspection, pre-filter replacement, coordination and supervision of replacement of carbon filter

11    media, and other maintenance necessary for operation of the Treatment System, as Cal Water

12    determines is needed.

13              (1)    Cal Water shall not be responsible for the cost of replacement parts

14    for the Treatment System, provided that the need to replace said parts is from causes beyond the

15    reasonable control of Cal Water, due to normal wear and tear or end of expected useful life.

16              (2)    Cal Water shall not be responsible for the cost of carbon filter

17    media used to treat water passing through the Treatment System, nor disposal of such media.  If

18    the selected treatment technology changes, Cal Water likewise shall not be responsible for costs

19    of replacements parts for the new technology.

20         (d)    Cal Water shall apply for and obtain any permits or permit amendments

21    or renewals necessary for the continued operation of the Treatment System and Remedial

22    Extraction Wells, including paying any permitting or regulatory fees necessary for the legal

23    operation of the Treatment System and Remedial Extraction Wells.  Cal Water shall not be

24    responsible for the costs, including attorney's fees and engineering or environmental

25    consultant's fees, associated with the preparation and approval of an environmental impact

26    report (EIR), if required for the Treatment System and/or the Remedial Extraction Wells.

27         (e)    Cal Water shall remain in compliance with all applicable statutes,

28    regulations, and permits, including permits issued by DHS, with respect to the work to be

1  performed pursuant to Section 5.3.

2  (f) Cal Water will perform at its expense sampling and analysis, using method

3  EPA standard 8260B or equivalent, once per month, or similar sampling as need to meet DHS

4  monitoring requirements, of water extracted and treated as part of the Proposed Remedy, and

5  report those results to DTSC on a monthly basis. Changes to the monitoring protocols may be

6  made with the prior written approval of DTSC. The water to be sampled is as follows:

7  (1) Water that has been treated by one of the granular activated carbon

8  units at the Treatment System prior to entry of that water into the second granular activated

9  carbon unit at the Treatment System;

10  (2) Treated water that exits the Treatment System after passing

11  through both granular activated carbon units;

12  (3) Raw, untreated water extracted from each of the five Remedial

13  Extraction Wells.

14  (g) Cal Water is not responsible for the cost of any sampling or analysis of

15  groundwater monitoring wells, including, but not limited to, well purging, sample collection,

16  analytical costs, data analysis, hazardous waste disposal fees, or temporary storage.

17  (h) Cal Water shall make reasonable efforts to obtain access to the Remedial

18  Extraction Wells and Treatment System and associated equipment and pipelines necessary to

19  carry out the activities described in this section 5.3. Consideration, payments, costs or expenses,

20  including attorney's fees, related to the acquisition of real property, eminent domain, licenses,

21  leases, easements, construction easements, rights of entry or access rights shall not be borne by

22  Cal Water.

23  5.4  Operation of Wells CWS-21 and CWS-8.

24  Cal Water shall operate at its expense CWS-21 and CWS-8 (if necessary) for 30 years or

25  until DTSC has determined that the clean-up performance goals specified in the Remedial Action

26  Plan have been achieved, whichever is earlier.

27  (a) In operating the well(s) Cal Water will perform, at its expense, the

28  following activities:

Settlement Agreement & Consent Decree                    Case No. CIV. S-02-0442 LKK DAD

1          (1)     Pump CWS-21 and CWS-8 (if necessary).  Subject to the

2    limitations described in section 5.2(b), Cal Water shall pump well CWS-21 as near to

3    continuously as possible.  Subject to the limitations described in section 5.2(b), Cal Water shall

4    pump CWS-8 at its historical rate and frequency, until such time as CWS-8 exceeds the

5    Maximum Contaminant Level for perchloroethylene, after which time it will be pumped as near

6    to continuously as possible, provided that water from CWS-8 may be legally accepted into Cal

7    Water's distribution system.

8          (2)     Accept into its distribution system and deliver to its customers the

9    pumped water at its expense.  Cal Water shall be relieved of this requirement for any period of

10   time during which a regulatory agency of the State or federal government prohibits CWS from

11   providing the pumped water to its domestic water customers, provided that such prohibition is not a

12   result of Cal Water's failure, without substantial justification, to comply with a permit issued to it

13   or failure to use available cost-effective technology to remove contaminants from the water

14   pumped by the well(s).

15         (3)     Monitor water extracted from wells CWS-21 and CWS-8 (if

16   necessary) by collecting influent and effluent samples each month, analyzing them for volatile

17   organic compounds, and reporting the results of such analyses to DTSC monthly.  Changes to the

18   monitoring protocols may be made with the prior written approval of DTSC.

19         (4)     Apply for and obtain any permits, permit amendments or renewals

20   necessary for the continued operation of wells CWS-21 and CWS-8, including paying any

21   permitting or regulatory fees necessary for the legal operation of these wells, and remain in

22   compliance with all applicable regulations and permits, including permits issued by DHS, with

23   respect to the work to be performed pursuant to this Section 5.4.

24         (A)     Denial or revocation of a permit by DHS or any other

25   applicable regulatory agency that results in the inability of Cal Water to legally provide the

26   treated water from CWS-21 or CWS-8 to its domestic water customers shall constitute a

27   violation of this Consent Decree, if and only if the denial or revocation is due to Cal Water's

28   failure, without substantial justification, to comply with the procedural requirements of or

1    requests for information from the regulatory agency. Cal Water shall have a reasonable

2    opportunity to cure said denial or revocation after written notice thereof before it is deemed a

3    violation of this Consent Decree.

4       (5) Perform maintenance of wells CWS-21 and CWS-8 and associated

5    equipment and pipelines, including providing and installing replacement parts and replacing

6    carbon or other water treatment media.

7      (b) If Cal Water determines that it is technically infeasible to operate either CWS-

8    21 or CWS-8 due to the physical condition of the well boring or casing or due to geological

9    conditions, the following procedures shall apply:

10      (1) Cal Water shall meet and confer with DTSC about the condition of

11   the well, potential remedies to correct the condition causing the technical infeasibility, and whether

12   operation of the well is needed to achieve the goals of the Remedial Action Plan.

13      (2) If DTSC determines that operation of the well is still needed to

14   achieve the goals of the Remedial Action Plan, then DTSC may choose one or more of the following

15   actions:

16       (A) Cal Water will rehabilitate the well at its own expense if

17   rehabilitation is technically reasonable.

18       (B) Cal Water will install a replacement well at its own expense to

19   take the place of the well to be taken out of service if the replacement well can be installed on the

20   same piece of property as the well to be taken out of service.

21       (C) Cal Water will install a replacement well at its own expense to

22   take the place of the well to be taken out of service on a parcel of land obtained by DTSC if the

23   replacement well cannot be installed on the same piece of property as the well to be taken out of

24   service.

25      (3) Cal Water is not obligated by this Consent Decree to acquire any real

26   property, by payment of consideration or through the exercise of eminent domain, for the purpose of

27   installing a well to replace CWS-21 or CWS-8. Cal Water is not obligated by this Consent Decree to

28   re-install a well more than one time nor to rehabilitate a well more than one time.

1   (c) If contaminants other than PCE are detected in CWS-8 or treatment

2 technology changes such that it is technically infeasible for Cal Water to operate CWS-8 solely with

3 the granular activated carbon adsorption described in section 5.1(d), the following procedures shall

4 apply: ·

5   (1) Cal Water shall meet and confer with DTSC about the contaminant

6 levels in the well, potential treatment technologies, and whether operation of the well is needed to

7 achieve the goals of the Remedial Action Plan.

8   (2) If DTSC determines that operation of the well is still needed to

9 achieve the goals of the Remedial Action Plan, then DTSC has the option of providing treatment

10 technology for the well, at no expense to Cal Water, such that the well can continue to operate legally.

11   (3) Cal Water is not obligated by this Consent Decree to install treatment

12 technology on CWS-8 other than that described in section 5.1(d).

13   (d) Cal Water shall operate any well installed to replace either CWS-21 or CWS-

14 8 according to terms of this Consent Decree applicable to the original well.

15   (e) If for any reason CWS-21 or CWS-8 becomes permanently inoperable, Cal

16 Water shall immediately decommission the well pursuant to a work plan submitted to and approved

17 by DTSC.  Notwithstanding the foregoing, Cal Water may take CWS-8 and/or CWS-21 off-line

18 for repairs, rehabilitation, maintenance, peaking or due to system conditions described in section

19 5.2(b).

20   (f) Other than as specified in this section 5.4, nothing in this Consent Decree

21 obligates DTSC to pay for or reimburse Cal Water for the activities listed in section 5.4.

22  5.5 Cal Water shall conduct all activities required by this Consent Decree in

23 compliance with all applicable state, local and federal requirements including, but not limited to,

24 requirements to obtain permits and to assure worker safety as set forth above.  Cal Water shall

25 also comply with all applicable or relevant and appropriate requirements of all Federal and state

26 environmental laws to be set forth in Remedial Action Plan.  The activities conducted by Cal

27 Water pursuant to this Consent Decree, if consistent with a Remedial Action Plan approved by

28

1 DTSC, shall be considered to be consistent with California Health and Safety Code section

2 25356.1.5.

3     5.6    If the Remedial Action Plan states that activities being performed or to be

4 performed by Cal Water pursuant to any portions of section 5 are inconsistent with the selected

5 remedy for the Chico Central Plume, then Cal Water shall not be required by this Consent

6 Decree to perform those activities that the Remedial Action Plan explicitly identifies and states are

7 inconsistent with the remedy selected by the Remedial Action Plan.

8     5.7    The conveyance by Cal Water of any interest in property, including but not

9 limited to pipelines, pumping equipment, or treatment facilities, shall not release or otherwise

10 affect Cal Water's responsibilities to perform the work specified in section 5, except that:

11     (a)    If at any time Cal Water is no longer the public water purveyor for the

12 city of Chico, Cal Water may arrange with the successor water purveyor for the city of Chico,

13 or, subject to DTSC approval, with another entity of its choosing, to complete the obligations

14 of Cal Water to perform work under the terms of this Consent Decree; and

15     (b)    If, as a result of an exercise of eminent domain by a public entity, Cal

16 Water property necessary for complying with the terms of this Consent Decree, including but

17 not limited to pipelines, pumping equipment, or treatment facilities, is condemned and no

18 longer in Cal Water's possession, then Cal Water's responsibilities, if any, to perform the

19 work specified in section 5 will be based on applicable eminent domain law at the time of

20 condemnation.

21     5.8    Unless otherwise specified, nothing in this Consent Decree obligates DTSC to pay

22 for or reimburse Cal Water for any of the activities listed in section 5. Nothing in this Consent

23 Decree prohibits or in any way limits Cal Water from seeking and obtaining reimbursement for

24 any of the activities listed in section 5, except from DTSC.

25     5.9    If requested by Cal Water with reasonable notice, DTSC will provide information

26 or testimony to the California Public Utilities Commission to explain the nature and necessity of

27 the work being performed by Cal Water pursuant to this Consent Decree.

