1   Douglas R. Young (State Bar No. 073248)
        dyoung@fbm.com
2   James H. Colopy (State Bar No. 172806)
        jcolopy@fbm.com
3   Ruth Ann Castro (State Bar No. 209448)
        rcastro@fbm.com
4   Farella Braun + Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA  94104
    Telephone:  (415) 954-4400
6   Facsimile:  (415) 954-4480

7   Attorneys for Defendant
    LEGACY VULCAN CORP., formerly known as
8   VULCAN MATERIALS COMPANY

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14   CALIFORNIA WATER SERVICE              Case No. 3:08-cv-03267 SI
     COMPANY,
15                                         **DEFENDANT LEGACY VULCAN
                        Plaintiff,         CORP.'S NOTICE OF MOTION AND
16                                         MOTION TO DISMISS PLAINTIFF'S
          vs.                              SEVENTH CAUSE OF ACTION
17                                         PURSUANT TO FRCP 12(b)(6) AND
     THE DOW CHEMICAL COMPANY; E.I.        MOTION TO STRIKE CERTAIN
18   DUPONT DE NEMOURS AND COMPANY;        ALLEGATIONS PURSUANT TO
     PPG INDUSTRIES, INC.; VULCAN          FRCP 12(f)**
19   MATERIALS COMPANY; OCCIDENTAL
     CHEMICAL CORPORATION; VALERO
20   ENERGY CORPORATION; STAUFFER          Date:      October 3, 2008
     CHEMICAL COMPANY; BOWE-PERMAC,        Time:      9:00 a.m.
21   INC., indivually and d/b/a BOWE TEXTILE   Court:     Courtroom 10
     CLEANING, INC., HOYT CORPORATION,     Judge:     Hon. Susan Illston
22   R.R. STREET & CO., INC., MCGRAW
     EDISON COMPANY, individually and d/b/a
23   AMERICAN LAUNDRY MACHINERY, INC.;
     AMERICAN LAUNDRY MACHINERY, INC.,
24   individually and d/b/a AJAX
     MANUFACTURING DIVISION AND
25   MARTIN EQUIPMENT, WHITE
     CONSOLIDATED INDUSTRIES, INC.,
26   individually and d/b/a WASHEX
     MACHINERY DIVISION, ELECTROLUX
27   CORPORATION, LINDUS S.R.L., individually
     and d/b/a LINDUS WEST, COLUMBIA
28   DRYCLEANING MACHINES, a/k/a
     COLUMBIA/ILSA MACHINES CORP.,

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE
Case No. 3:08-cv-03267 SI

23397\1632233.2

1  REALSTAR, INC., individually and d/b/a
   REALSTAR USA, UNION DRYCLEANING
2  PRODUCTS USA, FIRBIMATIC,
   BERGPARMA OF AMERICA, LLC, AMA
3  UNIVERSAL; FLUORMATIC MIDWEST
   LTD., FORENTA LP, WESTERN MULTITEX
4  CORP., MARVEL MANUFACTURING,
   RENZACCI OF AMERICA, SAIL STAR USA,
5  VIC MANUFACTURING CORPORATION,
   M.B.L., INC., GOSS-JEWETT CO. OF
6  NORTHERN CALIFORNIA, MCGREGOR
   SUPPLY COMPANY, S.B. SUPPLY INC.,
7  WASHEX MACHINERY OF CALIFORNIA,
   INC., WORKROOM SUPPLY, INC., TAYLOR
8  HOUSEMAN, INC., UNITED FABRICARE
   SUPPLY, INC., ECHCO SALES INC., MW
9  EQUIPMENT, ARTHUR KAJIWARA
   EQUIPMENT CO., INC., KELLEHER
10 EQUIPMENT SUPPLY, INC., US
   MACHINERY & ENGINEERING CO., INC.,
11 WYATT-BENNETT, CORBETT
   EQUIPMENT, FULLER SUPPLY COMPANY,
12 SAV-ON MACHINERY COMPANY, INC. and
   DOES 1 through 750, INCLUSIVE,
13
                Defendants.
14

15              **MOTION AND NOTICE OF MOTION**

16         NOTICE IS HEREBY GIVEN that on October 3, 2008, at 9:00 a.m. or as soon thereafter as

17 counsel may be heard by the above-entitled Court, located at 450 Golden Gate Ave., San Francisco,

18 California 94102, in Courtroom 10, 19th Floor, Defendant Legacy Vulcan Corp., formerly known as

19 Vulcan Materials Company ("Vulcan"), will, and hereby does, move this Court:

20         1.      Pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing without leave to

21 amend Plaintiff's Seventh Cause of Action under California Civil Code Section 1882 *et seq.* on

22 the ground that the Seventh Cause of Action fails to state a claim upon which relief may be

23 granted; and

24         2.      Pursuant to Fed. R. Civ. P. 12(f), for an order striking Plaintiff's prayer for treble

25 damages, costs, prejudgment interest and attorneys' fees under California Civil Code Section

26 1882.2 on the ground that Plaintiff is not entitled to such relief.

27         Vulcan's motion relies upon this Notice of Motion and Motion, the following

28 Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE              - 2 -
Case No. 3:08-cv-03267 SI                                                  23397\1632233.2

1  Complaint filed in this action, and upon any other argument presented by counsel to the Court.

2  Dated: July 11, 2008                    FARELLA BRAUN + MARTEL LLP

3

4                                           By:  /s/  James H. Colopy
                                                 James H. Colopy
5
                                            Attorneys for Defendant
6                                           LEGACY VULCAN CORP., formerly
                                            known as VULCAN MATERIALS
7                                           COMPANY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE                - 3 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .......................................................................................................... 1

II.  STATEMENT OF THE ISSUES TO BE DECIDED ......................................................... 2

III.  FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

IV.  ARGUMENT ............................................................................................................... 3

    A.  Legal Standard .................................................................................................. 3

    B.  Plaintiff's Seventh Cause Of Action Should Be Dismissed Because
        Sections 1882-1882.6 Do Not Apply To Groundwater Contamination ................. 4

        1.  The Plain Language Of Sections 1882-1882.6 Establishes That The
            Statute Applies Only To Allegations Of Injury Of Property Used To
            Provide Water, And Not Injury To The Water Itself ................................. 4

        2.  The Legislative History Confirms That Section 1882 Does Not
            Encompass Groundwater Contamination .................................................... 8

        3.  Federal And State Courts Have Consistently Dismissed Identical
            Claims At The Pleading Stage. ................................................................ 10

    C.  Plaintiff's Prayer For Treble Damages, Costs, Prejudgment Interest And
        Attorneys' Fees Pursuant To Section 1882.2 Should Be Stricken ....................... 12

V.  CONCLUSION .......................................................................................................... 12

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE                    - i -
Case No. 3:08-cv-03267 SI

23397\1632233.2

# TABLE OF AUTHORITIES

**Page**

*Bell Atlantic Corp. v. Twombly*,
　127 S. Ct. 1955 (2007) ................................................................................................ 4

*Blake v. Dierdorff*,
　856 F.2d 1365 (9th Cir. 1988) .................................................................................... 4

*Bureerong v. Uvawas*,
　922 F. Supp. 1450 (C.D. Cal. 1996) ......................................................................... 12

*Clegg v. Cult Awareness Network*,
　18 F.3d 752 (9th Cir. 1994) ....................................................................................... 4

*In re MTBE Products Liability Litigation*,
　402 F. Supp. 2d 434 (S.D.N.Y. 2005) ....................................................... 6, 7, 9, 10, 12

*Robertson v. Dean Witter Reynolds, Inc.*,
　749 F.2d 530 (9th Cir. 1984) ...................................................................................... 3

*Southern Cal. Water Co. v. Aerojet-General Corp.*,
　No. 02- 6340, 2003 U.S. Dist. LEXIS 26534 (C.D. Cal. Apr. 1, 2003) ............. 7, 9, 10, 12

## STATE CASES

*Day v. City of Fontana*,
　25 Cal. 4th 268 (2001) ............................................................................................... 5

*Dyna-Medical, Inc. v. Fair Employment & Housing Commission*,
　43 Cal. 3d 1379 (1987) .............................................................................................. 5

*Flannery v. Prentice*,
　26 Cal. 4th 572 (2001) ............................................................................................... 5

*Khajavi v. Feather River Anesthesia Medical Group*,
　84 Cal. App. 4th 32 (2000) ........................................................................................ 7

*National Audubon Society v. Superior Court*,
　33 Cal. 3d 419 (1983) ................................................................................................ 6

*State v. Superior Court*,
　78 Cal. App. 4th 1019 (2000) .................................................................................... 6

*Webster v. Superior Court*,
　46 Cal. 3d 338 (1988) ................................................................................................ 5

## DOCKETED CASES

*Cambria Community Services District. v. Chevron Corp.*,
　No. CV01089 (Cal. Super. Ct., San Luis Obispo County, Apr. 12, 2002) ................... 11

*City of Modesto v. The Dow Chemical Co.*,
　No. 999345/999643 (Cal. Super. Ct., San Francisco County, May 24, 2002) ................ 11

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE               - ii -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*City of Redlands  v. Shell Oil Co.*,
    No. SCVSS120627 (Cal. Super. Ct., San Bernardino County, July 17, 2006)................ 10

4

*City of Santa Monica v. Shell Oil Co.*,
    No. 01CC04331 (Cal. Super. Ct., Orange County, July 12, 2002)................................... 11

5

6

*D.J. Nelson Trust v. Atlantic Richfield Co.*,
    No. 02AS00535, *aff'd by order* (Cal. Super. Ct., Sacramento County, Sept. 26,
    2003) ........................................................................................................................... 11

7

8

**FEDERAL RULES**

9

Federal Rules of Civil Procedure
    Rule 12(b)(6)................................................................................................................ 3, 10

10

    Rule 12(f) .......................................................................................................................... 12

11

Federal Rules of Evidence
    Rule 201 ............................................................................................................................... 8

12

**STATE STATUTES**

13

14

California Civil Code
    § 1882.................................................................................... 2, 3, 7, 8, 10, 11, 12, 13
    §§ 1882-1882.6 ....................................................................... 1, 4, 8, 9, 10

15

    § 1882(e) ............................................................................................................. 6
    § 1882(g) ............................................................................................................. 6

16

    § 1882.1(b) .......................................................................................................... 7
    § 1882.1(c) ........................................................................................................... 7

17

    § 1882.1(d) ....................................................................................................... 6, 7
    § 1882.1 ....................................................................................... 4, 5, 6, 7, 10, 12

18

    § 1882.1(a) ........................................................................................................... 7
    § 1882.2.......................................................................................... 2, 12, 13

19

20

California Penal Code
    § 498................................................................................................................... 9

21

**OTHER AUTHORITY**

22

Assem. Util. and Energy Comm., Assem. Bill No. 1285, 1981-82 Gen. Assem.,
    Reg. Sess. at 2 (Cal. 1981) ............................................................................................ 8

23

Governor's Office, Enrolled Bill Report on Assem. Bill No. 1285 (Aug. 31, 1981) .................... 8

24

Sen. Committee on Judiciary, Analysis of Assem. Bill No. 1285, 1981-82 Gen. Assem.,
    Reg. Sess. at 1 (Cal. 1981) ............................................................................................ 9

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE                    - iii -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

In its Complaint,[1] Plaintiff California Water Service Company ("Plaintiff" or "Cal Water") alleges a variety of claims against 45 defendants alleging that they have caused or contributed to the environmental contamination of unidentified water supply systems owned or operated by Cal Water.

The Seventh Cause of Action for utility tampering pursuant to California Civil Code Section 1882 *et seq.* must be dismissed. The plain language of the statute, its legislative history, and the decisions of several federal and state courts all demonstrate that this statute does not apply to the alleged contamination of water. Instead, as those authorities make clear, the statute only provides a remedy for the theft of water services or physical injury to the equipment used to provide water, neither of which is alleged here as is plainly evident from the Complaint.

The Complaint alleges that Defendant Legacy Vulcan Corp., formerly known as Vulcan Materials Company ("Vulcan"), was one of the bulk chemical manufacturers that manufactured the chemical perchloroethylene ("PCE" or "Perc") that was sold to distributors, which resold the chemical to dry cleaners for use in the dry cleaning process. As a consequence of dry cleaners' disposal of PCE, the Complaint alleges, the chemical has entered the subsurface and allegedly contaminated groundwater drawn upon by certain unidentified water supply systems of Plaintiff. Plaintiff alleges that it has incurred or will incur costs to investigate and remediate the contamination. The Complaint does not allege, and cannot credibly assert, that any of the PCE manufacturers, including Vulcan, engaged in any theft of water services or physically tampered with any equipment used by Plaintiff in its systems.

In virtually-identical lawsuits on motions to dismiss at the pleading stage, citing the statute's plain language and the legislative history, seven federal and state courts have consistently dismissed such claims on the ground that Civil Code Sections 1882–1882.6 does not

---

[1] For the convenience of the Court, a copy of the Complaint is attached hereto as Exhibit A.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE          - 1 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1    encompass groundwater contamination.  Plaintiff's claim here is no different.  Plaintiff's prayer

2    for treble damages, costs, prejudgment interest and attorneys' fees pursuant to Section 1882.2

3    should be stricken for the same reasons.