28

Settlement Agreement & Consent Decree         Case No. CIV. S-02-0442 LKK DAD

1    5.10   Cal Water shall not be held liable or deemed to have breached this Consent

2    Decree for failure or delay caused by or resulting from causes beyond its reasonable control,

3    including, but not limited to, fire, floods or other extreme weather conditions, earthquakes, acts

4    of terrorism, acts of war, civil disturbances, acts of God, labor disturbances, embargoes, or delays

5    in acting by any governmental authority.

6           (a)     Cal Water shall not be held responsible for removing such failures or

7    delays unless:

8                   (1)     The failures or delays result from causes within Cal Water's

9    control; or

10                  (2)     The failures or delays affect property owned by Cal Water, but only

11   to the extent the failures or delays affect such property.

12          (b)     This paragraph is intended only to suspend and not discharge obligations

13   under this Consent Decree.  When the causes of the failure or delay are removed, performance

14   shall resume by Cal Water.

15   5.11   Within 10 days of the effective date of this Consent Decree, Cal Water and DTSC

16   shall each designate an individual to serve as a contact and liaison for the work described in

17   section 5.

18   **6.     GOVERNMENT LIABILITIES**

19          Neither DTSC nor any other department or agency of the State of California shall be

20   liable for any injuries or damages to persons or property resulting from acts or omissions by Cal

21   Water in carrying out activities pursuant to this Consent Decree.  Neither DTSC nor any other

22   department or agency of the State of California shall be held as a party to any contract entered

23   into by Cal Water or its agents in carrying out activities pursuant to this Consent Decree unless

24   the contract is entered into in writing by DTSC or such other department or agency of the State of

25   California.

26   **7.     COVENANT NOT TO SUE BY DTSC**

27   7.1    Except as specifically provided in sections 7.2 and 8, below, and except as may be

28   necessary to enforce the terms of this Consent Decree, as of the date this Consent Decree is

Settlement Agreement & Consent Decree                              Case No. CIV. S-02-0442 LKK DAD

1  entered as a consent decree of the Court, DTSC covenants not to sue Cal Water for "Matters

2  Addressed" by this Consent Decree. "Matters Addressed" includes any and all civil liability for

3  reimbursement of all or any portion of DTSC's Response Costs, past or future, declaratory relief,

4  injunctive relief or any other relief under CERCLA, the Carpenter-Presley-Tanner Hazardous

5  Substance Account Act, California Health & Safety Code §§ 25300 et seq., or any other

6  applicable federal or state statutory or common law for liability for Response Costs and/or

7  response actions, with regard to releases or threatened releases of perchloroethylene (including its

8  breakdown products) at, in, or from the Chico Central Plume, as set forth in the Complaint.

9     7.2    "Matters Addressed" shall not include, and the covenant not to sue set forth in

10  section 7.1 above does not pertain to, any matters other than those expressly specified in section

11  7.1. DTSC reserves, and this Consent Decree is without prejudice to, all rights, claims and

12  causes of action DTSC may have against Cal Water with respect to all other matters, including

13  releases or threatened releases of hazardous substances in the city of Chico other than releases or

14  threatened releases of perchloroethylene (including its breakdown products) at, in, or from the

15  Chico Central Plume.

16     7.3    DTSC further covenants not to sue Cal Water for reimbursement of all or any

17  portion of DTSC's Response Costs, past or future, declaratory relief, injunctive relief or any

18  other relief under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance Account Act,

19  California Health & Safety Code §§ 25300 et seq., or any other applicable federal or state

20  statutory or common law for liability for Response Costs and/or response actions with respect to

21  work being performed by Cal Water in compliance with this Consent Decree, including but not

22  limited to the pumping or not pumping of wells CWS-21 and/or CWS-8 (or other wells that

23  replace said wells) done in compliance with this Consent Decree.

24  **8.    RESERVATION OF RIGHTS**

25     8.1    The Covenant Not to Sue set forth in section 7.1 above does not pertain to the

26  following matters, which DTSC reserves, and this Consent Decree is without prejudice to all

27  rights and claims of DTSC against Cal Water with respect to the following:

28

1         (a)     material failure of Cal Water to meet the requirements of this Consent

2 Decree;

3         (b)     damage to natural resources, as defined in Section 101(6) of CERCLA, 42

4 U.S.C. section 9601(6), including all costs incurred by any natural resources trustees; and

5         (c)     criminal liability.

6     8.2     Except as expressly provided in this Consent Decree, nothing in this Consent

7 Decree is intended nor shall it be construed to preclude DTSC from exercising its authority under

8 any law, statute or regulation.  Furthermore, nothing in this Consent Decree is intended, nor shall

9 it be construed, to preclude any other state agency, department, board or entity or any federal

10 entity from exercising its authority under any law, statute or regulation.

11 **9.**    **COVENANT NOT TO SUE BY CAL WATER**

12     9.1     Cal Water covenants not to sue, and agrees not to assert any claims or causes of

13 action against, DTSC, or its contractors or employees, for any costs or damages Cal Water might

14 incur or for any injuries or losses Cal Water might suffer as a result of its performance of the

15 requirements of this Consent Decree.

16     9.2     Cal Water further covenants not to sue, and agrees not to assert any claims or

17 causes of action (including those previously identified in any counterclaims filed by Cal Water)

18 under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance Account Act, California

19 Health & Safety Code §§ 25300 et seq., or any other applicable federal or state statutory or

20 common law, against, DTSC or its contractors or employees, arising from any costs Cal Water

21 has incurred, or may incur in the future, conducting removal or remedial activities, including

22 operation and maintenance activities, at and for the Chico Central Plume.

23     9.3     Nothing in this section 9 prohibits Cal Water from taking such action as is

24 necessary to enforce the provisions, terms, or conditions of this Consent Decree.

25 **10.**    **EFFECT OF CONSENT DECREE**

26     10.1    This Consent Decree constitutes the resolution of Cal Water's liability to DTSC

27 with respect to the Matters Addressed in a judicially approved settlement within the meaning of

28 section 113(f)(2) of CERCLA, 42 U.S.C. section 9613(f)(2).  This Consent Decree requires Cal

1  Water to perform various activities in connection with the remediation of the hazardous

2  substances released at, in, or from the Chico Central Plume.

3    10.2    Accordingly, upon entry of this Consent Decree as a consent decree of the Court,

4  and provided that Cal Water performs all of its obligations under this Consent Decree, Cal Water

5  shall be entitled, as of the date this Consent Decree is entered as a consent decree of the Court, to

6  protection against all claims for contribution, pursuant to section 113(f)(2) of CERCLA, 42

7  U.S.C. section 9613(f)(2), for the Matters Addressed by this Consent Decree (as described in

8  section 7), to the fullest extent permitted by law, and by entering this Consent Decree this Court

9  makes a determination pursuant to California Code of Civil Procedure section 877.6 that the

10  settlement was made in good faith and shall bar any other joint tortfeasor or co-obligor from any

11  further claims against the settling tortfeasor or co-obligor (Cal Water) for equitable comparative

12  contribution, or partial or comparative indemnity, based on comparative negligence or

13  comparative fault.

14    10.3    Except as specifically provided in this Consent Decree, nothing in this Consent

15  Decree is intended, nor shall be construed, to waive, release, or otherwise affect any right, claim,

16  or cause of action held by any party to this Consent Decree against, or to provide a covenant not

17  to sue to, any third person not a party to this Consent Decree, or to in any way limit, restrict, or

18  impair the right of any party to this Consent Decree to assert rights, claims, causes of actions, and

19  defenses against any third person not a party to this Consent Decree, including without limitation,

20  the right to seek payment, reimbursement, contribution, or indemnity from such persons for

21  obligations incurred or to be incurred, or actions taken or to be taken, under this Consent Decree.

22  Except as specifically provided in this Consent Decree, DTSC and Cal Water expressly reserve

23  any rights, claims, or causes of actions they might have against any third person not a party to

24  this Consent Decree.

25    10.4    This Consent Decree is contingent and dependent on all of its terms being

26  approved and ordered by the Court.  If the Court does not approve and order this Consent Decree,

27  DTSC and Cal Water reserve all of their respective rights, remedies, and defenses.

28    10.5    This Consent Decree is not intended, nor shall it be construed, to limit or

1    otherwise affect DTSC's right to select a remedial action for the Chico Central Plume that is

2    different from or inconsistent with the Proposed Remedy.

3         10.6    By agreeing to the terms of this Consent Decree, including but not limited to the

4    statement of work to be performed by Cal Water, Cal Water does not warrant, promise, represent

5    or guarantee that any of the actions taken by Cal Water will remediate or have any effect upon

6    contamination in the Central Plume.

7         10.7    Nothing in this Consent Decree obligates DTSC to perform, implement, or pay for

8    any work specified in the Remedial Action Plan or included in the definition of the Proposed

9    Remedy, to clean up or remediate contaminated groundwater, or to provide treated or

10   uncontaminated water to Cal Water.  This Consent Decree does not create a cause of action

11   against DTSC for any failure by DTSC to perform, implement, or pay for any work specified in

12   the Remedial Action Plan or included in the definition of the Proposed Remedy, to clean up or

13   remediate contaminated groundwater, or to provide treated or uncontaminated water to Cal

14   Water.

15   **11.    <u>RETENTION OF RECORDS</u>**

16        11.1    Cal Water shall provide to DTSC, upon request, copies of all documents and

17   information within its possession or control or that of their contractors or agents relating to the

18   implementation of this Consent Decree, including, but not limited to design specifications,

19   reports of construction activities, contracts, invoices, sampling, analysis, chain of custody

20   records, manifests, trucking logs, receipts, reports, sample traffic routing, and correspondence.

21   Such records shall be preserved by Cal Water until 10 years after the entry of this Consent

22   Decree, or 10 years after creation of a record or document, whichever is later.

23        11.2    Cal Water may assert that certain documents, records, and other information

24   requested by DTSC under section 11.1 are privileged under the attorney-client privilege or any

25   other privilege recognized by law.  If Cal Water asserts such a privilege, it shall provide DTSC

26   with the following: (1) the title of the document, record, or information; (2) the date of the

27   document, record, or information; (3) the name and title of the author of the document, record, or

28   information; (4) the name and title of each addressee and recipient of the document, record, or

1  information; (5) a description of the subject of the document, record, or information; and (6) the

2  privilege asserted by Cal Water.  However, no documents, records, or other information created

3  or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds

4  that they are privileged.  If a claim of privilege applies only to a portion of a document, the

5  document shall be provided to DTSC in redacted form to mask the privileged information only.