4        Accordingly, Plaintiff's Seventh Cause of Action under Civil Code Section 1882 *et seq*.

5    must be dismissed, and the related portions of its prayer stricken.  Because Plaintiff cannot cure

6    this defect, this Motion to Dismiss and Motion to Strike should be granted without leave to

7    amend.

8                                    **II.**

9                    **STATEMENT OF THE ISSUES TO BE DECIDED**

10       1.       Do Plaintiff's allegations that a chemical product contributed to contaminating

11   groundwater fail to state a claim under California Civil Code Section[2] 1882.1, which authorizes a

12   utility to bring an action against a party that "tampers with any property owned or used by the

13   utility to provide utility services," thereby requiring that the Seventh Cause of Action be

14   dismissed?

15       2.       If Plaintiff fails to state a claim under Section 1882, must its prayer for treble

16   damages, costs, prejudgment interest and attorneys' fees pursuant to Section 1882.2 be stricken?

17                                   **III.**

18                   **FACTUAL AND PROCEDURAL BACKGROUND**

19       On May 22, 2008, Plaintiff filed its Complaint in San Mateo County Superior Court

20   against many defendants.  On July 7, 2008, defendants removed the lawsuit to U.S. District Court

21   for the Northern District of California.

22       The Complaint alleges eight causes of action, including strict products liability for design

23   defect and failure to warn, nuisance, trespass, negligence, negligence per se, a claim under

24   California Civil Code section 1882 and equitable indemnity.  Each claim is brought against all 45

25   defendants, which are classified into the following three groups: seven "PCE Manufacturer

26   Defendants," twenty-one "Equipment Manufacturer Defendants," and seventeen "Distributor

27   _____

28   [2] Unless otherwise noted, all references to Code sections are to the California Civil Code.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE                - 2 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1   Defendants." (Compl. ¶¶ 9-64.)  The lawsuit is solely about alleged property damage, and there

2   are no allegations of any personal injury caused by the alleged contamination.

3        Plaintiff alleges that the PCE Manufacturer Defendants, including Vulcan, "designed,

4   manufactured, formulated, marketed, promoted, distributed, and/or sold (directly or indirectly) the

5   PCE and/or products containing PCE that contaminates Plaintiff's Wells and water supply, and/or

6   caused PCE to be applied, discharged, disposed of and/or released so as to contaminate Plaintiff's

7   Wells and water supply." (Compl. ¶ 9.)  Plaintiff also alleges that the PCE Manufacturer

8   Defendants failed to provide adequate warnings regarding the risks of PCE to users and the public.

9   (Compl. ¶ 91.)

10        In its Seventh Cause of Action pursuant to Section 1882, Plaintiff alleges that water that is

11   pumped from Plaintiff's wells and groundwater that supplies Plaintiff's wells are "property

12   owned or used by Plaintiff to provide utility services." (Compl. ¶¶ 153-154.)  It also alleges that

13   "by causing the introduction of PCE into Plaintiff's Wells and the groundwaters that supply them

14   . . . , the Defendants . . . injured, altered, interfered with, and/or otherwise prevented from

15   performing its normal or customary function property owned or used by Plaintiff to provide

16   utility services." (Compl. ¶ 155.)

17        For purposes of potential liability under the Seventh Cause of Action, and the issues in

18   this Motion, there are no alleged factual or legal differences among the seven alleged PCE

19   Manufacturer Defendants.  The same appears true for the twenty-one alleged Equipment

20   Manufacturer Defendants and the seventeen alleged Distributor Defendants.  In other words,

21   while this Motion is brought by Vulcan, the grounds upon which it is brought should apply

22   equally to all defendants.

### IV.

### ARGUMENT

25   **A.**   **Legal Standard**

26        Pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may dismiss a complaint "as

27   a matter of law for one of two reasons:  (1) lack of a cognizable legal theory or (2) insufficient

28   facts under a cognizable legal claim."  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE           - 3 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1   533-34 (9th Cir. 1984).  Factual allegations must be enough to raise a right to relief above the

2   speculative level on the assumption that all the allegations in the complaint are true.  *Bell Atlantic*

3   *Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). While the court must

4   accept all well-pleaded factual allegations as true, it should not consider unsupported, conclusory

5   allegations.  *See Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir. 1988).  Nor should it accept

6   legal or factual allegations based on unreasonable inferences.  *See Clegg v. Cult Awareness*

7   *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

8         Here, even assuming all of Plaintiff's factual allegations are true, the Seventh Cause of

9   Action fails to state a claim and therefore must be dismissed.

**B.    Plaintiff's Seventh Cause Of Action Should Be Dismissed Because Sections 1882-1882.6 Do Not Apply To Groundwater Contamination**

12        The plain language and legislative history of Sections 1882-1882.6 demonstrate, as

13   unanimously confirmed by several court decisions that have interpreted those sections, that the

14   statute does not create an actionable claim for water contamination.  Rather, these sections were

15   enacted to enable utility companies to bring civil actions against those who physically tampered

16   with utility equipment or who gained unauthorized access to utility services.  To read Section

17   1882.1 to encompass groundwater contamination, as Plaintiff asserts, conflicts with the remainder

18   of the statute, as well as the clear legislative history.

**1.    The Plain Language Of Sections 1882-1882.6 Establishes That The Statute Applies Only To Allegations Of Injury Of *Property* Used To Provide Water, And Not Injury To The Water Itself**

21        Plaintiff alleges that the groundwater it draws upon has been contaminated with PCE and

22   seeks damages for costs associated with removing PCE from the water.  (Compl. ¶¶ 5, 79.)  The

23   Complaint contains the legal conclusion that the water pumped from its wells and groundwater

24   that supplies Plaintiff's wells are each "property" as defined by Section 1882.1.  (Compl. ¶¶ 153,

25   154.)  A plain reading of the statute's language, however, demonstrates that the term "property"

26   in these sections does not refer to the water itself, but instead refers to the equipment and delivery

27   system.  Because the Complaint does not allege any physical injury to equipment or a delivery

28   system, the claim under Section 1882.1 must fail.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE          - 4 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

The court's fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. *Day v. City of Fontana*, 25 Cal. 4th 268, 272 (2001). In so doing, the "courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers." *Webster v. Superior Court*, 46 Cal. 3d 338, 344 (1988). "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance . . . to every word, phrase and sentence in pursuance of the legislative purpose." *Dyna-Med, Inc. v. Fair Employment & Hous. Comm'n,* 43 Cal. 3d 1379, 1386-1387 (1987). In addition, the statutory language should not be considered in isolation; rather, the entire substance of the statute must be examined to determine the scope and purpose of the provision. *Flannery v. Prentice*, 26 Cal. 4th 572, 578 (2001).

Civil Code Section 1882.1 is not ambiguous – it plainly creates a cause of action for the theft of utility services or the physical tampering of the equipment used to provide utility services, not the utility commodity (*e.g.*, water) itself. California Civil Code Section 1882.1 provides:

> A utility may bring a civil action for damages against any person who commits, authorizes, solicits, aids, abets, or attempts any of the following acts:
>
> (a) Diverts, or causes to be diverted, utility services by any means whatsoever.
>
> (b) Makes, or causes to be made, any connection or reconnection with property owned or used by the utility to provide utility service without the authorization or consent of the utility.
>
> (c) Prevents any utility meter, or other device used in determining the charge for utility services, from accurately performing its measuring function by tampering or by any other means.
>
> (d) Tampers with any property owned or used by the utility to provide utility services.
>
> (e) Uses or receives the direct benefit of all, or a portion, of the utility service with knowledge of, or reason to believe that, the diversion, tampering, or unauthorized connection existed at the time of the use, or that the use or receipt, was without the authorization or consent of the utility.

Subsections (a), (b), (c) and (e) refer to the theft of utility services by diversion or by improper modification of the meters. Plainly none of those could apply to an alleged chemical

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE          - 5 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1   manufacturer like Vulcan given the allegations of the Complaint

2           Subsection (d), particularly when read in coordination with other subsections, similarly

3   makes clear that it is limited to injury to the "*property* owned or used to . . . provide utility

4   services," thus injury to the equipment such as pipes, pumps, meters, and the like used to provide

5   water to Plaintiff's customers.  *Id.* § 1882.1(d) (emphasis added); *see also id.* §§ 1882(e),

6   1882(g).[3]  Consistent with that reading, the term "utility service" is defined as "the provision of"

7   the utility commodity (water) to the customer.  *Id.* § 1882(g).  Nowhere does subsection (d), or

8   any other portion of the statute, create a claim for injury to the utility commodity itself, which

9   here Plaintiff alleges to be environmental contamination of the groundwater.

10          Use of the term "property" in other subsections of Section 1882.1 also compels the

11  construction that "property" refers to tangible equipment rather than injury to the utility

12  commodity itself.  For instance, subsection (b) makes it actionable to connect or reconnect one's

13  utility service "with property owned or used by the utility to provide utility service . . . ."  The use

14  of "property" in subsection (b) only makes sense with respect to tangible objects, and not to the

15  actual utility service or commodity itself.[4]

16          Plaintiff's legal allegation of water as "property" for purposes of this claim therefore

17  should be rejected.  To accept Plaintiff's interpretation  would result in an illogical – and

18  improper – construction of Section 1882.1.  If the legislature had intended to make "tampering"

19  with the water itself actionable under this statute, rather than the *property* owned or used by the

20  utility to provide water, it simply could have shortened the statute to say so.[5]  But the plain

21  [3] Section 1882 defines "tamper" as "to rearrange, injure, alter, interfere with, or otherwise to
    prevent from performing normal or customary function."  *Id.* § 1882(e).  The term "property" is
22  not defined in the statute.

23  [4] The State of California, not Plaintiff, owns the groundwater drawn upon by Plaintiff, and
    Plaintiff's rights to the groundwater are only usufructuary.  *State v. Superior Court*, 78
24  Cal.App.4th 1019, 1025 (2000); *National Audubon Soc'y v. Superior Court*, 33 Cal.3d 419, 441
    (1983).  As Judge Scheindlin pointed out in the *In re MTBE Prods.* decision, "[w]hile plaintiffs
25  might exercise or 'use' their usufructuary rights to provide water to customers, they cannot 'own'
    or have property rights in usufructuary rights."  402 F. Supp. 2d at 439 (holding that plaintiffs'
26  usufructuary rights are not "property" subject to utility tampering under Section 1882.1).

27  [5] Even if the Legislature had enacted such a statute, Plaintiff likely still would not have a claim.
    Because the contamination alleged here from migration of PCE through the subsurface (Compl.
28  ¶¶ 3, 72) occurred prior to being drawn into Plaintiff's supply system, and thus before Plaintiff
    possessed an interest in the groundwater, there has been no "tampering" of Plaintiff's

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE                    - 6 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1  language of the statute shows that the legislature clearly did not so intend. *Khajavi v. Feather*

2  *River Anesthesia Med. Group*, 84 Cal. App. 4th 32, 46 (2000) ("[w]henever possible a

3  construction must be adopted which will give effect to all provisions of the statute" (citation

4  omitted)).

5      Here, Plaintiff does not allege injury to any equipment owned or used by it to provide

6  water, such as pumps, pipes or meters. As such, Plaintiff has not alleged an injury cognizable by

7  Section 1882.1(d). This interpretation of "property" in Section 1882.1(d) was adopted in 2005 by

8  the U.S. District Court for the Southern District of New York in a similar lawsuit brought by

9  California water suppliers against petroleum companies alleged to have contaminated water

10  supplies with the gasoline additive MTBE. *In re MTBE Prods. Liab. Litig.*, 402 F. Supp. 2d 434

11  (S.D.N.Y. 2005). There, the court held that, "[w]hen read in conjunction with the rest of section

12  1882.1, it is plain that the word 'property' in subsection (d) does not mean property rights, but

13  rather the physical object to which those rights attach – in this case, the instruments used to

14  provide utility services (e.g., pipes, pumps, and meters)." *Id.* at 439.

15      Moreover, given the plain language of Section 1882.1, this section was enacted to address

16  the unauthorized use or diversion of utility services without consent or payment to the utility.

17  Section 1882.1's title, "Civil actions for diversion, unauthorized connections, [and] tampering

18  with meter," as well as all of its subsections compel this interpretation of the statute. *See e.g.*,

19  §§ 1882.1(a) (making diversion of utility services actionable), 1882.1(b) (making actionable any

20  unauthorized connection with property owned or used to provide utility services), 1882.1(c)

21  (allowing action based on prevention of utility meter from accurately measuring).

22      Plaintiff's claims of groundwater contamination are simply inconsistent with the overall

23  purpose of Section 1882, and must be rejected. *See In re MTBE Prods.*, 402 F. Supp. 2d at 439

24  ("To read subsection (d) as including the right to sue for groundwater contamination would

25  conflict with the rest of the statute."); *Southern Cal. Water Co. v. Aerojet-General Corp.*, No. 02-

26  6340, 2003 U.S. Dist. LEXIS 26534, at * 34 (C.D. Cal. Apr. 1, 2003) ("On its face, § 1882.1 does

27

28  usufructuary interest in the water. The condition of the water remained unchanged from when
    Plaintiff took possession of it.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE        - 7 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1    not appear to encompass claims for groundwater contamination . . . The plain meaning of the

2    statute does not appear to encompass contamination within the scope of tampering.").