6  Cal Water shall retain all records and documents it claims to be privileged until DTSC has had a

7  reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in

8  Cal Water's favor.

9       11.3    DTSC shall retain records relating to the implementation of this Consent Decree

10  in accordance with the requirements of the State Records Management Act (California

11  Government Code, §§ 14740-14774) and related implementing regulations and policies.  DTSC

12  shall make such records available to Cal Water upon request in accordance with the terms of the

13  California Public Records Act (California Government Code, §§ 6250 et seq.).

14  **12.    NOTIFICATION**

15       12.1.    Notification to or communication between the parties to this Consent Decree as

16  required or provided for in this Consent Decree shall be addressed as follows (except that

17  monitoring data required to be sent to DTSC pursuant to section 5 shall be sent only to

18  Mr. Tjosvold):

19            As to DTSC:

20            James Tjosvold
             Chief, Northern California Central Cleanup Operations Branch
21            Department of Toxic Substances Control
             8800 Cal Center Drive
22            Sacramento, CA 95826-3200
             Attn: Donald Mandel, Project Manager for Chico Central Plume
23            facsimile: (916) 255-3696

24            Steve Koyasako, Esq.
             Office of Legal Counsel
25            Department of Toxic Substances Control
             1001 "I" Street
26            P.O. Box 806
             Sacramento, CA 95812
27            facsimile: (916) 323-5542

28

1    Timothy E. Sullivan, Esq.
      Deputy Attorney General
2    California Department of Justice
      1515 Clay Street, 20th Floor
3    P.O. Box 70550
      Oakland, CA 94612-0550
4    facsimile: (510) 622-2270

5    As to Cal Water:

6    Lynne McGhee
      Corporate Counsel
7    California Water Service Company, Inc.
      1720 North First Street
8    San Jose, CA. 95112-4598
      facsimile:

9    Patrick D. Riddle
      Paul D. Sheldon
10   Law Offices of Patrick D. Riddle
      1811 Grand Canal Blvd., Suite 2
11   Stockton, CA 95207
      facsimile: (209) 367-6997
12

13   12.2.   Upon 10 days notice to the other party, a party to this Consent Decree may

14   substitute another person for an addressee named above to receive notifications or

15   communications as required or provided for in this Consent Decree.

16   **13.    MODIFICATION OF SETTLEMENT AGREEMENT AND CONSENT DECREE**

17       This Consent Decree may only be modified upon the written agreement of DTSC and Cal

18   Water and the approval of the Court, or upon order of the Court after noticed motion by a party to

19   this Consent Decree.

20   **14.    APPLICATION OF CONSENT DECREE**

21       This Consent Decree shall apply to and be binding upon DTSC, Cal Water, and each of

22   their respective successors and assigns.  The provisions of this Consent Decree shall inure to the

23   benefit of DTSC, Cal Water, and each of their respective successors and assigns.  The provisions

24   of this Consent Decree shall also inure to the benefit of the officers, directors, employees and

25   agents, attorneys, and affiliates of Cal Water, in their capacities as such, and to Cal Water's

26   parent and subsidiary companies, including but not limited to California Water Service Group.

27   **15.    AUTHORITY TO ENTER**

28       Each signatory to this Consent Decree certifies that he or she is fully authorized by the

Settlement Agreement & Consent Decree                           Case No. CIV. S-02-0442 LKK DAD

1 | party he or she represents to enter into this Consent Decree, to execute it on behalf of the party

2 | represented, and legally to bind that party.

3 | **16.    INTEGRATION**

4 | This Consent Decree, including the exhibits and other materials incorporated herein by

5 | reference, constitutes the entire agreement between DTSC and Cal Water and may not be

6 | amended or supplemented except as provided for in this Consent Decree.

7 | **17.    RETENTION OF JURISDICTION**

8 | The Court shall retain jurisdiction of this matter for the purpose of enforcing the terms of

9 | this Consent Decree.

10 | **18.    EXECUTION OF DECREE**

11 | This Consent Decree may be executed in two or more counterparts, each of which shall

12 | be deemed an original, but all of which together shall constitute one and the same instrument.

13 | **19.    INTERPRETATION**

14 | California law governs the interpretation of this Consent Decree.  This Consent Decree

15 | shall be deemed to have been drafted equally by all parties hereto.

16 | **20.    DISPUTE RESOLUTION**

17 | 20.1    The dispute resolution process described in this section is limited to disputes

18 | relating to the scope, nature, or duration of work to be performed by Cal Water or DTSC

19 | pursuant to the Consent Decree.

20 | 20.2    DTSC and Cal Water agree that they will make good faith efforts to informally

21 | resolve any disputes as to the scope, nature, or duration of work to be performed by Cal Water

22 | pursuant to the Consent Decree.  Such efforts shall include written or oral communications

23 | between employees of Cal Water and DTSC to discuss the nature of the dispute and means of

24 | resolving the dispute.

25 | 20.3    If a dispute remains after informal attempts at resolution, DTSC or Cal Water may

26 | request to the other party in writing that the parties employ a mediator to help resolve the dispute.

27 | Mediation is not required by this Consent Decree and must be agreed upon by both parties.  The

28 | role of the mediator will be solely to facilitate discussions and help the parties resolve the dispute

1  on terms agreeable to both parties. The mediator will not have the power to issue rulings on the

2  meaning of the Consent Decree nor to make decisions binding on the parties. DTSC and Cal

3  Water will share equally in the cost of the mediation, and each party shall pay its own fees and

4  costs. DTSC and Cal Water agree that the mediation described in this section shall be conducted

5  by Martin Quinn, or by such other person as both parties agree upon.

6      20.4    Any dispute not resolved through the dispute resolution process described in this

7  section may be raised to the U.S. District Court for the Eastern District of California for

8  resolution.

9      20.5    Notwithstanding the invocation of the dispute resolution procedures set forth in

10  this section, Cal Water shall continue to perform all of its obligations under this Consent Decree

11  that are not substantially in dispute or at issue.

12  **21.    ATTORNEYS FEES AND COSTS**

13      As to each other, each party to this Consent Decree shall bear its own costs, attorneys'

14  fees, expert witness fees, and all other costs of litigation. This paragraph shall have no effect on

15  the parties' right to recover these fees or costs from any other party.

16  **22.    APPROVALS OF PARTIES**

17      Plaintiff DTSC consents to this Consent Decree by its authorized representative as

18  follows:

19                                          CALIFORNIA DEPARTMENT OF
                                            TOXIC SUBSTANCES CONTROL

20  Dated: 10/23/06                         /s/

21

22                                          James Tjosvold
                                            Chief, Northern California-Central Cleanup
                                              Operations Branch

23                                          California Department of Toxic Substances Control

24  ///

25  ///

26  ///

27  ///

28  ///

1    Cal Water consents to this Consent Decree by its authorized representative as follows:

2                                    CALIFORNIA WATER SERVICE COMPANY,
                                     INC.
3

4    Dated: 11/3/06              By:    /s/

5
                                     Its:
6

7    Dated: 11/3/06              By:    /s/

8
                                     Its:
9

10   APPROVED AS TO FORM:

11

12   DATED: 10/23/06
                                     BILL LOCKYER, Attorney General
13                                     of the State of California
                                     THEODORA BERGER
                                     Senior Assistant Attorney General
14                                   ROSE B. FUA
                                     Deputy Attorney General
15

16                                     /s/
                                     TIMOTHY E. SULLIVAN
17                                   Deputy Attorney General
                                     Attorneys for Plaintiff
18                                   CALIFORNIA DEPARTMENT OF TOXIC
                                     SUBSTANCES CONTROL
19

20   DATED: 11/7/06
                                     LAW OFFICES OF PATRICK D. RIDDLE
21

22                                     /s/
                                     PAUL D. SHELDON
23                                   Attorneys for Defendant
                                     CALIFORNIA WATER SERVICE COMPANY
24

25   IT IS SO ORDERED, ADJUDGED AND DECREED:

26

27   Dated:    May 23, 2007.

28                                   LAWRENCE K. KARLTON
                                     SENIOR JUDGE
                                     UNITED STATES DISTRICT COURT

1    SettlementAgreement.wpd

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Settlement Agreement & Consent Decree                    Case No. CIV. S-02-0442 LKK DAD

32

# EXHIBIT C

# PINO & ASSOCIATES, LLP

**ATTORNEYS AT LAW**

Westchester Financial Center
50 Main Street
White Plains, New York 10606
Telephone (914) 946-0600
Facsimile (914) 946-0650
www.pinolaw.com

OF COUNSEL
John R. Altieri**
Hackensack, New Jersey

Rudolph V. Pino, Jr.
Thomas F. Healy*
Frank C. Randazzo
Richard T. Petrillo
John M. Socolow
Brian W. Colistra
Matthew D. Kennedy
Lori F. Graybow
Marc A. Rousseau*
Brian P. Mitchell**

Also Admitted to CT Bar *
Also Admitted to NJ Bar **

June 27, 2008

## *VIA FACSIMILE*

Gary J. Smith, Esq.
Beveridge & Diamond, PC
456 Montgomery Street ~ Suite 1800
San Francisco, CA 94104

Re:    <u>Cal Water Services Company v. Dow Chemical et al.</u>

Dear Mr. Smith:

I have been authorized to consent on behalf of Mondial Drycleaning Products, Inc., improperly named as Union Drycleaning Products U.S.A., without waiver of any challenge to personal jurisdiction or service of process, to the removal of this action from the Superior Court in and for the County of San Mateo (originally denominated Case No. CV 473093) to the United States District Court for the Northern District of California.

If you have any questions or comments, please do not hesitate to contact me.

Sincerely,

*Richard T. Petrillo /ac*

Richard T. Petrillo

RTP:ac

238030.1

EXHIBIT D

# PINO & ASSOCIATES, LLP

**ATTORNEYS AT LAW**

Westchester Financial Center
50 Main Street
White Plains, New York 10606
Telephone (914) 946-0600
Facsimile (914) 946-0650
www.pinolaw.com

**OF COUNSEL**
John R. Altieri**
Hackensack, New Jersey

Rudolph V. Pino, Jr.
Thomas E. Healy*
Frank C. Randazzo
Richard T. Petrillo
John M. Socolow
Brian W. Colistra
Matthew D. Kennedy
Lori E. Graybow
Marc A. Rousseau*
Brian P. Mitchell**

Also Admitted to CT Bar *
Also Admitted to NJ Bar **

June 30, 2008

_VIA FACSIMILE_

Gary J. Smith, Esq.
Beveridge & Diamond, PC
456 Montgomery Street ~ Suite 1800
San Francisco, CA 94104

Re:    Cal Water Services Company v. Dow Chemical et al.

Dear Mr. Smith:

I have been authorized to consent on behalf of Firbimatic S.p.A., named herein as Firbimatic, without waiver of any challenge to personal jurisdiction or service of process, to the removal of this action from the Superior Court in and for the County of San Mateo (originally denominated Case No. CV 473093) to the United States District Court for the Northern District of California.

If you have any questions or comments, please do not hesitate to contact me.