3        Accordingly, Plaintiff's factual allegations of groundwater contamination, even if true, do

4    not state a claim in the Seventh Cause of Action pursuant to the plain language of Sections 1882

5    and 1882.1.

6
7    **2.    The Legislative History Confirms That Section 1882 Does Not Encompass Groundwater Contamination.**

8        The legislative history for Civil Code Sections 1882-1882.6 further demonstrates that the

9    statute was not intended to address actions for groundwater contamination.  Rather, the express

10   purpose of Sections 1882-1882.6 was "to deter energy theft" by "establish[ing] a civil procedure

11   for utilities to recover damages caused by individuals who tamper or alter meters in order to

12   obtain utility services without paying for them."  Assem. Util. and Energy Comm., Assem. Bill

13   No. 1285, 1981-82 Gen. Assem., Reg. Sess. at 2 (Cal. 1981).[6]

14       In particular, the legislative history of these civil code sections explains that they were

15   enacted to redress unauthorized diversions of utility services, and tampering with meters and

16   similar equipment:

17           This bill makes persons or corporations *who use or divert utility electric, gas or water service without authorization* liable to civil
18           action by the utility.  The service may be acquired by making an *unauthorized connection or tampering with a meter or other utility*
19           *equipment*.  Current law makes this act a misdemeanor.

20   Analysis of Assem. Bill No. 1285 (emphasis added), RFJN, Exh. 2.  *See also* Governor's Office,

21   Enrolled Bill Report on Assem. Bill No. 1285 (Aug. 31, 1981), RFJN, Exh. 3 ("The recent rapid

22   increase in utility rates has been accompanied by a similar rapid increase in the theft of utility

23   services. This bill would provide utilities with a means of recovering damages incurred by theft,

24

25   _____
     [6] Copy provided as Exhibit 1 to Request For Judicial Notice In Support Of Defendant Legacy
26   Vulcan Corp.'s Motion To Dismiss Plaintiff's Seventh Cause Of Action Pursuant To FRCP
     12(b)(6) And Motion To Strike Certain Allegations Pursuant To FRCP 12(f) ("RFJN").  Vulcan
27   respectfully requests that, for purposes of this Motion, the Court take judicial notice of the
     legislative history and unpublished court decisions attached thereto, as it is entitled to do under
28   Federal Rule of Evidence 201.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE                - 8 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1  and would deter future thefts.").[7]

2         Elsewhere, the author of the bill noted that Sections 1882-1882.6 were created because

3  existing property-based laws, such as theft, misappropriation, fraud and conversion, were

4  insufficient to address the problem of energy theft. *See* Suggested Author's Introduction, dated

5  Apr. 17, 1981, RFJN, Exh. 5 ("the language of a variety of more general California laws dealing

6  with theft, misappropriation, fraud and conversion is insufficient to deal with problem [sic] of

7  energy theft, which is an act that usually occurs without witnesses, and can involve a misuse only

8  of the customer's <u>own</u> property" (emphasis in original)).

9         Plaintiff here alleges that the PCE Manufacturer Defendants' liability arises from their

10  manufacture of the PCE chemical product, later used by another entity (individual dry cleaners –

11  none of whom are named as defendants here), which allegedly improperly disposed of the PCE

12  allegedly leading to the contamination of water in its wells and water supply.  (Compl. ¶ 9.)

13  None of this alleged conduct falls within the purview of Sections 1882-1882.6.  Furthermore,

14  nothing in the statute's language or legislative history suggests that the legislature intended to

15  impose the extraordinary penalty of treble damages and shifting attorneys' fees to a chemical

16  manufacturer in an ordinary environmental property tort case.

17         Two district courts that have reviewed this same legislative history each reached the same

18  conclusion and dismissed the claim as a matter of law.  *In re MTBE Prods.*, 402 F.Supp.2d at 441

19  ("the legislative purpose here is to deter the theft of utility services – not to protect environmental

20  resources."); *Southern Cal. Water*, 2003 U.S. Dist. LEXIS 26534, at * 35 ("Given the clear

21  legislative intent to limit the scope of § 1882 to energy theft deterrence, the Court finds that

22  Plaintiffs' reading of § 1882 as encompassing groundwater contamination is untenable.").

23         Plaintiff's claim here should be dismissed for the same reasons.

24

25

26

27

28

---

[7] Sections 1882-1882.6 were adopted as civil companion statutes to California Penal Code Section 498, which makes the theft of utility services a misdemeanor.  Sen. Committee on Judiciary, Analysis of Assem. Bill No. 1285, 1981-82 Gen. Assem., Reg. Sess. at 1 (Cal. 1981), RFJN Exh. 4.  Although state law criminalized energy diversion and meter tampering, then "existing law [did] not authorize utilities to recover damages from individuals who [stole] energy or to obtain an injunction against prohibited practices."  *Id.*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE          - 9 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1

### 3.    Federal And State Courts Have Consistently Dismissed Identical Claims At The Pleading Stage.

2

3    In case after case, courts have rejected attempts by plaintiffs to invoke Sections 1882-

4    1882.6 for claims of groundwater contamination.  In the 2005 decision referenced earlier, *In re*

5    *MTBE Products Liability Litigation,*[8] the district court granted defendants' Rule 12(b)(6) motion

6    to dismiss plaintiffs' claim under Sections 1882-1882.6.  *In re MTBE Prods.*, 402 F. Supp. 2d at

7    439-41.  After examining the plain language of the statute and the statute's legislative history, the

8    court unequivocally rejected plaintiffs' attempt to broadly construe Sections 1882-1882.6, and

9    held "that the plain language of the statute precludes plaintiffs' section 1882 claims based on

10   groundwater contamination." *Id.* at 440.  It further held that "[p]ermitting the California

11   Plaintiffs' section 1882 claims to proceed on the basis of groundwater contamination would be

12   contrary to both the plain meaning and legislative history of the statute." *Id.* at 441.

13   In 2003 in a similar lawsuit brought by the Southern California Water Company for

14   alleged groundwater contamination, the U.S. District Court for the Central District of California

15   granted defendants' Rule 12(b)(6) motion to dismiss plaintiff's Section 1882 claim.  *Southern*

16   *Cal. Water*, 2003 U.S. Dist. LEXIS 26534, at * 34.  After "careful" review of the statutory

17   language, legislative history, and the title of Section 1882.1, the district court rejected plaintiff's

18   argument that Section 1882.1 was not limited to alleged energy theft.  The court held that the term

19   "'tamper' was not intended to be read so expansively as to include groundwater contamination,"

20   and further concluded that "the legislative history does not support a reading of 'tampering' that

21   includes groundwater contamination." *Id.,* at * 34-35.

22   Consistent with these two district court decisions, five separate California Superior Courts

23   have each held that Section 1882 does not encompass groundwater contamination:

24   •    In the coordinated proceeding involving claims of groundwater contamination by the

25        chemical TCP (1,2,3,-trichloropropane), the court in *City of Redlands v. Shell Oil Co.*,

26        No. SCVSS120627 (Cal. Super. Ct., San Bernardino County, July 17, 2006) (RFJN,

27

28

---

[8] The same lawyers representing Plaintiff here also represented the plaintiffs in the *In re MTBE* decision, as well as in the *City of Redlands* decision cited below.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE                    - 10 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1    Exh. 6), sustained a demurrer without leave to amend plaintiff's claims under Section

2    1882.

3    •    In *D.J. Nelson Trust v. Atlantic Richfield Co.*, No. 02AS00535 (Cal. Super. Ct.,

4    Sacramento County, Sept. 13, 2002) (tentative ruling), *aff'd by order* (Cal. Super. Ct.,

5    Sacramento County, Sept. 26, 2003) ("*D.J. Nelson Trust*") (RFJN, Exh. 7), the court

6    sustained defendant oil companies' demurrer, without leave to amend, for failure to

7    state a claim under Section 1882.  The court held:

8        [T]he plain language of the statute, as well as the legislative
         history of Civil Code sections 1882 et seq. . . . demonstrates that
9        section 1882.1 is intended to combat only illicit interference with
         the manner or means by which public utilities distribute and
10       measure the services they provide. *There is no evidence that the
         Legislature intended section 1882.1 to provide public utilities
11       with an additional means to bring a civil action for injury to the
         service itself, such as contamination of groundwater.* (emphasis
12       added).  *Id.* at Item 5, ¶ 5.

13   •    In *City of Santa Monica v. Shell Oil Co.*, No. 01CC04331 (Cal. Super. Ct., Orange

14   County, July 12, 2002) (RFJN, Exh. 8), the court granted a motion to strike plaintiff's

15   claims for treble damages and attorneys' fees pursuant to Section 1882 without leave

16   to amend.

17   •    In *City of Modesto v. The Dow Chemical Co.*, No. 999345/999643 (Cal. Super. Ct.,

18   San Francisco County, May 24, 2002) (RFJN, Exh. 9), a case brought against many of

19   the same defendants (including Vulcan) for the same alleged conduct and alleging

20   PCE-contaminated groundwater and drinking water supplies, the court sustained the

21   solvent manufacturers' demurrer, without leave to amend, on plaintiff's utility

22   tampering claim under Section 1882.  In so sustaining, the court held "[t]he allegations

23   of this cause of action, if proven, would not constitute a violation of Civil Code

24   sections 1882 et seq. by any Solvent Manufacturer Defendant or by any of the

25   defendants who joined the Solvent Manufacturer Defendants' demurrer."  *Id.* at 6:16-

26   19.

27   •    In *Cambria Community Services District. v. Chevron Corp.*, No. CV01089 (Cal.

28   Super. Ct., San Luis Obispo County, Apr. 12, 2002) ("*Cambria Cmty. Servs.*") (RFJN,

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE                    - 11 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1    Exh. 10), the court sustained a demurrer to plaintiff's claims under Section 1882.

2    Here, as in these seven decisions, Plaintiff's Seventh Cause of Action for relief under

3    California Civil Code Section 1882 *et seq.* should be dismissed.

### C.    Plaintiff's Prayer For Treble Damages, Costs, Prejudgment Interest And Attorneys' Fees Pursuant To Section 1882.2 Should Be Stricken

6    Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "any

7    redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of

8    a Rule 12(f) motion to strike is to "avoid the expenditure of time and money that must arise from

9    litigating spurious issues by dispensing with those issues prior to trial." *Bureerong v. Uvawas*,

10   922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (citation omitted). Furthermore, motions to strike are

11   appropriately used to strike any part of a plaintiff's prayer for relief where the relief sought is not

12   recoverable as a matter of law. *Id.* at 1479, n. 34.

13   The prayer for relief in Plaintiff's Complaint seeks treble damages, costs, prejudgment

14   interest and attorneys' fees pursuant to Civil Code Section 1882.2 as the remedies provided for a

15   cause of action brought under Section 1882.1. (Compl. ¶ 157, Prayer for Relief, (b), (d)); Cal.

16   Civ. Code § 1882.2. However, as set forth above, Plaintiff's Seventh Cause of Action under

17   Section 1882.1 fails to state a claim.

18   With dismissal of the Section 1882.1 claim, so too must the corresponding requests for

19   relief under Section 1882.2 be stricken under Rule 12(f). *See, e.g., Southern Cal. Water*, 2003

20   U.S. Dist. LEXIS 26534, *13; *In re MTBE Prods.*, 402 F. Supp. 2d at 441; *D.J. Nelson Trust*

21   (granting motion to strike plaintiff water companies' claims for treble damages and attorneys'

22   fees pursuant to Section 1882.2 without leave to amend); *Cambria Cmty. Servs.* (striking

23   plaintiff's claims for treble damages and attorneys' fees under Section 1882.2). For the same

24   reasons cited above, the Motion to Strike should be granted without leave to amend.

### V.

### CONCLUSION

27   In summary, due to the plain language of the statute, its legislative history, and the

28   decisions of several federal and state courts, Vulcan respectfully requests that Plaintiff's Seventh

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE        - 12 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

1   Cause of Action under California Civil Code Section 1882 *et seq.* be dismissed, and that

2   Plaintiff's prayer for treble damages, costs, prejudgment interest and attorneys' fees under

3   Section 1882.2 be stricken.  Because neither deficiency can be cured, both Motions should be

4   granted without leave to amend.

5   Dated: July 11, 2008                              FARELLA BRAUN + MARTEL LLP

6

7                                                     By: :  /s/  James H. Colopy

8                                                          James H. Colopy

9                                                     Attorneys for Defendant
                                                      LEGACY VULCAN CORP., formerly
10                                                    known as VULCAN MATERIALS
                                                      COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VULCAN'S NOTICE OF MOTION & MOTION
TO DISMISS & MOTION TO STRIKE                - 13 -
Case No. 3:08-cv-03267 SI

23397\1632233.2

California Water Service Co. v. The Dow Chemical Company, et al.