Sincerely,

Richard T. Petrillo

RTP:ac

238629 1

# EXHIBIT E

# PINO & ASSOCIATES, LLP

**ATTORNEYS AT LAW**

Westchester Financial Center
50 Main Street
White Plains, New York 10606
Telephone (914) 946-0600
Facsimile (914) 946-0650
www.pinolaw.com

**OF COUNSEL**
John R. Altieri**
Hackensack, New Jersey

<div align="right">
Rudolph V. Pino, Jr.
Thomas E. Healy*
Frank C. Randazzo
Richard T. Petrillo
John M. Socolow
Brian W. Collstra
Matthew D. Kennedy
Lori F. Graybow
Marc A. Rousseau*
Brian P. Mitchell**

Also Admitted to CT Bar *
Also Admitted to NJ Bar **
</div>

June 30, 2008

*VIA FACSIMILE*

Gary J. Smith, Esq.
Beveridge & Diamond, PC
456 Montgomery Street – Suite 1800
San Francisco, CA 94104

Re: Cal Water Services Company v. Dow Chemical et al.

Dear Mr. Smith:

I have been authorized to consent on behalf of Realstar S.r.l., improperly named as Realstar, Inc., individually and d/b/a Realstar U.S.A., without waiver of any challenge to personal jurisdiction or service of process, to the removal of this action from the Superior Court in and for the County of San Mateo (originally denominated Case No. CV 473093) to the United States District Court for the Northern District of California.

If you have any questions or comments, please do not hesitate to contact me.

Sincerely,

Richard T. Petrillo

RTP:ac

238631.1

# EXHIBIT F



# ARCHER NORRIS

A PROFESSIONAL LAW CORPORATION

2033 North Main Street, Suite 800
Walnut Creek, CA 94596-3759
925.930.6600
925.930.6620 (Fax)
www.archernorris.com

PROBAL G. YOUNG
pyoung@archernorris.com

July 1, 2008

**VIA FACSIMILE 415.262.4040**

Gary J. Smith
Beveridge & Diamond, P.C.
456 Montgomery Street, Suite 1800
San Francisco, California  94104-1251

Re:     California Water Service Co. v. The Dow Chemical Co., et a..
        San Mateo County Superior Court No. CIV473093 _____ _

Dear Mr. Smith:

As we discussed and in the event of proper service in the above-referenced action, Defendant Echco Sales Co. Inc., without waiving any challenges to personal jurisdiction or service of process, consents to the removal of this action from the Superior Court to the United States District Court for the Northern District of California.  This consent, of course, does not constitute an appearance of any kind, whether it be general or special.

Very truly yours,

ARCHER NORRIS

Probal G. Young

PGY/dlm

TXPGY/672019-1

SACRAMENTO     NEWPORT BEACH     LOS ANGELES

ORIGINAL
FILED

JUL - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

1  Gary J. Smith (SB #141393)
2  Ryan R. Tacorda (SB #227070)
   BEVERIDGE & DIAMOND, P.C.
3  456 Montgomery Street, Suite 1800
   San Francisco, CA 94104-1251
4  Telephone: (415) 262-4000
   Facsimile: (415) 262-4040
5
6  Robert Brager
   BEVERIDGE & DIAMOND, P.C.
7  201 North Charles Street, Suite 2210
   Baltimore, MD 21201-4150
8  Telephone: (410) 230-3850
   Facsimile: (410) 230-3868
9
10 Attorneys for Defendant
   PPG INDUSTRIES, INC.

SI

11            UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13
   CALIFORNIA WATER SERVICE          CV CASE 08       3267
14 COMPANY,

15            Plaintiff,              DECLARATION OF STEPHEN J. VALEN
                                      IN SUPPORT OF NOTICE OF REMOVAL
16        vs.                         OF ACTION UNDER 28 U.S.C. § 1441(b)
                                      (ORIGINAL JURISDICTION)
17 THE DOW CHEMICAL COMPANY; E.I.
   DUPONT DE NEMOURS AND COMPANY;
18 PPG INDUSTRIES, INC.; VULCAN
   MATERIALS COMPANY; OCCIDENTAL
19 CHEMICAL CORPORATION; VALERO
   ENERGY CORPORATION; STAUFFER
20 CHEMICAL COMPANY; BOWE-PERMAC,
   INC., individually and d/b/a BOWE TEXTILE
21 CLEANING, INC.; HOYT CORPORATION;
   R.R. STREET & CO., INC.; MCGRAW
22 EDISON COMPANY, individually and d/b/a
   AMERICAN LAUNDRY MACHINERY, INC.,
23 AMERICAN LAUNDRY MACHINERY, INC.,
   individually and d/b/a AJAX
24 MANUFACTURING DIVISION AND
   MARTIN EQUIPMENT, WHITE
25 CONSOLIDATED INDUSTRIES, INC.,
   individually and d/b/a WASHEX
26 MACHINERY DIVISION, ELECTROLUX
   CORPORATION, LINDUS S.R.L., individually
27 and d/b/a LINDUS WEST, COLUMBIA
   DRYCLEANING MACHINES, a/k/a
28

-1-

DECLARATION OF STEPHEN J. VALEN IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1  COLUMBIA/ILSA MACHINES CORP.,
   REALSTAR, INC., individually and d/b/a
2  REALSTAR USA, UNION DRYCLEANING
   PRODUCTS USA, FIRBIMATIC,
3  BERGPARMA OF AMERICA, LLC, AMA
   UNIVERSAL, FLUORMATIC MIDWEST
4  LTD., FORENTA LP, WESTERN MULTITEX
   CORP., MARVEL MANUFACTURING,
5  RENZACCI OF AMERICA, SAIL STAR USA,
   VIC MANUFACTURING CORPORATION,
6  M.B.L., INC., GOSS-JEWETT CO. OF
   NORTHERN CALIFORNIA, MCGREGOR
7  SUPPLY COMPANY, S.B. SUPPLY INC.,
   WASHEX MACHINERY OF CALIFORNIA,
8  INC., WORKROOM SUPPLY, INC., TAYLOR
   HOUSEMAN, INC., UNITED FABRICARE
9  SUPPLY, INC., ECHCO SALES INC., MW
   EQUIPMENT, ARTHUR KAJIWARA
10 EQUIPMENT CO., INC., KELLEHER
   EQUIPMENT SUPPLY, INC., US
11 MACHINERY & ENGINEERING CO., INC.,
   WYATT-BENNETT, CORBETT
12 EQUIPMENT, FULLER SUPPLY
   COMPANY, SAV-ON MACHINERY
13 COMPANY, INC. and DOES 1 through 750,
   INCLUSIVE,
14
        Defendants.
15

16

17      I, Stephen J. Valen, declare:

18      1.    I am an attorney licensed to practice law before the courts in the State of California.  I

19 am Partner at the law firm of Filice Brown Eassa & McLeod LLP, which represents defendant The

20 Dow Chemical Company in the above-referenced action.

21      2.    The following facts are within my person knowledge and, if called to testify to the

22 matters stated herein, I could and would competently do so.

23      3.    In order to request that defendant Goss-Jewett Co. of Northern California ("Goss-

24 Jewett") join or consent to the Notice of Removal in the above-referenced action, I contacted Roland

25 Thé of the law firm of Brydon Hugo & Parker, counsel for Goss-Jewett.  Mr. Thé informed me that

26 Goss-Jewett had not been served in the above-referenced action.  Mr. Thé also stated that Goss-

27 Jewett would consent to removal if it were to be served.

28
                                            -2-
   DECLARATION OF STEPHEN J. VALEN IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
             UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1    I declare under penalty of perjury under the laws of the State of California that the foregoing

2    is true and correct.

3         Executed this 30th day of June, 2008 in Oakland, California.

4

5                                                    By: _____
                                                         Stephen J. Valen
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEPHEN J. VALEN IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

ORIGINAL
FILED

JUL - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

1  Gary J. Smith (SB #141393)
2  Ryan R. Tacorda (SB #227070)
   BEVERIDGE & DIAMOND, P.C.
3  456 Montgomery Street, Suite 1800
   San Francisco, CA 94104-1251
4  Telephone: (415) 262-4000
   Facsimile: (415) 262-4040
5
6  Robert Brager
   BEVERIDGE & DIAMOND, P.C.
7  201 North Charles Street, Suite 2210
   Baltimore, MD 21201-4150
8  Telephone: (410) 230-3850
   Facsimile: (410) 230-3868
9
   Attorneys for Defendant
10 PPG INDUSTRIES, INC.

11              UNITED STATES DISTRICT COURT                    SI

12            NORTHERN DISTRICT OF CALIFORNIA

13

14 CALIFORNIA WATER SERVICE          CV 08  CASE NO.  3267
   COMPANY,

15              Plaintiff,           DECLARATION OF MAUREEN L. KING
                                     IN SUPPORT OF NOTICE OF REMOVAL
16      vs.                          OF ACTION UNDER 28 U.S.C. § 1441(b)
                                     (ORIGINAL JURISDICTION)
17 THE DOW CHEMICAL COMPANY; E.I.
   DUPONT DE NEMOURS AND COMPANY;
18 PPG INDUSTRIES, INC.; VULCAN
   MATERIALS COMPANY; OCCIDENTAL
19 CHEMICAL CORPORATION; VALERO
   ENERGY CORPORATION; STAUFFER
20 CHEMICAL COMPANY; BOWE-PERMAC,
   INC., individually and d/b/a BOWE TEXTILE
21 CLEANING, INC.; HOYT CORPORATION;
   R.R. STREET & CO., INC.; MCGRAW
22 EDISON COMPANY, individually and d/b/a
   AMERICAN LAUNDRY MACHINERY, INC.,
23 AMERICAN LAUNDRY MACHINERY, INC.,
   individually and d/b/a AJAX
24 MANUFACTURING DIVISION AND
   MARTIN EQUIPMENT, WHITE
25 CONSOLIDATED INDUSTRIES, INC.,
   individually and d/b/a WASHEX
26 MACHINERY DIVISION, ELECTROLUX
   CORPORATION, LINDUS S.R.L., individually
27 and d/b/a LINDUS WEST, COLUMBIA
   DRYCLEANING MACHINES, a/k/a
28

-1-

DECLARATION OF MAUREEN L. KING IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

528343.1

1  COLUMBIA/ILSA MACHINES CORP.,
   REALSTAR, INC., individually and d/b/a
2  REALSTAR USA, UNION DRYCLEANING
   PRODUCTS USA, FIRBIMATIC,
3  BERGPARMA OF AMERICA, LLC, AMA
   UNIVERSAL, FLUORMATIC MIDWEST
4  LTD., FORENTA LP, WESTERN MULTITEX
   CORP., MARVEL MANUFACTURING,
5  RENZACCI OF AMERICA, SAIL STAR USA,
   VIC MANUFACTURING CORPORATION,
6  M.B.L., INC., GOSS-JEWETT CO. OF
   NORTHERN CALIFORNIA, MCGREGOR
7  SUPPLY COMPANY, S.B. SUPPLY INC.,
   WASHEX MACHINERY OF CALIFORNIA,
8  INC., WORKROOM SUPPLY, INC., TAYLOR
   HOUSEMAN, INC., UNITED FABRICARE
9  SUPPLY, INC., ECHCO SALES INC., MW
   EQUIPMENT, ARTHUR KAJIWARA
10 EQUIPMENT CO., INC., KELLEHER
   EQUIPMENT SUPPLY, INC., US
11 MACHINERY & ENGINEERING CO., INC.,
   WYATT-BENNETT, CORBETT
12 EQUIPMENT, FULLER SUPPLY
   COMPANY, SAV-ON MACHINERY
13 COMPANY, INC. and DOES 1 through 750,
   INCLUSIVE,
14
           Defendants.
15

16

17     I, Maureen L. King, declare:

18     1.     I am an attorney licensed to practice law before this Court, and the courts of the State

19 of California.  I am an attorney at the law firm of Barg Coffin Lewis & Trapp, LLP, which

20 represents defendant Occidental Chemical Corporation in the above-referenced action.