Case No. 3:08-cv-03267 SI

# EXHIBIT A

**TO LEGACY VULCAN CORP.'S MOTION
TO DISMISS PLAINTIFF'S SEVENTH CAUSE OF ACTION
PURSUANT TO FRCP 12(b)(6) AND MOTION TO STRIKE
CERTAIN ALLEGATIONS PURSUANT TO FRCP 12(f)**

1  Victor M. Sher, SBN 96197
   Todd E. Robins, SBN 191853
2  Marnie E. Riddle, SBN 233732
   SHER LEFF LLP
3  450 Mission Street, Suite 400
   San Francisco, CA 94105
4  Telephone: (415) 348-8300
   Facsimile: (415) 348-8333

5
   Scott Summy, *Admitted in Texas, SBN 19507500*
6  Cary McDougal, *Admitted in Texas, SBN 13569600*
   Carla Burke, *Admitted in Texas, SBN 24012490*
7  Celeste Evangelisti, SBN 225232
   BARON & BUDD, P.C.
8  3102 Oak Lawn Avenue, Suite 1100
   Dallas, TX 75219-4281
9  Telephone: (214) 523-6267
   Facsimile: (214) 520-1181

10
   Attorneys for Plaintiff California Water Service Company
11

12        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

13              IN AND FOR THE COUNTY OF SAN MATEO

14
   CALIFORNIA WATER SERVICE COMPANY,              )
15                                                 )  CASE NO. CIV 4 7 3 0 9 3
                           Plaintiff,              )
16                                                 )  Date Filed:  May 22, 2008
                                                   )
17       vs.                                       )  COMPLAINT FOR DAMAGES
                                                   )  AND OTHER RELIEF:
18  THE DOW CHEMICAL COMPANY; E.I. DUPONT DE       )  (1) STRICT PROD. LIABILITY
    NEMOURS AND COMPANY; PPG INDUSTRIES,           )      (DESIGN DEFECT);
19  INC., VULCAN MATERIALS COMPANY,                )  (2) STRICT PROD. LIABILITY
    OCCIDENTAL CHEMICAL CORPORATION,               )      (FAILURE TO WARN)
20  VALERO ENERGY CORPORATION, STAUFFER            )  (3) NUISANCE;
    CHEMICAL COMPANY, BOWE-PERMAC, INC.,           )  (4) TRESPASS;
21  individually and d/b/a BOWE TEXTILE CLEANING,  )  (5) NEGLIGENCE;
    INC., HOYT CORPORATION, R.R. STREET & CO.,     )  (6) NEGLIGENCE *PER SE*;
22  INC., MCGRAW EDISON COMPANY, individually and  )  (7) CIVIL CODE; and
    d/b/a AMERICAN LAUNDRY MACHINERY, INC.,        )  (8) EQUITABLE INDEMNITY.
23  AMERICAN LAUNDRY MACHINERY, INC.,              )
    individually and d/b/a AJAX MANUFACTURING      )  **JURY TRIAL DEMANDED**
24  DIVISION AND MARTIN EQUIPMENT, WHITE           )
    CONSOLIDATED INDUSTRIES, INC., individually and)
25  d/b/a WASHEX MACHINERY DIVISION,               )
    ELECTROLUX CORPORATION, LINDUS S.R.L.,         )
26  individually and d/b/a LINDUS WEST, COLUMBIA   )
    DRYCLEANING MACHINES, a/k/a COLUMBIA/ILSA      )
27  MACHINES CORP., REALSTAR, INC., individually   )
    and d/b/a REALSTAR USA, UNION DRYCLEANING      )
28  PRODUCTS USA, FIRBIMATIC, BERGPARMA OF         )
    AMERICA, LLC, AMA UNIVERSAL, FLUORMATIC        )
    MIDWEST LTD., FORENTA LP, WESTERN              )

                                    -1-

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

|   |   |   |
|---|---|---|
| 1 | MULTITEX CORP., MARVEL MANUFACTURING, RENZACCI OF AMERICA, SAIL STAR USA, VIC | ) |
| 2 | MANUFACTURING CORPORATION, M.B.L., INC., GOSS-JEWETT CO. OF NORTHERN CALIFORNIA, | ) |
| 3 | MCGREGOR SUPPLY COMPANY, S.B. SUPPLY INC., WASHEX MACHINERY OF CALIFORNIA, | ) |
| 4 | INC., WORKROOM SUPPLY, INC., TAYLOR HOUSEMAN, INC., UNITED FABRICARE SUPPLY, | ) |
| 5 | INC., ECHCO SALES INC., MW EQUIPMENT, ARTHUR KAJIWARA EQUIPMENT CO., INC., | ) |
| 6 | KELLEHER EQUIPMENT SUPPLY, INC., US MACHINERY & ENGINEERING CO., INC., WYATT- | ) |
| 7 | BENNETT, CORBETT EQUIPMENT, FULLER SUPPLY COMPANY, SAV-ON MACHINERY | ) |
| 8 | COMPANY, INC. and DOES 1 through 750, INCLUSIVE, | ) |
| 9 |  | ) |
| 10 | Defendants. | ) |

Plaintiff California Water Service Company hereby alleges as follows, based on information and belief and investigation of counsel:

## I.    SUMMARY OF THE CASE

1.    Plaintiff CALIFORNIA WATER SERVICE COMPANY ("Plaintiff") owns and/or operates public drinking water systems, and supplies drinking water to hundreds of thousands of residents and businesses, in various locations throughout the State of California. However, the toxic chemical perchloroethylene and its degradation products ("PCE") are contaminating and damaging Plaintiff's drinking water supply wells in dispersed locations throughout California.

2.    Plaintiff seeks to recover by this action the substantial costs necessary to protect the public and restore its damaged drinking water supply wells that have been, and continue to be, contaminated with PCE.

3.    PCE is a highly toxic substance that is an ingredient, component, constituent, contaminant and/or impurity in certain commercial products. PCE degrades in the environment to trichloroethylene ("TCE"), which is also a highly toxic substance. PCE, and/or products containing PCE, were used, released, discharged and/or disposed of in the vicinity of certain drinking water production wells owned and/or operated by Plaintiff ("Plaintiff's Wells"). PCE

- 2 -

1  has migrated through the subsurface and into the groundwater, and now contaminates the

2  drinking water pumped from Plaintiff's Wells.

3    4.    The defendants in this action are the manufacturers, distributors and retailers of

4  the PCE and/or PCE-containing products that caused the contamination of Plaintiff's Wells, as

5  well as the manufacturers, distributors and retailers of equipment intended for use with PCE

6  and/or PCE-containing products (collectively, "Defendants"). Among other things, the

7  Defendants knowingly and willfully manufactured, promoted, and sold PCE and PCE-containing

8  products, as well as equipment intended for use with PCE and/or PCE-containing products, when

9  they knew or reasonably should have known that PCE would thereby reach groundwater, pollute

10 drinking water supplies, render drinking water unusable and unsafe, and threaten the public

11 health and welfare, as it has done with respect to Plaintiff's Wells.

12    5.    Plaintiff files this lawsuit to recover compensatory and all other damages,

13 including but not limited to all necessary funds to reimburse Plaintiff for the costs of designing,

14 constructing, installing, operating and maintaining the treatment facilities and equipment

15 required to comply with state and federal safe drinking water laws and to remove PCE from the

16 drinking water it supplies to the public and/or for the costs of securing alternative sources of

17 water as a result of the PCE contamination, and to ensure that the responsible parties bear such

18 expense, rather than Plaintiff and its customers and ratepayers.

19    **II.  THE PARTIES**

20    6.    Plaintiff California Water Services Company is a California public utility water

21 corporation incorporated under the laws of the State of California with its principal place of

22 business in San Jose, California. Plaintiff owns and operates public drinking water systems that

23 provide potable drinking water to residents and businesses in various locations throughout

24 California, including but not limited to South San Francisco, Bakersfield, Bakersfield-North

25 Garden, East Los Angeles, Chico, Livermore, Lake Land, Oroville, Salinas, Stockton and

26 Visalia. Each of these systems is subject to the rules and regulations of the California Public

27 Utilities Commission, and with respect to each such system, Plaintiff has a certificate of

28 convenience and necessity pursuant to which Plaintiff has a duty to provide water service. Each

-3-

1   of these water systems includes, among other elements, drinking water production wells that

2   draw from groundwater aquifers and associated pumping, storage, treatment and distribution

3   facilities and equipment, all of which will be referred to collectively in this Complaint as "Cal

4   Water Wells." Among other things, the Cal Water Wells include the right of Plaintiff to

5   appropriate and use groundwater for drinking water supplies from such Wells. Plaintiff has

6   significant property interests in the waters it appropriates and uses from the Cal Water Wells, and

7   also has significant property interests in the groundwaters and aquifers that supply the Cal Water

8   Wells. The past, present and continuing contamination of such waters by PCE constitutes injury

9   to such waters for which Plaintiff is entitled to, and hereby does, seek damages and other

10  appropriate relief.

11          7.      Plaintiff also provides non-regulated contract utility services to other entities in

12  California. Pursuant to Domestic Water Operations Agreements ("Operations Agreements")

13  between Plaintiff and such other entities, Plaintiff operates wells belonging to those entities and

14  provides certain other utility services to such entities and their water users. Under the Operations

15  Agreements, Plaintiff bears responsibility for incurring certain costs associated with the PCE

16  contamination in wells owned by other entities. The past, present and continuing contamination

17  of these wells by PCE constitutes injury to Plaintiff for which Plaintiff is entitled to, and hereby

18  does, seek damages and other appropriate relief.

19          8.      The Cal Water Wells and wells operated but not owned by Plaintiff, as described

20  in paragraphs 6 and 7 above, are referred to collectively herein as "Plaintiff's Wells."

21          9.      The following defendants designed, manufactured, formulated, marketed,

22  promoted, distributed, and/or sold (directly or indirectly) the PCE and/or products containing

23  PCE that contaminates Plaintiff's Wells and water supply, and/or caused PCE to be applied,

24  discharged, disposed of and/or released so as to contaminate Plaintiff's Wells and water supply.

25          10.     Defendant THE DOW CHEMICAL COMPANY ("Dow") is a Delaware

26  corporation with its principal place of business in Midland, Michigan, which at all times relevant

27  to this action was doing business in California.

28          11.     Defendant E.I. DUPONT DE NEMOURS AND COMPANY ("Dupont") is a

-4-

1 | corporation with its principal place of business in Wilmington, Delaware, which at all times

2 | relevant to this action was doing business in California.

3 |      12.    Defendant PPG INDUSTRIES, INC. ("PPG") is a Pennsylvania corporation with

4 | its principal place of business in Pittsburgh, Pennsylvania, which at all times relevant to this

5 | action was doing business in California.

6 |      13.    Defendant VULCAN MATERIALS COMPANY ("Vulcan") is a New Jersey

7 | corporation with its principal place of business in Homewood, Alabama, which at all times

8 | relevant to this action was doing business in California.

9 |      14.    Defendant OCCIDENTAL CHEMICAL CORPORATION ("Occidental") is a

10 | New York corporation with its principal place of business in Dallas, Texas, which at all times

11 | relevant to this action was doing business in California.

12 |      15.    Defendant VALERO ENERGY CORPORATION ("Valero") is a corporation

13 | with its principal place of business in San Antonio, Texas, which at all times relevant to this

14 | action was doing business in California.

15 |      16.    Defendant STAUFFER CHEMICAL COMPANY ("Stauffer") is a corporation

16 | with its principal place of business in Westport, Connecticut, which at all times relevant to this

17 | action was doing business in California.

18 |      17.    Plaintiff is ignorant of the true names and/or capacities of the defendants sued

19 | under the fictitious names of DOES 1 through 250, inclusive.

20 |      18.    Defendants Dow, Dupont, PPG, Vulcan, Occidental, Valero and Stauffer, and

21 | DOES 1 through 250, and each of them: (1) manufactured, distributed, transported, packaged,

22 | sold and/or disposed of PCE and products containing PCE, and/or were involved in the

23 | manufacture of equipment sold in the State of California specifically designed to store, use,

24 | process, and dispose of PCE; (2) engaged in service visits and inspections on the premises of

25 | California dry cleaners for the purposes of promoting their dry cleaning solvents and dry

26 | cleaning equipment products and testing and inspecting dry cleaner equipment, including

27 | witnessing dry cleaner's disposal of PCE products; (3) were legally responsible for and

28 | committed each of the tortious and wrongful acts alleged in this complaint; and (4) in doing the

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1   tortious and wrongful acts alleged in the complaint, acted in the capacity of co-conspirator, aider,

2   abettor, joint venturer, partner, agent, alter ego, principal, successor-in-interest, surviving

3   corporation, fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor,

4   patent holder and/or indemnitor of each of the remaining DOE and named defendants.

5         19.    Each of the defendants named in paragraphs 10 through 16 above, and DOE

6   defendants 1 through 250, will be collectively referred to as the "PCE Manufacturer

7   Defendants."

8         20.    Defendant BOWE-PERMAC, INC., individually and d/b/a BOWE TEXTILE

9   CLEANING, GmbH ("Bowe-Permac") is a corporation with its principal place of business in

10   Augsburg, Germany, which at all times relevant to this action was doing business in California.

11         21.    Defendant HOYT CORPORATION ("Hoyt") is a corporation with its principal

12   place of business in Westport, Massachusetts, which at all times relevant to this action was doing

13   business in California.

14         22.    Defendant R.R. STREET & CO., INC. ("Street") is a corporation with its

15   principal place of business in Naperville, Illinois, which at all times relevant to this action was

16   doing business in California.