21     2.     The following facts are within my personal knowledge and, if called to testify to the

22 matters stated herein, I could and would competently do so.

23     3.     In order to request that defendant Electrolux Corporation ("Electrolux") join or

24 consent to the Notice of Removal in the above-referenced action, on June 18, 2008, I contacted Skip

25 Lockard of Alston & Bird LLP, counsel for Electrolux.  Mr. Lockard informed me that Electrolux

26 had not been served in the above-referenced action.  Additionally, Mr. Lockard informed me that

27 named defendant White Consolidated Industries d/b/a Washex Machinery Division no longer exists

28

-2-

DECLARATION OF MAUREEN L. KING IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

528343.1

1    and had merged into Electrolux Home Products.  Mr. Lockard also stated that Electrolux would

2    consent to removal if it were to be served.  On June 25, 2008, Mr. Lockard confirmed that Electrolux

3    remained unserved.

4        4.    In order to request that defendant Marvel Manufacturing ("Marvel") join or consent

5    to the Notice of Removal, I attempted to contact Marvel or its counsel.  On information and belief,

6    Marvel no longer exists.  On or about June 18, 2008, I contacted Dan Duncan, former counsel of

7    Marvel, who stated that Marvel had filed for bankruptcy and he had no knowledge regarding

8    Marvel's current legal counsel.  On or about June 18, 2008, I also called the phone number listed for

9    Marvel on McRae's Blue Book Industrial Directory

10   (http://www.macraesbluebook.com/search/company) and spoke to an entity which purchased

11   Marvel's remaining inventory and the right to use Marvel's phone number.  I was informed that

12   Marvel stopped doing business on July 7, 2007.  The California Business Portal on the California

13   Secretary of State website contains no listing for Marvel.

14       5.    In order to request that defendant U.S. Machinery & Engineering Co., Inc. ("US

15   Machinery") join or consent to the Notice of Removal, on or about June 17 and 18, 2008, I contacted

16   Kenneth Park, President of U.S. Machinery and its registered agent for service of process.  Mr. Park

17   informed me that he had not been served in the above-referenced action.  On July 7, 2008, Mr. Park

18   confirmed that U.S. Machinery remained unserved.

19       6.    In order to request that defendant Sav-On Machinery Company, Inc. ("Sav-On") join

20   or consent to the Notice of Removal, I attempted to contact Sav-On or its counsel.  On information

21   and belief, Sav-On no longer exists.  This is supported by the California Business Portal on the

22   California Secretary of State website, which shows that Sav-On has been dissolved.  On or about

23   June 17 and 18, 2008, I also called the phone number listed for Sav-On on the Zami San Francisco

24   Yellow Pages (http://i.zami.com/iphone/) and spoke to an entity which disclaimed any knowledge of

25   Sav-On or the above-referenced action.

26       I declare under the penalty of perjury under the laws of the State of California that the

27   foregoing is true and correct.

28

-3-

DECLARATION OF MAUREEN L. KING IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

528343.1

1    Executed this 7th day of July, 2008 in San Francisco, California.

2

3

4    By: _____

5         Maureen L. King

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

DECLARATION OF MAUREEN L. KING IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

528343.1

1  Gary J. Smith (SB #141393)
2  Ryan R. Tacorda (SB #227070)
   BEVERIDGE & DIAMOND, P.C.
3  456 Montgomery Street, Suite 1800
   San Francisco, CA 94104-1251
4  Telephone: (415) 262-4000
   Facsimile: (415) 262-4040
5
6  Robert Brager
   BEVERIDGE & DIAMOND, P.C.
7  201 North Charles Street, Suite 2210
   Baltimore, MD 21201-4150
8  Telephone: (410) 230-3850
   Facsimile: (410) 230-3868
9
   Attorneys for Defendant
10 PPG INDUSTRIES, INC.

**ORIGINAL FILED**

JUl - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13
   CALIFORNIA WATER SERVICE     **CV**   NO.  **3267**
14 COMPANY,

15              Plaintiff,          DECLARATION OF SARAH F.
                                    PETERMAN IN SUPPORT OF NOTICE OF
16      vs.                        REMOVAL OF ACTION UNDER 28 U.S.C.
                                    § 1441(b) (ORIGINAL JURISDICTION)
17 THE DOW CHEMICAL COMPANY; E.I.
   DUPONT DE NEMOURS AND COMPANY;
18 PPG INDUSTRIES, INC.; VULCAN
   MATERIALS COMPANY; OCCIDENTAL
19 CHEMICAL CORPORATION; VALERO
   ENERGY CORPORATION; STAUFFER
20 CHEMICAL COMPANY; BOWE-PERMAC,
   INC., individually and d/b/a BOWE TEXTILE
21 CLEANING, INC.; HOYT CORPORATION;
   R.R. STREET & CO., INC.; MCGRAW
22 EDISON COMPANY, individually and d/b/a
   AMERICAN LAUNDRY MACHINERY, INC.;
23 AMERICAN LAUNDRY MACHINERY, INC.,
   individually and d/b/a AJAX
24 MANUFACTURING DIVISION AND
   MARTIN EQUIPMENT, WHITE
25 CONSOLIDATED INDUSTRIES, INC.,
   individually and d/b/a WASHEX
26 MACHINERY DIVISION, ELECTROLUX
   CORPORATION, LINDUS S.R.L., individually
27 and d/b/a LINDUS WEST, COLUMBIA
   DRYCLEANING MACHINES, a/k/a
28

-1-

DECLARATION OF SARAH F. PETERMAN IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1  COLUMBIA/ILSA MACHINES CORP.,
   REALSTAR, INC., individually and d/b/a
2  REALSTAR USA, UNION DRYCLEANING
   PRODUCTS USA, FIRBIMATIC,
3  BERGPARMA OF AMERICA, LLC, AMA
   UNIVERSAL, FLUORMATIC MIDWEST
4  LTD., FORENTA LP, WESTERN MULTITEX
   CORP., MARVEL MANUFACTURING,
5  RENZACCI OF AMERICA, SAIL STAR USA,
   VIC MANUFACTURING CORPORATION,
6  M.B.L., INC., GOSS-JEWETT CO. OF
   NORTHERN CALIFORNIA, MCGREGOR
7  SUPPLY COMPANY, S.B. SUPPLY INC.,
   WASHEX MACHINERY OF CALIFORNIA,
8  INC., WORKROOM SUPPLY, INC., TAYLOR
   HOUSEMAN, INC., UNITED FABRICARE
9  SUPPLY, INC., ECHCO SALES INC., MW
   EQUIPMENT, ARTHUR KAJIWARA
10 EQUIPMENT CO., INC., KELLEHER
   EQUIPMENT SUPPLY, INC., US
11 MACHINERY & ENGINEERING CO., INC.,
   WYATT-BENNETT, CORBETT
12 EQUIPMENT, FULLER SUPPLY
   COMPANY, SAV-ON MACHINERY
13 COMPANY, INC. and DOES 1 through 750,
   INCLUSIVE,
14
              Defendants.
15

16

17      I, Sarah F. Peterman, declare:

18      1.      I am an attorney licensed to practice law before the courts in the State of California. I

19 am an associate at the law firm of Farella Braun + Martel, which represents defendant Legacy

20 Vulcan Corp., formerly known as Vulcan Materials Company, in the above-referenced action.

21      2.      The following facts are within my personal knowledge and, if called to testify to the

22 matters stated herein, I could and would competently do so.

23      3.      In order to request that defendant Bergparma of America, LLC ("Bergparma") join or

24 consent to the Notice of Removal, I attempted to contact Bergparma or its counsel. On information

25 and belief, Bergparma has been dissolved and/or revoked. On June 18, 2008, I spoke to James

26 Cueto, the agent for service of process for an affiliated company, Bergparma USA, who informed

27 me that Bergparma dissolved in approximately 2001. Additionally, on file in my office are

28
                                                    -2-
          DECLARATION OF SARAH F. PETERMAN IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
                  UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1   Bergparma's revoking papers from the State of New Jersey that show Bergparma was revoked in

2   2005. Mr. Cueto also informed me that Bergparma USA has also been dissolved.

3       4.      In order to request that defendant Western Multitex join or consent to the Notice of

4   Removal, I contacted Nicole Kim of Western Multitex on June 18, 2008. Ms. Kim informed me that

5   Western Multitex had not been served in the above-referenced action. On July 3, 2008, Ms. Kim

6   confirmed that Western Multitex remained unserved.

7       5.      In order to request that defendant Fuller Supply Company ("Fuller") join or consent

8   to the Notice of Removal, I contacted Thomas Little, President of Fuller, on June 18 and 19, 2008.

9   Mr. Little informed me that Fuller had been erroneously served and would be dismissed from the

10  case. Attached as Exhibit A to this Declaration is a true and correct copy of the letter Mr. Little

11  received from Plaintiff's counsel explaining this error and that Plaintiff was in the process of serving

12  an amended complaint replacing Fuller with Fuller Supply Company, Inc. of San Francisco,

13  California ("Fuller II"). However, on information and belief, Fuller II is a dissolved corporation.

14  This is supported by the California Business Portal on the California Secretary of State website,

15  which shows that Fuller II has been dissolved.

16      6.      In order to request that defendant Cooper Industries, LLC ("Cooper"), successor to

17  named defendant McGraw Edison Company, join or consent to the Notice of Removal, I made

18  contact with Kristin Reyna of the Gordon & Rees law firm, counsel for Cooper, who informed me

19  that Cooper was a successor to McGraw Edison and that no service has occurred. On June 25, 2008,

20  Ms. Reyna confirmed that no service has occurred. Ms. Reyna later confirmed that Cooper remained

21  unserved through the week of July 3, 2008.

22      I declare under the penalty of perjury under the laws of the State of California that the

23  foregoing is true and correct.