17         23.    Defendant MCGRAW EDISON COMPANY, individually and d/b/a

18   AMERICAN LAUNDRY MACHINERY, INC. ("McGraw Edison"), is a Delaware corporation

19   with its principal place of business in Houston, Texas, which at all times relevant to this action

20   was doing business in California.

21         24.    Defendant AMERICAN LAUNDRY MACHINERY, INC., individually and d/b/a

22   AJAX MANUFACTURING DIVISION AND MARTIN EQUIPMENT ("ALMI"), is a

23   corporation with its principal place of business in Norwood, Ohio, which at all times relevant to

24   this action was doing business in California.

25         25.    Defendant WHITE CONSOLIDATED INDUSTRIES, INC., individually and

26   d/b/a WASHEX MACHINERY DIVISION ("White") is a corporation with its principal place of

27   business in Cleveland, Ohio, which at all times relevant to this action was doing business in

28   California.

- 6 -

26.    Defendant ELECTROLUX CORPORATION ("Electrolux") is a corporation with its principal place of business in Stockholm, Sweden, which at all times relevant to this action was doing business in California.

27.    Defendant LINDUS S.R.L., individually and d/b/a LINDUS WEST ("Lindus"), is a corporation with its principal place of business in Parma, Italy, which at all times relevant to this action was doing business in California.

28.    Defendant COLUMBIA DRYCLEANING MACHINES, a/k/a COLUMBIA/ILSA MACHINES CORP. ("Columbia"), is a corporation with its principal place of business in West Babylon, NY, which at all times relevant to this action was doing business in California.

29.    Defendant REALSTAR, INC., individually and d/b/a REALSTAR USA ("Realstar") is a corporation with its principal place of business in Bologna, Italy, which at all times relevant to this action was doing business in California.

30.    Defendant UNION DRYCLEANING PRODUCTS USA ("Union") is a corporation with its principal place of business in Atlanta, Georgia, which at all times relevant to this action was doing business in California.

31.    Defendant FIRBIMATIC ("Firbimatic") is a corporation with its principal place of business in Bologna, Italy, which at all times relevant to this action was doing business in California.

32.    Defendant BERGPARMA OF AMERICA, LLC ("Bergparma") is a corporation with its principal place of business in Hammonton, New Jersey, which at all times relevant to this action was doing business in California.

33.    Defendant AMA UNIVERSAL ("AMA") is a corporation with its principal place of business in Bologna, Italy, which at all times relevant to this action was doing business in California.

34.    Defendant FLUORMATIC MIDWEST LTD. ("Fluormatic") is a corporation with its principal place of business in Villa Park, Illinois, which at all times relevant to this action was doing business in California.

-7-

35.    Defendant FORENTA LP ("Forenta") is a corporation with its principal place of business in Morristown, Tennessee, which at all times relevant to this action was doing business in California.

36.    Defendant WESTERN MULTITEX CORP. ("Multitex") is a corporation with its principal place of business in Anaheim, California.

37.    Defendant MARVEL MANUFACTURING COMPANY ("Marvel") is a corporation with its principal place of business in San Antonio, Texas, which at all times relevant to this action was doing business in California.

38.    Defendant RENZACCI OF AMERICA, INC. ("Renzacci") is a corporation with its principal place of business in Long Beach, California.

39.    Defendant SAIL STAR USA ("Sail Star") is a corporation with its principal place of business in Charlotte, North Carolina, which at all times relevant to this action was doing business in California.

40.    Defendant VIC MANUFACTURING COMPANY ("Vic") is a corporation with its principal place of business in Minneapolis, Minnesota, which at all times relevant to this action was doing business in California.

41.    Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names of DOES 251 through 500, inclusive.

42.    Bowe-Permac, Hoyt, Street, McGraw Edison, ALMI, White, Electrolux, Lindus, Columbia, Realstar, Union, Firbimatic, Bergparma, AMA, Fluormatic, Forenta, Multitex, Marvel, Renzacci, Sail Star, Vic, and DOES 251 through 500 ("Equipment Manufacturer Defendants"), and each of them: (1) manufactured, distributed, designed, assembled, maintained, supervised, controlled, sold, operated and/or repaired equipment, parts, and appurtenances, including, but not limited to, dry cleaning equipment, in the State of California, specifically designed for the storage, application, and disposal of chlorinated solvents including PCE ("PCE equipment"); (2) engaged in service visits and inspections on the premises of California dry cleaners for the purposes of promoting their dry cleaning solvents and dry cleaning equipment products and testing and inspecting dry cleaner equipment, including witnessing dry cleaner's

-8-

1  disposal of PCE products; (3) were legally responsible for and committed each of the tortious

2  and wrongful acts alleged in this Complaint; and (4) in doing the tortious and wrongful acts

3  alleged in the Complaint, acted in the capacity of co-conspirator, aider, abettor, joint venturer,

4  partner agent, principal, successor-in-interest, surviving corporation, fraudulent transferee,

5  fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or indemnitor of

6  each of the remaining DOE and named defendants.

7      43.    In addition to engaging in the distributor activities more fully described in

8  paragraph 45 above, DOES 400 through 500 also engaged in the manufacturing acts and

9  activities fully described in paragraph 18 above, which is incorporated in full herein.

10     44.    Defendant M.B.L., INC. ("MBL") is a California corporation with its principal

11 place of business in Santa Clara, California.

12     45.    Defendant GOSS-JEWETT CO. OF NORTHERN CALIFORNIA ("Goss-

13 Jewett") is a California corporation with its principal place of business in San Mateo, California.

14     46.    Defendant MCGREGOR SUPPLY COMPANY ("McGregor") is an association

15 with its principal place of business in South Gate, California.

16     47.    Defendant S.B. SUPPLY INC. ("SB Supply") is a California corporation with its

17 principal place of business in San Leandro, California.

18     48.    Defendant WASHEX MACHINERY OF CALIFORNIA, INC. ("Washex") is a

19 California corporation with its principal place of business in Burbank, California.

20     49.    Defendant WORKROOM SUPPLY, INC. ("Workroom") is a California

21 corporation with its principal place of business in Sacramento, California.

22     50.    Defendant TAYLOR HOUSEMAN, INC. ("Taylor") is a California corporation

23 with its principal place of business in Pittsburg, California.

24     51.    Defendant UNITED FABRICARE SUPPLY, INC. ("United") is a California

25 corporation with its principal place of business in Compton, California.

26     52.    Defendant ECHCO SALES INC. ("Echco") is a California corporation with its

27 principal place of business in Castro Valley, California.

28     53.    Defendant MW EQUIPMENT ("MW") is a California corporation with its

- 9 -

1    principal place of business in Glendale, California.

2        54.    Defendant ARTHUR KAJIWARA EQUIPMENT CO., INC. ("Kajiwara") is a

3    California corporation with its principal place of business in South El Monte, California.

4        55.    Defendant KELLEHER EQUIPMENT SUPPLY, INC. ("Kelleher") is a

5    California corporation with its principal place of business in Long Beach, California.

6        56.    Defendant US MACHINERY & ENGINEERING CO., INC. ("US Machinery") is

7    a California corporation with its principal place of business in Anaheim, California.

8        57.    Defendant WYATT-BENNETT ("Wyatt-Bennett") is a California corporation

9    with its principal place of business in Van Nuys, California.

10        58.    Defendant CORBETT EQUIPMENT ("Corbett") is a corporation with its

11    principal place of business in Huntington Beach, California.

12        59.    Defendant FULLER SUPPLY COMPANY ("Fuller") is a corporation with its

13    principal place of business in Concord, North Carolina, which at all times relevant to this action

14    was doing business in California.

15        60.    Defendant SAV-ON MACHINERY COMPANY, INC. ("Sav-On") is a

16    corporation with its principal place of business in San Francisco, California

17        61.    Plaintiff is ignorant of the true names and/or capacities of the defendants sued

18    herein under the fictitious names of DOES 501 through 750, inclusive.

19        62.    Defendants MBL, Goss-Jewett, McGregor, SB Supply, Washex, Workroom,

20    Taylor, United, Echco, MW, Kajiwara, Kelleher, US Machinery, Wyatt-Bennett, Corbett, Fuller,

21    Sav-On, and DOES 501 through 750, and each of them ("Distributor Defendants"): (1)

22    purchased PCE from one or more of the PCE Manufacturer Defendants, and then resold PCE in

23    the State of California to California dry cleaners and dry cleaning supply retailers; (2)

24    distributed, manufactured, designed, assembled, maintained, controlled, operated and/or repaired

25    equipment parts, replacement parts, and appurtenances, including, but not limited to, dry

26    cleaning equipment in the State of California specifically designed for the use, application, and

27    disposal of PCE products by California dry cleaners; (3) engaged in service visits and inspections

28    on the premises of California dry cleaners for the purposes of promoting their dry cleaning

- 10 -

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1   solvents and dry cleaning equipment products and testing and inspecting dry cleaner equipment,

2   including witnessing dry cleaner's disposal of PCE products; (4) were legally responsible for and

3   committed each of the tortious and wrongful acts alleged in this Complaint; and (5) in doing the

4   tortious and wrongful acts alleged in the Complaint, acted in the capacity of co-conspirator,

5   aider, abettor, joint venturer, partner, agent, principal, successor-in-interest, surviving

6   corporation, fraudulent transferee, fraudulent transferor, controller, alter ego, licensee, licensor,

7   patent holder and/or indemnitor of each of the remaining DOE and named defendants.

8       63.    In addition to the activities alleged in paragraph 62 above, DOE defendants 650

9   through 750 also engaged in the PCE manufacturing acts and activities alleged in paragraphs 18

10   and 42 above, which are incorporated herein by reference.

11      64.    The defendants named in paragraphs 10 through 61 above and defendant DOES 1

12   through 750, inclusive, are referred to collectively herein as "Defendants."

13      65.    When reference is made in this Complaint to any act or omission of any of the

14   Defendants, it shall be deemed that the officers, directors, agents, employees or representatives

15   of the Defendants committed or authorized such act or omission, or failed to adequately

16   supervise or properly control or direct their employees while engaged in the management,

17   direction, operation or control of the affairs of Defendants, and did so while acting within the

18   scope of their duties, employment or agency.

19          **III.    JURISDICTION AND VENUE**

20      66.    The California Superior Court has jurisdiction over this action pursuant to

21   California Constitution Article VI, Section 10, which grants the Superior Court "original

22   jurisdiction in all cases except those given by statute to other trial courts." The statutes under

23   which this action is brought do not grant jurisdiction to any other trial court.

24      67.    This Court has jurisdiction over Defendants because, based on information and

25   belief, each is a corporation or other business that has sufficient minimum contacts in California,

26   is a citizen of California, or otherwise intentionally avails itself of the California market either

27   through the distribution or sale of products containing PCE or intended for use with PCE

28   products in the State of California or by having a manufacturing, distribution or other facility

1  located in California so as to render the exercise of jurisdiction over it by the California courts

2  consistent with traditional notions of fair play and substantial justice.

3         68.    Venue is proper in the San Mateo Superior Court because real property that is the

4  subject of this action, or some part thereof, is situated in the County of San Mateo.

5         **IV.   ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

6  **A.    The Contaminant: PCE**

7         69.    Perchloroethylene ("PCE") is a toxic organic compound.  PCE and

8  trichloroethylene ("TCE") have been used as cleaning solvents.  Dry cleaning machines were

9  designed and developed to use PCE and TCE.  PCE has been, historically, the most widely used

10  dry cleaning chemical in the United States.  PCE is also referred to as PERC, tetrachloroethene,

11  and tetrachloroethylene.  In soil, PCE can be transformed by biological degradation and by

12  reductive dehalogenation into TCE, vinyl chloride, trichloroethane, and trichloroacetic acid.

13         70.    In or about the 1940s, the defendants knew, or should have known, that PCE

14  could be absorbed in the lungs, skin, and gastrointestinal tract, potentially causing severe damage

15  to the liver, kidneys, central nervous system and other toxic effects, and that PCE is a known

16  carcinogen that causes genetic damage.  The defendants also knew, or should have known, that

17  PCE and its degradation products and ingredients create a substantial risk of harm to

18  groundwater and soil.

19         71.    Notwithstanding their knowledge of the health and environmental hazards posed

20  by the use of PCE, Defendants designed, manufactured, marketed, and/or supplied PCE and/or

21  PCE dry-cleaning equipment and/or replacement parts to retail dry cleaners.  The equipment was

22  specifically designed to store, use, process, and dispose of PCE and other chlorinated solvents.

23  Defendants were aware of the typical use, waste, and disposal practices resulting from the

24  intended use of their equipment, including the customary practice of dumping PCE wastewater

25  and muck into the public sewer systems, and the habitual problem with multiple leaks of PCE

26  into the environment during the foreseeable and expected use of PCE equipment.