24

25  Executed this __7th__ day of July 2008 in San Francisco, California.

26

27                              By: _____
                                    Sarah F. Peterman

28                                          -3-
────────────────────────────────────────────────────────
    DECLARATION OF SARAH F. PETERMAN IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
            UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

EXHIBIT A



SHER·LEFF LLP
LAWYERS PROTECTING WATER

Marnie E. Riddle
(415) 348-8300 x. 102
mriddle@sherleff.com

June 23, 2008

Thomas Little
President
Fuller Supply Co. Inc.
191 Crowell Dr. N.W.
P.O. Box 1261
Concord, NC 28026

Re:    *California Water Service Company v. The Dow Chemical Company, et al.,* San Mateo County Superior Court, Civ. No. 473093

Dear Mr. Little,

Plaintiff California Water Service Company in the above-entitled case, filed May 22, 2008 in San Mateo County Superior Court in California, is in the process of amending its complaint to correct the erroneous identification of Fuller Supply Company as a business organization operating in North Carolina. We are also in the process of serving Fuller Supply Company of San Francisco, California, with a copy of the original complaint, and we will serve that entity with a copy of the amended complaint as well. We will also be glad to send you a courtesy copy of the amended complaint if you would like one for your records, but you will not be served. We apologize for the inconvenience.

On June 18, 2008, you provided California Water Service Company with a signed letter which states, among other things, that Fuller Supply has never operated or conducted business in the State of California. In this letter you requested an agreement to postpone or defer Fuller Supply Co., Inc.'s response to the complaint indefinitely. By this letter Plaintiff affirms that the running of any statute of limitations, and any and all statutes, laws, rules or principles of equity or similar effect (collectively, "statute of limitations"), as it may apply to California Water Service Company's claims against Fuller Supply Co., Inc. of North Carolina, is hereby tolled, and no answer or other response to the complaint is currently due.

Very truly yours,

Marnie Riddle

450 Mission Street, Suite 400 • San Francisco, California 94105 **tel** (415) 348-8300 **fax** (415) 348-8333

1  Gary J. Smith (SB #141393)
2  Ryan R. Tacorda (SB #227070)
    BEVERIDGE & DIAMOND, P.C.
3  456 Montgomery Street, Suite 1800
    San Francisco, CA 94104-1251
4  Telephone: (415) 262-4000
    Facsimile: (415) 262-4040
5

6  Robert Brager
    BEVERIDGE & DIAMOND, P.C.
7  201 North Charles Street, Suite 2210
    Baltimore, MD 21201-4150
8  Telephone: (410) 230-3850
    Facsimile: (410) 230-3868
9

    Attorneys for Defendant
10  PPG INDUSTRIES, INC.

ORIGINAL FILED

JUN - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

11             **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13

14  CALIFORNIA WATER SERVICE
    COMPANY,

15         Plaintiff,

16     vs.

17  THE DOW CHEMICAL COMPANY; E.I.
    DUPONT DE NEMOURS AND COMPANY;
18  PPG INDUSTRIES, INC.; VULCAN
    MATERIALS COMPANY; OCCIDENTAL
19  CHEMICAL CORPORATION; VALERO
    ENERGY CORPORATION; STAUFFER
20  CHEMICAL COMPANY; BOWE-PERMAC,
    INC., individually and d/b/a BOWE TEXTILE
21  CLEANING, INC.; HOYT CORPORATION;
    R.R. STREET & CO., INC.; MCGRAW
22  EDISON COMPANY, individually and d/b/a
    AMERICAN LAUNDRY MACHINERY, INC.,
23  AMERICAN LAUNDRY MACHINERY, INC.,
    individually and d/b/a AJAX
24  MANUFACTURING DIVISION AND
    MARTIN EQUIPMENT, WHITE
25  CONSOLIDATED INDUSTRIES, INC.,
    individually and d/b/a WASHEX
26  MACHINERY DIVISION, ELECTROLUX
    CORPORATION, LINDUS S.R.L., individually
27  and d/b/a LINDUS WEST, COLUMBIA
    DRYCLEANING MACHINES, a/k/a
28

CASE NO. CV-08 3267 SI

**DECLARATION OF RYAN R.TACORDA
IN SUPPORT OF NOTICE OF REMOVAL
OF ACTION UNDER 28 U.S.C. § 1441(b)
(ORIGINAL JURISDICTION)**

-1-

1   COLUMBIA/ILSA MACHINES CORP.,
    REALSTAR, INC., individually and d/b/a
2   REALSTAR USA, UNION DRYCLEANING
    PRODUCTS USA, FIRBIMATIC,
3   BERGPARMA OF AMERICA, LLC, AMA
    UNIVERSAL, FLUORMATIC MIDWEST
4   LTD., FORENTA LP, WESTERN MULTITEX
    CORP., MARVEL MANUFACTURING,
5   RENZACCI OF AMERICA, SAIL STAR USA,
    VIC MANUFACTURING CORPORATION,
6   M.B.L., INC., GOSS-JEWETT CO. OF
    NORTHERN CALIFORNIA, MCGREGOR
7   SUPPLY COMPANY, S.B. SUPPLY INC.,
    WASHEX MACHINERY OF CALIFORNIA,
8   INC., WORKROOM SUPPLY, INC., TAYLOR
    HOUSEMAN, INC., UNITED FABRICARE
9   SUPPLY, INC., ECHCO SALES INC., MW
    EQUIPMENT, ARTHUR KAJIWARA
10  EQUIPMENT CO., INC., KELLEHER
    EQUIPMENT SUPPLY, INC., US
11  MACHINERY & ENGINEERING CO., INC.,
    WYATT-BENNETT, CORBETT
12  EQUIPMENT, FULLER SUPPLY
    COMPANY, SAV-ON MACHINERY
13  COMPANY, INC. and DOES 1 through 750,
    INCLUSIVE,
14
              Defendants.
15

16

17       I, Ryan R. Tacorda, declare:

18       1.    I am an attorney licensed to practice law before the courts in the State of California. I

19  am an associate at the law firm of Beveridge & Diamond, P.C., which represents defendant PPG

20  Industries, Inc. in the above-referenced action.

21       2.    The following facts are within my personal knowledge and, if called to testify to the

22  matters stated herein, I could and would competently do so.

23       3.    In order to request that defendant Fluormatic Midwest, Ltd. ("Fluormatic") join or

24  consent to the Notice of Removal, I attempted to contact Fluormatic or its counsel.  On information

25  and belief, Fluormatic has been dissolved.  This is supported by the Corporation File Detail Report

26  on the Illinois Secretary of State website which shows Fluormatic was involuntary dissolved.

27

28

-2-

DECLARATION OF RYAN R. TACORDA IN SUPPORT OF NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. § 1441(b) (ORIGINAL JURISDICTION)

1    4.    In order to request that defendant AMA Universal ("AMA") join or consent to the

2  Notice of Removal, I attempted to contact AMA or its counsel at a U.S. address affiliated with the

3  company (11438 West Cronridge Drive, Owings Mills, MD 21117; telephone: (443) 394-0533).  On

4  information and belief, AMA no longer exists.  This is supported by the State of Maryland's

5  Department of Assessments and Taxation website which shows that AMA forfeited its corporate

6  charter and its existence has been terminated by the State.

7    5.    In order to request that defendant Lindus S.R.L. d/b/a Lindus West ("Lindus") join or

8  consent to the Notice of Removal, I contacted Norm Korey, owner of Lindus, on June 30, 2008.  Mr.

9  Lindus informed me that he had not been served in the above-referenced action as the agent or

10 owner of Lindus.

11    6.    In order to request that defendant MW Equipment, Inc. ("MW Equipment") join or

12 consent to the Notice of Removal, I contacted Michael Wee of MW Equipment daily from June 30,

13 2008 - July 3, 2008, and again on July 7, 2008.  Mr. Wee, who described himself as the owner of the

14 company, declined to provide the name of MW Equipment's attorney upon my repeated requests.

15 On July 7, 2008, Mr. Wee informed me that he believed MW Equipment was improperly named in

16 the above-referenced action.  He further stated that he did not want to be involved in the case and

17 that his attorney intended to write to Plaintiff to seek dismissal.

18

19    I declare under the penalty of perjury under the laws of the State of California that the

20 foregoing is true and correct.

21    Executed this  *7th* day of July 2008 in San Francisco, California.

22

23    By: _____
         Ryan R. Tacorda

24

25

26

27

28

-3-

EXHIBIT B



BEVERIDGE
& DIAMOND PC

Gary J. Smith
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Direct: (415) 262-4045
Fax: (415) 262-4040
gsmith@bdlaw.com

Ryan R. Tacorda
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Direct: (415) 262-4009
Fax: (415) 262-4040
rtacorda@bdlaw.com

July 8, 2008

Victor M. Sher, Esq.                Scott Summy, Esq.
Sher & Leff, LLP                    Baron & Budd, P.C.
450 Mission Street, Suite 400       3102 Oak Lawn Avenue, Suite 1100
San Francisco, CA 94105             Dallas, TX 75219

     Re:    Notice of Removal of *California Water Service Company v. Dow Chemical Company*

Dear Counsel:

     Pursuant to 28 U.S.C. § 1446(d), defendant PPG Industries, Inc. ("PPG") informs Plaintiff California Water Service Company ("Plaintiff") that on July 7, 2008, PPG and joining and consenting codefendants filed a Notice of Removal to remove the action *California Water Service Company v. Dow Chemical Company*, Case No. CIV 473093, from the Superior Court of the State of California in and for the County of San Mateo to the United States District Court for the Northern District of California under 28. U.S.C. § 1441(b). The action is now under Federal Case Number CIV-08-3267 SI.

     Attached is a file-stamped copy of the Notice of Removal which was filed with the United States District Court for the Northern District of California and the San Mateo Superior Court, and which has been mail-served separately upon Plaintiff's attorneys.

     Sincerely,

     Gary J. Smith
     Ryan R. Tacorda

Attachment

**EXHIBIT**
**B**

tabbies

Washington, D.C.    Maryland    New York    Massachusetts    New Jersey    Texas    California

EXHIBIT C

1    Gary J. Smith (SB #141393)
    Ryan R. Tacorda (SB #227070)
2    BEVERIDGE & DIAMOND, P.C.
    456 Montgomery Street, Suite 1800
3    San Francisco, CA 94104-1251
    Telephone: (415) 262-4000
4    Facsimile: (415) 262-4040

5

6    Robert Brager
    BEVERIDGE & DIAMOND, P.C.
7    201 North Charles Street, Suite 2210
    Baltimore, MD 21201-4150
8    Telephone: (410) 230-3850
    Facsimile: (410) 230-3868

9

10    Attorneys for Defendant
    PPG INDUSTRIES, INC.

11            **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| CALIFORNIA WATER SERVICE COMPANY, | CASE NO. CIV-08-3267 SI |
| Plaintiff, | **SUPPLEMENT TO NOTICE TO PLAINTIFF CALIFORNIA WATER SERVICE COMPANY OF REMOVAL** |
| vs. | |

14    CALIFORNIA WATER SERVICE
    COMPANY,

15            Plaintiff,

16        vs.