27         72.    Notwithstanding the fact that Defendants knew, or should have known, of the

28  serious health hazards caused by the use and disposal of PCE and that PCE frequently passes

1  through sewer pipes and concrete floors, thereby contaminating soil and migrating into

2  groundwater, Defendants negligently and carelessly: (1) issued instructions that PCE and PCE

3  products could be discharged into the sewers, permitting PCE to contaminate the sewer system

4  and surrounding property; (2) designed and operated dry cleaning machines, appurtenances, and

5  other types of machinery designed to be used with PCE products to facilitate and promote the

6  disposal of PCE into the sewer system and/or which failed to adequately prevent and/or

7  minimize the loss of PCE into the environment; (3) failed to recall and/or warn the users of the

8  negligently designed PCE equipment or of the dangers of groundwater contamination as a result

9  of PCE disposal in the sewer system; and (4) further failed and refused to issue the appropriate

10  warnings and/or recalls to the users of PCE regarding the proper means of use and disposal of

11  this toxic chemical, notwithstanding the fact that the respective defendant knew the identity of

12  the purchaser of the PCE equipment and/or PCE.

13      73.    In addition, Defendants, and each of them: (a) knew, or should have known, that

14  dry cleaners were foreseeable users of PCE and were using PCE, PCE products, and PCE

15  equipment in a foreseeable manner; (b) knew, or should have known, that PCE is dangerous to

16  the environment and human health if deposited directly on the ground, drained or flushed into the

17  sewer system, or permitted to permeate unprotected concrete floors under dry cleaning

18  equipment; (c) knew, or should have known, that dry cleaners in California foreseeably lacked

19  knowledge of these dangers; (d) failed to warn dry cleaners of these dangers and/or affirmatively

20  instructed them to engage in such dangerous conduct; and (e) as a result, the dry cleaners failed

21  to guard against the alleged contamination which resulted in harm to the plaintiff.

22      74.    In addition, notwithstanding Defendants' knowledge of the severe environmental

23  and health dangers and hazards posed by the use and disposal of PCE on the ground and in

24  sewers, Defendants: (1) instructed, recommended, and directed dry cleaners to dispose of PCE

25  products onto the ground and into the sewers; (2) instructed, recommended, and directed dry

26  cleaners and PCE equipment manufacturers to maintain, operate, design, and construct the dry

27  cleaning equipment so as to drain PCE into the sewer systems and/or operate and maintain the

28  dry cleaning equipment by means of physically disposing PCE waste as part of the operation of

- 13 -

1    the dry cleaning equipment into the sewers or soil which caused substantial and serious harm to

2    the property of others, including Plaintiff.

3         75.    PCE and PCE products are fungible. In order to compete for larger shares of the

4    PCE market, Defendants, and each of them, would routinely and frequently advise, instruct,

5    assist, recommend and/or participate in the operation, maintenance, inspection and/or testing of

6    dry cleaners in order to promote the purchase of their own brands of PCE products and in order

7    to create brand loyalty. These activities included personal visits by manufacturer and distributor

8    representatives to dry cleaners and written directions, instructions, and brochures on dry cleaning

9    equipment maintenance and operations. Each of the Defendants routinely engaged in these same

10   and similar practices. As part of these activities and practices, Defendants, and each of them,

11   instructed, recommended and/or directed dry cleaners to dispose of PCE on the ground or in the

12   drain, including using the sewer system and dumping PCE on the ground as a method of

13   disposal.

14        76.    Each of the Defendants routinely and frequently sent personal representatives to

15   the premises of dry cleaners and, among other things: (1) regularly observed the dry cleaning

16   operations and practices, including disposal methods, of dry cleaners; (2) issued brochures,

17   newsletters and written and/or verbal directions and/or instructions for the operation,

18   maintenance, and use of dry cleaning equipment and/or dry cleaning solvents including PCE; (3)

19   tested PCE products at the dry cleaners; (4) unloaded and stored PCE at the dry cleaners'

20   premises; and (5) entered into exclusive distribution agreements between the manufacturer and

21   distributor defendants which required the distributors to act as representatives of the respective

22   manufacturers in doing these alleged acts.

23        77.    In addition, (a) Defendants provided direct technical advice and service to dry

24   cleaners relating to waste disposal in which the Defendants advised dry cleaning retailers to

25   dispose of PCE products containing waste and separator water into the sewer or on the ground;

26   (b) California dry cleaners relied upon the advice of the Defendants with regard to the operation

27   of their facilities and with regard to the disposal advice and service; (c) employees and agents of

28   the Defendants had access to the facilities of California dry cleaners; and (d) employees and

- 14 -

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1    agents of the Defendants performed tests on wastes containing PCE, and that process resulted in

2    the release of PCE into the sewer and the environment causing the damage alleged herein.

3    Likewise, the PCE Manufacturer Defendants established, staffed, and directly controlled various

4    trade associations and Distributor Defendants to promote the study, distribution, marketing, and

5    sale of PCE.  Through these trade associations and the Distributor Defendants, the PCE

6    Manufacturer Defendants exercised complete and direct control over the study, distribution,

7    marketing and sale of PCE, and these trade associations and Distributor Defendants acted as

8    agents of the PCE Manufacturer Defendants in studying, distributing, marketing, and selling

9    PCE.  Through these trade associations and Distributor Defendants, the PCE Manufacturer

10    Defendants knew of the toxicity and health and safety hazards associated with PCE and gave

11    instructions and advice regarding the disposal of PCE that caused the release of PCE into the

12    environment.  The PCE Manufacturer Defendants organized and created these trade association

13    and Distributor Defendants with the intent of shielding themselves from liability associated with

14    their knowledge and control over PCE products and the associated releases of PCE.

15         78.    Defendants also (1) encouraged dry cleaners to use PCE without adequate

16    warnings, (2) agreed through trade associations to attack what they perceived as threatening

17    regulation of PCE, and (3) promoted the unsafe and improper disposal of PCE in order to reduce

18    the costs of its use and to increase the market share of PCE over other competing dry cleaning

19    substances.

20         79.    As a direct result of the Defendants' acts alleged in this Complaint, Plaintiff's

21    Wells have been contaminated, and will continue to be contaminated, with PCE, creating a

22    public health hazard unless such contamination is abated.  As a direct and proximate result

23    thereof, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and abate

24    PCE contamination in its Wells at significant expense, loss and damage.  Costs incurred within

25    the three years prior to the filing of this Complaint, or that will be incurred in the future as a

26    result of Defendants' actions, include, but are not limited to: loss of use of property; property

27    damage; restoration costs already incurred or incurred in the future; delay damages; and property

28    devaluation.

-15-

1    80.    PCE, which does not occur naturally in the environment, has unique

2    characteristics that cause extensive environmental contamination and a corresponding threat to

3    the public health and welfare. PCE readily percolates from the ground surface down to the water

4    table, where it dissolves into groundwater and forms a contaminated plume of groundwater. The

5    plume migrates in the direction of groundwater flow at approximately the same speed as water.

6    When exposed to air, PCE can also volatilize into the atmosphere. At sufficient concentrations

7    in water (approximately 200 parts per million ("ppm") or more), PCE may exist as a separate

8    dense non-aqueous phase liquid ("DNAPL") which tends to move vertically downward and

9    collect in low spots or along impermeable barriers. PCE in DNAPL form is difficult to detect in

10    the environment and can act as a continuing source of dissolved PCE in groundwater even after

11    all sources of PCE on the ground surface have been removed or remediated. Breakdown

12    products of PCE, including TCE, are more soluble and mobile in water. PCE resists natural

13    degradation in oxygenated soil and groundwater.

14    81.    PCE presents a significant threat to public health and welfare. PCE has been

15    shown to cause cancer in animals, and is known to the State of California to cause cancer for

16    purposes of the Safe Drinking Water and Toxic Enforcement Act of 1986.

17    **B.    Regulatory Standards Applicable To PCE.**

18    82.    No federal or state agency has approved PCE as an additive to drinking water.

19    No federal or state agency has approved releasing or discharging PCE to groundwater.

20    83.    The California Department of Public Health ("DPH") is the state agency

21    responsible for regulating the quality of water served by public water suppliers, including

22    Plaintiff. DPH has established a Maximum Contaminant Level ("MCL") for PCE of 0.005

23    milligrams per liter ("mg/L") or 5 parts per billion ("ppb"). DPH does not permit water

24    containing PCE in excess of the MCL to be supplied to the public. As the owner and operator of

25    public drinking water systems in California, Plaintiff is subject to the MCL requirements

26    established by DPH.

27    84.    The United States Environmental Protection Agency ("EPA") has established

28    an MCL for PCE of 0.005 mg/L, or 5 ppb, and a Maximum Contaminant Level Goal ("MCLG")

- 16 -

1   of zero PCE.    EPA sets an MCLG of zero for chemicals that may cause cancer, and to indicate

2   that there is no dose below which a given chemical is considered safe.    EPA sets an enforceable

3   MCL as close to the MCLG for a given chemical as feasible, defined under the Safe Drinking

4   Water Act as the level that may be achieved with the use of the best available technology,

5   treatment techniques, or other means, taking cost into consideration.

6   **C.    The PCE Manufacturer Defendants' Knowledge of PCE's Hazards.**

7           85.    The PCE Manufacturer Defendants and Equipment Manufacturer Defendants,

8   each of whom has promoted the use of PCE and/or products containing PCE and/or equipment

9   designed and intended for use with PCE, knew or should have known of the grave harm and

10  threat to public health and welfare and the environment represented by the proliferating use of

11  this compound, including (among other things): widespread pollution of groundwater with PCE,

12  contamination of public and private drinking water supplies by this harmful compound, drinking

13  water supplies rendered unfit and unusable for consumption and increased costs to public water

14  suppliers and their customers.

15          86.    The PCE Manufacturer Defendants and Equipment Manufacturer Defendants

16  had a duty and breached their duty to evaluate and test such products adequately and thoroughly

17  to determine their environmental fate and transport characteristics and potential human health

18  and environmental impacts before they produced and sold such products.    They also had a duty

19  and breached their duty to minimize the environmental harm caused by PCE.    The PCE

20  Manufacturer Defendants and Equipment Manufacturer Defendants, and each of them, failed to

21  adequately evaluate and test their PCE products and equipment, or otherwise ensure that PCE

22  would not contaminate drinking water.    As a direct, indirect and proximate result of these

23  failures, PCE contaminated, and continues to contaminate, Plaintiff's Wells.

24          87.    At all times relevant to this action, the PCE Manufacturer Defendants and

25  Equipment Manufacturer Defendants knew, or reasonably should have known, among other

26  things, that: (a) PCE is toxic; and (b) when applied, discharged, disposed of or otherwise released

27  into or onto land, PCE readily migrates through the subsurface, mixes easily with groundwater,

28

- 17 -

1    resists natural degradation, renders drinking water unsafe and/or non-potable, and can be

2    removed from public drinking water supplies only at substantial expense.

3        88.    Despite knowing or having reason to know that long-term groundwater

4    contamination, pollution of water supplies, and threats to public health and safety were inevitable

5    consequences of the foreseeable and intended uses of their PCE products and equipment without

6    proper precautionary measures, including but not limited to adequate warnings, the PCE

7    Manufacturer Defendants and Equipment Manufacturer Defendants nonetheless promoted,

8    marketed and/or sold PCE products and equipment in California and elsewhere.

9        89.    At all times relevant herein, the PCE Manufacturer Defendants and Equipment

10    Manufacturer Defendants, and each of them, knew or should have known that feasible measures

11    could have been implemented to reduce the amount of PCE reaching groundwater supplies

12    without appreciably affecting the ability of these PCE products or equipment to serve

13    drycleaning functions, but they failed to implement such measures.

14        90.    At all times relevant herein, the PCE Manufacturer Defendants and Equipment

15    Manufacturer Defendants, and each of them, knew or should have known that PCE is hazardous

16    and should be disposed of safely and separately from non-hazardous substances.  Nonetheless,

17    the PCE Manufacturer Defendants and Equipment Manufacturer Defendants allowed PCE to be

18    disposed of improperly, and instructed users to use and dispose of PCE in a manner that these

19    defendants knew or should have known would cause PCE to contaminate groundwater.

20        91.    Adequate warnings regarding the known and foreseeable risks of PCE, and

21    adequate instructions regarding safe PCE use and disposal, could have prevented or mitigated the

22    contamination and resulting damages alleged herein.  Despite knowing or having reason to know

23    of the risks to public drinking water resources posed by the discharge, disposal or release into or

24    onto land of PCE products, the PCE Manufacturer Defendants and Equipment Manufacturer

25    Defendants unreasonably failed to provide any adequate warnings regarding the known and

26    foreseeable risks of PCE to customers, end-users, regulators, public officials and/or the public,

27    including Plaintiff.

28        92.    In addition to the negligent and/or reckless conduct alleged herein, the PCE

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1   Manufacturer Defendants and Equipment Manufacturer Defendants, by agreement and/or tacit

2   understanding among them, each knowingly pursued or took an active part in a common plan,

3   design and/or conspiracy to market and/or promote products they knew to be dangerous to the

4   environment.  In particular, these Defendants engaged in joint activity for the specific purpose of

5   suppressing, concealing, and/or minimizing information regarding the environmental risks of

6   PCE and/or misleading regulators and the public about those risks.  These Defendants' common

7   plan, design and/or conspiracy, and the acts taken in furtherance of such common plan, design

8   and/or conspiracy, are a direct and proximate cause of the PCE contamination in Plaintiff's

9   Wells.

10  **D.      The Impact of PCE on Plaintiff's Wells**

11          93.      PCE has been detected in varying amounts at varying times in water extracted

12  from certain of Plaintiff's Wells.  PCE has been detected and/or is present in certain of Plaintiff's

13  Wells at levels above the state and federal MCL for PCE.  The detection and/or presence of PCE,

14  and the threat of further detection and/or presence of PCE, in Plaintiff's Wells in varying

15  amounts and at varying times has resulted, and will continue to result, in significant injuries and

16  damages to Plaintiff.