17    THE DOW CHEMICAL COMPANY; E.I.
    DUPONT DE NEMOURS AND COMPANY;
18    PPG INDUSTRIES, INC.; VULCAN
    MATERIALS COMPANY; OCCIDENTAL
19    CHEMICAL CORPORATION; VALERO
    ENERGY CORPORATION; STAUFFER
20    CHEMICAL COMPANY; BOWE-PERMAC,
    INC., individually and d/b/a BOWE TEXTILE
21    CLEANING, INC.; HOYT CORPORATION;
    R.R. STREET & CO., INC.; MCGRAW
22    EDISON COMPANY, individually and d/b/a
    AMERICAN LAUNDRY MACHINERY, INC.,
23    AMERICAN LAUNDRY MACHINERY, INC.,
    individually and d/b/a AJAX
24    MANUFACTURING DIVISION AND
    MARTIN EQUIPMENT, WHITE
25    CONSOLIDATED INDUSTRIES, INC.,
    individually and d/b/a WASHEX
26    MACHINERY DIVISION, ELECTROLUX
    CORPORATION, LINDUS S.R.L., individually
27    and d/b/a LINDUS WEST, COLUMBIA
    DRYCLEANING MACHINES, a/k/a
28    COLUMBIA/ILSA MACHINES CORP.,

**EXHIBIT**
*C*

1   REALSTAR, INC., individually and d/b/a
    REALSTAR USA, UNION DRYCLEANING
2   PRODUCTS USA, FIRBIMATIC,
    BERGPARMA OF AMERICA, LLC, AMA
3   UNIVERSAL, FLUORMATIC MIDWEST
    LTD., FORENTA LP, WESTERN MULTITEX
4   CORP., MARVEL MANUFACTURING,
    RENZACCI OF AMERICA, SAIL STAR USA,
5   VIC MANUFACTURING CORPORATION,
    M.B.L., INC., GOSS-JEWETT CO. OF
6   NORTHERN CALIFORNIA, MCGREGOR
    SUPPLY COMPANY, S.B. SUPPLY INC.,
7   WASHEX MACHINERY OF CALIFORNIA,
    INC., WORKROOM SUPPLY, INC., TAYLOR
8   HOUSEMAN, INC., UNITED FABRICARE
    SUPPLY, INC., ECHCO SALES INC., MW
9   EQUIPMENT, ARTHUR KAJIWARA
    EQUIPMENT CO., INC., KELLEHER
10  EQUIPMENT SUPPLY, INC., US
    MACHINERY & ENGINEERING CO., INC.,
11  WYATT-BENNETT, CORBETT
    EQUIPMENT, FULLER SUPPLY
12  COMPANY, SAV-ON MACHINERY
    COMPANY, INC. and DOES 1 through 750,
13  INCLUSIVE,

14          Defendants.

15          TO PLAINTIFF California Water Service Company and its Attorneys of Record:

16          PLEASE TAKE NOTICE THAT defendant PPG Industries, Inc. ("PPG") supplements its

17  Notice to Plaintiff California Water Service Company of Removal, served on July 8, 2008, with the

18  following documents:

19          1.      The Order Setting Initial Case Management Conference and ADR Deadlines, filed

20  July 7, 2008, and attached as Exhibit A.

21          2.      The form Consent to Proceed Before a United States Magistrate Judge, attached as

22  Exhibit B.

23          3.      The United States District Court Northern California ECF Registration Information

24  Handout, filed July 7, 2008, and attached as Exhibit C.

25

26

27

28

-2-

SUPPLEMENT TO NOTICE TO PLAINTIFF CALIFORNIA WATER SERVICE COMPANY OF REMOVAL,
Case No. CIV-08-3267 SI

1   Dated: July 9, 2008 .                          BEVERIDGE & DIAMOND, P.C.

2
                                                   By:
3                                                     Gary J. Smith
                                                      Ryan R. Tacorda
4
                                                   Attorneys for Defendant
5                                                  PPG INDUSTRIES, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENT TO NOTICE TO PLAINTIFF CALIFORNIA WATER SERVICE COMPANY OF REMOVAL,
Case No. CIV-08-3267 SI

EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*ORIGINAL FILED*

*JUN - 7 2008*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

CALIFORNIA WATER SERVICE CO.,

Plaintiff(s),

v.

THE DOW CHEMICAL COMPANY,
Defendant(s).

No. **C 08-03267 SI**

**ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND ADR DEADLINES**

IT IS HEREBY ORDERED that this action is assigned to the Honorable Susan Illston. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order   and all other documents specified in Civil Local Rule 4-2.  Counsel must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3.  Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov.  A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

IT IS FURTHER ORDERED that plaintiff or removing defendant serve upon all parties the brochure entitled "Consenting To A Magistrate Judge's Jurisdiction In The Northern District Of California," additional copies of which can be downloaded from the following Internet site: http://www.cand.uscourts.gov.

## CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 7/7/2008 | Notice of removal filed | |
| 10/3/2008 | Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file ADR Certification signed by Parties and Counsel (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (b) & ADR L.R. 3-5(b) |
| | • file either Stipulation to ADR Process or Notice of Need for ADR Phone Conference (form available at http://www.cand.uscourts.gov) | Civil L.R. 16-8 (c) & ADR L.R. 3-5(b) & (c) |
| 10/17/2008 | Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at http://www.cand.uscourts.gov) | FRCivP 26(a) (1) Civil L.R. 16-9 |



**EXHIBIT**

*A*

10/24/2008    INITIAL CASE MANAGEMENT CONFERENCE    Civil  L.R.  16-10
              (CMC)  in Ctrm. 10, 19th Floor at 2:00 PM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |  |
|---|---|---|---|

Plaintiff(s),  )  NO. C-                              SI
                            )
vs.                       )
                            )  CASE MANAGEMENT
                            )  CONFERENCE ORDER
                            )
            Defendant(s).  )
_____)

    IT IS HEREBY ORDERED that, pursuant to Rule 16(b), Federal Rules of Civil Procedure, and Civil L.R. 16-10, a Case Management Conference will be held in this case before the Honorable Susan Illston on _____ at 2:00 p.m. in Courtroom No. 10, 19th floor Federal Building.

    Plaintiff(s) shall serve copies of this Order at once on all parties to this action, and on any parties subsequently joined, in accordance with the provisions of Fed.R.Civ.P. 4 and 5. Following service, plaintiff(s) shall file certificate of service with the Clerk of this Court.

    Counsel are directed to confer in advance of the Case Management Conference with respect to all of the agenda items listed below. Not less than seven days before the conference, counsel shall file a joint case management statement addressing each agenda item. Failure to file a joint statement shall be accompanied by a signed declaration setting forth the grounds for such failure. Failure to show good cause for such failure may subject the parties to sanctions.

    Each party shall be represented at the Case Management Conference by counsel prepared to address all of the matters referred to in this Order, and with authority to enter stipulations and make admissions pursuant to this Order. The parties are encouraged to attend.

    Any request to reschedule the above dates should be made in writing, and by stipulation, if possible, not less than ten days before the conference date. Good cause must be shown.

1      The parties shall file a joint case management conference statement in
2 accordance with the Standing Order for all Judges in the Northern District of
California. At the case management conference the parties should be prepared
3 to address and resolve the following: setting the date and the estimated length of
the trial; setting the date for discovery cutoff; setting the date to designate
4 experts and other witnesses; and setting the date for the pretrial conference.

5      CIVIL LAW AND MOTION MATTERS WILL BE HEARD ON
FRIDAYS AT 9:00 A.M. COUNSEL SHALL COMPLY WITH CIVIL L.R. 7
6 WITH RESPECT TO MOTION PROCEDURES.

7 <u>Discovery disputes:</u> Counsel seeking the Court's intervention in a discovery
dispute shall, after full compliance with Civil L.R. 37-1, file and serve a letter
8 brief, 5 pages or less, explaining the dispute and the relief sought. Opposing
counsel shall respond by letter brief, 5 pages or less, within one week. The Court
9 will deem the matter submitted unless the Court determines that the issue
requires oral argument, in which case a conference will be arranged. For good
10 cause shown, based on legal or factual complexity, discovery disputes may be
brought by formal noticed motion heard on a regular law and motion calendar.
11 However, leave of Court to do so must be sought and obtained by ex-parte
application in accordance with Civil L.R. 7-1(a)(3).

12      Failure to comply with this Order or the Local Rules of this Court may
13 result in sanctions. <u>See</u> Fed.R.Civ.P. 16(f), Civil L.R. 1-4.

14 <u>Standing Orders:</u> All parties shall comply with the Standing Order for All
Judges of the Northern District of California concerning the contents of the joint
15 case management conference statement and JudgeIllston's Standing Order
which are attached to this case management conference order.
16

17      IT IS SO ORDERED.

18

19

20

21                       _____
                      SUSAN ILLSTON
22                  United States District Judge

23

24

25

26

27

28

# STANDING ORDER FOR ALL JUDGES OF THE NORTHERN DISTRICT OF CALIFORNIA

## CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

Commencing March 1, 2007, all judges of the Northern District of California will require the identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1. <u>Jurisdiction and Service</u>: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2. <u>Facts</u>: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3. <u>Legal Issues</u>: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4. <u>Motions</u>: All prior and pending motions, their current status, and any anticipated motions.

5. <u>Amendment of Pleadings</u>: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6. <u>Evidence Preservation</u>: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and electronically-recorded material.

7. <u>Disclosures</u>: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

8. <u>Discovery</u>: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

9. <u>Class Actions</u>: If a class action, a proposal for how and when the class will be certified.

10. <u>Related Cases</u>: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11. <u>Relief</u>: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12. <u>Settlement and ADR</u>: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13. <u>Consent to Magistrate Judge For All Purposes</u>: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14. <u>Other References</u>: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16. <u>Expedited Schedule</u>: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

17. <u>Scheduling</u>: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18. <u>Trial</u>: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19. <u>Disclosure of Non-party Interested Entities or Persons</u>: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. **In addition**, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. 20.Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

20. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

4

(4/5/07)

## JUDGE ILLSTON'S STANDING ORDER

1. Scheduling Days:

Civil Law and Motion Calendar is conducted on Fridays at 9:00 a.m.

Criminal Law and Motion Calendar is conducted on Fridays at 11:00 a.m.

Civil Case Management Conferences are generally conducted on Fridays at 2:00 p.m. with the order of call determined by the Court.

Pretrial Conferences are generally conducted on Tuesday afternoons at 3:30 p.m.

Counsel need not reserve motion hearing dates, but may call the clerk to obtain the next available law and motion calendar. Motions may be reset as the Court's calendar requires.

All parties are directed to comply with the Civil Local Rules except as identified in this order.

2. Discovery Disputes:

Counsel seeking the court's intervention in a discovery dispute shall, after full compliance with Civil L.R. 37-1, file and serve a letter brief, 5 pages or less, explaining the dispute and relief sought. Opposing counsel shall respond by letter brief, 5 pages or less, within one week. The Court will deem the matter submitted unless the Court determines that the issue requires oral argument, in which case a conference will be arranged.