17          94.      The injuries to Plaintiff caused by Defendants' conduct as alleged herein

18  constitute an unreasonable interference with, and damage to, the limited subterranean supplies of

19  fresh drinking water on which Plaintiff's Wells depend.  Plaintiff's interests in protecting the

20  quality of their limited drinking water supplies constitutes a reason personal for seeking damages

21  sufficient to restore such drinking water supplies to their pre-contamination condition.

22                          <u>**FIRST CAUSE OF ACTION**</u>

23                  **(Strict Products Liability Based On Defective Design)**

24          95.      Plaintiff realleges each of the preceding paragraphs, and by this reference

25  incorporates each such paragraph as though set forth in full.

26          96.      Defendants, and each of them, designed, manufactured, formulated, packaged,

27  distributed, promoted, marketed and/or sold products containing PCE and/or equipment

28  specifically designed to store, use, process, and dispose of PCE.

- 19 -

97.     Defendants, and each of them, represented, asserted, claimed and warranted that PCE products and/or equipment could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

98.     Defendants, and each of them, knew, or should have known, that the PCE products and/or equipment would be used without inspection for defects, and if any inspection were performed, that the defects would not be discovered with the exercise of reasonable diligence.

99.     The PCE products purchased and used in the vicinity of Plaintiff's Wells were used in a reasonably foreseeable manner and without substantial change in the condition of such products.

100.    Defendants knew, or should have known, that, use of PCE products and equipment in their intended manner would result in the spillage, discharge, disposal or release of PCE into or onto land.

101.    The PCE products used in the vicinity of Plaintiff's Wells were defective in design and unreasonably dangerous products because, among other things:  (a) PCE causes extensive groundwater contamination, even when used in its foreseeable and intended manner; (b) even at extremely low levels, PCE renders drinking water unfit for purveying to consumers and creates a public health hazard whenever normal and necessary maintenance is performed on the sewer system, or otherwise adversely impacts normal use of the sewer and water system; (c) PCE poses a significant threat to public health; (d) defendants failed to provide adequate warnings of the known and foreseeable risks of using PCE; and (e) defendants failed to conduct adequate scientific studies to evaluate the environmental fate and potential human health effects of PCE.

102.    At all times relevant to this action:

(a)     Defendants were aware of the use of PCE in the dry cleaning process or as cleaning solvents;

(b)     Equipment Manufacturer Defendants were aware of the typical waste and disposal practices resulting from the intended use of their equipment.  Despite such knowledge,

- 20 -

1   these defendants designed their equipment in such a manner that would result in spills, leaks,

2   and/or discharge of PCE during normal operations;

3          (c)    Equipment Manufacturer Defendants improperly designed their PCE

4   equipment by failing to provide appropriate mechanisms to prevent and/or catch releases or spills

    of PCE and its by-products for such equipment;

5          (d)    Equipment Manufacturer Defendants failed to design proper mechanisms

6   which would eliminate, prevent and/or treat contamination arising from the dry cleaning process

7   such as contamination from separator wastewater, spent filter cartridges, muck, and still bottoms;

8          (e)    Equipment Manufacturer Defendants knew, or should have known, of

9   appropriate equipment redesigns, retrofits, and/or modifications to protect against environmental

10  contamination associated with the use of such equipment, and negligently and/or consciously

11  disregarded this knowledge and failed to redesign, modify and/or retrofit the subject equipment.

    Safer alternative designs and cleaning processes were scientifically feasible and economical;

12         (f)    Defendants represented to the public and regulatory authorities that the

13  products they sold would degrade into harmless substances and would not cause contamination.

14  At the time said representations were made, Defendants knew, or should have known, these

15  representations were false, misleading, and/or that there was no reasonable basis to believe that

16  they were true; and

17         (g)    when PCE was used and disposed of pursuant to the Defendants'

18  recommended application and disposal procedures set forth in product brochures, trade group

19  publication funded by defendants, seminars, meetings, advertisements, oral statements and by

20  other means, PCE contaminated the sewer systems because of Defendants' failure to recommend

    adequate and proper safeguards to avoid or prevent contamination of the sewer system.

21      103.    PCE equipment is a defective product because, among other things: (1) PCE

22  equipment causes extensive contamination, even when used in a foreseeable and intended

23  manner; (2) at extremely low levels, PCE contaminates sewer and water systems; (3) the use of

24  PCE equipment poses a significant threat to public health; (4) defendants failed to provide

25  adequate warnings of the known and foreseeable risk of the use of PCE equipment; and (5)

26  defendants failed to conduct adequate scientific studies to evaluate the environmental fate and

27  potential human health effects of the use of PCE equipment.

28

-21-

104.    The above-described defects in PCE products and equipment existed when the PCE products and equipment left the Defendants' possession.

105.    At all times relevant to this action, PCE products and equipment were dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the risk of harm to public health and welfare and the environment posed by PCE outweighed the cost to Defendants of reducing or eliminating such risk.

106.    As a direct and proximate result of the defects alleged herein, certain of Plaintiff's Wells and the groundwaters that supply them have been, and continue to be, and in the future will be, contaminated with PCE, causing Plaintiff significant injury and damage in an amount within the jurisdiction of this court.

107.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be proved at trial.

108.    Plaintiff is informed and believes and thereon alleges that as a further direct and proximate result of the acts and omissions of the Defendants alleged herein, Plaintiff will sustain substantially increased expenses and loss of the use of plaintiff's property, causing Plaintiff significant injury and damage in an amount within the jurisdiction of this court. Plaintiff is also entitled to costs and prejudgment interest to the full extent permitted by law.

109.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

110.    Defendants knew that it was substantially certain that their alleged acts and omissions described above would cause injury and damage, including PCE contamination of drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct is reprehensible, despicable, and was performed with the intent to induce reliance by a class of persons including their customers, the public, regulatory agencies and plaintiff on false representations, and to promote sales of PCE products and equipment in conscious disregard of the known risks of

-22-

injury to health, property and the environment.  Therefore, Plaintiff requests an award of

exemplary damages in an amount that is sufficient to punish these Defendants and that fairly

reflects the aggravating circumstances alleged herein.  After the completion of additional

investigation and discovery, Plaintiff may seek leave of court to amend this Complaint to allege a

claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## SECOND CAUSE OF ACTION

### (Strict Products Liability Based On Failure To Warn)

111.    Plaintiff realleges each of the preceding paragraphs, and by this reference

incorporates each such paragraph as though set forth in full.

112.    Defendants, and each of them, designed, manufactured, formulated, promoted,

marketed, distributed, and/or sold PCE products and/or equipment.

113.    Defendants, and each of them, knew that such PCE products and/or equipment

were to be purchased and used without inspection for defects.

114.    PCE products and/or equipment purchased or otherwise acquired (directly or

indirectly) from Defendants, and each of them, were used, discharged and/or disposed of in or

otherwise released into or onto lands in the vicinity of Plaintiff's Wells.

115.    The PCE products and/or equipment were used in a reasonably foreseeable

manner and without substantial change in the condition of such products.

116.    Defendants designed PCE products and equipment to discharge PCE into

underground municipal sewer systems.

117.    The PCE products and equipment used in the vicinity of Plaintiff's Wells were

defective in design and unreasonably dangerous products for the reasons set forth above.

118.    Despite the known and/or foreseeable environmental and human health hazards

associated with the use or disposal of PCE products in the vicinity of subterranean drinking

water supplies, including contamination of public drinking water supplies with PCE, Defendants,

and each of them, failed to provide adequate warnings of, or take any other precautionary

measures to mitigate, those hazards.

- 23 -

119.    In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PCE products or otherwise.

120.    As a direct and proximate result of Defendants' failure to warn of the hazards posed by application or release of PCE products in the vicinity of subterranean drinking water supplies that were, or should have been, known to them, certain of Plaintiff's Wells and the groundwaters that supply them have been, and continue to be, contaminated with PCE, causing Plaintiff significant injury and damage.

121.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be proved at trial.

122.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

123.    For the reasons set forth and specifically alleged above in paragraph 76, Plaintiff is entitled to an award of exemplary damages against Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein. After the completion of additional investigation and discovery, Plaintiff may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## THIRD CAUSE OF ACTION

### (Continuing Nuisance Against All Defendants)

124.    Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

125.    Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in its Wells.

126.    The negligent, reckless, intentional and/or ultrahazardous activity of

-24-

1    Defendants, and each of them, as alleged herein has resulted in the continuing contamination of

2    Plaintiff's Wells and the groundwaters that supply them by PCE, giving rise to conditions that

3    constitute a nuisance. Each such Defendant has caused, maintained, assisted and/or participated

4    in such nuisance, and is a substantial contributor to such nuisance.

5        127.    The nuisance conditions caused, contributed to, maintained, assisted and/or

6    participated in by Defendants, and each of them, have caused substantial injury to Plaintiff's

7    Wells and the groundwaters that supply them, in which Plaintiff has a significant property

8    interest.

9        128.    The nuisance conditions caused, contributed to, maintained, assisted and/or

10    participated in by Defendants, and each of them, have and continue to substantially and

11    unreasonably interfere with, obstruct and/or disturb Plaintiff's rights to appropriate, use and

12    enjoy groundwater from its Wells. Plaintiff is specially and adversely affected by the nuisance

13    conditions alleged herein.

14        129.    Defendants, each of whom supplied, distributed, delivered, sold and/or

15    otherwise entrusted (directly or indirectly) PCE products and equipment that were used, applied,

16    discharged, disposed of or otherwise released into or onto land in the vicinity of Plaintiff's

17    Wells, engaged in affirmative conduct that caused, contributed to, maintained and/or assisted in

18    the creation of the nuisance alleged herein, including, but not limited to, the following conduct:

19        (a)    Defendants participated in the use and disposal of PCE by intentionally,

20    recklessly, and/or negligently controlling the use and disposal (and providing instructions for the

21    disposal) of PCE by dry cleaning stores; intentionally, recklessly, and/or negligently instructing

22    dry cleaners about the purportedly proper disposal methods for PCE; and/or intentionally,

23    recklessly, and/or negligently calibrating, designing and manufacturing customers' PCE

24    equipment in such a manner that PCE and PCE products were routinely disposed of into the

25    ground on an ordinary basis. As a result of this activity, PCE contaminated Plaintiff's Wells;

26        (b)    Defendants intentionally, recklessly, and/or negligently instructed end-

27    users, including retail dry cleaners, about the disposal of PCE through informational brochures,

28    instructional seminars, trade organization brochures funded, published, and distributed by

1   defendants, product labels and other literature. Defendants recommended that PCE be dumped

2   into the sewer system and/or dumped on the ground, notwithstanding that said defendants knew,

3   or should have known, that PCE would contaminate the water and soil and pose a risk to health.

4   As a result, when PCE and PCE products were disposed of pursuant to the techniques

5   recommended by said defendants, PCE contaminated Plaintiff's Wells. In addition, the PCE

6   equipment manufacturers designed their equipment to directly discharge PCE waste into the

7   sewer and/or instructed machine users to dispose of PCE waste into the sewer;

8           (c)    During this time, Defendants (1) knew and/or reasonably should have

9   known that chlorinated solvents such as and including PCE had caused environmental

10  contamination, and (2) had not conducted adequate testing to determine the environmental fate

11  and potential human health effects of chlorinated solvents such as and including PCE. Even

12  though said defendants had sufficient information to determine that PCE posed a threat to the

13  environment, they did not modify their PCE disposal instructions or provide the appropriate

14  advice, instruction or information to their customers regarding proper disposal and use needed to

15  avoid environmental contamination;

16          (d)    Defendants knew, or should have known, that chlorinated solvents such as

17  and including PCE were persistent, and could contaminate soil and groundwater.

18      130.    Defendants were each a substantial factor in bringing about the contamination

19  of Plaintiff's Wells, and each of the Defendants aided and abetted the continuing trespasses and

20  are jointly responsible for the injuries and damage caused to Plaintiff as alleged in this complaint

21  and based on the following alleged affirmative conduct:

22          a)     The Equipment Manufacturer and Distributor Defendants manufactured,

23  designed, distributed, prepared and/or installed dry cleaning equipment and/or parts which

24  defendants knew, or should have known, would directly discharge and leak toxic PCE into the

25  sewer system and ground, and intrude upon, contaminate, and damage Plaintiff's possessory

    interests;

26          b)     Defendants intentionally caused dry cleaning retailers to dispose of the

27  PCE waste by instructing, requesting and/or inducing these retailers to dump PCE waste onto the

28  ground, or discharge PCE waste directly into the sewer system, or pour PCE waste down the

- 26 -

1  drain, which caused the PCE waste to intrude upon Plaintiff's possessory interests and cause the

2  alleged harm and damage; and

3      c)   At the time Defendants intentionally instructed, requested and/or induced

4  the conduct described above, Defendants knew, or should have known, of the conditions under

5  which these acts were to be done, the toxicity of the PCE waste, and the consequences of the

6  acts. Defendants instructed, requested and/or induced these acts and were a substantial factor in

7  causing the resulting contamination of Plaintiff's possessory interests, and further aided and

8  abetted this conduct, and are liable for the injuries and damage sustained by Plaintiff.