3. Sealed Documents (Civil L.R. 79-5):

This Court does not require the filing of Administrative Motions to seal (Civil L.R. 7-11). The Court will accept stipulations (Civ. L.R. 7-12) or an ex-parte application (Civ. L.R. 7-10) with proposed orders in lieu of the administrative motion. In the event an agreement and stipulation for leave to file under seal is not possible, an ex-parte application shall be filed instead. Oppositions to ex-parte applications and proposed order must be submitted to the Court immediately.

Counsel must submit the documents intended to be filed under seal in the following manner:

1. The entire original document, contained in an 8 1/2 - inch by 11-inch sealed envelope or other suitable sealed container, with a cover sheet affixed to the envelope or container, setting out the information required by Civil L.R. 3-4(a) and (b) and prominently displaying the notation: "DOCUMENT SUBMITTED UNDER SEAL." The sealable portions of the document must be identified by notations or highlighting within the text;

2. A second copy (chambers copy) completely assembled, including both sealed and unsealed material must be submitted in a single envelope.

5

Chambers must not be served with any "redacted/public" versions of sealed documents.

4.  Courtesy Copies:

All courtesy copies must be three-hole punched at the left margin.

5.  Summary Judgment Motions:

Parties are limited to filing one motion for summary judgment.  Any party wishing to exceed this limit must request leave of Court.

6

EXHIBIT B

1
2
3
4
5
6                       UNITED STATES DISTRICT COURT
7                     NORTHERN DISTRICT OF CALIFORNIA
8
CALIFORNIA WATER SERVICE COMPANY
9                                               No. C 08-03267 SI
10              Plaintiff(s),            **CONSENT TO PROCEED BEFORE A**
                                         **UNITED STATES MAGISTRATE JUDGE**
11        v.
DOW CHEMICAL COMPANY
12
13              Defendant(s).
                                        /
14
15      CONSENT TO PROCEED BEFORE A UNITED STATES MAGISTRATE JUDGE
16          In accordance with the provisions of Title 28, U.S.C. Section 636(c), the undersigned party
17   hereby voluntarily consents to have a United States Magistrate Judge conduct any and all further
18   proceedings in the case, including trial, and order the entry of a final judgment.  Appeal from the
19   judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit.
20
21   Dated: _____          _____
22                                            Signature
23                                            Counsel for _____
                                             (Plaintiff, Defendant or indicate "pro se")
24
25
26
27
28

**EXHIBIT**
**B**

EXHIBIT C

E-filing

CV 08    3267    SI

# U.S. District Court Northern California

## ECF Registration Information Handout

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Civil Local Rule 5-4 and General Order 45. <u>This means that you **must**</u> (check off the boxes ☑ when done):

☐ **1) Serve** <u>this</u> ECF Registration Information Handout on **all** parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout.

<u>Each attorney representing a party must also:</u>

☐ **2) Register** to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, <u>do not</u> register again, your registration is valid for life on all ECF cases in this district.

☐ **3) Email** (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format within ten business days, following the instructions below. You do not need to wait for your registration to be completed to email the court.

☐ **4)** Access dockets and documents using **PACER** (Public Access to Court Electronic Records). If your firm already has a PACER account, please use that – it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, visit: **http://pacer.psc.uscourts.gov** or call **(800) 676-6856.**

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) (eff. 12.1.01) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

**All subsequent papers submitted by attorneys in this case shall be filed electronically. Unrepresented litigants must file and serve in paper form, unless prior leave to file electronically is obtained from the assigned judge.**

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: **http://ecf.cand.uscourts.gov**

EXHIBIT
C

Version 5/14/2007

**<u>Submitting Initiating Documents</u>**
PDF versions of all the initiating documents originally submitted to the court (Complaint or Notice of Removal, exhibits, etc.) must be **emailed (not efiled)** to the **PDF email box for the presiding judge** (not the referring judge, if there is one) **within 10 (ten) business days** of the opening of your case. For a complete list of the email addresses, please go to: **http://ecf.cand.uscourts.gov** and click on **[Judges].**

You must include the case number and judge's initials in the <u>subject line</u> of all relevant emails to the court. You do not need to wait for your registration to email these documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system. All other documents must be e-filed from then on. You do not need to efile or email the Civil Cover Sheet, Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

**<u>Converting Documents to PDF</u>**
Conversion of a word processing document to a PDF file is required before any documents may be submitted to the Court's electronic filing system. Instructions for creating PDF files can be found at the ECF web site: **http://ecf.cand.uscourts.gov,** and click on **[FAQ].**

**<u>Email Guidelines</u>:** When sending an email to the court, the subject line of the email **<u>must</u>** contain the **case number, judge's initials** and the **type of document(s)** you are sending, and/or the topic of the email.

**Examples:** The examples below assume your case number is 03-09999 before the Honorable Charles R. Breyer:

| Type of Document | Email Subject Line Text |
|---|---|
| Complaint Only | 03-09999 CRB Complaint |
| Complaint and Notice of Related Case | 03-09999 CRB Complaint, Related Case |
| Complaint and Motion for Temporary Restraining Order | 03-09999 CRB Complaint, TRO |

**Questions**
Almost all questions can be answered in our **FAQs** at
**http://ecf.cand.uscourts.gov,** please check them first.

You may also email the ECF Help Desk at ECFhelpdesk@cand.uscourts.gov or
call the toll-free ECF Help Desk number at: (866) 638-7829.

The ECF Help Desk is staffed Mondays through Fridays from
9:00am to 4:00pm Pacific time, excluding court holidays.

Version 5/14/2007

EXHIBIT D

1   Gary J. Smith (SB #141393)
    Ryan R. Tacorda (SB #227070)
2   BEVERIDGE & DIAMOND, P.C.
3   456 Montgomery Street, Suite 1800
    San Francisco, CA 94104-1251
4   Telephone: (415) 262-4000
    Facsimile: (415) 262-4040
5
    Robert Brager
6   BEVERIDGE & DIAMOND, P.C.
7   201 North Charles Street, Suite 2210
    Baltimore, MD 21201-4150
8   Telephone: (410) 230-3850
    Facsimile: (410) 230-3868
9
    Attorneys for Defendant
10  PPG INDUSTRIES, INC.

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13
    CALIFORNIA WATER SERVICE              CASE NO. CIV-08-3267 SI
14  COMPANY,

15          Plaintiff,

16      vs.

17  THE DOW CHEMICAL COMPANY; E.I.        **CERTIFICATE OF SERVICE re**
    DUPONT DE NEMOURS AND COMPANY;        **SUPPLEMENT TO NOTICE TO**
18  PPG INDUSTRIES, INC.; VULCAN          **PLAINTIFF CALIFORNIA WATER**
    MATERIALS COMPANY; OCCIDENTAL         **SERVICE COMPANY OF REMOVAL**
19  CHEMICAL CORPORATION; VALERO
    ENERGY CORPORATION; STAUFFER
20  CHEMICAL COMPANY; BOWE-PERMAC,
    INC., individually and d/b/a BOWE TEXTILE
21  CLEANING, INC.; HOYT CORPORATION;
    R.R. STREET & CO., INC.; MCGRAW
22  EDISON COMPANY, individually and d/b/a
    AMERICAN LAUNDRY MACHINERY, INC.,
23  AMERICAN LAUNDRY MACHINERY, INC.,
    individually and d/b/a AJAX
24  MANUFACTURING DIVISION AND
    MARTIN EQUIPMENT, WHITE
25  CONSOLIDATED INDUSTRIES, INC.,
    individually and d/b/a WASHEX
26  MACHINERY DIVISION, ELECTROLUX
    CORPORATION, LINDUS S.R.L., individually
27  and d/b/a LINDUS WEST, COLUMBIA
    DRYCLEANING MACHINES, a/k/a

28

**EXHIBIT**
**D**

Certificate of Service re Supplement to Notice to Plaintiff California Water Service Company of Removal; Case No.
CIV-08-3267 SI

1 | COLUMBIA/ILSA MACHINES CORP.,
REALSTAR, INC., individually and d/b/a
2 | REALSTAR USA, UNION DRYCLEANING
PRODUCTS USA, FIRBIMATIC,
3 | BERGPARMA OF AMERICA, LLC, AMA
UNIVERSAL, FLUORMATIC MIDWEST
4 | LTD., FORENTA LP, WESTERN MULTITEX
CORP., MARVEL MANUFACTURING,
5 | RENZACCI OF AMERICA, SAIL STAR USA,
VIC MANUFACTURING CORPORATION,
6 | M.B.L., INC., GOSS-JEWETT CO. OF
NORTHERN CALIFORNIA, MCGREGOR
7 | SUPPLY COMPANY, S.B. SUPPLY INC.,
WASHEX MACHINERY OF CALIFORNIA,
8 | INC., WORKROOM SUPPLY, INC., TAYLOR
HOUSEMAN, INC., UNITED FABRICARE
9 | SUPPLY, INC., ECHCO SALES INC., MW
EQUIPMENT, ARTHUR KAJIWARA
10 | EQUIPMENT CO., INC., KELLEHER
EQUIPMENT SUPPLY, INC., US
11 | MACHINERY & ENGINEERING CO., INC.,
WYATT-BENNETT, CORBETT
12 | EQUIPMENT, FULLER SUPPLY
COMPANY, SAV-ON MACHINERY
13 | COMPANY, INC. and DOES 1 through 750,
INCLUSIVE,

14 |                    Defendants.

17    I, Adela C. Cruz, certify and declare that I am a citizen of the United States, over the age of eighteen years and not a party to this action. I am employed in the City and County of San Francisco and my business address is 456 Montgomery Street, Suite 1800, San Francisco, California 94104.

19    On July 9, 2008, at San Francisco, California, I served the following document:

20    **SUPPLEMENT TO NOTICE TO PLAINTIFF CALIFORNIA WATER SERVICE COMPANY OF REMOVAL**

22 by placing a true copy thereof in separate, sealed envelopes addressed as follows:

| | |
|---|---|
| Marnie Erica Riddle, Esq. | Scott Summy, Admitted in Texas |
| Sher Leff LLP | Cary McDougal, Admitted in Texas |
| 450 Mission Street, Suite 400 | Carla Burke, Admitted in Texas |
| San Francisco, CA 94105 | Celeste Evangelisti, Esq. |
| | Baron & Budd, P.C. |
| Attorneys for Plaintiff | 3102 Oak Lawn Avenue, Suite 1100 |
| | Dallas, TX 75219-4281 |
| | Attorneys for Plaintiff |

-2-

Certificate of Service re Supplement to Notice to Plaintiff California Water Service Company of Removal; Case No. CIV-08-3267 SI

| ✓ | **BY FIRST CLASS MAIL:** I am readily familiar with my employer's practice for the collection and processing of mail. Under that practice, envelopes would be deposited with the U.S. Postal Service that same day, with first class postage thereon fully prepaid, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing shown in this proof of service. |
|---|---|
| ✓ | **(Federal Courts Only):** I declare that I am employed in the office of a member of the court at whose direction this service was made. |

I certify under penalty of perjury that the foregoing is true and correct.

Executed on July 9, 2008, at San Francisco, California.

_Adela C. Cruz_
Adela C. Cruz

---

-3-