9      131.   The contamination of Plaintiff's Wells alleged herein has varied over time and

10 has not yet ceased. PCE continues to migrate into and enter Plaintiff's Wells. The

11 contamination alleged herein is reasonably abatable.

12     132.   As a direct and proximate result of Defendants' acts and omissions as alleged

13 herein, Plaintiff's Wells and the groundwaters that supply them have been, and continue to be,

14 contaminated with PCE, causing Plaintiff significant injury and damage. As a direct and

15 proximate result of these Defendants' acts and omissions as alleged herein, Plaintiff has

16 incurred, is incurring, and will continue to incur, investigation, treatment, remediation and

17 monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be

18 proved at trial.

19     133.   For the reasons set forth and specifically alleged above in paragraph 76,

20 Plaintiff is entitled to an award of exemplary damages Defendants that is sufficient to punish

21 these Defendants and that fairly reflects the aggravating circumstances alleged herein. After the

22 completion of additional investigation and discovery, Plaintiff may seek leave of court to amend

23 this Complaint to allege a claim for exemplary damages against additional defendants if

24 warranted by the facts.

25     WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

26                        **FOURTH CAUSE OF ACTION**

27              **(Continuing Trespass Against All Defendants)**

28     134.   Plaintiff realleges each of the preceding paragraphs, and by this reference

- 27 -

1   incorporates each such paragraph as though set forth in full.

2       135.    Plaintiff is the owner and actual possessor of Plaintiff's Wells.

3       136.    Plaintiff owns, possesses and actively exercises its rights to appropriate and use

4   groundwater drawn from its Wells described in the preceding paragraph, including those of

5   Plaintiff's Wells that are contaminated with PCE.

6       137.    Defendants, and each of them, negligently, recklessly and/or intentionally failed

7   to properly control, apply, use and/or dispose of PCE Products, such that they proximately

8   caused PCE to enter, invade, intrude upon and injure Plaintiff's possession of property.

9   Defendants engaged in affirmative conduct that caused, contributed to, maintained and/or

10  assisted in the creation of the trespass alleged herein, as follows:

11      (a)     Defendants participated in the use and disposal of PCE by intentionally,

12  recklessly, and/or negligently controlling the use and disposal (and providing instructions for the

13  disposal) of PCE by dry cleaning stores; intentionally, recklessly, and/or negligently instructing

14  dry cleaners about the purportedly proper disposal methods for PCE; and intentionally,

15  recklessly, and/or negligently calibrating, designing and manufacturing customers' PCE

16  equipment in such a manner that PCE and PCE products were routinely disposed of into the

17  ground on an ordinary basis.   As a result of this activity, PCE contaminated Plaintiff's Wells;

18      (b)     Defendants intentionally, recklessly, and/or negligently instructed end-

19  users, including retail dry cleaners, about the disposal of PCE through informational brochures,

20  instructional seminars, trade organization brochures funded, published, and distributed by

21  defendants, product labels and other literature.  Defendants recommended that PCE be dumped

22  into the sewer system and/or dumped on the ground, notwithstanding that said defendants knew,

23  or should have known, that PCE would contaminate the water and soil and pose a risk to health.

24  As a result, when PCE and PCE products were disposed of pursuant to the techniques

25  recommended by said defendants, PCE contaminated Plaintiff's Wells.  In addition, the PCE

26  equipment manufacturers designed their equipment to directly discharge PCE waste into the

27  sewer and/or instructed machine users to dispose of PCE waste into the sewer;

28      (c)     During this time, Defendants (1) knew and/or reasonably should have

- 28 -

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.

1    known that chlorinated solvents such as and including PCE had caused environmental

2    contamination, and (2) had not conducted adequate testing to determine the environmental fate

3    and potential human health effects of chlorinated solvents such as and including PCE. Even

4    though said defendants had sufficient information to determine that PCE posed a threat to the

5    environment, they did not modify their PCE disposal instructions or provide the appropriate

6    advice, instruction or information to their customers regarding proper disposal and use needed to

7    avoid environmental contamination;

8          (d)      Defendants knew, or should have known, that chlorinated solvents such as

9    and including PCE were persistent, and could contaminate soil and groundwater.

10        138.      Defendants were each a substantial factor in bringing about the contamination

11    of Plaintiff's Wells, and each of the Defendants aided and abetted the continuing trespasses and

12    are jointly responsible for the injuries and damage caused to Plaintiff as alleged in this complaint

13    and based on the following alleged affirmative conduct:

14          a)      The Equipment Manufacturer and Distributor Defendants manufactured,

15    designed, distributed, prepared and/or installed dry cleaning equipment and/or parts which

16    defendants knew, or should have known, would directly discharge and leak toxic PCE into the

17    sewer system and ground, and intrude upon, contaminate, and damage Plaintiff's possessory

18    interests;

19          b)      Defendants intentionally caused dry cleaning retailers to dispose of the

20    PCE waste by instructing, requesting and/or inducing these retailers to dump PCE waste onto the

21    ground, or discharge PCE waste directly into the sewer system, or pour PCE waste down the

22    drain, which caused the PCE waste to intrude upon Plaintiff's possessory interests and cause the

23    alleged harm and damage; and

24          c)      At the time Defendants intentionally instructed, requested and/or induced

25    the conduct described above, Defendants knew, or should have known, of the conditions under

26    which these acts were to be done, the toxicity of the PCE waste, and the consequences of the

27    acts. Defendants instructed, requested and/or induced these acts and were a substantial factor in

28    causing the resulting contamination of Plaintiff's possessory interests, and further aided and

abetted this conduct, and are liable for the injuries and damage sustained by Plaintiff.

- 29 -

139.    The contamination of Plaintiff's Wells alleged herein has varied over time and has not yet ceased.  PCE continues to migrate into and enter Plaintiff's Wells.  The contamination alleged herein is reasonably abatable.

140.    Plaintiff has not consented to, and does not consent to, the contamination alleged herein.  Defendants, and each of them, knew or reasonably should have known that Plaintiff would not consent to this trespass.

141.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Wells and the groundwaters that supply them have been, and continue to be, contaminated with PCE, causing Plaintiff significant injury and damage.  As a direct and proximate result of these Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be proved at trial.

142.    For the reasons set forth and specifically alleged above, Plaintiff is entitled to an award of exemplary damages against Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.  After the completion of additional investigation and discovery, Plaintiff may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## FIFTH CAUSE OF ACTION

### (Negligence Against All Defendants)

143.    Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

144.    Defendants had a duty to use due care in the design, manufacture, formulation, handling, control, disposal, sale and labeling, use, instructions for use and disposal of PCE products and/or equipment to prevent, and to the extent feasible, to eliminate contamination of Plaintiff's Wells and groundwaters supplying those Wells with PCE in concentrations which may pose adverse health effects.

- 30 -

145.    Defendants so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted and/or sold PCE products and/or equipment, and so negligently, carelessly and recklessly applied PCE, disposed of PCE products, containers, and waste and/or negligently recommended application and disposal techniques for PCE products that they directly and proximately caused PCE contamination of Plaintiff's Wells and groundwaters supplying those Wells.

146.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Wells and the groundwaters that supply them have been, and continue to be, contaminated with PCE, causing Plaintiff significant injury and damage. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs and expenses related to the PCE contamination of its Wells in an amount to be proved at trial.

147.    For the reasons set forth and specifically alleged above, Plaintiff is entitled to an award of exemplary damages against Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein. After the completion of additional investigation and discovery, Plaintiff may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## SIXTH CAUSE OF ACTION

### (Negligence *Per Se* Against All Defendants)

148.    Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth in full.

149.    Plaintiff alleges that Defendants negligently, carelessly and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled and/or sold PCE products and/or equipment, and/or so negligently, carelessly and recklessly applied PCE, disposed of PCE products, containers, and waste and/or negligently recommended application and disposal techniques for PCE that they directly and proximately caused contamination of Plaintiff's Wells, and the groundwaters supplying such Wells, in violation of California Water Code sections

- 31 -

1   13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and

2   117555, and California Fish and Game Code section 5650, the purposes of which are to set a

3   standard of care or conduct to protect Plaintiff and all persons or property within its jurisdiction,

4   as well as the environment, from the type of improper activities engaged in by Defendants, and

5   each of them. Therefore, such improper activities and violations constitute negligence *per se*.

6   Plaintiff's investigation and discovery are not complete. Therefore, Plaintiff will seek leave of

7   court to amend the complaint to allege additional violations or, in the alternative, give notice to

8   the Defendants of any additional statutory violations when determined.

9        150.    Defendants, and each of them, have failed to comply with state law as detailed

10  above. As a direct and proximate result of the negligence *per se* of Defendants, and each of

11  them, Plaintiff has suffered damages, as alleged in this Complaint, including consequential,

12  incidental and general damages to be proven at trial.

13               **SEVENTH CAUSE OF ACTION**

14           **(Liability Under Civil Code § 1882 et seq.)**

15       151.    Plaintiff realleges each of the preceding paragraphs, and by this reference

16  incorporates each such paragraph as though set forth in full.

17       152.    Plaintiff is a water corporation that owns and/or operates a water system.

18       153.    The water that is pumped from Plaintiff's Wells is property owned or used by

19  Plaintiff to provide utility services.

20       154.    The groundwater that supplies Plaintiff's Wells is property owned or used by

21  Plaintiff to provide utility services.

22       155.    By causing the introduction of PCE into Plaintiff's Wells and the groundwaters

23  that supply them as alleged in this Complaint, the Defendants, and each of them, injured, altered,

24  interfered with, and/or otherwise prevented from performing its normal or customary function

25  property owned or used by Plaintiff to provide utility services.

26       156.    As a direct and proximate result of the Defendants' acts and omissions as

27  alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation,

28  treatment and monitoring costs and expenses related to the PCE contamination of Plaintiff's

- 32 -

1    Wells, in an amount to be proved at trial, for which the Defendants are liable pursuant to Civil

2    Code §1882.1.

3        157.    Pursuant to Civil Code §1882.2, Defendants are liable for three times the

4    amount of Plaintiff's actual damages, plus the costs of this suit and reasonable attorney's fees.

5        WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

6                        **EIGHTH CAUSE OF ACTION**

7                    **(Equitable Indemnity Against All Defendants)**

8        158.    Plaintiff realleges each of the preceding paragraphs, and by this reference

9    incorporates each such paragraph as though set forth in full.

10       159.    The California Department of Toxic Substance Control ("DTSC") has pursued

11   an enforcement action against Plaintiff arising from PCE contamination in Chico, California.

12   damages arising as a result of the PCE contamination of Plaintiff's Wells. DTSC's complaint

13   against Plaintiff, for purposes of its allegations only, is incorporated by reference herein as

14   though fully set forth at length herein.

15       160.    A settlement between DTSC and Plaintiff ("Settlement") was approved by a

16   court of this State on May 23, 2007, obliging Plaintiff to, among other things, incur significant

17   costs designing and implementing measures to remediate PCE contamination and undertaking

18   water treatment activities.

19       161.    Plaintiff alleges that it is in no way legally responsible for the events giving rise

20   to the Settlement, nor legally responsible in any manner for the damages allegedly sustained by

21   DTSC. Plaintiff's liability for any part of the claim for damages asserted against it is, on

22   Plaintiff's information and belief, solely due to Defendants' negligent, tortious and malicious

23   conduct as set forth above. Plaintiff is informed and believes that the acts of Defendants, and

24   each of them, set forth and alleged herein, were the direct and proximate cause of the PCE

25   contamination that was the subject of DTSC's complaint and action against Plaintiff.

26       162.    Defendants are responsible and liable for any such damages in direct proportion

27   to the extent of their conduct in causing such damages. Plaintiff is entitled to judgment against

28

- 33 -

1   Defendants, and each of them, in an amount proportional to their responsibility for such

2   damages.

3          WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

4                            **PRAYER FOR RELIEF**

5          WHEREFORE, Plaintiff respectfully requests a trial of this Action before a jury, and that,

6   upon a favorable verdict, this Court enter judgment in favor of Plaintiff and against Defendants,

7   jointly and severally, as follows:

8          a.     An award of compensatory damages according to proof;

9          b.     An award of treble damages, pursuant to Civil Code §1882.2;

10         c.     An award of exemplary damages in an amount sufficient to punish Defendants,

11                and to deter Defendants from ever committing the same or similar acts;

12         d.     An order awarding Plaintiff its costs in prosecuting this action, including its

13                reasonable attorneys' fees, together with prejudgment interest, pursuant to Civil

14                Code §1882.2 and to the full extent permitted by law;

15         e.     Such other further relief as the Court may deem just and proper.

16

17  DATED:   May 22, 2008          SHER LEFF LLP

18

19                          By:    _____

20                                 VICTOR M. SHER
                                   TODD E. ROBINS
21                                 MARNIE E. RIDDLE

22                                 BARON & BUDD, PC

23                                 Attorneys for Plaintiff, CALIFORNIA WATER
                                   SERVICE COMPANY
24

25

26

27

28

- 34 -

COMPLAINT FOR DAMAGES AND OTHER RELIEF – Case No.